IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:20cv25118

HARTFORD CASUALTY INSURANCE COMPANY, a foreign corporation,

    Plaintiff,

v.

SILTEK AFFORDABLE HOUSING, LLC, a dissolved Florida limited liability company; SILTEK GROUP, INC., a Florida corporation; RENE A. SIERRA, a Florida resident; ANA SILVEIRA-SIERRA, a Florida resident; GONZALO DERAMON, a Florida resident; MAYTE DERAMON, a Florida resident; MICHAEL C. COX, a Florida resident; and SHANA KRISTIE COX, a Florida resident,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, Hartford Casualty Insurance Company ("Hartford"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 65, files this Motion for Preliminary Injunction seeking a preliminary injunction requiring Defendants, Siltek Affordable Housing, LLC ("Siltek LLC"), Siltek Group Inc. ("Siltek Inc."), Rene A. Sierra, Ana Silveira-Sierra, Gonzalo DeRamon, Mayte DeRamon, Michael C. Cox, and Shana Kristie Cox (collectively "Defendants" or "Indemnitors") to post collateral in accordance with the General Indemnity Agreement described below.

## UNDERLYING FACTS

On December 10, 2009, the Defendants each executed a General Indemnity Agreement ("Indemnity Agreement") in favor of Hartford to induce Hartford to issue payment and

performance bonds on behalf of Siltek, Inc.. *See* Affidavit of Maribel Luzunaris in Support of Hartford's Motion for Preliminary Injunction, at ¶ 4 ("Luzunaris Affidavit") attached hereto as **Exhibit 1**. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "A."** After the Defendants entered into the Indemnity Agreement with Hartford, Defendant Siltek, Inc. entered into a construction contract ("Bonded Contract") with Miami-Dade County on July 31, 2012, for the construction of the Affordable Housing and Home Ownership in District 11 – Gran Via Apartments ("Project"). *See* Luzunaris Affidavit, at ¶ 5.

In reliance upon the rights conveyed by the Indemnity Agreement, Hartford issued a contract performance and payment bond (the "Bond") to secure the obligations of the construction contract on behalf of Siltek Inc. for the Project, with the following identifying Bond information:

| Obligee | Bond Number | Project |
|---|---|---|
| Miami-Dade County | 21BCSFZ7956 | Affordable Housing and Home Ownership in District 11 – Gran Via Apartments, ISD Project No. Z000107 |

*See* Luzunaris Affidavit, at ¶ 6. A true and correct copy of the Bond is attached hereto as **Exhibit "B."**

Pursuant to the Indemnity Agreement, the Defendants not only have a duty to indemnify Hartford for losses incurred in connection with the bonds issued on their behalf, but also have a duty to exonerate Hartford *before* it actually incurs losses. *See* Luzunaris Affidavit, at ¶ 8. The Defendants, upon Hartford's demand, must deposit collateral security in an amount that Hartford determines is necessary to protect it from losses or expenses. *See* Ex. A at ¶ 6; Luzunaris Affidavit, at ¶ 8.

Hartford has incurred, and has a reasonable basis to believe that it will continue to incur, liabilities under the Bond. Since the issuance of the Bond, the obligee for the Project (Miami-Dade County) has asserted a claim against Siltek, Inc. and Hartford under the Bond in Miami-Dade County Circuit Court, which has been referred to Arbitration. *See* Luzunaris Affidavit, at ¶ 9. Specifically, the obligee's claim against Siltek, Inc. is for defective work/materials in the Project's roofing system and seeks approximately $618,558.00 to replace the roof and reimburse for out-of-pocket mitigation work. *See* Luzunaris Affidavit, at ¶ 10. Additionally, the obligee's claim against Hartford requests that Hartford either correct the defects on the Project or provide payment to the County under the Bond in the amount of $618,558.00, plus attorney's fees, interest and costs. *See* Luzunaris Affidavit, at ¶ 11. A copy of Miami-Dade County's Complaint and Amended Demand for Arbitration is attached hereto as **Composite Exhibit "C."**

Hartford anticipates further exposure on this Project based on change order work and/or additional mitigation efforts undertaken by the County. Hartford has further incurred attorney's fees, costs and expenses in investigating the claim under the Bond. *See* Luzunaris Affidavit, at ¶ 12. As a result of these potential liabilities, on June 21, 2017, and again on November 5, 2020, Hartford demanded that Indemnitors deposit collateral with Hartford in the amount of $850,000.00. *See* Luzunaris Affidavit, at ¶ 13. A copy of the November 5, 2020 Demand Letter is attached hereto as **Exhibit "D."** The Defendants have failed or refused to comply with Hartford's demands and their contractual obligations under the Indemnity Agreement. *See* Luzunaris Affidavit, at ¶ 14. To date, Defendants have not deposited the collateral security. *See* Luzunaris Affidavit, at ¶ 15.

As of the date of this filing, Hartford has incurred losses yet to be determined, but estimated at no less than $850,000.00 under the Bond, including but not limited to the above-described

claims. *See* Luzunaris Affidavit, at ¶ 16.  Hartford will also continue to incur damages in defending such claims and in enforcing its rights against the Defendants. *See* Luzunaris Affidavit, at ¶ 17.

## STANDARD OF RELIEF

Federal Rule of Civil Procedure 65 provides for the issuance of a preliminary injunction. It is well established that a court may grant traditional preliminary injunctive relief when the moving party demonstrates:

a) a substantial likelihood of success on the merits;

b) irreparable injury unless the Court issues the injunction;

c) that the threatened injury outweighs the damage the proposed injunction may cause the opposing party; and

d) that the injunction would not be adverse to the public interest.

*See Allied World Specialty Ins. Co. v. Lawson*, 2016 WL 695980 (M.D. Fla. 2016); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004); *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674-CIV, 2007 WL 6862342, at *3 (S.D. Fla. Nov. 21, 2007) ("The Eleventh Circuit standards governing a TRO are the same as those for a preliminary injunction.").  As set forth below, Hartford has met each of these requirements.

Under the circumstances present in this case, this Court and other courts around the country have granted similar relief.  *See* Order Granting Pl.'s Mot. for Prelim. Inj. to Compel Posting of Collateral, *Frankenmuth Mut. Ins. Co. v. PAC Comm, Inc.,* No. 1:20-cv-24064, 2021 WL 1204975 (S.D. Fla. 2021); Order Granting Prelim. Inj., *Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, 10-61064-CIV, ECF No. 31 (S.D. Fla. 2011); *Eagle Fruit Traders, LLC v. Florida Fresh Int'l, Inc.*, No. 07-21889-CIV, 2008 WL 4186966, *2 (S.D. Fla. 2008) (granting preliminary injunction restraining defendants from dissipating funds in their possession or control and requiring

Defendants to pay plaintiffs $99,318.85 or deposit the same into the court registry); *see also Fid. & Deposit Co. of Maryland v. Par Constr. Inc.*, No. SA-2003-CA-0987-RF, 2004 WL 2537349, *4 (W.D.Tex. Oct. 25, 2004) (granting motion for preliminary injunction enjoining defendants from dissipating funds relating to construction projects for which plaintiff's issued bonds); *Wingsco Energy, Inc. v. Vanguard Groups Res. 1984, Inc.*, 1989 WL 223756, at *4 (S.D. Tex. 1989) (granting a preliminary injunction requiring plaintiffs to deposit collateral security into court registry); *Nat'l. Ins. Co. of Milwaukee, Wisconsin v. Barney*, 1988 WL 215411, at *9 (N.D. Ohio 1988) (granting preliminary injunction requiring posting of collateral security with the court); *Fed. Deposit Ins. Corp. v. Antonio*, 649 F.Supp. 1352 (D. Colo. 1986) (granting preliminary injunction prohibiting dissipation of relevant assets); *see also Arthur Pew Constr. Co. v. Lipscomb*, 964 F.2d 1559, 1568 (11 Cir. 1992) (stating that lower court granted a restraining order prohibiting defendant from receiving collecting or disbursing relevant funds); *Bank of Am. v. World of English*, 23 B.R. 1015, 1017 (N.D. Ga. 1982) (stating that the Court had previously granted temporary restraining order to prevent diversion or use of relevant funds).

## MEMORANDUM OF LAW

### A. Hartford has a Substantial Likelihood of Success on the Merits

#### i. Hartford has a Clear Right to Contractual Indemnification

The Indemnity Agreement in this case clearly and unambiguously requires that the Defendants indemnify Hartford for payments made under the Bond. The Defendants specifically agreed as part of the Indemnity Agreement that:

> **Indemnity and Exoneration.** The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages, and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, (3) in enforcing any

of the provisions of this Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond.

Ex. A at ¶ 5.

In the event that Hartford is exposed, or may be exposed, to any liability, loss or expense, the parties in this case specifically agreed that Hartford may require Defendants to post collateral "immediately upon demand." Specifically, Paragraph 6 of the Indemnity Agreement states:

> ***On Hartford's demand, the Indemnitors shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability whether or not Hartford has made any payment or created any reserve.*** Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or Bonded contract funds which Indemnitors diverted in violation of Paragraph 11 of this agreement and/or to establish a trust account in accordance with Paragraph 11. ***Hartford may use these sums, or any part thereof, to pay such claim or to hold as collateral security against any loss, claim, liability or unpaid premium on any Bond for which the Indemnitors may be obligated to indemnify Hartford under the terms of this Agreement.*** Hartford shall have no duty to invest, or to provide interest on any such deposit. Hartford may sell property assigned to or deposited with it without incurring any liability. The sale may be public or private and with or without notice of the time or place thereof. The Indemnitors shall be entitled to the refund of any unused portion of the collateral security upon termination of Hartford's liability on all Bonds and the performance by the Indemnitors of all of their obligations to Hartford hereunder. ***The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law. Therefore, the Indemnitors agree that Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.***

Ex. A at ¶ 6.

An "Event of Default" is defined as:

> (i) an Indemnitor's abandonment, forfeiture or breach of, or failure, refusal or inability to perform, a contract guaranteed by any Bond; (ii) an Indemnitor's failure, refusal or inability to pay any bill or satisfy any debt incurred in connection with the performance of any obligation guaranteed by any Bond; ***(iii) an Indemnitor's failure, refusal or inability to satisfy any condition of any Bond or to comply with any term or provision of this Agreement***; . . . [and/or] (v) the commencement or

6

continuation of any proceeding which deprives the Principal of, or interferes with, his use of any of the supplies, tools, plant, machinery, equipment or materials in, on or around the site of, or the work under the contract covered by any Bond; . . . .

Ex. A at ¶ 1(d).

Moreover, "[u]pon the occurrence of an 'Event of Default,' indemnitors authorize and agree that Hartford may in its sole discretion and to the extent it deems appropriate," take any, all or a combination of various actions to protect its interests including:

(a) Assert, perfect, use and pursue all the assigned, transferred or conveyed rights, actions, causes of action, contracts, subcontracts, purchase orders, patent rights, copy rights and trademarks, plans, drawings, specifications and contract documents, claims and/or demands;

(b) Take possession of all or any part of the work under any or all contracts to which any Bond applies;

(c) Take possession of all tools, plant, machinery, equipment, office equipment, books, records, hardware, software, materials, supplies, inventory, design documents, records, drawings, plans, work in process, completed assemblies and use, consume, or apply to the performance of any contract or defense of any claim to which any Bond applies;

(d) Execute any document in the name of the Principal necessary to effectuate the purposes and terms of this Agreement or enforce any common law right;

(e) ***Take such other action and enforce such other rights whether granted in this Agreement, or by common law.***

Ex. A at ¶ 10.

Finally, the Agreement further provides that Hartford has the right to "adjust, settle, or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement" and that "the Indemnitors shall immediately be liable to Hartford for all payments, plus interest, made by Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) [that payment was] necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability." *See* Ex. A at ¶ 7.

Clear and unambiguous indemnity agreements are enforced according to their express terms. *See Am. Ins. Co. v. Egerton*, No. 94-1911, 1995 WL 371452, *2 (4th Cir. 1995); *see also Fid. & Deposit Co. of Maryland*, 2004 WL 2537349 at *4 (finding that the "substantial likelihood of success of the merits" prong of the test weighed in favor of the movant for preliminary injunction because the clear terms of the indemnity agreement entitled the movant to relief). Furthermore, indemnification provisions similar to those contained in the Indemnity Agreement "have been uniformly sustained and upheld" subject only to an exception for fraud or lack of good faith. *Fid. And Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (enforcing an indemnification provision requiring payment to the surety as soon as "liability exists or is asserted against the Surety").

Hartford has expended funds investigating the claims made under the Bonded Contract and will likely be expend additional funds on the Bonded Contract in the future. These expenditures were made in good faith and based on Hartford's belief that it was or might be liable for the claimed loss or that the expenditures were necessary or advisable to protect Hartford's rights or lessen its liability. As such, Hartford is entitled to indemnification under the Indemnification Agreement.

### ii. Hartford has a Clear Right to Contractual Exoneration

In addition to Defendants' agreement to indemnify Hartford as described in Section A.i. *supra*, Defendants also agreed to exonerate and hold Hartford harmless for all "loss, liability, damages and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains" as a result of furnishing any bond, or as a result of the failure of Indemnitors to perform or comply with the Indemnity Agreement. *See* Ex. A at ¶ 5. As early as June 21, 2017, and again on November 5, 2020, Defendants were obligated under the Indemnity Agreement to collateralize and exonerate Hartford

in the amount of $850,000.00 for losses and expenses that Hartford had incurred or reasonably anticipated incurring as a result of issuing the Bond.  *See* Ex. D.

Exoneration is an accepted legal principle that provides a surety with the right to compel payment before the surety actually suffers the loss of a pending claim against the surety.  *See Glades County, Fla. v. Detroit Fid. Sur. Ins. Co.,* 57 F.2d 449 (5th Cir. 1932).  The purpose of exoneration in the context of a suretyship is to avoid circuity of action.  *See Wingsco Energy, Inc., Inc.*, 1989 WL 223756 at *2.  A surety "is not obligated to make inroads into his own resources when the loss must in the end fall on the principal." *Id.*  Based on the clear terms of the Indemnity Agreement, as well as at common law and in equity, Hartford is entitled to exoneration from the Defendants.

### iii. Hartford Has a Clear Right to Quia Timet

Broader than exoneration, *quia timet* "allows a person to seek equitable relief from future probable harm to a specific right or interest."  Bryan A. Garner, BLACKS LAW DICTIONARY, (8th ed. 2004).  A *quia timet* action by a surety is anticipatory, arising before the surety incurs losses. *See id.*; M*orely Const. v. Maryland Cas. Co.,* 90 F.2d 976, 977 (8th Cir. 1937). A surety need not wait until it has paid claims before it may seek *quia timet* relief to protect itself from diversion of the funds; rather, it may do so when it has a reasonable basis to believe that it will incur a loss. A*m. Sur. Co. of N.Y. v. Lewis State Bank,* 58 F.2d 559, 560 (5th Cir. 1932); M*orely Const. v. Maryland Cas. Co.,* 90 F.2d at 977.

The parties in this case specifically bargained for such relief in the Indemnity Agreement, which states that Hartford may require Defendants to post collateral "immediately upon demand." Specifically, Paragraph 6 of the Indemnity Agreement states:

> ***On Hartford's demand, the Indemnitors shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as***

> ***Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability whether or not Hartford has made any payment or created any reserve.*** Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or Bonded contract funds which Indemnitors diverted in violation of Paragraph 11 of this agreement and/or to establish a trust account in accordance with Paragraph 11. ***Hartford may use these sums, or any part thereof, to pay such claim or to hold as collateral security against any loss, claim, liability or unpaid premium on any Bond for which the Indemnitors may be obligated to indemnify Hartford under the terms of this Agreement.*** Hartford shall have no duty to invest, or to provide interest on any such deposit. Hartford may sell property assigned to or deposited with it without incurring any liability. The sale may be public or private and with or without notice of the time or place thereof. The Indemnitors shall be entitled to the refund of any unused portion of the collateral security upon termination of Hartford's liability on all Bonds and the performance by the Indemnitors of all of their obligations to Hartford hereunder. ***The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law. Therefore, the Indemnitors agree that Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.***

Further, the Indemnitors also acknowledged and agreed that Hartford would be irreparably harmed and have no adequate remedy at law for any failure of the Indemnitors to immediately deposit the sum demanded by Hartford as collateral security. The Indemnitors further agreed "that Hartford shall be entitled to injunctive relief for specific performance" of the obligation to deposit collateral security and waived any contrary claims or defenses. *See* Ex. A at ¶ 6.

Based on the clear language of the Indemnity Agreement, the Court should protect Hartford's right to *quia timet* by issuing the preliminary injunction requested herein.

### B. Hartford Will be Irreparably Injured Without the Preliminary Injunction

A denial of the requested relief will irreparably injure Hartford's rights to indemnification, exoneration and *quia timet*. Without the requested relief, it would be virtually impossible for Hartford to recover amounts that it has made and will be required to make under the Bonded

10

Contract and leave Hartford without an adequate remedy at law. The case of *Liberty Mutual Ins. Co. v. Aventura Eng'g & Constr. Co.*, 534 F. Supp. 2d 1290, 1320-21 (S.D. Fla. 2008) is dispositive on the issue of irreparable harm and the lack of an adequate remedy at law to Hartford. In *Liberty Mutual*, this Court held that "the Florida Supreme Court would specifically recognize a surety's entitlement to enforce its contractual rights to collateralization." *Id*. at 1321. In reaching this conclusion, the *Liberty* court cited to a host of cases nationwide for the principle that a surety's loss of its collateralization rights is irreparable injury as a matter of law. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 2007 WL 676217 (S.D. Fla. 2007); *Safeco Ins. Co. of Am. v. Schwab*, 739 F. 2d 431 (9th Cir. 1984) ("sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced").

In addition to the irreparable harm that Hartford will suffer without the requested relief as to expenditures already made, Hartford will suffer irreparable harm to its rights with respect to anticipated payments. A surety's right to exoneration and *quia timet* "are moot once payment by or on behalf of the surety is made." *See Wingsco Energy, Inc.*, 1989 WL 223756 at *3. As discussed above, Hartford has received claims on the Bonded Contract and expects that it will be required to make further payment before completion of the present lawsuit. Failure of the Defendants to post collateral will result in Hartford having to make further payments on these claims without the bargained-for right of anticipatory protection from Defendants. Thus, a denial of the requested relief will forever deny Hartford of its ability to enforce those rights. *See id*. Relief similar to that requested has been found appropriate to protect the surety's rights of exoneration and *quia timet*. *See* Order Granting Prelim. Inj., *Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, 10-61064-CIV, ECF No. 31 (S.D. Fla. 2011); Order Granting Pl.'s Mot. for Prelim.

Inj. to Compel Posting of Collateral, *Frankenmuth Mut. Ins. Co. v. PAC Comm, Inc.*, No. 1:20-cv-24064, 2021 WL 1204975 (S.D. Fla. 2021); *Wingsco Energy, Inc., Inc.*, 1989 WL 223756, at *4; *Northwestern Nat'l. Ins. Co. of Milwaukee, Wisconsin*, 1988 WL 215411, at *9.

Furthermore, Courts have held that when a surety seeks to enforce its contractual, common law, and equitable rights, such as the rights asserted here, there is an inherent lack of legal remedy. *See United Bonding Ins. Co. v. Stein*, 273 F.Supp 929, 930 (E.D. Penn. 1967) (legal remedy for damages would not suffice when indemnitor failed to comply with its obligations); *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." (internal citations omitted)). In the absence of the requested relief, Hartford will be irreparably injured by its lack of legal remedy to preserve its rights to indemnification, exoneration, and *quia timet*.

Hartford's contractual rights under the Indemnity Agreement entitle it to more than just damages, but security from the Defendants prior to the time that Hartford is required to pay any further claims under the Bonded Contract. To deny Hartford's request for a preliminary injunction to enforce these rights on the basis that damages might be available in the future, defeats the rights themselves. By their very nature, *quia timet* and exoneration require pre-judgment relief. Hartford has no adequate remedy at law, and the relief requested herein constitutes its only means of protecting its rights.

### C. The Threatened Injury to Hartford Outweighs the Damage the Proposed Preliminary Injunction May Cause Defendants

Any damage to the Defendants that will be caused by the proposed preliminary injunction is greatly outweighed by the injury to Hartford. Defendants specifically bargained for the relief requested herein when they agreed in Paragraph 6 of the Indemnity Agreement that "failure to

deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law." *See* Ex. A. As a result, Defendants additionally agreed that "Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary." *See id.*

Nonetheless, Hartford acknowledges that pursuant to Federal Rule of Civil Procedure 65(c), a preliminary injunction may be issued "only if the movant give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Hartford is ready and willing to provide security as requested and deemed necessary by the court.

### D. The Requested Relief Will Not Be Adverse to the Public Interest

The requested relief will have no significant impact on the public interest. The requested preliminary injunction is solely directed at preventing the Defendants from escaping their obligation to post collateral under the Indemnity Agreement. Moreover, to the extent that the public has any interest in the instant Motion, the public interest weighs in favor of granting the relief requested by Hartford to ensure the continued solvency of surety companies for the public benefit, to preserve rights accruing to parties that cannot otherwise be upheld, and to uphold the express terms of agreements between parties and the bargained-for rights and risks contained therein. *See Northwestern Nat'l. Ins. Co. of Milwaukee, Wisconsin*, 1988 WL 215411, at *9 ("The principals expressly assumed the risk of payment in the Indemnity Agreement and agreed to hold NNIC harmless. To ignore the express terms of this Agreement and the bargained for risks would not be in the public interest.")

WHEREFORE, Hartford respectfully requests that this Court enter an order granting a preliminary injunction requiring Defendants Siltek LLC, Siltek Inc., Rene A. Sierra, Ana Silveira-Sierra, Gonzalo DeRamon, Mayte DeRamon, Michael C. Cox, and Shana Kristie Cox to post collateral in an amount of $850,000.00 in accordance with the General Indemnity Agreement described above.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **June 25, 2021**, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system.

        Respectfully submitted,

        TAYLOR ESPINO VEGA & TOURON, PLLC
        *Attorneys for Hartford Casualty Insurance Company*
        201 Alhambra Circle, Suite 801
        Coral Gables, Florida 33134
        Telephone: (305) 443-2043
        Facsimile: (305) 443-2048

        By: /s/ Timothy S. Taylor
            TIMOTHY S. TAYLOR
            Florida Bar No. 545015
            ttaylor@tevtlaw.com
            vperez@tevtlaw.com
            PAUL WASHINGTON
            Florida Bar No. 60107
            pwashington@tevtlaw.com
            KRISTINA L. PUENTE
            Florida Bar No. 107690
            kpuente@tevtlaw.com