IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:20cv25118

HARTFORD CASUALTY INSURANCE
COMPANY, a foreign corporation,

        Plaintiff,

v.

SILTEK AFFORDABLE HOUSING, LLC, a
dissolved Florida limited liability company;
SILTEK GROUP, INC., a Florida corporation;
RENE A. SIERRA, a Florida resident; ANA
SILVEIRA-SIERRA, a Florida resident;
GONZALO DERAMON, a Florida resident;
MAYTE DERAMON, a Florida resident;
MICHAEL C. COX, a Florida resident; and
SHANA KRISTIE COX, a Florida resident,

        Defendants.

_____/

## AFFIDAVIT OF MARIBEL LUZUNARIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

STATE OF CONNECTICUT    )
                           ) ss. East Hartford, CT
COUNTY OF HARTFORD      )

      **BEFORE ME**, the undersigned authority, personally appeared Maribel Luzunaris of

Hartford Casualty Insurance Company ("Hartford"), who having been duly sworn, testified as

follows:

      1.     I am Maribel Luzunaris, Senior Bond Claims Representative for Hartford, and give

this affidavit in support of Hartford's Motion for Preliminary Injunction (the "Motion").

      2.     I am over eighteen (18) years of age and am otherwise competent to give this

affidavit.  All testimony contained in this Affidavit is based on my personal knowledge or on a

review of the relevant records maintained by Hartford.

**EXHIBIT " 1"**

3.      Hartford is a licensed insurer and is engaged in the business of issuing surety bonds.

4.      On December 10, 2009, the Defendants, Siltek Affordable Housing, LLC ("Siltek LLC"), Siltek Group Inc. ("Siltek Inc."), Rene A. Sierra, Ana Silveira-Sierra, Gonzalo DeRamon, Mayte DeRamon, Michael C. Cox, and Shana Kristie Cox (collectively referred to as "Indemnitors"), executed a General Indemnity Agreement ("Indemnity Agreement") in favor of Hartford.  A true and correct copy of the Indemnity Agreement is attached to the Motion and to this Affidavit as **Exhibit "A."**

5.      After the Defendants entered into the Indemnity Agreement with Hartford, Defendant Siltek, Inc. entered into a construction contract ("Bonded Contract") with Miami-Dade County on July 31, 2012, for the construction of the Affordable Housing and Home Ownership in District 11 – Gran Via Apartments ("Project").

6.      In reliance upon the rights conveyed by the Indemnity Agreement, Hartford, as surety, issued a contract payment and performance bond (the "Bond") on behalf of Siltek Inc., as principal, for an affordable housing project in the State of Florida.  A true and correct copy of the Bond is attached to the Motion and to this Affidavit as **Exhibit "B."**

7.      The Bond for which Hartford's final liability has not been discharged (the "Bonded Contract") is described in the chart below.

| Obligee | Bond Number | Project |
|---------|-------------|---------|
| Miami-Dade County | 21BCSFZ7956 | Affordable Housing and Home Ownership in District 11 – Gran Via Apartments, ISD Project No. Z000107 (the "Project") |

8.      Pursuant to the Indemnity Agreement, the Defendants not only have a duty to indemnify Hartford for losses incurred in connection with the bonds issued on their behalf but also,

have a duty to exonerate Hartford *before* it actually incurs losses.  The Defendants, upon Hartford's demand, must deposit collateral security in an amount that Hartford determines is necessary to protect it from losses or expenses.

9.      Since the issuance of the Bond, the obligee on the Bond for the Project has asserted a claim against Siltek, Inc. and Hartford in Miami-Dade County Circuit Court, which has been referred to Arbitration.

10.     The obligee's claim against Siltek, Inc. and Hartford is for defective work/materials in the Project's roofing system and seeks approximately $618,558.00 to replace the roof and reimburse for out-of-pocket mitigation work.

11.     The obligee's claim against Hartford requests that Hartford either correct the defects on the Project or provide payment to the County under the Bond in the amount of $618,558.00, plus attorney's fees, interest and costs. A copy of Miami-Dade County's Complaint and Amended Demand for Arbitration is attached to the Motion and to this Affidavit as **Composite Exhibit "C."**

12.     Hartford anticipates further exposure on this Project based on change order work and/or additional mitigation efforts undertaken by the County.  Hartford has further incurred attorney's fees, costs and expenses in investigating the claim under the Bond.

13.     As a result of these potential liabilities, on June 21, 2017, and again on November 5, 2020, Hartford demanded that Indemnitors deposit collateral with Hartford in the amount of $850,000.00.  A copy of the November 5, 2020 Demand Letter is attached to the Motion and to this Affidavit as **Exhibit "D."**

14.     The Defendants have failed or refused to comply with Hartford's demands and their contractual obligations under the Indemnity Agreement.

15.     To date, Defendants have not deposited the collateral security.

16.     As of the date of filing the Motion, Hartford has incurred losses yet to be determined, but estimated at no less than $850,000.00 under the Bonded Contract, including but not limited to the above-described claims.

17.     Hartford will also continue to incur damages in defending such claims and in enforcing its rights against the Defendants.

**FURTHER THE AFFIANT SAYETH NOT.**

STATE OF CONNECTICUT           )
                               ) ss. East Hartford, CT
COUNTY OF HARTFORD             )

*Maribel Luzunaris*
**MARIBEL LUZUNARIS**

Ms. Luzunaris, as Senior Bond Claims Representative for Hartford Casualty Insurance Company, who is personally known to me, personally appeared before me, and executed the foregoing and testified as set forth herein on this __25___ day of __June_____ 2021.

Witness my hand and official seal:

TRACEY L. ALFANO
Notary Public, State of Connecticut
My Commission Expires Jul. 31, 2025

Signature of Notary Public

My Printed Commissioned Name

# General Indemnity Agreement



The Indemnitors have requested or may request Hartford to furnish, procure, assume or continue Bonds on behalf of any one or more of the Indemnitors. The Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration for the furnishing, procuring, assuming or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following:

1. **Definitions.** For purposes of this Agreement, the terms below shall be defined as follows:

    (a) "Agreement" shall mean this General Indemnity Agreement.

    (b) "Bonds" shall be any and all contracts of suretyship, guarantees, obligations and undertakings issued in accordance with this Agreement.

    (c) "Indemnitors" include the following persons or entities, and their respective successors, assigns, co-venturers, parents, affiliates, divisions and subsidiaries, whether now existing or hereafter acquired or created.

| Indemnitor's Name | Address | Tax ID / Social Security Number |
|---|---|---|
| Siltek Affordable Housing, LLC | 1232 North University Drive, Suite 101, Plantation, FL 33322 | 4278 |
| Siltek Group, Inc. | 1232 North University Drive, Suite 101, Plantation, FL 33322 | 9833 |
| Rene A. Sierra | 4403 Dogwood Circle, Weston, FL 33331 | -1659 |
| Ana Silveira-Sierra | 4403 Dogwood Circle, Weston, FL 33331 | -3277 |
| Gonzalo DeRamon | 1040 NW North River Dr., Miami, FL 33136 | -6529 |
| Mayte DeRamon | 1040 NW North River Dr., Miami, FL 33136 | -8171 |
| Michael C. Cox | 828 NW 9th Avenue, Miami, FL 33136 | -4956 |
| Shana Kristie Cox | 828 NW 9th Avenue, Miami, FL 33136 | -5079 |

(d) "Event of Default" shall include (i) an Indemnitor's abandonment, forfeiture or breach of, or failure, refusal or inability to perform, a contract guaranteed by any Bond; (ii) an Indemnitor's failure, refusal or inability to pay any bill or satisfy any debt incurred in connection with the performance of any obligation guaranteed by any Bond; (iii) an Indemnitor's failure, refusal or inability to satisfy any condition of any Bond or to comply with any term or provision of this Agreement; (iv) any assignment by the Principal for the benefit of creditors, or the appointment, or an application by the Principal for the appointment, of a receiver or trustee for the Principal or its property, whether insolvent, or not, or an application by the Principal for reorganization or arrangement under the terms of the United States Bankruptcy Code or any similar laws of any state, possession or territory of the United States, or if proceedings for the appointment of a receiver or trustee for liquidation or for the reorganization or

arrangement of the Principal shall be initiated by other persons, the continuance of those proceedings for a period of thirty days; (v) the commencement or continuation of any proceeding which deprives the Principal of, or interferes with, his use of any of the supplies, tools, plant, machinery, equipment or materials in, on or around the site of, or the work under the contract covered by any Bond; and/or (vi) if the Principal is an individual, the Principal's death, abscondment, disappearance, incompetence, conviction of a felony or imprisonment, and if the Principal is any other entity, any change or threat of change in the character, identity, control, management, beneficial ownership or existence of the Principal.

(e)   "Principal" shall mean a person or entity in whose name a Bond is issued pursuant to the terms of this Agreement.

(f)   "UCC" shall mean the Uniform Commercial Code in the form in which it has been adopted in the relevant state.

(g)   "Hartford" shall be, individually or collectively, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of their insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-sureties or reinsurers.

2.   **Application of Agreement.**   This Agreement applies to all Bonds executed by Hartford, whether prior to, simultaneous with, or subsequent to the date of execution of this Agreement; (1) on behalf of any Indemnitor solely or as a member of a partnership, joint venture, or any other business entity or common enterprise, and/or; (2) in connection with contracts for which any Indemnitor acts as a silent participant, and/or; (3) at the request or on behalf of any of the Indemnitors, and/or; (4) for or at the request of any present or future parent, affiliate or subsidiary of such Indemnitor or Indemnitors, and/or; (5) for any third party at the request of Indemnitors and/or their parents, subsidiaries and affiliates. If Hartford procures the execution of Bonds by other sureties, executes Bonds with co-sureties, or procures reinsurance, the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

3.   **Premium.**   Indemnitors hereby agree to pay all premiums, when due, for each Bond issued hereunder, so long as any liability of Hartford shall continue under such Bonds, and until Hartford is furnished with evidence satisfactory to Hartford, in its sole discretion, that it has been discharged or released from all such liability.

4.   **Declination of Bonds.**   Hartford has the right to decline to execute any Bond, including a bid bond, without incurring any liability to any Indemnitor for any reason whatsoever and without affecting the Indemnitors' obligations to Hartford. Hartford's right to decline Bonds includes final Bonds following a contract award for which Hartford executed a bid or proposal bond, a bid letter, a consent of surety, or an agreement of surety. Such declination shall not affect, diminish, or alter the liability of the Indemnitors with respect to said bid or proposal bond.

5.   **Indemnity and Exoneration.**   The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, (3) in enforcing any of the provisions of this Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond. Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of actions.

6.   **Collateral Security.**   On Hartford's demand, the Indemnitors shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not Hartford has made any payment or created any reserve. Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or Bonded contract funds which Indemnitors diverted in violation of Paragraph 11 of this Agreement and/or to establish a trust account in accordance with Paragraph 11. Hartford may use these sums, or any part thereof, to pay such claim or to hold as collateral security against any loss, claim, liability or unpaid premium on any Bond for which the Indemnitors may be obligated to indemnify Hartford under the terms of this Agreement. Hartford shall have no duty to invest, or to provide interest on, any such deposit. Hartford may sell property assigned to or deposited with it without incurring any liability. The sale may be public or private and with or without notice of the time or place thereof. The Indemnitors shall be entitled to the refund of any unused portion of the collateral security upon termination of Hartford's liability on all Bonds and the

performance by the Indemnitors of all their obligations to Hartford hereunder. The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law. Therefore, the Indemnitors agree that Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

7. **Claim Settlement**. Hartford has the right to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement. The Indemnitors shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) they were necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability. Copies of checks or other evidence of such payments, including records of any nature maintained by Hartford in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford. Furthermore, any Indemnitor shall immediately notify Hartford in writing of any demand, notice, suit, action or proceeding relating to any Bond. Furthermore, Hartford is hereby authorized and empowered to advance money or to guarantee loans to the Principal that Hartford may deem prudent to advance to said Principal for the purpose of any bonded contract; and all such loaned or advanced monies, together with all costs, attorneys' fees and expenses incurred by Hartford in relation thereto, unless repaid when due, shall be conclusively presumed to be a Loss hereunder for which each of the Indemnitors shall be responsible. The Indemnitors hereby expressly waive notice of any such advance or loan, or of any default or any other act giving rise to any claim under any Bond, and waive notice of any and all liability of Hartford under any such Bond or any and all liability on the part of the Indemnitors, such that each Indemnitor shall be and continue to be liable to Hartford hereunder notwithstanding any notice to which the Indemnitors might be or might have been entitled and notwithstanding any defenses which the Indemnitors might have been or might be entitled to make.

8. **Books and Records**. Hartford or its designee shall have access to and the right to make copies of any and all books, records and other documents or information of the Indemnitors during regular business hours or at any other reasonable time until Hartford's liability under all Bonds are terminated. Indemnitors agree to fully cooperate and assist with any such investigation or review of its books and records. Financial institutions, materialmen, suppliers, bond obligees and all other persons and organizations, including suppliers of legal and accounting services, are authorized to furnish Hartford any information requested, including the status and condition of work under any contracts being performed by any Indemnitor and the financial status of such contracts.

9. **Assignment**. All Indemnitors assign, transfer and convey the following to Hartford, effective on the date of issuance of each Bond, or effective on the date of execution of any unbonded contracts, or effective on the date of this Agreement for Bonds or unbonded contracts executed prior to the date hereof, and nothing herein shall limit Hartford's right to claim under any prior assignment:

    (a)   All rights of the Indemnitors in, arising from, or related to Bonds or any bonded or unbonded contracts and any extensions, modifications, alterations or additions thereto, including but not limited to any and all sums due or which may become due under any contract including but not limited to progress payments, retainage, retainage accounts, compensation for extra work, deferred payments, refunds, premiums and any and all commercial tort claims; and

    (b)   All right, title and interest of the Indemnitors in and to, (1) the work performed; (2) all supplies, tools, plant, machinery, equipment and materials on or near work sites or elsewhere; (3) all materials purchased for or chargeable to the contract which may be in the process of manufacture, construction or transportation, or in storage anywhere; (4) subcontracts, purchase orders, patent rights, copyrights, trademarks, and any and all bond claims; (5) materials, supplies and inventory; (6) design documents, records, drawings, licenses, plans; and

    (c)   All rights arising out of insurance policies; and

    (d)   Any and all accounts receivable, chattel paper, documents of title, intangibles, choses in action, and bills of lading held by the Indemnitors or in which the Indemnitors have an interest.

GIAPERF_APP4684_LONG_090105 R1

10. **Default**.  Upon the occurrence of an "Event of Default", indemnitors authorize and agree that Hartford may in its sole discretion and to the extent it deems appropriate, but is not obligated to take any or all of the following actions:

(a)   Assert, perfect, use and pursue all the assigned, transferred or conveyed rights, actions, causes of action, contracts, subcontracts, purchase orders, patent rights, copy rights and trademarks, plans, drawings, specifications and contract documents, claims and/or demands;

(b)   Take possession of all or any part of the work under any or all contracts to which any Bond applies;

(c)   Take possession of all tools, plant, machinery, equipment, office equipment, books, records, hardware, software, materials, supplies, inventory, design documents, records, drawings, plans, work in process, completed assemblies and use, consume, or apply to the performance of any contract or defense of any claim to which any Bond applies;

(d)   Execute any document in the name of the Principal necessary to effectuate the purposes and terms of this Agreement or enforce any common law right;

(e)   Take such other action and enforce such other rights whether granted in this Agreement, or by common law.

11. **Trust Fund**.  If a Bond is executed in connection with the performance of any contract, the entire contract price shall be dedicated to the satisfaction of the conditions of that bonded contract.  All money paid, or any securities, warrants, checks or evidences of debt, plus any proceeds thereof, given under that bonded contract shall be impressed with a trust in the hands of the Indemnitors in favor of Hartford for the purpose of satisfying the conditions of that bonded contract and shall be used for no other purpose until such conditions have been fully satisfied.  On demand, Indemnitors shall establish a trust account with a bank, acceptable to Hartford, and shall thereafter deposit all monies from said bonded contracts into said trust account.  The trust account shall be a restricted account requiring the signature of an authorized representative of Hartford on all checks drawn against said account.  Such trust shall not terminate until the Indemnitors' obligations under all Bonds issued hereunder and under this Agreement have been fully discharged to Hartford's satisfaction.

12. **Attorney-In-Fact**.  The Indemnitors irrevocably constitute, appoint and designate Hartford as their attorney-in-fact with the right, but not the obligation, to exercise all rights of the Indemnitors assigned to Hartford, and, in the name of the Indemnitors, to execute and deliver any other assignments or documents deemed necessary by Hartford to effectuate and exercise the rights given it under this Agreement including, but not limited to, the right to endorse the name of any Indemnitor upon any securities, checks, drafts or evidences of debt.  The Indemnitors hereby ratify and confirm all acts and actions taken by Hartford as such attorney-in-fact.

13. **Termination**.  This is a continuous Agreement which remains in full force and effect as to every Bond issued hereunder.  However, participation in this Agreement by any Indemnitor may be terminated as to future Bonds only by written notice to the Hartford, effective on the date of written acceptance thereof by Hartford.  Such termination shall not relieve any Indemnitor from liability assumed prior to such termination, nor shall it affect the liability of any other Indemnitor.  Said termination notice shall be sent by certified or registered mail to: Bond Department, The Hartford, Hartford Plaza T-4, Hartford, Connecticut 06115, such notice shall only be effective upon written acceptance by an authorized employee of Hartford.

14. **Cumulative, Joint and Several Obligations**.  Hartford's rights under this Agreement are cumulative with, and in addition to all other rights of Hartford, however derived.  Therefore, this Agreement is in addition to and not in lieu of any other agreements entered into between the parties hereto, unless expressly agreed to otherwise in a written agreement executed by Hartford.  The execution of subsequent agreements does not supersede this Agreement, unless expressly stated otherwise in writing executed by Hartford.  Because the Indemnitors are jointly and severally liable, Hartford is not required to enforce or exhaust its rights or remedies against any one Indemnitor before asserting its rights against any other Indemnitor, or to assert claims against the Indemnitors equally.

15. **Representations**.  The Indemnitors have a substantial, material and beneficial interest (a) in each of the other Indemnitors obtaining Bonds hereunder; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement.  The Indemnitors have the full power and authority to execute,

GIAPERF_APP4684_LONG_090105 R1

deliver and perform this Agreement and to carry out the obligations stated herein. The Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default hereunder.

16. **Security Interest**. This Agreement constitutes a Security Agreement to or with Hartford and also a Financing Statement enforceable in accordance with the provisions of the UCC now or hereafter in force in any jurisdiction. The Indemnitors hereby consent to Hartford perfecting its rights hereunder as it deems necessary or prudent without providing Indemnitors with any further notice and without seeking any additional consent from the Indemnitors. Hartford may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the UCC, and the Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties and other places as Hartford shall deem necessary or prudent.

17. **Notice**. Hartford, without notice to the Indemnitors and despite any increase in their liability, may agree to either (a) changes in Bonds or bonded contracts or the plans or specifications relating to them, or (b) the addition of Indemnitors to this Agreement. Furthermore, Indemnitors expressly waive notice of the following notwithstanding any defenses they otherwise may have been able to assert: (a) The execution of any Bonds or the refusal to execute any Bonds; (b) Defaults under contracts or any acts which might result either in claims or in liabilities of Hartford under any Bonds; and (c) Any act, fact, or information concerning or affecting the rights or liabilities of Hartford or any Indemnitor.

18. **Miscellaneous**. If for any reason this Agreement is invalid as to any Indemnitor, or if any Indemnitor's liability under this Agreement is terminated, with or without notice, the remaining Indemnitors shall nevertheless be liable for the full amount of liability, losses and expenses that Hartford may sustain or incur. For the purpose of enforcing or recording this Agreement, an authenticated true photocopy or facsimile copy hereof shall be regarded as an original. The terms and conditions of this Agreement can only be modified by a written addendum to this Agreement executed by an authorized employee of Hartford. Furthermore, Indemnitors waive any and all notice in connection with the execution of any and all addenda hereto, including but not limited to the addition of new indemnitors, a conditional waiver of indemnity from specified Indemnitors and an agreement to exclude certain assets from an indemnitor's liability hereunder. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto. The Indemnitors each hereby waive trial by jury in any action or proceeding to which any or all of the indemnitors may be a party arising out of or relating in any way to this agreement. If any provision or provisions of this agreement are invalid, all other provisions of the agreement shall be construed and enforced with the same effect as if the invalid provision was omitted.

19. **Credit Reports**. Indemnitors hereby expressly authorize Hartford to access their credit reports and to make such pertinent inquiries as may be necessary from third party sources for the following purposes: (a) To verify information supplied to Hartford; (b) for underwriting purposes; and (c) upon receipt of a notice of claim or potential claim under any Bond, for debt collection.

20. **Special Provisions**. Not Applicable.

GIAPERF_APP4684_LONG_090105 R1

The Indemnitors have read and understand this Agreement. Indemnitors acknowledge that including signature pages but not including acknowledgment pages this is a 9 page document containing 20 numbered paragraphs. No separate agreements or understandings, except other indemnity agreements, change the terms of this Agreement except those specifically executed by an authorized employee of Hartford in writing, and no terms may be waived or changed without the express written approval of an authorized employee of Hartford.

Dated and effective this ___10___ day of ___DECEMBER___, 20__09__

> **NOTE:** *Corporate indemnity signatures must be by corporate officers empowered to sign. Witness signatures must be by persons not a party to, or a relative of a party to, this Agreement.*

<table>
<tr><td align="center">WITNESSES</td><td align="center">INDEMNITORS</td></tr>
<tr><td></td><td>Siltek Affordable Housing, LLC</td></tr>
<tr><td>Witness: _____<br>{signatory name}</td><td>By: _____ (Seal)<br>Rene A. Sierra, Manager</td></tr>
<tr><td></td><td>Siltek Group, Inc.</td></tr>
<tr><td>Witness: _____<br>{signatory name}</td><td>By: _____ (Seal)<br>Ana Silveira-Sierra, President</td></tr>
<tr><td></td><td>Rene A. Sierra</td></tr>
<tr><td>Witness: _____</td><td>By: _____ (Seal)<br>Rene A. Sierra, Individual</td></tr>
<tr><td></td><td>Ana Silveira-Sierra</td></tr>
<tr><td>Witness: _____</td><td>By: _____ (Seal)<br>Ana Silveira-Sierra, Individual</td></tr>
<tr><td></td><td>Gonzalo DeRamon</td></tr>
<tr><td>Witness: _____</td><td>By: _____ (Seal)<br>Gonzalo DeRamon, Individual</td></tr>
<tr><td></td><td>Mayte DeRamon</td></tr>
<tr><td>Witness: _____</td><td>By: _____ (Seal)<br>Mayte DeRamon, Individual</td></tr>
</table>

GIAPERF_APP4684_LONG_090105 R1

Witness: _____

Michael C. Cox

By: _____ (Seal)
Michael C. Cox, Individual

Witness: _____

Shana Kristie Cox

By: _____ (Seal)
Shana Kristie Cox, Individual

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

GIAPERF_APP4684_LONG_090105 R1

**(Seal)**

Witness: _____     *By:* _____

**(Seal)**

Witness: _____     *By:* _____

**(Seal)**

Witness: _____     *By:* _____

**(Seal)**

Witness: _____     *By:* _____

**(Seal)**

Witness: _____     *By:* _____

**(Seal)**

Witness: _____     *By:* _____

**(Seal)**

Witness: _____     *By:* _____

GIAPERF_APP4684_LONG_090105 R1

Witness: _____          By: _____ (Seal)


Witness: _____          By: _____ (Seal)


Witness: _____          By: _____ (Seal)


Witness: _____          By: _____ (Seal)

# ACKNOWLEDGMENT

**NOTE:** Persons signing in more than one capacity (i.e. president and as individual) must be acknowledged for each capacity.

---

State of    **Florida**
County of   **Broward**       }SS

On the **10** day of **DEC** 20**09** Before me, **Sylvia D. Romans**, personally appeared
(name of notary public)

**Rene A. Sierra, Manager of Siltek Affordable Housing, LLC** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
Notary Public (signature)

3/25/2011
**(Commission Expiration Date and Seal/Stamp)**

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

---------------------------**OPTIONAL**---------------------------
☐ Individual    ☐ Corporate Officer    ☐ Attorney-in-Fact    ☐ Partner – Limited    ☐ Partner – General
     ☐ Trustee    ☐ Guardian or Conservator    ☐ Titles(s): _____    ☐ Other: _____

---

State of    **Florida**
County of   **Broward**       }SS

On the **10** day of **DEC** 20**09** Before me, **Sylvia D. Romans**, personally appeared
(name of notary public)

**Ana Silveira-Sierra, President of Siltek Group, Inc.** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
Notary Public (signature)

3/25/2011
**(Commission Expiration Date and Seal/Stamp)**

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

---------------------------**OPTIONAL**---------------------------
☐ Individual    ☐ Corporate Officer    ☐ Attorney-in-Fact    ☐ Partner – Limited    ☐ Partner – General
     ☐ Trustee    ☐ Guardian or Conservator    ☐ Titles(s): _____    ☐ Other: _____

---

State of    **Florida**
County of   **Broward**       }SS

On the **10** day of **DEC** 20**09** Before me, **Sylvia D. Romans**, personally appeared
(name of notary public)

**Rene A. Sierra, Individual** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
Notary Public (signature)

3/25/2011
**(Commission Expiration Date and Seal/Stamp)**

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

---------------------------**OPTIONAL**---------------------------
☐ Individual    ☐ Corporate Officer    ☐ Attorney-in-Fact    ☐ Partner – Limited    ☐ Partner – General
     ☐ Trustee    ☐ Guardian or Conservator    ☐ Titles(s): _____    ☐ Other: _____

CONACK_052507 R1

# ACKNOWLEDGMENT

**NOTE:** Persons signing in more than one capacity (i.e. president and as individual) must be acknowledged for each capacity.

---

*State of* **Florida**
*County of* **Broward**  }SS

On the **10** day of **DEC** 20**09** Before me, _Sylvia D Romans_ personally appeared
(name of notary public)

**Ana Silveira-Sierra, Individual** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies). and that by his/her/their signature(s) on the instrument the person(s). or the entity upon behalf of which the person(s) acted, executed the instrument.

_Sylvia D Romans_
*Notary Public (signature)*

3/25/2011

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961

*(Commission Expiration Date and Seal/Stamp)*

------- **OPTIONAL** -------

☐ Individual   ☐ Corporate Officer   ☐ Attorney-in-Fact   ☐ Partner – Limited   ☐ Partner – General
☐ Trustee   ☐ Guardian or Conservator   ☐ Titles(s): ___   ☐ Other: ___

---

*State of* **Florida**
*County of* **Miami Dade**  }SS

On the **10** day of **DEC** 20**09** Before me, _Sylvia D Romans_, personally appeared
(name of notary public)

**Gonzalo DeRamon, Individual** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies). and that by his/her/their signature(s) on the instrument the person(s). or the entity upon behalf of which the person(s) acted. executed the instrument.

_Sylvia D Romans_
*Notary Public (signature)*

3/25/2011

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961

*(Commission Expiration Date and Seal/Stamp)*

------- **OPTIONAL** -------

☐ Individual   ☐ Corporate Officer   ☐ Attorney-in-Fact   ☐ Partner – Limited   ☐ Partner – General
☐ Trustee   ☐ Guardian or Conservator   ☐ Titles(s): ___   ☐ Other: ___

---

*State of* **Florida**
*County of* **Miami Dade**  }SS

On the **10** day of **DEC** 20**09** Before me, _Sylvia D Romans_, personally appeared
(name of notary public)

**Mayte DeRamon, Individual** ☐ Personally known to me –OR– ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies). and that by his/her/their signature(s) on the instrument the person(s). or the entity upon behalf of which the person(s) acted. executed the instrument.

_Sylvia D Romans_
*Notary Public (signature)*

3/25/2011

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961

*(Commission Expiration Date and Seal/Stamp)*

------- **OPTIONAL** -------

☐ Individual   ☐ Corporate Officer   ☐ Attorney-in-Fact   ☐ Partner – Limited   ☐ Partner – General
☐ Trustee   ☐ Guardian or Conservator   ☐ Titles(s): ___   ☐ Other: ___

CONACK_052507 R1

# ACKNOWLEDGMENT

**NOTE:** Persons signing in more than one capacity (i.e. president and as individual) must be acknowledged for each capacity.

---

State of **Florida**
County of **Miami Dade**            } SS

On the **10** day of **Dec**, 20 **09**, Before me, _Sylvia D. Romans_, personally appeared
*(name of notary public)*

**Michael C. Cox, Individual** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
*Notary Public (signature)*

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

**3/25/2011**
*(Commission Expiration Date and Seal/Stamp)*

- - - - - - - - - - - - - - - - - - - - **OPTIONAL** - - - - - - - - - - - - - - - - - -
☐ Individual     ☐ Corporate Officer     ☐ Attorney-in-Fact     ☐ Partner – Limited     ☐ Partner – General
☐ Trustee     ☐ Guardian or Conservator     ☐ Titles(s): _____     ☐ Other: _____

---

State of **Florida**
County of **Miami Dade**            } SS

On the **10** day of **Dec**, 20 **09**, Before me, _Sylvia D. Romans_, personally appeared
*(name of notary public)*

**Shana Kristie Cox, Individual** ☐ Personally known to me –OR– ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
*Notary Public (signature)*

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

**3/25/2011**
*(Commission Expiration Date and Seal/Stamp)*

- - - - - - - - - - - - - - - - - - - - **OPTIONAL** - - - - - - - - - - - - - - - - - -
☐ Individual     ☐ Corporate Officer     ☐ Attorney-in-Fact     ☐ Partner – Limited     ☐ Partner – General
☐ Trustee     ☐ Guardian or Conservator     ☐ Titles(s): _____     ☐ Other: _____

---

State of _____
County of _____            } SS

On the _____ day of _____, 20 ___, Before me, _____, personally appeared
*(name of notary public)*

_____ ☐ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_____
*Notary Public (signature)*

_____
*(Commission Expiration Date and Seal/Stamp)*

- - - - - - - - - - - - - - - - - - - - **OPTIONAL** - - - - - - - - - - - - - - - - - -
☐ Individual     ☐ Corporate Officer     ☐ Attorney-in-Fact     ☐ Partner – Limited     ☐ Partner – General
☐ Trustee     ☐ Guardian or Conservator     ☐ Titles(s): _____     ☐ Other: _____

CONACK_052507 R1

**CERTIFIED COPY OF RESOLUTION**
For Transmittal to
**HARTFORD FIRE INSURANCE COMPANY**



THE
HARTFORD

At a regular/special meeting of the Board of Directors or Members of Limited Liability Company of **Siltek Group, Inc.** hereinafter "Company") duly called and held on the __10__ day of ___December___, **2009**, a quorum being present, the following Resolution was adopted:

WHEREAS, this company is materially interested in the transaction(s) in which **Siltek Affordable Housing, LLC** has applied or will apply to HARTFORD FIRE INSURANCE COMPANY, Hartford Plaza, Hartford, Connecticut 06115 or its affiliates, parent or subsidiaries, individually and collectively called "HARTFORD", for bond(s) or undertaking(s), guarantees, or other instruments of suretyship, hereinafter referred to as "Bonds"; and

WHEREAS, HARTFORD has executed or is willing to consider the execution of such Bond(s) or undertaking(s), as surety upon being furnished with the written indemnity of this Company;

THEREFORE BE IT RESOLVED, THAT **Ana Silveira-Sierra, President (Siltek Group, Inc.)** of this Company be and hereby is (are) authorized to execute on behalf of this Company, any agreement or agreements of indemnity required by HARTFORD as consideration for the execution by it of Bonds for **Siltek Affordable Housing, LLC** or any joint venture or common enterprise in which it is a member or any present or future affiliate or subsidiary of **Siltek Affordable Housing, LLC** in connection with the matter(s) and transaction(s) described in the agreement of indemnity required by HARTFORD, and the proper attesting officer of this Company be and hereby is authorized to affix the corporate seal to such agreements or agreements of indemnity and subscribe his/her name thereto, attesting the same.

FURTHER, if any agreement or agreements of indemnity as described herein have been executed by **Ana Silveira-Sierra, President (Siltek Group, Inc.)**, or any individuals on behalf of this Company, then previous execution of said agreement or agreements of indemnity on behalf of this Company in connection with said Bonds is hereby ratified and approved.

I, _ANA SILVEIRA-SIERRA_ Secretary or Member of **Siltek Group, Inc.,** having compared the foregoing Resolution with the original thereof, as recorded in the Minute Book of said Company, do certify that the same is a correct and true transcript therefrom and of the whole of said original Resolution.

Given under my hand and seal of the Company in the City of _Plantation_ State of _Florida_ this _10_ day of _December_, 2009.

| | |
|---|---|
| Secretary or Member | Secretary or Member |
| Secretary or Member | Secretary or Member |
| Secretary or Member | Secretary or Member |
| Secretary or Member | Secretary or Member |

RECEIVED
AUG 2 4 2010
BUC

CERTRES_092806



**NIELSON, ALTER & ASSOCIATES**

December 21, 2009

Mrs. Dana Suggs
The Hartford
400 International Parkway, #425
Heathrow, Florida  32746

RE:   Siltek Affordable Housing, LLC
      General Indemnity Agreement

Dear Dana:

Enclosed please find the properly executed General Indemnity Agreement for
Siltek Affordable Housing, LLC for your files.

Thanks for all your help.

Best regards,

Gloria L. McClure, CCSR
Account Executive

/glm

Enclosure

8000 Governors Square Boulevard
Suite 101
Miami Lakes, FL 33016
P: 305.722.2663
F: 305.558.9650
www.nielsonbonds.com

*Nielson, Hoover & Associates*
Bond Department

Public Works Bond
In compliance with Florida Statutes 255.05(1)(a)

| | |
|---|---|
| **Bond No.** | **21BCSFZ7956** |
| **Contractor** | **Siltek Group, Inc.** |
| **Address** | 1232 North University Drive, Suite 101<br>Plantation, FL 33322 |
| **Phone No.** | (954) 370-1368 |
| **Surety Company** | **Hartford Casualty Insurance Company** |
| **Address** | One Hartford Plaza<br>Hartford Connecticut 06155 |
| **Phone No.** | **(**860**)** 547-5000 |
| **Owner Name** | **Miami-Dade County** |
| **Address** | 111 N.W. 1st Street<br>Miami, FL 33128 |
| **Phone Number** | **(305) 375-5071** |
| **Contract/Project No.** | **Z000107** |
| **Project Name** | ***Construction of Affordable Housing and Home Ownership in District 11 – Gran Via Apartments*** |
| **Project Location** | Miami, FL |
| **Legal Description and/or Street Address** | SW 127th Avenue and SW 8th Street, Miami, FL 33184 |
| **Description of Work** | Construction |

Front Page
All other bond page(s) are deemed subsequent to this page regardless
of any page number(s) that may be preprinted thereon.

EXHIBIT "B"

RECEIVED

JUN 14 2012

RISK MANAGEMENT
DIVISION

Bond No. 21BCSFZ7956

# CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS ISD CONTRACT NO. Z000107

## SECTION 00615 - SURETY PERFORMANCE AND PAYMENT BOND

By this Bond, We ___SILTEK GROUP, INC.___ as Principal, whose principal business address is ___1232 North University Drive, Suite 101, Plantation, FL 33322___, as Contractor under the contract dated _____, 20___, between Principal and Miami-Dade County for the construction of Affordable Housing and Hole Ownership in District 11 - Gran Via Apartments, ISD Project No. Z000107 (herein after referred to as "Contract"), the terms of which Contract are incorporated by reference in its entirety into this Bond, and ___Hartford Casualty Insurance Company___, a corporation, whose principal business address is ___One Hartford Plaza, Hartford, CT 06183___ as Surety, are bound to Miami-Dade County (hereinafter referred to as "County") in the sum of ___Nine Million Seven Hundred Twenty Thousand Nine Hundred Fifty___ U.S. dollars ($ _9,720,950.00_ ), for payment of which we bind ourselves, our heirs, personal representatives, successors, and assigns, jointly and severally.

THE CONDITION OF THIS BOND is that if Principal:

1. Performs all the work under the Contract, including but not limited to guarantees, warranties and the curing of latent defects, said Contract being made a part of this bond by reference, and in the times and in the manner prescribed in the Contract, including any and all damages for delay; and

2. Promptly makes payments to all claimants, as defined in Section 255.05(1), Florida Statutes, supplying Principal with labor, materials, or supplies, used directly or indirectly by Principal in the prosecution of the work provided for in the contract; and

3. Pays County all losses, damages, including damages for delay, expenses, costs and attorney's fees, including appellate proceedings, that County sustains because of a default by Principal under the Contract, including but not limited to a failure to honor all guarantees and warranties or to cure latent defects in its work or materials within five (5) years after completion of the work under the Contract; and

4. Performs the guarantee of all work and materials furnished under the contract for the time specified in the Contract, including all warranties and curing all latent defects within five (5) years after completion of the work under the Contract;

Then this bond is void; otherwise it remains in full force.

If no specific periods of warranty are stated in the Contract for any particular item or work, material or equipment, the warranty shall be deemed to be a period of one (1) year from the date of final acceptance by the County. This Bond does not limit the County's ability to pursue suits directly with the Principal seeking damages for latent defects in materials or workmanship, such actions being subject to the limitations found in Section 95.11(3)(c), Florida Statutes.

Any changes in or under the Contract Documents and compliance or noncompliance with any formalities connected with the Contract or the changes does not affect Surety's obligation under this Bond.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 1 of 2
Prepared by CAS/DCSD
Revised 10/1/11

This bond is given to comply with section 255.05 Florida Statutes, and any action instituted by a claimant under this bond for payment must be in accordance with the notice and time limitation provisions in Section 255.05(2), Florida Statutes

**IN WITNESS WHEREOF**, the above bounden parties have caused this Bond to be executed by their appropriate officials as of the ____ day of _____, 20___.

ATTEST:
Contractor:

Siltek Group, Inc.
_____
Contractor's Full Name

By:    _RENEA SIERRA_
_____
President, Managing Partner or
Joint Venturer

Siltek Group, Inc.
_____
Legal Name of Contractor

_____
Signature

_____
Corporate Seal

COUNTERSIGNED BY RESIDENT FLORIDA
AGENT OF SURETY:

_Charles D. Nielson_

(Copy of Agent's current Identification Card as
issued by the State of Florida Insurance
Commissioner must be attached)

SURETY:

Hartford Casualty Insurance Company
_____

By:   _Charles D. Nielson_
_____
Attorney-In-Fact  Charles D. Nielson

BOND APPROVED AS TO
INSURANCE REQUIREMENTS
_Rose Howie_
RISK MANAGEMENTS DIVISON
DATE:__01 06 12__

_____
Corporate Seal (Power of Attorney
must be attached)

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 2 of 2
Prepared by CAS/DCSD
Revised 10/1/11

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

MIIAMI-DADE COUNTY,                                    GENERAL JURISDICTION DIVISION

      Plaintiff,                                        CASE NO.:

v.

SILTEK GROUP, INC., HARTFORD
CASUALTY INSURANCE COMPANY,

      Defendants.

_____

## **COMPLAINT**

Plaintiff Miami-Dade County (the "County") sues Defendants Siltek Group, Inc. ("Siltek") and Hartford Casualty Insurance Company ("Hartford") for damages stemming from defective construction of Gran Via Apartments (the "Apartments"), an affordable elderly housing community, located at the intersection of SW 127th Avenue and 8th Street in Miami-Dade County, Florida, and alleges as follows:

## **PARTIES, JURISDICTION, VENUE**

1.      This is an action for damages in excess of $15,000 exclusive of costs, prejudgment interest, and attorneys' fees.

2.      The County is a political subdivision of the state of Florida.

3.      Siltek is a Florida corporation, doing business in Miami-Dade County, Florida, whose principal address is 5800 SW 178th Ave., Southwest Ranches, Florida 33331.

4.      Hartford is a Connecticut corporation, doing business in Miami-Dade County, Florida, whose principal address is One Hartford Plaza, Hartford, Connecticut, 06155.

**COMP. EXHIBIT "C"**

5.      Venue of this action is proper in Miami-Dade County, Florida, because the actions giving rise to the claims stated here occurred in Miami-Dade County, Florida.

6.      All conditions precedent to bringing this action have occurred, have been waived, or have been excused.

## GENERAL ALLEGATIONS

7.      This case relates to the construction of the Gran Via Apartments, an affordable elderly housing community in Miami-Dade County, Florida (the "Project" or "Apartments").

8.      The County is the owner of the Apartments.

9.      Siltek was the general contractor on the Project.

10.      Siltek and the County's relationship is governed by a contract with ISD Contract No. Z000107 dated on or around June 2012 (the "Contract").   Due to the voluminous nature of the Contract, only relevant portions of the Contract are attached as Exhibit A. The County will produce the entirety of the Contract documents upon request.

11.      The Contract provides, among other things, that "[i]f within five (5) years after the date of final completion of the Project or within such longer period of time as may be prescribed by law, by the Contract, or by the terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be defective or not in accordance with the Contract, the Contractor shall correct it promptly after receipt of a written notice from the County to do so." Exhibit A, Contract at 00110, General Covenants and Conditions, Article 80C & D.

12.     The Contract also provides that, "[u]nless otherwise stated, the warranty shall be for a period of one (1) year commencing with the execution of the Certificate of Final Acceptance, as required by the County. . . . For certain products, such as mechanical equipment, roofing systems, coating systems, etc., the warranty period shall be as stipulated within specifications and the warranty period shall commence from the date the individual equipment or product is put into full productive service." *Id.* at 00110, General Covenants and Conditions, Article 97.

13.     The specifications section of the Contract also provides for a manufacturer's guarantee in the form of a "[s]ingle source NDL (No Dollar Limit) [warranty], without monetary limitation, includ [ing] materials and workmanship to maintain roof in a watertight condition." *Id.* at section 07510, Built-Up Asphalt Roofing System, § 1.10.  The warranty period for the NDL warranty is 20 years from date of completion.  *Id.*

14.     In addition, the Contract provides that, "[i]n addition to the required Manufacturer's twenty (20) year 'No Dollar Limit' warranty for roofing systems, the contractor shall provide a 5-year warranty, in which contractor agrees to repair or replace components of roofing system that fail in materials or workmanship with the specified warranty period.  Failure includes roof leaks. The warranty shall be a term type, with no conditions, exclusions, exclusions of remedies by the County, deductibles or limitations on coverage amount." *Id.*

15.     Siltek obtained a payment and performance bond for the Project from Hartford in the amount of $9,720,950 (the "Bond").  A copy of the Bond is attached as Exhibit B.

16.     Siltek began construction on the Project in August 2012.

17.     At the beginning of the job, Aleluya Roofing, a now defunct company, served as the roofing subcontractor for the Project.

18.     At some point during construction, Solomon Roofing & Construction took over from Aleluya, and completed the roofing system on the Project.

19.     The Project reached substantial completion on or about August 28, 2014.

20.     The Apartments obtained a certificate of occupancy on or about September 13, 2014.

21.     At the time of the obtainment of the certificate of occupancy, the roof of the Apartments did not reveal any defect that could be discovered using ordinary and reasonable care in inspection.

22.     CertainTeed Corporation ("CT") provided the County with a 20 year NDL limited warranty for the Apartment's roofing system (the "Manufacturer's Warranty").  A copy of the Manufacturer's Warranty is attached as Exhibit C.

23.     After construction, the County retained an independent management company, Royal American Management, Inc. ("Royal"), to provide property management services for the Apartments.

24.     On or about January 29, 2016, representatives from the County met with building management for the Apartments and learned of several latent defects in the construction of the Apartments, including water ponding on the roof, and additional cracks having surfaced and re-surfaced (inclusive of cracks repaired by Siltek during construction of the Project) in the walls, ceilings, balconies, and other areas.

25.     On February 12, 2016, the County sent Siltek a letter notifying it of the discovery of latent defects, and offering Siltek the "opportunity to inspect the building for the items in

question and for [Siltek] to . . . make an offer to remedy these items." A copy of the February 12, 2016 letter is attached as Exhibit D. The County sent a copy of the letter to Hartford.

26.     Around the same time the County was communicating with Hartford and Siltek about the latent defects, Royal was reaching out to CT, asking CT to repair the leaks.

27.     In August 2016, CT sent a roofing contractor to the Apartments to repair at least one of the leaks. The roofing contractor, and agent for CT noted that the entire roof needed repairs, and that the roof would continue to deteriorate until the roof was replaced.

28.     After months of the County attempting to schedule an inspection with Siltek to no avail, and the roof defects – and water leaking as a result of the roof defects – simultaneously getting worse, on October 17, 2016, the County sent a notice of latent defect directly to Hartford. A copy of the notice of latent defect sent to Hartford is attached here as Exhibit E. The notice of latent defect to Hartford again identified the deteriorating roof, and also noted that expansion cracks had occurred in locations where expansion joints should have been constructed, but were not.

29.     On or about January 12, 2017, an inspection of the Apartments was conducted with representatives from Siltek, Hartford, Royal, and the County. This was the first time after receiving the notices of latent defect that any representative from Siltek or Hartford inspected the latent defects.

30.     The attendees at the inspection identified specific defects in the construction, including but not limited to, stucco cracks at the north and south elevations at the expansion joint locations, areas of the roof where material was pealing, cracking, and blistering, and areas of the roof where leaks were occurring.

31.     On or about October 19, 2017, another inspection of the Apartments was conducted. This time representatives from Siltek, Hartford, CT, and the County were present.  Among the issues identified were leaks in several apartments, water migrating below the roof and traveling down, water gushing into the women's restroom on the first floor next to the lobby below the lower roof, stucco cracks getting larger, and new water damage to other portions of the roof.

## COUNT I
## BREACH OF CONTRACT
(Against Siltek)

32.     The County incorporates by reference paragraphs 1 through 31 as if fully set forth here.

33.     On or about June 2012, the County and Siltek entered the Contract for the construction of the Apartments.

34.     The Contract provides, among other things, that "[i]f within five (5) years after the date of final completion of the Project or within such longer period of time as may be prescribed by law, by the Contract, or by the terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be defective or not in accordance with the Contract, the Contractor shall correct it promptly after receipt of a written notice from the County to do so." Exhibit A, Contract at 00110, General Covenants and Conditions, Article 80 C & D.

35.     The Contract also provides that the Contractor "shall fully comply with all requirements of applicable codes, regulations and standards whether indicated in the Contract Documents or not[.]" *Id.* at Article 4.

36.     The standards indicated in the specifications of the Contract provide that the Contractor shall "[p]rovide and install new roofing and waterproofing system that does not permit the passage/infiltration of water and remain watertight."  *Id.* at section 07510, Built-Up Asphalt Roofing System, § 1.04A.

37.     Siltek breached its Contract with the County when, among other things, it provided the County with the Apartments containing numerous construction defects, including a roofing system that is not watertight and missing expansion joints in places where they should have been construction, neither of which was known to the County nor apparent by reasonable inspection at the time of completion of the Project.

38.     The County has suffered damages as a result of Siltek's breach.

WHEREFORE, the County demands judgment against Siltek for compensatory damages, an award of prejudgment interest, taxable costs, attorneys' fees, and for any other relief which this Court finds is just and equitable.

## COUNT II
## BREACH OF EXPRESS WARRANTY
(Against Siltek)

39.     The County incorporates by reference paragraphs 1 through 31 as if fully set forth here.

40.     On or about June 2012, the County and Siltek entered the Contract for the construction of the Apartments.

41.     The Contract includes an express warranty from the Contractor to the County for the roofing system.  Specifically, the Contract provides that, "[i]n addition to the required

Manufacturer's twenty (20) year 'No Dollar Limit' warranty for roofing systems, the contractor shall provide a 5-year warranty, in which contractor agrees to repair or replace components of roofing system that fail in materials or workmanship with the specified warranty period.  Failure includes roof leaks.  The warranty shall be a term type, with no conditions, exclusions, exclusions of remedies by the County, deductibles or limitations on coverage amount."  Exhibit A, Contract at section 07510, Built-Up Asphalt Roofing System, § 1.10.

42.     Siltek breached its warranty because, as explained above, the roofing system has been defective and causing leaks since at least 2016, and Siltek has failed to repair or replace components of the roofing system, despite the County's notice to Siltek of such failure.

WHEREFORE, the County demands judgment against Siltek for compensatory damages, an award of prejudgment interest, taxable costs, attorneys' fees, and for any other relief which this Court finds is just and equitable.

## COUNT III
## BREACH OF CONTRACT
(Against Hartford)

43.     The County incorporates by reference paragraphs 1 through 31 as if fully set forth here.

44.     On or about July 6, 2012, Siltek and Hartford entered into the Bond, agreeing that Hartford would be bound to the County in the amount of $9,720,950 for the Project, as long as the Bond's conditions were met.  *See* Exhibit B.

45.     The Bond specifically incorporates the terms of the Contract.  *See id.*

46.     The Bond remains in full force and effect until Siltek performs all work under the Contract, including "the curing of latent defects."

47.     As described above, Siltek defaulted under its Contract with the County when, among other things, it provided the County with the Apartments containing numerous construction defects that were neither known to the County nor apparent by reasonable inspection at the time of completion of the Project.

48.     On or about October 17, 2016, the County notified Hartford of Siltek's breach of contract, *i.e.,* the latent defects at the Apartments, and that Siltek had failed to respond or correct the latent defects, and requesting a response as to what actions Hartford would take to cure the latent defects.

49.     Pursuant to the terms of the Bond, Hartford was required to pay for all losses, damages, expenses, costs, and attorney's fees incurred as a result of Siltek's default.

50.     Hartford has breached the Bond by failing either to correct the latent defects on the Project or to provide payment to the County under the Bond.

51.     As a result of Hartford's breach, the County has suffered damages.

WHEREFORE, the County demands judgment against Hartford for compensatory damages, an award of prejudgment interest, taxable costs, attorneys' fees, and for any other relief which this Court finds is just and equitable.

## **JURY DEMAND**

52. The County demands trial by jury of all issues so triable.

## <u>DESIGNATION OF E-MAIL ADDRESSES</u>

Pursuant to Florida Rule of Judicial Administration 2.516, undersigned counsel hereby designates his/her primary and secondary e-mail addresses for purposes of e-mail service as follows:

| | |
|---|---|
| Primary e-mail address: | angela.benjamin@miamidade.gov |
| Secondary e-mail address: | Jeane.Neal@miamidade.gov |
| | |
| Primary e-mail address: | ewg@miamidade.gov |
| Secondary e-mail address: | kih@miamidade.gov |

**ABIGAIL PRICE-WILLIAMS**
Miami-Dade County Attorney
*Attorney for Plaintiff Miami-Dade County*
Stephen P. Clark Center, Suite 2810
111 Northwest First Street
Miami, Florida 33128-1993

By: /s/ *Angela Benjamin*
_____
    *Angela F. Benjamin*
    Assistant County Attorney
    Florida Bar Number 15914
    *Eduardo Gonzalez*
    Assistant County Attorney
    Florida Bar Number 129607
    Telephone:    (305) 375-5151
    Facsimile:    (305) 375-5634
    Email:   angela.benjamin@miamidade.gov
           Jeane.Neal@miamidade.gov
    Email:  ewg@miamidade.gov
           kih@miamidade.gov

EXHIBIT A

# MIAMI-DADE COUNTY
## INTERNAL SERVICES DEPARTMENT
### DESIGN AND CONSTRUCTION SERVICES DIVISION

## CONSTRUCTION OF AFFORDABLE HOUSING AND
## HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS
### ISD Contract No. Z000107

**CSBE GOAL:      24.00%**                    **BID DUE DATE:   December 16, 2011**
**CWP GOAL:       N/A**

### Project Manual
### Volume 1 of 3
### General Documents - Division 0
### General Requirements - Division 1

**BOARD OF COUNTY COMMISSIONERS**
JOE A. MARTINEZ, CHAIRMAN
AUDREY M. EDMONSON, VICE-CHAIRWOMAN

**INTERNAL SERVICES DEPARTMENT**
LESTER SOLA, DIRECTOR

**DESIGN AND CONSTRUCTION SERVICES DIVISION**
JOSE R. PEREZ, AIA, LEED®AP, DIRECTOR

**ARCHITECT OF RECORD**
**ARCHITECTURE AND ENGINEERING SECTION**
FRANCISCO SUAREZ, R.A., LEED®AP

**CONTRACTING AGENT**
**CONTRACTS ADMINISTRATION SECTION**
FERNANDO V. PONASSI, MA ARCH., LEED®AP, MANAGER

SET NO. _____

# CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS
## ISD Contract No. Z000107



**Carlos A. Gimenez**
**Mayor**

**Board of County Commissioners**
Joe A. Martinez, Chairman
Audrey M. Edmonson, Vice-Chairwoman

| | |
|---|---|
| Barbara J. Jordan | Lynda Bell |
| District 1 | District 8 |
| Jean Monestime | Dennis C. Moss |
| District 2 | District 9 |
| Audrey M. Edmonson | Senator Javier D. Souto |
| District 3 | District 10 |
| Sally A. Heyman | Joe A. Martinez |
| District 4 | District 11 |
| Bruno A. Barreiro | Jose "Pepe" Diaz |
| District 5 | District 12 |
| Rebeca Sosa | Esteban Bovo, Jr. |
| District 6 | District 13 |
| Xavier L. Suarez | |
| District 7 | |

Alina T. Hudak, Deputy Mayor/County Manager

R. A. Cuevas, Jr., County Attorney

**Miami-Dade County Internal Services Department**
Lester Sola, Director

**Design and Construction Services Division**
Jose Perez, AIA, LEED®AP, Director

ARCHITECT OF RECORD
**Architecture and Engineering Section**
Francisco Suarez, R.A., LEED®AP, Senior Architect

CONTRACTING AGENT
**Contracts Administration Section**
Fernando V. Ponassi, MA Arch., LEED®AP, Manager
111 N.W. 1st Street, Suite 2420
Miami, Florida, 33128
Tel (305) 375-3965/Fax (305) 375-1125

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00002 Project Directory - Page 1 of 2
Prepared by CAS/DCSD
Revised 10/1/11

**THIS PAGE INTENTIONALLY LEFT BLANK**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00002 Project Directory - Page 2 of 2
Prepared by CAS/DCSD
Revised 10/1/11

**TABLE OF CONTENTS**

**VOLUME 1**  **GENERAL DOCUMENTS**
**DIVISION 0**  **BIDDING REQUIREMENTS, CONTRACT FORMS AND CONDITIONS OF THE CONTRACT**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 00002 | PROJECT DIRECTORY | 2 |
| 00003 | TABLE OF CONTENTS | 8 |
| 00004 | LIST OF DRAWINGS | 6 |
| 00020 | ADVERTISEMENT | 4 |
| 00100 | INSTRUCTIONS TO PROSPECTIVE CONTRACTOR | 12 |
| 00110 | GENERAL COVENANTS AND CONDITIONS | 50 |
| 00120 | SUPPLEMENTAL GENERAL COVENANTS AND CONDITIONS | 14 |
| 00130 | SPECIAL PROVISIONS | 10 |
| 00140 | CODE AND ORDINANCE REQUIREMENTS | 8 |
| 00150 | BID PROTEST PROCEDURES | 2 |
| 00300 | PROPOSAL FORM | 8 |
| 00410 | BID BOND FORM | 6 |
| 00466 | LISTING OF SUBCONTRACTORS AND SUPPLIERS | 2 |
| 00480 | VENDOR AFFIRMATION AFFIDAVIT | 2 |
| 00481 | COLLUSION AFFIDAVIT | 2 |
| 00482 | EMPLOYMENT AND PROCUREMENT PRACTICES | 2 |
| 00500 | CONSTRUCTION CONTRACT | 6 |
| 00615 | SURETY PERFORMANCE BOND | 2 |

**PROVISIONS AND FORMS RELATED TO THE CONTRACT**

RESPONSIBLE WAGES AND BENEFITS – BUILDING CATEGORY, 2011
http://www.miamidade.gov/sba/library/WR-2011_Building.pdf

SBD COMMUNITY SMALL BUSINESS ENTERPRISE (CSBE) PARTICIPATION PROVISIONS
http://www.miamidade.gov/sba/library/CSBE_Participation_Provisions.pdf

SBD FORM 300 – CSBE MONTHLY UTILIZATION REPORT
http://www.miamidade.gov/sba/library/CSBE_Mur.pdf

SBD FORM 303 – UNAVAILABILITY CERTIFICATE
http://www.miamidade.gov/sba/library/CSBE_Unavailability_Certificate.pdf

SBD FORM 305A – UNAVAILABILITY OF A CSBE DUE TO COMPETITIVENESS
http://www.miamidade.gov/sba/library/CSBE_Competitiveness_Unavailability.pdf

SBD FORM 305B – AVAILABILITY OF NON-CSBEs
http://www.miamidade.gov/sba/library/Intent_schedule_4_non_CSBEs_305b.pdf

SBD FORM 400 – CSBE SCHEDULE OF INTENT
http://www.miamidade.gov/sba/library/CSBE_SOI.pdf

SBD CSBE CERTIFIED FIRMS LIST
http://www.miamidade.gov/sba/library/certify_CSBE_by_firms.pdf

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 1 of 8
Prepared by CAS/DCSD
Revised 10/1/11

## DIVISION 1   GENERAL REQUIREMENTS

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| **01000** | **SUMMARY** | |
| 01010 | Summary of Work | 4 |
| 01225 | Measurement and Payments | 8 |
| 01030 | Bid Alternates | 4 |
| 01040 | Coordination | 4 |
| 01042 | Art in Public Places Coordination | 4 |
| 01045 | Cutting and Patching | 4 |
| 01050 | Field Engineering | 4 |
| 01060 | Information Available to Bidders | 2 |
| | | |
| **01200** | **PRICE AND PAYMENT PROCEDURES** | |
| 01250a | Proposal Request | 2 |
| 01250b | Change to RPQ - DRAFT | 4 |
| 01250f | Architect/Engineer of Record's Supplemental Instructions | 2 |
| 01290 | Payment Procedures | 4 |
| | | |
| **01300** | **ADMINISTRATIVE REQUIREMENTS** | |
| 01310 | Project Management and Coordination | 10 |
| 01320 | Construction Progress Documentation | 14 |
| 01320a | Weekly Progress Report | 2 |
| 01330 | Submittal Procedures | 10 |
| 01340 | Shop Drawings, Product Data, and Samples | 4 |
| 01350 | Special Procedures | 4 |
| 01352 | LEED Requirements | 8 |
| 01352a | LEED NC 3.0 Project Checklist | 2 |
| 01354 | Construction Indoor Air Quality Management… | 8 |
| | | |
| **01400** | **QUALITY REQUIREMENTS** | |
| 01410 | Regulatory Requirements | 4 |
| 01420 | References | 4 |
| 01430 | Quality Assurance | 6 |
| 01450 | Quality Control | 6 |
| | | |
| **01500** | **TEMPORARY FACILITIES & CONTROLS** | |
| 01510 | Temporary Utilities | 8 |
| 01520 | Construction Facilities | 6 |
| 01524 | Construction Waste Management | 6 |
| 01524a | Construction Waste Management Template | 2 |
| 01560 | Temporary Barriers and Enclosures | 10 |
| 01570 | Temporary Controls | 2 |
| | | |
| **01600** | **PRODUCT REQUIREMENTS** | |
| 01610 | Basic Product Requirements | 4 |
| 01620 | Product Options | 4 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 2 of 8
Prepared by CAS/DCSD
Revised 10/1/11

| | | |
|---|---|---|
| 01630 | Product Substitution Procedures | 4 |
| 01630a | Contractor's Substitution Request | 2 |
| 01663 | Product Delivery, Storage, and Handling Requirements | 2 |
| | | |
| **01700** | **EXECUTION REQUIREMENTS** | |
| 01700 | Contract Closeout | 4 |
| 01710 | Examination | 4 |
| 01720 | Preparation | 6 |
| 01730 | Execution | 8 |
| 01735 | Operation and Maintenance Data | 2 |
| 01740 | Cleaning | 4 |
| 01745 | Warranties | 2 |
| 01750 | Starting and Adjusting | 2 |
| 01760 | Protection of Installed Construction | 2 |
| 01770 | Closeout Procedures | 8 |
| 01770a | Contractor's Request for Substantial Completion Inspection | 2 |
| 01770b | Architect/Engineer's Notification of Readiness for Substantial Completion Inspection | 2 |
| 01770c | Substantial Completion Inspection | 2 |
| 01770d | Substantial Completion Inspection Additional | 2 |
| 01770e | A/E's Letter to Establish Substantial Completion Date | 2 |
| 01770f | Contractor's Request for Final Completion Inspection | 2 |
| 01770g | A/E's Notification of Readiness for Final Completion Inspection | 2 |
| 01770h | A/E's Letter of Establishing Final Completion Date | 2 |
| 01780 | Closeout Submittals | 16 |
| | | |
| **01800** | **FACILITY OPERATIONS** | |
| 01810 | Fundamental Commissioning Requirements | 20 |
| 01820 | Demonstration and Training | 2 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 3 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**VOLUME 2   TECHNICAL SPECIFICATIONS**
**DIVISION 2   SITE WORK**

| SECTION | TITLE | PAGES |
|---|---|---|
| 02110 (31 10 00) | Site Clearing | 6 |
| 02200 (31 00 00) | Earthwork | 8 |
| 02220 (31 23 10) | Excavation and Fill for Utility Systems | 8 |
| 02280 (31 31 00) | Soil Treatment | 4 |
| 02500 (00 00 00) | Concrete Unit Pavers | 6 |
| 02510 (32 12 17) | Asphaltic Concrete Paving for Parking and Drives | 6 |
| 02529 (00 00 00) | Concrete Sidewalks, Straight Curbs, Curbs, Gutters & Traffic Sep | 2 |
| 02551 (34 41 05) | Maintenance of Traffic | 2 |
| 02580 (32 17 23) | Pavement Marking & Raised Retro-Reflective Pavement Markers | 4 |
| 02586 (33 71 49.23) | Exterior Electrical Work Underground | 4 |
| 02605 (33 05 13) | Precast Manholes | 4 |
| 02660 (33 10 00) | Water Distribution | 8 |
| 02720 (33 40 00) | Storm Drainage | 8 |
| 02730 (33 30 00) | Sanitary Sewer Distribution System | 8 |
| 02810 (00 00 00) | Irrigation System | 22 |
| 02826 (32 31 16) | Welded Wire Fences | 4 |
| 02830 (32 31 13) | Chain Link Fences | 6 |
| 02848 (32 17 13) | Wheel Stop | 2 |
| 02870 (00 00 00) | Site Furnishings | 4 |
| 02890 (34 41 14) | Traffic Signs | 2 |
| 02931 (32 92 23) | Sodding | 12 |
| 02950 (00 00 00) | Landscape | 22 |
| 02951 (32 01 17.63) | Asphaltic Concrete Patching | 4 |
| 02952 (32 01 17.64) | Asphaltic Concrete Repair and Sealing | 6 |

**DIVISION 3   CONCRETE**

| SECTION | TITLE | PAGES |
|---|---|---|
| 03100 (03 10 00) | Concrete Formwork | 8 |
| 03200 (03 20 00) | Concrete Reinforcement | 6 |
| 03300 (03 30 00) | Cast-In-Place Concrete | 32 |
| 03700 (03 01 00) | Concrete Repair | 6 |

**DIVISION 4   MASONRY**

| SECTION | TITLE | PAGES |
|---|---|---|
| 04200 (04 20 00) | Unit Masonry | 14 |
| 04230 (04 20 20) | Reinforced Unit Masonry | 6 |
| 04530 (04 29 00) | Masonry Patchwork | 2 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 4 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**DIVISION 5   METALS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 05120 (05 12 00) | Structural Steel | 8 |
| 05400 (05 44 00) | Cold Formed Metal Framing | 4 |
| 05500 (05 50 00) | Metal Fabrications | 8 |
| 05511 (05 51 00) | Metal Stairs | 14 |
| 05520 (05 52 00) | Metal Handrails and Railings | 4 |

**DIVISION 6   WOOD AND PLASTICS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 06100 (06 10 00) | Carpentry | 6 |
| 06300 (06 05 73) | Wood Treatment | 2 |
| 06400 (06 40 00) | Architectural Woodwork | 6 |

**DIVISION 7   THERMAL AND MOISTURE PROTECTION**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 07084 (07 08 40) | Green Wall | 4 |
| 07121 (07 14 16) | Cold Fluid - Applied Waterproofing | 6 |
| 07190 (07 26 00) | Vapor Barrier | 2 |
| 07210 (07 21 00) | Building Insulation | 4 |
| 07270 (07 84 00) | Fire stopping and Smoke Barrier Caulking | 8 |
| 07510 (07 51 13) | Built-Up Asphalt Roofing System | 12 |
| 07920 (07 92 00) | Joint Sealants | 6 |

**DIVISION 8   DOORS AND WINDOWS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 08110 (08 11 13) | Steel Doors and Frames | 8 |
| 08210 (08 14 16) | Flush Wood Doors | 6 |
| 08305 (08 31 00) | Access Doors and Panels | 4 |
| 08333 (08 33 23) | Overhead Coiling Doors | 4 |
| 08400 (08 41 00) | Entrances & Storefronts | 6 |
| 08520 (08 51 13) | Aluminum Windows | 8 |
| 08710 (08 71 00) | Door Hardware | 10 |
| 08730 (08 71 00) | Automatic Door Operators | 4 |
| 08800 (08 80 00) | Glass and Glazing | 10 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 5 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**VOLUME 3   TECHNICAL SPECIFICATIONS**
**DIVISION 9   FINISHES**

| SECTION | TITLE | PAGES |
|---|---|---|
| 09220 (09 24 00) | Portland Cement Plaster (Stucco) | 12 |
| 09250 (09 29 00) | Gypsum Board | 12 |
| 09315 (00 00 00) | Porcelain Tile | 12 |
| 09510 (09 51 00) | Acoustical Ceilings | 8 |
| 09900 (09 91 00) | Painting | 16 |

**DIVISION 10  SPECIALTIES**

| SECTION | TITLE | PAGES |
|---|---|---|
| 10200 (08 91 00) | Louvers & Vents | 6 |
| 10520 (10 44 00) | Fire Protection Specialties | 4 |
| 10550 (10 55 13) | Mailboxes | 4 |
| 10810 (10 28 13) | Toilet Accessories | 4 |
| 10987 (10 57 87) | Wire Metal Shelving | 2 |

**DIVISION 11  EQUIPMENT**

| SECTION | TITLE | PAGES |
|---|---|---|
| 11172 (11 82 00) | Compactor | 2 |
| 11175 (14 91 00) | Trash Chute | 6 |
| 11450 (11 31 00) | Residential & Commercial Appliances | 4 |

**DIVISION 12  FURNISHINGS**

| SECTION | TITLE | PAGES |
|---|---|---|
| 12482 (12 48 20) | Entrance Floor Grids and Frames | 4 |
| 12490 (12 21 13) | Window Treatments | 6 |

**DIVISION 13  SPECIAL CONSTRUCTION**

| SECTION | TITLE | PAGES |
|---|---|---|
| 13100 (26 41 00) | Lightning Protection | 4 |
| 13825 (00 00 00) | Intrusion Detection System | 6 |
| 13827 (00 00 00) | CCTV Surveillance System | 4 |
| 13845 (28 31 00) | Fire Alarm Detection System | 18 |

**DIVISION 14  CONVEYING SYSTEMS**

| SECTION | TITLE | PAGES |
|---|---|---|
| 14212 (14 21 23) | Electric Traction Elevators | 16 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 6 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**DIVISION 15  MECHANICAL**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 15050 (22 05 00) | Basic Materials and Methods | 6 |
| 15052 (26 29 23) | Variable Frequency Drives | 6 |
| 15055 (26 29 24) | Motors | 4 |
| 15060 (21 05 29) | Hangers and Supports | 6 |
| 15070 (21 05 49) | Mechanical Sound and Vibration Control | 6 |
| 15075 (21 05 53) | Mechanical Identification | 2 |
| 15078 (21 05 56) | Field Painting of Mechanical Systems | 4 |
| 15083 (21 07 13) | Duct Insulation | 6 |
| 15089 (22 07 19) | Piping Insulation | 6 |
| 15100 (22 05 26) | Valves | 6 |
| 15105 (22 10 10) | Plumbing Piping | 8 |
| 15170 (22 14 29) | Sump Pumps | 4 |
| 15182 (23 21 23) | HVAC Pumps | 2 |
| 15183 (23 21 13) | Hydronic Piping | 4 |
| 15184 (23 2310) | Refrigerant (DX) Piping and Specialties | 6 |
| 15300 (21 10 00) | Fire Sprinkler System | 10 |
| 15320 (21 30 10) | Fire Pump and Controls | 6 |
| 15410 (22 40 00) | Plumbing Fixtures | 12 |
| 15430 (22 48 00) | Plumbing Specialties | 6 |
| 15440 (21 11 23) | Domestic Water Pumps | 8 |
| 15480 (22 36 00) | Domestic Water Heaters | 2 |
| 15484 (00 00 00) | Fuel Oil Systems | 8 |
| 15724 (23 77 01) | Commercial DX Air Conditioning System | 6 |
| 15736 (23 81 03) | Ductless Air Conditioner | 2 |
| 15810 (23 31 13) | Metal Ducts & Accessories | 12 |
| 15816 (23 31 16) | Non Metal Ducts | 8 |
| 15830 (23 24 00) | Fans | 14 |
| 15850 (23 37 00) | Air Outlets and Inlets | 10 |
| 15860 (23 40 00) | Air Cleaning Devices | 4 |
| 15900 (23 09 00) | HVAC Instrumentation and Controls | 6 |
| 15940 (23 09 93) | Sequence of Operation | 2 |
| 15995 (23 05 93) | Startup & Certification of Air, Water & Control Systems | 6 |
| 15996 (00 00 00) | LEED HVAC Systems Commissioning | 4 |
| 15997 (00 00 00) | LEED Plumbing Systems Commissioning | 2 |

**DIVISION 16  ELECTRICAL**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 16010 (26 02 00) | General Provisions | 6 |
| 16020 (26 03 00) | Completion of Work | 2 |
| 16023 (00 00 00) | Codes and Standards | 2 |
| 16050 (26 05 00) | Basic Materials and Methods | 4 |
| 16053 (26 05 10) | Provisions for Interior Finishing | 2 |
| 16060 (26 05 26) | Grounding | 6 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 7 of 8
Prepared by CAS/DCSD
Revised 10/1/11

16070 (26 05 30) Equipment Bases, Mats and Supports .................................................... 2
16072 (26 05 29) Electrical Supporting Devices .............................................................. 2
16080 (26 08 10) Electrical Inspection and Testing ......................................................... 2
16085 (26 08 20) Cables, Splices and Terminations Testing ............................................ 6
16088 (26 08 30) Acceptance Tests and Performance Verification .................................... 8
16110 (00 00 00) Underground Services ......................................................................... 2
16111 (00 00 00) Raceways, Conduits, Fittings and Supports ......................................... 8
16120 (26 05 20) Wire and Cables ................................................................................ 6
16129 (26 05 34) Terminal Lugs .................................................................................... 2
16137 (26 05 32) Pull and Junction Boxes ..................................................................... 4
16138 (26 05 37) Outlet Boxes ..................................................................................... 4
16140 (00 00 00) Wiring Devices .................................................................................. 4
16160 (00 00 00) Terminal Cabinets ............................................................................. 2
16220 (26 29 10) Motor Starters ................................................................................... 4
16225 (26 24 20) Motors and Motor Controls ................................................................. 4
16250 (00 00 00) Automatic Transfer Switch .................................................................. 8
16400 (26 10 10) Service and Distribution ..................................................................... 4
16410 (26 28 16) Circuit Breakers ................................................................................ 4
16413 (00 00 00) Safety Switches ................................................................................. 2
16415 (26 43 13) Transient Voltage Surge Suppressors ................................................. 6
16425 (00 00 00) Switchboard ...................................................................................... 6
16440 (26 24 16) Panel Boards and Load Centers .......................................................... 4
16450 (26 25 00) Low Voltage Plug-In Busway ............................................................... 6
16460 (26 22 13) Energy Efficient Dry Type Transformers ............................................... 4
16475 (00 00 00) Overcurrent Protective Devices ........................................................... 4
16490 (26 28 13) Fuses ................................................................................................ 2
16500 (00 00 00) Lighting Standards ............................................................................. 2
16510 (26 51 00) Interior Luminaries ............................................................................. 12
16511 (00 00 00) Lighting Fixtures and Lamps ............................................................... 6
16520 (26 56 00) Exterior Luminaries ............................................................................ 10
16530 (00 00 00) Exterior Lighting ................................................................................ 4
16572 (26 09 23) Lighting Controls ............................................................................... 6
16622 (00 00 00) Generator .......................................................................................... 18
16910 (26 09 00) Electric Systems Controls ................................................................... 2
16912 (26 09 10) Mechanical Systems Controls ............................................................. 2
16995 (00 00 00) LEED Electrical Systems Commissioning ............................................. 2

## END OF SECTION 00003

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 8 of 8
Prepared by CAS/DCSD
Revised 10/1/11

SECTION 00004 – BID SET - LIST OF DRAWINGS

General

| | | |
|---|---|---|
| 1. | G0.1.001 | COVER SHEET |
| 2. | G0.2.001 | EXTERIOR BUILDING RENDERING |
| 3. | G0.3.001 | INDEX OF DRAWINGS |
| 4. | G0.3.002 | INDEX OF DRAWINGS |
| 5. | G0.4.001 | PROJECT INFORMATION, LEGEND AND SYMBOLS |
| 6. | G0.5.001 | SITE DATA |
| 7. | G0.6.001 | FLORIDA ACCESSIBILITY REQUIREMENTS – SHEET 1 |
| 8. | G0.6.002 | FLORIDA ACCESSIBILITY REQUIREMENTS – SHEET 2 |

Survey

| | | |
|---|---|---|
| 9. | 1 of 1 | BOUNDARY SURVEY DATED JUNE 1, 2010, PREPARED BY ROBAYNA AND ASSOCIATES INC., AND LAST REVISED ON APRIL 21, 2011. |
| 10. | 1 of 1 | SPECIFIC PURPOSE SURVEY DATED MAY 5, 2011, PREPARED BY ROBAYNA AND ASSOCIATES INC. |

Civil

| | | |
|---|---|---|
| 11. | C0.01 | GENERAL NOTES |
| 12. | C0.02 | WATER AND SEWER GENERAL NOTES |
| 13. | C1.01 | SITE PLAN |
| 14. | C1.02 | SITE PLAN |
| 15. | C2.01 | PAVING, GRADING, AND DRAINAGE PLAN |
| 16. | C2.02 | PAVING, GRADING, AND DRAINAGE PLAN |
| 17. | C2.03 | PAVING, GRADING, AND DRAINAGE PLAN |
| 18. | C2.04 | ROADWAY CROSS-SECTIONS PLAN |
| 19. | C2.05 | POLLUTION PREVENTION PLAN |
| 20. | C2.06 | POLLUTION PREVENTION PLAN |
| 21. | C2.07 | POLLUTION PREVENTION DETAILS |
| 22. | C5.01 | SIGN AND PAVEMENT MARKING PLAN |
| 23. | C5.02 | SIGN AND PAVEMENT MARKING PLAN |
| 24. | C5.03 | SIGN AND PAVEMENT MARKING PLAN |
| 25. | C6.01 | WATER & SEWER PLAN |
| 26. | C6.02 | WATER & SEWER PLAN |
| 27. | C6.03 | WATER & SEWER PLAN |
| 28. | C6.04 | WATER MAIN PROFILE PLAN |
| 29. | C6.05 | SEWER MAIN PROFILE PLAN |
| 30. | C7.01 | PAVING, GRADING, DRAINAGE DETAILS |
| 31. | C7.02 | SIGN AND PAVEMENT MARKING DETAILS |

Landscape

| | | |
|---|---|---|
| 32. | L1.01 | TREE REMOVAL PLAN - WEST |
| 33. | L1.02 | TREE REMOVAL PLAN - EAST |
| 34. | L2.01 | PARTIAL LANDSCAPE PLAN - WEST |
| 35. | L2.02 | PARTIAL LANDSCAPE PLAN - EAST |
| 36. | L2.03 | PLANTING DETAILS |
| 37. | L3.01 | PARTAIL IRRIGATION PLAN - WEST |
| 38. | L3.02 | PARTIAL IRRIGATION PLAN - EAST |
| 39. | L3.03 | IRRIGATION DETAILS AND NOTES |
| 40. | L4.01 | LANDSCAPE SITE MATERIAL PLAN - WEST |
| 41. | L4.02 | LANDSCAPE SITE MATERIAL PLAN - EAST |
| 42. | L4.03 | LANDSCAPE SITE DETAILS AND NOTES |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 1 of 6
Prepared by CAS/DCSD
Revised 10/1/11

Life Safety

| | | |
|---|---|---|
| 43. | LS1.1.100 | LIFE SAFETY SITE PLAN |
| 44. | LS1.1.200 | LIFE SAFETY FLOOR PLAN |

Architecture

| | | |
|---|---|---|
| 45. | A1.1.101 | SITE PLAN |
| 46. | A1.1.102 | GEOMETRY PLAN |
| 47. | A1.1.103 | ENLARGED SITE PLAN 1 |
| 48. | A1.1.104 | ENLARGED SITE PLAN 2 |
| 49. | A1.1.105 | ENLARGED SITE PLAN 3 |
| 50. | A1.1.106 | ENLARGED SITE PLAN 4 |
| 51. | A1.2.101 | SITE GENERAL DETAILS |
| 52. | A1.2.102 | SITE GENERAL DETAILS |
| 53. | A1.2.103 | MONUMENTAL AND WALL SIGNS |
| 54. | A1.2.104 | GREEN WALL SECTIONS |
| 55. | A2.1.101 | FIRST FLOOR PLAN |
| 56. | A2.1.201 | SECOND FLOOR PLAN |
| 57. | A2.1.301 | THIRD FLOOR PLAN |
| 58. | A2.1.401 | FOURTH FLOOR PLAN |
| 59. | A2.1.501 | FIFTH FLOOR PLAN |
| 60. | A2.1.601 | ROOF PLAN |
| 61. | A2.2.101 | FIRST FLOOR REFLECTED CEILING PLAN |
| 62. | A2.2.201 | TYP. FLOOR REFLECTED CEILING PLAN 2ND, 3RD, 4TH AND 5TH |
| 63. | A2.3.101 | FIRST FLOOR COMMUNITY ROOM |
| 64. | A2.3.102 | FIRST FLOOR OFFICE SPACE A |
| 65. | A2.3.103 | FIRST FLOOR OFFICE SPACE B |
| 66. | A2.3.104 | FIRST FLOOR SERVICE AREAS |
| 67. | A2.4.201 | 2ND FLOOR PLAN NW UNITS A-B |
| 68. | A2.4.202 | 2nd FLOOR PLAN NE UNITS A-B-C |
| 69. | A2.4.203 | 2ND FLOOR PLAN SE UNITS A-B |
| 70. | A2.4.204 | 2nd FLOOR PLAN S UNIT C AND SERVICE AREA |
| 71. | A2.4.205 | 2nd FLOOR PLAN SW UNITS C-D |
| 72. | A2.5.301 | 3rd, 4th AND 5th FLOOR PLAN NW UNITS A-B |
| 73. | A2.5.302 | 3rd, 4th AND 5th FLOOR PLAN NE UNITS A-B-C |
| 74. | A2.5.303 | 3rd, 4th AND 5th FLOOR PLAN SE UNITS A-B |
| 75. | A2.5.304 | 3rd, 4th AND 5th FLOOR PLAN S UNIT C AND SERVICE AREA |
| 76. | A2.5.305 | 3rd, 4th AND 5th FLOOR PLAN SW UNITS C-D |
| 77. | A2.6.101 | FIRST FLOOR RCP COMMUNITY ROOM |
| 78. | A2.6.102 | FIRST FLOOR RCP OFFICE SPACE A |
| 79. | A2.6.103 | FIRST FLOOR RCP OFFICE SPACE B |
| 80. | A2.6.104 | FIRST FLOOR RCP SERVICE AREAS |
| 81. | A2.7.201 | 2nd, 3rd, 4th AND 5th RCP NW UNITS A-B |
| 82. | A2.7.202 | 2nd, 3rd, 4th AND 5th RCP NE UNITS A-B-C |
| 83. | A2.7.203 | 2nd, 3rd, 4th AND 5th RCP SE UNITS A-B |
| 84. | A2.7.204 | 2nd, 3rd, 4th AND 5th RCP S UNITS C AND SERVICE AREA |
| 85. | A2.7.205 | 2nd, 3rd, 4th AND 5th RCP SW UNITS C-D |
| 86. | A3.1.101 | ELEVATIONS |
| 87. | A4.1.101 | BUILDING SECTIONS |
| 88. | A4.1.102 | BUILDING SECTIONS |
| 89. | A5.1.101 | WALL SECTIONS |
| 90. | A5.1.102 | WALL SECTIONS |
| 91. | A5.1.103 | WALL SECTIONS |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 2 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 92. | A5.1.104 | WALL SECTIONS |
| 93. | A5.1.105 | WALL SECTIONS |
| 94. | A5.1.106 | WALL SECTIONS |
| 95. | A6.1.101 | STAIR # 1 PLAN & SECTION |
| 96. | A6.1.102 | STAIR # 2 PLAN & SECTION |
| 97. | A6.1.103 | STAIR # 3 PLAN & SECTION |
| 98. | A6.1.104 | STAIR DETAILS |
| 99. | A6.2.101 | ELEVATOR # 1 PLAN & SECTION |
| 100. | A6.2.102 | ELEVATOR # 2 PLAN & SECTION |
| 101. | A6.2.103 | ELEVATOR # 3 PLAN & SECTION |
| 102. | A6.3.101 | TRASH CHUTE PLAN & SECTION |
| 103. | A7.1.101 | OFFICE SPACE 'A' ENLARGED RESTROOMS |
| 104. | A7.1.102 | OFFICE SPACE 'B' AND COMMUNITY ROOM ENLARGED RESTROOMS |
| 105. | A7.1.103 | COMMUNITY ROOM ENLARGED KITCHENETTE, MAILBOXES PLAN & SECTION |
| 106. | A7.1.201 | ENLARGED BATHROOMS UNITS A-B |
| 107. | A7.1.202 | ENLARGED BATHROOMS UNITS C-D |
| 108. | A7.1.203 | 3RD, 4TH & 5TH TYPICAL KITCHEN UNITS A-B-C-D |
| 109. | A8.1.101 | ROOF DETAILS |
| 110. | A8.1.102 | DETAILS |
| 111. | A8.1.103 | DETAILS |
| 112. | A8.2.101 | DOOR DETAILS |
| 113. | A8.3.101 | PARTITION AND WALL DETAILS |
| 114. | A8.3.102 | PARTITION AND WALL DETAILS |
| 115. | A8.3.103 | MISC. DETAILS |
| 116. | A9.1.101 | DOOR SCHEDULE TYPES & NOTES |
| 117. | A9.2.101 | STOREFRONT, WINDOWS & LOUVERS TYPE ELEVATIONS |

Interior Design

| 118. | ID2.01 | FINISH PLAN 1st FLOOR |
| 119. | ID2.02 | FINISH PLAN 2nd FLOOR |
| 120. | ID2.03 | FINISH PLAN APARTMENT UNITS 2 A-B-C |
| 121. | ID3.01 | FURNITURE PLAN 1ST FLOOR |

Structural

| 122. | S0.0.001 | GENERAL NOTES |
| 123. | S0.0.002 | GENERAL NOTES |
| 124. | S0.0.003 | GENERAL NOTES |
| 125. | S0.0.004 | GENERAL NOTES |
| 126. | S1.0.000 | OVERALL FOUNDATION PLAN |
| 127. | S1.0.001 | PARTIAL FOUNDATION PLAN A |
| 128. | S1.0.002 | PARTIAL FOUNDATION PLAN B |
| 129. | S1.0.003 | PARTIAL FOUNDATION PLAN C |
| 130. | S1.0.010 | TYPICAL DETAILS |
| 131. | S1.0.011 | SCHEDULES AND DETAILS |
| 132. | S1.0.012 | SCHEDULES AND DETAILS |
| 133. | S1.0.020 | PARTIAL FOUNDATION PLANS |
| 134. | S1.0.021 | PARTIAL FOUNDATION PLANS |
| 135. | S1.0.022 | PARTIAL FOUNDATION PLANS |
| 136. | S1.0.023 | PARTIAL FOUNDATION PLANS |
| 137. | S2.0.001 | COLUMN SCHEDULES AND DETAILS |
| 138. | S2.0.002 | SECTIONS AND TYPICAL DETAILS |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 3 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 139. | S2.2.021 | SHEARWALL PARTIAL PLAN VIEWS |
|---|---|---|
| 140. | S2.2.022 | SHEARWALL PARTIAL PLAN VIEWS |
| 141. | S2.2.023 | SHEARWALL PARTIAL PLAN VIEWS |
| 142. | S2.2.024 | SHEARWALL PARTIAL PLAN VIEWS |
| 143. | S2.2.025 | SHEARWALL PARTIAL PLAN VIEWS |
| 144. | S2.2.026 | SHEARWALL PARTIAL PLAN VIEWS |
| 145. | S2.2.027 | ELEVATIONS |
| 146. | S3.1.100 | OVERALL FIRST FLOOR PLAN |
| 147. | S3.1.101 | PARTIAL FIRST FLOOR PLAN A |
| 148. | S3.1.102 | PARTIAL FIRST FLOOR PLAN B |
| 149. | S3.1.103 | PARTIAL FIRST FLOOR PLAN C |
| 150. | S3.2.200 | OVERALL SECOND FLOOR PLAN |
| 151. | S3.2.201 | PARTIAL SECOND FLOOR PLAN A |
| 152. | S3.2.202 | PARTIAL SECOND FLOOR PLAN B |
| 153. | S3.2.203 | PARTIAL SECOND FLOOR PLAN C |
| 154. | S3.3.300 | OVERALL THIRD FLOOR PLAN |
| 155. | S3.3.301 | PARTIAL THIRD FLOOR PLAN A |
| 156. | S3.3.302 | PARTIAL THIRD FLOOR PLAN B |
| 157. | S3.3.303 | PARTIAL THIRD FLOOR PLAN C |
| 158. | S3.4.400 | OVERALL FOURTH FLOOR PLAN |
| 159. | S3.4.401 | PARTIAL FOURTH FLOOR PLAN A |
| 160. | S3.4.402 | PARTIAL FOURTH FLOOR PLAN B |
| 161. | S3.4.403 | PARTIAL FOURTH FLOOR PLAN C |
| 162. | S3.5.500 | OVERALL FIFTH FLOOR PLAN |
| 163. | S3.5.501 | PARTIAL FIFTH FLOOR PLAN A |
| 164. | S3.5.502 | PARTIAL FIFTH FLOOR PLAN B |
| 165. | S3.5.503 | PARTIAL FIFTH FLOOR PLAN C |
| 166. | S3.6.600 | OVERALL ROOF PLAN |
| 167. | S3.6.601 | PARTIAL ROOF PLAN A |
| 168. | S3.6.602 | PARTIAL ROOF PLAN B |
| 169. | S3.6.603 | PARTIAL ROOF PLAN C |
| 170. | S3.7.001 | HIGH ROOF PLAN |
| 171. | S4.0.001 | SCHEDULES AND DETAILS |
| 172. | S4.0.002 | STRUCTURAL DETAILS |
| 173. | S4.0.003 | TYPICAL DETAILS |
| 174. | S4.0.004 | SCHEDULES AND DETAILS |
| 175. | S4.0.005 | TYPICAL DETAILS |
| 176. | S4.0.006 | TYPICAL DETAILS |
| 177. | S4.0.007 | TYPICAL DETAILS |
| 178. | S5.0.001 | TYPICAL MASONRY DETAILS |

Mechanical

| 179. | M0.01 | HVAC NOTES |
|---|---|---|
| 180. | M0.02 | HVAC SCHEDULES |
| 181. | M0.03 | HVAC SCHEDULES |
| 182. | M2.01 | PARTIAL FIRST FLOOR HVAC PLAN A |
| 183. | M2.02 | PARTIAL FIRST FLOOR HVAC PLAN B |
| 184. | M2.03 | PARTIAL SECOND FLOOR HVAC PLAN A |
| 185. | M2.04 | PARTIAL SECOND FLOOR HVAC PLAN B |
| 186. | M2.05 | PARTIAL TYPICAL (3rd THRU 5th ) FLOOR HVAC PLAN A |
| 187. | M2.06 | PARTIAL TYPICAL (3rd THRU 5th ) FLOOR HVAC PLAN B |
| 188. | M2.07 | PARTIAL ROOF HVAC PLAN A |
| 189. | M2.08 | PARTIAL ROOF HVAC PLAN B |
| 190. | M2.09 | PARTIAL FIRST FLOOR HVAC PLAN |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 4 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 191. | M2.10 | PARTIAL FIRST FLOOR HVAC PLAN |
| 192. | M2.11 | ELECTRICAL ROOM, JANITOR ROOM, LAUNDRY ROOM HVAC PLAN |
| 193. | M2.12 | APARTMENTS HVAC FLOOR PLAN |
| 194. | M2.13 | GENERATOR ROOM HVAC AND HVAC RISERS |
| 195. | M5.01 | HVAC CONTROL |
| 196. | M6.01 | HVAC DETAILS |
| 197. | M6.02 | HVAC DETAILS |
| 198. | M6.03 | HVAC DETAILS |
| 199. | M6.04 | HVAC DETAILS |

Plumbing

| 200. | P0.01 | PLUMBING FIXTURES, SCHEDULES AND NOTES |
| 201. | P0.02 | PLUMBING FIXTURES, SCHEDULES AND LEGEND |
| 202. | P1.01 | SITE PLUMBING PLAN |
| 203. | P2.01 | PARTIAL FIRST FLOOR PLUMBING PLAN A (SANITARY & WATER ONLY) |
| 204. | P2.02 | PARTIAL FIRST FLOOR PLUMBING PLAN B (SANITARY & WATER ONLY) |
| 205. | P2.03 | PARTIAL 1ST FLR. PLUMB. PLAN A (STORM & CONDENSATE DRAIN ONLY) |
| 206. | P2.04 | PARTIAL 1ST FLR. PLUMB. PLAN B (STORM & CONDENSATE DRAIN ONLY) |
| 207. | P2.05 | PARTIAL SECOND FLOOR PLUMBING A |
| 208. | P2.06 | PARTIAL SECOND FLOOR PLUMBING B |
| 209. | P2.07 | PARTIAL TYPICAL (3rd THRU 5th) FLOOR PLAN A |
| 210. | P2.08 | PARTIAL TYPICAL (3rd THRU 5th) FLOOR PLAN B |
| 211. | P2.09 | PARTIAL ROOF PLUMBING PLAN A |
| 212. | P2.10 | PARTIAL ROOF PLUMBING PLAN B |
| 213. | P2.11 | APARTMENTS PLUMBING FLOOR PLAN |
| 214. | P2.12 | APARTMENTS PLUMBING FLOOR PLAN |
| 215. | P2.13 | PARTIAL FIRST FLOOR SANITARY PLAN |
| 216. | P2.14 | PARTIAL FIRST FLOOR WATER SUPPLY PLAN |
| 217. | P2.15 | PARTIAL FIRST FLOOR SANITARY PLAN |
| 218. | P2.16 | PARTIAL FIRST FLOOR WATER SUPPLY PLAN |
| 219. | P2.17 | TYPICAL FLOOR LAUNDRY AREA PLUMBING PLAN |
| 220. | P3.01 | VERTICAL SANITARY RISERS |
| 221. | P3.02 | VERTICAL WATER SUPPLY RISERS |
| 222. | P3.03 | PARTIAL HORIZONTAL SANITARY RISER |
| 223. | P3.04 | PARTIAL HORIZONTAL SANITARY RISER |
| 224. | P3.05 | PARTIAL HORIZONTAL WATER SUPPLY RISER |
| 225. | P3.06 | PARTIAL HORIZONTAL WATER SUPPLY RISER |
| 226. | P3.07 | PARTIAL STORM RISER |
| 227. | P3.08 | PARTIAL STORM RISER |
| 228. | P3.09 | PARTIAL STORM RISER |
| 229. | P5.01 | PLUMBING DETAILS |
| 230. | P5.02 | PLUMBING DETAILS |
| 231. | P5.03 | GENRATOR FUEL PUMP FUELING SYSTEM DETAIL |

Electrical

| 232. | E0.01 | ELECTRICAL NOTES, LEGEND AND ABBREVIATIONS |
| 233. | E1.01 | ELECTRICAL SITE PLAN |
| 234. | E1.02 | PHOTOMETRIC SITE PLAN |
| 235. | E2.01 | PARTIAL ELECTRICAL FIRST FLOOR PLAN A |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 5 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 236. | E2.02 | PARTIAL ELECTRICAL FIRST FLOOR PLAN B |
|---|---|---|
| 237. | E2.03 | PARTIAL ELECTRICAL TYPICAL FLOOR PLAN A |
| 238. | E2.03A | PARTIAL ELECTRICAL CONDUIT PLAN A |
| 239. | E2.03B | PARTIAL TELE. & DATA CONDUIT PLAN A |
| 240. | E2.04 | PARTIAL ELECTRICAL TYPICAL FLOOR PLAN B |
| 241. | E2.04A | PARTIAL ELECTRICAL CONDUIT PLAN B |
| 242. | E2.04B | PARTIAL TELE. & DATA CONDUIT PLAN B |
| 243. | E2.05 | PARTIAL ELECTRICAL ROOF PLAN A |
| 244. | E2.06 | PARTIAL ELECTRICAL ROOF PLAN B |
| 245. | E3.01 | APARTMENT UNIT ELECTRICAL PLAN |
| 246. | E4.01 | MAIN ELECTRICAL AND GENERATOR ROOM LAYOUT |
| 247. | E4.02 | TYPICAL METER ROOM AND PUMP ROOM LAYOUT |
| 248. | E4.03 | TYPICAL LAUNDRY AND UTILITY ROOM ELECTRICAL LAYOUT |
| 249. | E5.01 | ELETRICAL RISER DIAGRAM |
| 250. | E5.02 | DWELLING UNIT RISER DIAGRAM |
| 251. | E5.03 | TELEPHONE/DATA RISER DIAGRAM |
| 252. | E5.04 | CATV RISER DIAGRAM |
| 253. | E6.01 | DWELLING UNIT PANEL SCHEDULE |
| 254. | E6.02 | PANEL SCHEDULES |
| 255. | E6.03 | PANEL SCHEDULES |
| 256. | E6.04 | LIGHTING FIXTURE SCHEDULE |
| 257. | E7.01 | FIRE ALARM GENERAL NOTES |
| 258. | E7.02 | FIRE ALARM LEGEND AND ABBREVIATIONS |
| 259. | E7.03 | PARTIAL FIRE ALARM FIRST FLOOR PLAN A |
| 260. | E7.04 | PARTIAL FIRE ALARM FIRST FLOOR PLAN B |
| 261. | E7.05 | PARTIAL TYPICAL FIRE ALARM FLOOR PLAN A |
| 262. | E7.06 | PARTIAL TYPICAL FIRE ALARM FLOOR PLAN B |
| 263. | E7.07 | PARTIAL FIRE ALARM ROOF PLAN A |
| 264. | E7.08 | PARTIAL FIRE ALARM ROOF PLAN B |
| 265. | E7.09 | FIRE ALARM RISER |
| 266. | E7.10 | FIRE ALARM RISER |
| 267. | E7.11 | FIRE ALARM RISER |
| 268. | E7.12 | FIRE ALARM RISER |
| 269. | E7.13 | FIRE ALARM RISER |
| 270. | E8.01 | LIGHTNING PROTECTION DETAILS AND NOTES |
| 271. | E8.02 | LIGHTNING PROTECTION PLAN |
| 272. | E9.01 | SECURITY NOTES AND LEGEND |
| 273. | E9.02 | SECURITY PLAN |

Fire Protection

| 274. | FP1.1 | PARTIAL FIRST FLOOR FIRE PROTECTION PLAN A |
|---|---|---|
| 275. | FP1.2 | PARTIAL FIRST FLOOR FIRE PROTECTION PLAN B |
| 276. | FP2.1 | PARTIAL SECOND FLOOR FIRE PROTECTION PLAN A |
| 277. | FP2.2 | PARTIAL SECOND FLOOR FIRE PROTECTION PLAN B |
| 278. | FP3.1 | PARTIAL TYPICAL FLOOR FIRE PROTECTION PLAN A |
| 279. | FP3.2 | PARTIAL TYPICAL FLOOR FIRE PROTECTION PLAN B |
| 280. | FP4.0 | APTS. FIRE PROTECTION PLAN, SCHEDULES, NOTES & DETAILS |

**END OF SECTION 00004**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 6 of 6
Prepared by CAS/DCSD
Revised 10/1/11

# ADVERTISEMENT FOR BIDS
# MIAMI-DADE COUNTY, FLORIDA
# INTERNAL SERVICES DEPARTMENT (ISD)

Sealed bids for furnishing all labor, materials and equipment for the following project will be received in the Office of the Clerk of the Board of County Commissioners, Stephen P. Clark Center, 111 N.W. 1st Street, 17th Floor, Suite 17-202, Miami, FL **until 2:00 PM, local time, on Friday, December 16, 2011.** All bids received prior to the stipulated time will then be transferred to the 18th Floor, where envelopes will be publicly opened and prices will be read aloud on the above bid due date, shortly after 2:00 PM, local time, at the Stephen P. Clark Center, 111 N.W. 1st Street, 18th Floor, Conference Room 18-3, Miami, FL.

PROJECT NAME: **CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS**

PROJECT NUMBER: ISD No. Z000107 GOB ESP

CONTRACT NUMBER: ISD No. Z000107

LOCATION: SW 127th Avenue and SW 8th Street, Miami, FL 33184

DESCRIPTION: This new project consists of a multi-story affordable residential and retail building designed by ISD staff. The residential component consists of 104 units, comprised of 12 one-bedroom units of 717 sq. ft., 12 studio units of 395 sq. ft., and 80 one-bedroom units of 650 sq. ft. The common areas of the building will include a community room with kitchenette and ADA compliant restrooms of approximately 1,467 sq. ft., a building manager's office, a bicycle storage room, various waiting/pick-up areas, and covered parking for all residents with controlled gate access; all floors are equipped with laundry rooms and storage areas. Utility areas include a generator room, fire pump room, telecommunications room, and trash and recycling room, as well as a chute system. The building is equipped with two (2) passenger elevators and one (1) service elevator; in addition, the building will include approximately 3,400 sq. ft. of retail/office space, an outdoor landscaped plaza, and park and ride component. Gran Via Apartments is an affordable housing project which is designed to achieve a minimum of "Silver" rating under the Leadership in Energy and Environmental Design (LEED) certification. Management and operation of the facility will be contracted out as the project nears completion.

BASE ESTIMATE: **$7,748,918.00***

(*) This Base Estimate includes 0.25% to account for fees related to the Office of the Inspector General, pursuant to Section 2-1076 of the Code of Miami-Dade County.

RESPONSIBILITY REQUIREMENTS: ISD requires that the selected General Contractor must 1) demonstrate having built one (1) affordable housing facility of similar size and complexity within the past ten (10) years; and 2) must be a LEED®AP or have a LEED®AP Consultant on staff during the entire construction phase, who can demonstrate having participated in the construction of at least one (1) completed, Silver LEED-certified facility, or one (1) facility under construction, which is registered with the United States Green Building Council (USGBC) to pursue Silver LEED Certification. In addition, bidders are encouraged to include in their bid submissions general information regarding their companies' management and operations, financial resources, bonding capacity, payment of subcontractors, and a history of commenced and completed projects in order to support said requirements. Any and all documentation submitted to support these requirements will be subject to verification by County staff.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 1 of 4
Prepared by CAS/DCSD
Revised 10/1/11

BID DOCUMENTS AVAILABILITY: Commencing on Wednesday 16, 2011 at 9:00 AM, digital copies of the bid documents will be available for purchase at the ISD Trade Shops, 3501 NW 46th Street, Miami, FL 33142, upon payment of a non-refundable fee of Fifty Dollars ($50.00) for the first copy and Twenty-Five Dollars ($25.00) for each copy thereafter.  Upon request, hard-copy sets of these documents will be available at a non-refundable fee of One-Hundred and Fifty Dollars ($150.00) per set of documents. <u>Bidders are advised that only bids from contractors who have purchased the bid documents through GSA will be considered</u>.  Please contact Ms. Lillian D. Garcia, Capital Projects Coordinator, ISD, via e-mail at <u>garciad@miamidade.gov</u> for more details.

PRE-BID CONFERENCE:  A Pre-Bid Conference to allow prospective contractors to avail themselves of the particulars of this contract will be held at the Stephen P. Clark Center, 111 N.W. 1st Street, Miami, FL 33128, 18th Floor, **Conference Room 18-3, commencing at 10:00 AM on Tuesday, November 22, 2011;** a site visit may be scheduled upon request.  While attendance is not mandatory, bidders are encouraged to attend both the pre-bid meeting and site visit.

REQUESTS FOR INFORMATION (RFI): The Contractor may submit a Request for Information (RFI) where the Contractor believes that the specifications or drawings are unclear or present a conflict.  All requests must be submitted in writing to Ms. Lillian D. Garcia, Capital Projects Coordinator, ISD, via e-mail at <u>garciad@miamidade.gov</u>, in a manner that clearly identifies the drawing and/or specification Section where clarification or interpretation is being requested; the County may respond in writing.

CONTRACTORS' CERTIFICATION: Prospective Contractors are required to be certified by Miami-Dade County in ONE of the following categories: General Building, General Engineering, or other certified categories as applicable to Chapter 10 of the Code of Miami-Dade County, and/or State of Florida General Contractor's License.

CONTRACT MEASURES: In accordance with County Ordinance Nos. 97-52, 97-158, and 03-1, and Administrative Order Nos. 3-22 and 3-37, a Community Small Business Enterprise (CSBE) subcontractor goal of 24.00% has been established; Community Workforce Program (CWP) measures are not applicable. Compliance with these Ordinances and Administrative Orders is required for all contractors submitting a bid for this project; see "Participation Provisions" which are bound herein, and are made part of the Specifications and Contract Documents.

BIDS SUBMITTAL: Prospective Contractors will submit two (2) sealed envelopes.  Envelope No. 1 will contain the complete bid package including pricing, and will be opened and prices read aloud shortly after the reception of bids is closed.  Envelope No. 2 will contain the Schedule of Intent Affidavit (SOIA) and the Vendor Affirmation Affidavit (in case the latter has never been submitted to the County).  Each sealed envelope or container shall bear on the outside the envelope number (1 and 2), the Bidder's name, his/her address, the title and number of the project for which the bid is submitted, and the date of bid opening.  <u>Both envelopes are due at the time and date of bid submission</u> as stated in the advertisement.  Bids will not be opened or considered if received after the first bid envelope or container has been opened.  At the very minimum, Envelope No. 2 containing the SOIA submitted by the three (3) lowest bidders will be sent to the Division of Small Business Development (SBD) shortly after prices are read.  Should any of the SOIA be defective (see included Participation Provisions), prospective Contractors may be given forty-eight (48) hours to rectify any correctable errors.

BID BOND/PAYMENT AND PERFORMANCE BOND:  Bids must also be accompanied by a certified check or acceptable bid bond in an amount not less than five percent (5%) of the Base Bid.  The Bid Bond will guarantee that the Bidder, if awarded the contract, will enter into a written contract with the Board of County Commissioners of Miami-Dade County, Florida within ten (10) business days after receiving a formal Notice of Recommendation for Award.  In addition, the successful Bidder shall give a payment and performance bond satisfactory to the County, and as provided in the terms and conditions of the Contract Documents.

WITHDRAWAL OF BIDS: Bidders may not withdraw their bids for a period of up to one hundred eighty (180) calendar days after the bid opening.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 2 of 4
Prepared by CAS/DCSD
Revised 10/1/11

CONE OF SILENCE: Pursuant to Section 2-11.1(t) of the Miami-Dade County Code, as amended, and County Administrative Order 3-27, a "cone of silence" is imposed upon each RFP, RFQ or Bid after its advertisement and terminates at the time the County Manager issues a written recommendation to the Board on County Commissioners.  The Cone of Silence prohibits any communication regarding RFPs, RFQs or bids between, among others:

a.  Potential vendors, service providers, lobbyists or consultants and the County's professional staff including, but not limited to, the County Manager and the County Manager's staff, the Mayor, County Commissioners or their respective staffs;
b.  The Mayor, County Commissioners or their respective staffs and the County's professional staff including, but not limited to, the County Manager the County Manager's staff;
c.  Potential vendors, service providers, bidders, lobbyists or consultants, any member of the County's professional staff, the Mayor, County Commissioners or their respective staffs and any member of the respective Selection Committee.

The provisions do not apply to, among other communications:

a.  Oral communications with the staff of the Vendor Information Center, the responsible Procurement Agent or Contracting Officer, provided the communication is limited strictly to matters or process or procedure already contained in the solicitation document;
b.  Oral communications at the proposal or pre-bid conferences, oral presentations before selection committees, contract negotiation during any duly noticed public meeting, public presentations made to the Board of County Commissioners during any duly noticed public meeting or Board of County Commissioners unless specifically prohibited by the applicable RFP, RFQ or bid documents.

Prospective Contractors must file a copy of any written communications with the Clerk of the Board, which shall be made available to any person upon request.  The County shall respond in writing and file a copy with the Clerk of the Board, which shall be made available to any person upon request.  Written communications may be in the form of e-mail, with a copy to the Clerk of the Board at CLERKBCC@miamidade.gov.

In addition to any penalties provided by law, a violation of the Cone of Silence by any proposer or bidder shall render any RFP award, RFQ award or bid award voidable.  Any person having personal knowledge of the violation of these provisions shall report such violation to the State Attorney's Office and/or may file a complaint with the Commission on Ethics.  Proposers or Bidders should refer to Section 2-11.1(t) of the Miami-Dade County Code for further clarification.  This language is only a summary of the key provisions of the Cone of Silence.  Please review Miami-Dade County Administrative Order 3-27 for a complete and thorough description of the Cone of Silence.

OTHER APPLICABLE LEGISLATION: Legislation applicable to this Contract includes but is not limited to Ordinance No. 91-142, Family Leave Ordinance; Ordinance No. 92-15, Drug-Free Workplace; Ordinance No. 93-129, Contractor Debarment Ordinance; Ordinances Nos. 94-166 and 96-26 on Local Preference applicability; Ordinance Nos. 97-35 and 97-104 Fair Subcontracting Practices; Resolution No. R-702-98 (repeals and supersedes Resolution Nos. R-1206-97 and R-366-97) Welfare to Work Initiative; and Ordinance No. 98-30, County Contractors Employment and Procurement Practices, as referenced for these Contract Documents.  It is the responsibility of the Bidders to inform themselves as to any and all legislation applicable to this Contract.  In order to request a copy of any ordinance, resolution and/or administrative order cited in this Bid Solicitation, the Bidder must contact the Clerk of the Board at (305) 375-5126.

The County reserves the right to waive any informality in, or to reject any or all bids.  Bids from any person, firm or corporation in default upon any agreement with the County will be rejected.

**ALINA T. HUDAK, DEPUTY MAYOR/COUNTY MANAGER**
**MIAMI-DADE COUNTY**

**HARVEY RUVIN, CLERK**
**BOARD OF COUNTY COMMISSIONERS**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 3 of 4
Prepared by CAS/DCSD
Revised 10/1/11

**THIS PAGE INTENTIONALLY LEFT BLANK**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 4 of 4
Prepared by CAS/DCSD
Revised 10/1/11

# CONSTRUCTION OF AFFORDABLE HOUSING AND
# HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS
# ISD CONTRACT NO. Z000107

## DIVISION 0 – GENERAL DOCUMENTS
## SECTION 00100 – INSTRUCTIONS TO PROSPECTIVE CONTRACTOR

Article and Title                                                                          Page

1.    DEFINITIONS ................................................................................    2

2.    SCOPE OF THE PROJECT ...........................................................    5

3.    INTERPRETATION OF CONTRACT DOCUMENTS ...........................    5

4.    RESPONSIBILITY OF PROSPECTIVE CONTRACTORS REGARDING
      CONDITIONS OF THE PROJECT .....................................................    6

5.    PRE-BID CONFERENCE ................................................................    6

6.    SIGNATURE OF CONTRACTOR.......................................................    6

7.    UTILITY CONNECTION FEES NOT INCLUDED (SECTION 10-36 OF THE
      CODE OF MIAMI-DADE COUNTY)....................................................    7

8.    QUANTITIES IN PROPOSAL APPROXIMATE ONLY..............................    8

9.    FLORIDA STATE SALES TAX .........................................................    8

10.   DISQUALIFICATION OF CONTRACTORS...........................................    8

11.   BID BOND     ...............................................................................    8

12.   WITHDRAWAL OF SUBMITTAL PACKAGE  ......................................    9

13.   COUNTY RIGHT TO ACCEPT, REJECT, AND CANCEL BIDS ..........    9

14.   AWARD OF CONTRACT ................................................................    10

15.   EXECUTION OF CONTRACT .........................................................    10

16.   REQUIRED CONTRACTORS' CERTIFICATION ..................................    10

17.   SECURITY: PLANS / CONSTRUCTION DOCUMENTS .......................    11

18.   AUDIT RIGHTS BY AUDIT AND MANAGEMENT SERVICES & BCC AUDITOR................    11

Construction of Affordable Housing and                    00100 Instructions to Prospective Contractor - Page 1 of 12
Home Ownership in District 11 - Gran Via Apartments                                   Prepared by CAS/DCSD
ISD Contract No. Z000107                                                              Revised 10/1/11

## 1.    DEFINITIONS

A.  When used in the Contract Documents (hereinafter defined):

1.  The masculine pronoun shall include the feminine and neutral, and the singular shall include the plural;

2.  "and" shall also mean "or" and "or" shall also mean "and", wherever the context or purpose so requires;

3.  "Architect/Engineer of Record", "A/E", and/or "Architect/Engineer" shall mean the representative associated with the design that will make determinations regarding request for information, shop drawing review, interpretation of documents, value engineering, value analysis, change order request, pre-inspection review, final acceptance of components, substantial completion and overall completion.

4.  "Base Bid", "Base Proposal Items" shall mean the total of all proposal items for which the respondent has submitted pricing and is not inclusive of the Contingency Allowance(s) or the Dedicated Allowance(s), if any.

5.  "Bidder" means "Respondent".

6.  "Bid Package" means "Contract Offering"

7.  "Board of County Commissioners", "Chairman, Board of County Commissioners": whenever these words or other similar statements appear in these contract documents in reference to the execution of any documents as part of this Contract, it shall mean "The County Mayor, or the County Mayor's designee, shall execute all documents related to this Contract on behalf of the Miami-Dade County Board of County Commissioners." As an exception to the above, Performance and Payment Bonds shall still be written in the name of Miami-Dade County, Florida, acting by and through the Miami-Dade County Board of County Commissioners.

8.  "Change Order" shall mean an amendment to the Contract Documents which requires the signature of the Contractor and approval of the Board of County Commissioners

9.  "Code" means "Miami-Dade County Code of Ordinances"

10. "Commission" or "County Commissioners" shall mean the Board of County Commissioners of Miami-Dade County, Florida, and their successors in office.

11. "Construction Manager" shall mean the authorized representative of the Owner who shall make determinations regarding conflict or claim. The Construction Manager may assign a designee as his representative.

12. "Contingency Allowance" shall mean an account that establishes a specific amount of time and/or money to be used to perform unknown or unanticipated work, as directed by the A/E, which is necessary to satisfactorily complete the project to its full capacity, functional ability, and compliance with all safety and health requirements. Any time or money within the Contingency Allowance account not directly authorized for use by the A/E remains with the County.

13. "Contract Coordinator" shall mean the staff of the Internal Services Department's Contracts Administration Section in charge of monitoring the bidding and award process until the Contractor is selected and a Notice to Proceed, issued.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 2 of 12
Prepared by CAS/DCSD
Revised 10/1/11

14. "Contract Documents" shall mean and include the documents listed in this definition: The order of priority/precedence is as identified to the left of the following check boxes. Should there be a conflict in the terms as written between two of the components of the Contract, the component with the lowest number shall take precedence.

| | | |
|---|---|---|
| _ | ☐ | Index of Contract Documents |
| 3 | ☒ | Advertisement for Bids |
| 1 | ☒ | Instructions to Prospective Contractors |
| 1 | ☒ | Code and Ordinance Requirements |
| 1 | ☒ | Protest Information |
| 1 | ☒ | Vendor Affirmation Affidavit |
| 1 | ☒ | Specific Code / Affidavits Applications (Checklist) |
| 2 | ☒ | Community Workforce Program; Job Order Request Form |
| 1 | ☒ | Contract |
| 1 | ☒ | Bid Bond |
| 1 | ☒ | Performance and Payment Bond (if required, Bid Bond is required) |
| 1 | ☒ | Proposal |
| 2 | ☒ | Financial Statement |
| 1 | ☒ | General Covenants and Conditions |
| 1 | ☒ | Supplemental General Covenants and Conditions |
| 1 | ☒ | Special Provisions |
| _ | ☐ | Applicable Federal Requirements |
| 1 | ☒ | Department of Small Business Development's Participation Provisions |
| 2 | ☒ | Wages and Benefits Provisions |
| 1 | ☒ | Specifications |
| 2 | ☒ | Standards |
| 1 | ☒ | Plans / Sketches |
| 1 | ☒ | All Addenda Issued |
| _ | ☐ | Other |

15. "Contract Offering", "Solicitation", "Bid Package" shall mean the total documents offered by the County which establishes the process and procedure for a prospective Contractor to interpret the requirements of the County, for a specific project, and to provide a proper submittal package to the County for consideration in awarding a Contract.

16. "Contractor" shall mean the party to the Contract.  The person, firm, or corporation, holders of a current Certificate of Competency applicable to the type of work to be performed, with whom a contract has been made directly or through accredited representatives, that has entered into a contract with Miami-Dade County, Florida and who is primarily liable for the acceptable performance of the work for which he has contracted and also for the payment of all legal debts pertaining to the work.

17. "County", "Dade County", "Miami-Dade County" or "Metropolitan Dade County (MDC)" shall mean Miami-Dade County, Florida, a political subdivision of the State of Florida, acting by and through the Board of County Commissioners, which is a party hereto and for which this Contract is to be performed.

18. "Dedicated Allowance" shall mean an account that establishes funding for an anticipated specified purpose, such as reimbursement for permits or traffic control police.  Any money not directed to be used by the Contractor and specifically approved to be used in accordance with the originally written item within a Dedicated Allowance account, remains with the County.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 3 of 12
Prepared by CAS/DCSD
Revised 10/1/11

19. "Department" shall mean the Miami-Dade County department issuing the Contract as established on the cover page. For the purposes of this Contract, "Department" shall mean the Internal Services Department (ISD).

20. "Deputy Mayor" or "County Manager", shall mean the Mayor's designee and most senior staff executive who reports directly to the Mayor, and is co-responsible for the overall day to day operation of Miami-Dade County.

21. "Director" shall mean the Director of the Contracting Department or the Director's designee.

22. "Domestic" when applied to materials, shall mean materials or products produced within the United States of America.

23. "Extra Work" shall mean and include all work and materials which are not described within the Contract Documents and covered by a price stated in the Proposal, but which are found by the Construction Manager to be desirable or necessary to complete the Project satisfactorily and consistent with the general intention of the Contract Documents.

24. "Inspector" shall mean any person designated by the A/E or the Owner's Representative to examine and inspect equipment, materials and work for the purpose of ensuring compliance by the Contractor with all requirements of the Contract Documents.

25. "ISD" shall mean Internal Services Department, a department of the County formerly known as General Services Administration (GSA).  Any reference to either one of these entities shall be considered one and the same for the purposes of this solicitation.

26. "Mayor", shall mean the administrative agent who is responsible for the management of all administrative departments of the County government and for carrying out policies adopted by the Commission. The Mayor, or such other persons who may be designated by the Mayor, shall execute all contracts and other instruments of the capital improvements process.

27. "Miami-Dade County Code of Ordinances" or "Code of Miami-Dade County", or "Code of Metropolitan-Dade County" or "MDC Code" shall refer to the Code of Miami-Dade County, Florida, as modified by ordinances approved by the Board on a continuing basis and reflects the codification of all County ordinances and resolutions having the effect of law and the provision of suitable penalties for the violation thereof.

28. "Or equal" or "or approved equal" shall mean only a material or product which is specifically approved by the A/E as being an acceptable substitute for a material or product designated in the Specifications or on the Plans by a trade name or the name of the manufacturer.

29. "Owner's Representative" shall mean a designated employee of the Department or a firm contracted by Miami-Dade County to perform the administrative duties of coordination of all documents between the Contractor and the A/E, and who will be responsible to the A/E for the management of the Contract and maintenance of the budgeted funding and duration of the Contract.

30. "Person" shall mean and include any individual, combination of individuals, partnership, society, association, joint stock company, corporation, estate, receiver, trustee, assignee, referee or any other person acting in a fiduciary or representative capacity, whether appointed by a court or otherwise.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 4 of 12
Prepared by CAS/DCSD
Revised 10/1/11

31. "Principal" shall mean the Contractor.

32. "Project" shall mean and include all design and construction work necessary to fulfill the specific goals of the County and is inclusive of this Contract.

33. "Respondent", "Bidder", "Prospective Contractor", shall mean any person responding to this Contract offering and providing a price quotation to perform the work in accordance with these Contract Documents for construction of the proposed Project.

34. "Solicitation" means "Contract Offering"

35. "Subcontractor" shall mean any business entity engaged by the Contractor to supply labor, materials or equipment for use in the fulfillment of the Project.

36. "Substantial Completion" of the work, or designated portion thereof, is the date certified by the A/E and approved by Miami-Dade County (if different from the A/E) when construction is sufficiently complete, in accordance with the Contract Documents.   Substantial completion means that the percentage of completion of the construction contract is such that the Owner may occupy the project or designated portion thereof or place it into full productive and continued service, for the use which it was intended, including ingress and egress, and all supportive appurtenances for the use of the project.

37. "Surety" shall mean the corporate bond company or individual which is bound by Performance and Payment Bonds with and for the Contractor, who is primarily liable, and which by virtue of the bond, is jointly responsible for the Contractor's acceptable performance of the work of which this contract has been made and for his payment of all debts pertaining thereto;

38. "Working Days", as used in the Instructions to Prospective Contractor, shall mean weekdays Monday through Friday with the exception of County holidays.  The definition of Working Days as related to contract performance may differ from this definition.

## 2.   SCOPE OF THE PROJECT

The scope of each division of the Contract is stated in the Technical Specifications and exhibited within the Plans/Sketches and/or Miami-Dade County Standards.

## 3.   INTERPRETATION OF CONTRACT DOCUMENTS

A. Each Prospective Contractor must thoroughly examine all Contract Documents and judge for himself/herself all matters relating to the character of the proposed Contract.   If the Prospective Contractor should be in doubt as to the meaning of any of the Contract Documents, or is of the opinion that the Plans and Specifications contain errors or contradictions, or reflect omissions, he/she shall submit a written request to the Contract Coordinator for interpretation or clarification.  No interpretation of the meaning of the Plans, Specifications, or other Contract Documents will be made to any Prospective Contractor orally.  Each such request must be in the hands of the Contract Coordinator at least fourteen (14) calendar days before the submittal date, or within the deadline established in the Contract advertisement or as formally amended.  The Contract Coordinator may provide that interpretation or clarification in the form of written addenda, which shall be mailed, delivered, or otherwise communicated, to all Prospective Contractors.  The issuance of a written addendum shall be the only official method whereby such an interpretation or clarification will be made.   Failure of any Prospective Contractor to receive any such addendum or interpretation shall not relieve any Prospective Contractor from any obligation under the terms

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 5 of 12
Prepared by CAS/DCSD
Revised 10/1/11

of the Contract, including all addenda properly issued.  Each Prospective Contractor should verify the number of addenda issued prior to execution of the Contract.

B. Items shown on the Plans but not noted in the Specifications, and items noted in the Specifications but not shown on the Plans, are to be considered as both shown on the Plans and noted in the Specifications.  Any errors and/or omissions in the Specifications or on the Plans, as to the standard of the work, shall not relieve the Contractor of the obligation to furnish a satisfactory first class job in strict conformity with the best practice found in work of a similar type.  The failure of the Prospective Contractor to direct the attention of the Contract Coordinator to errors or discrepancies will not relieve the Prospective Contractor of the responsibility of performing the work to the satisfaction of the County, should he/she be awarded the Contract.

## 4.    RESPONSIBILITY OF PROSPECTIVE CONTRACTORS REGARDING CONDITIONS OF THE PROJECT

A. The Contractor shall familiarize himself with all current codes, regulations and standards applicable to the specific work involved in the Contract.  He shall fully comply with all requirements of applicable codes, regulations and standards whether indicated in the Contract Documents or not, including any modifications made by the authorities having jurisdiction over the contract work during the lifetime of the Contract.  Appendix A is bound to these Instructions for the Contractor to review as an outline of these requirements. It should be noted that in accordance with Appendix A, that the provisions in this Appendix shall apply to the Contractor, its officers, agents and employees. The Contractor shall incorporate the provisions in this Appendix A in all applicable subcontracts and other agreements executed by the Contractor in connection with the performance of the Contract.  Section 18 of Appendix A, "CODE AND ORDINANCE REQUIREMENTS" provides information regarding the use of the County's Clearinghouse including Contracts funded in part or in whole by the General Obligation Bond's funded program.

B. All information given on the Plans or in the Contract Documents relating to geotechnical information should not be considered by the Contractor to conclude that the subsurface conditions will be consistent between test information locations.  All such information was prepared for the information of the Department's Engineers only, and permission to examine the same is extended to prospective Contractors for their convenience.  In no event is such information, including any shown on the Contract Plans, to be considered a part of this Contract.

C. The Contractor shall consider all costs and expenses associated with the submittals, including re-submittals (if any), including shop drawings, as being included within the prices contained in the Proposal. The cost of any fees such as the direct cost of required permits shall be paid by the Department, if specifically provided for in a dedicated allowance, unless otherwise stated.

## 5.    PRE-BID CONFERENCE

A Pre-bid Conference will be held at 10:00 AM on Tuesday, November 22, 2010, at the Stephen P. Clark Center, 111 NW 1st Street, 18th Floor, Conference Room 18-3, in order to discuss this solicitation.  Since space is limited, it is recommended that one representative of each firm attend in order to become familiar with the Solicitation and conditions of usage.  Attendees are encouraged to bring this Solicitation Package to the conference, since copies will not be available for distribution at the meeting.  While attendance is not mandatory, Prospective Contractors are encouraged to attend, in order to become familiar with the requirements for this project.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 6 of 12
Prepared by CAS/DCSD
Revised 10/1/11

F. In case the Contractor is ordered to perform Work under this paragraph, which in the reasonable determination of the Project Manager, is impracticable to have performed by the Contractor's own employees, the Contractor will, subject to the approval of the Project Manager, be paid the actual cost to Contractor of such Work, and in addition thereto five (5%) percent to cover the Contractor's superintendence, administration and other overhead expenses.

G. Payment of any amount under this paragraph shall be subject to subsequent audit and approval, disapproval, modification or revision by representatives of the County.

## 77. CHANGE ORDER PROCEDURES AND BASIS FOR PAYMENT

A. Extra Work shall result in an equitable adjustment (increase or decrease) to the applicable Contract representing the reasonable cost or the reasonable financial savings related to the change in Work.  Extra Work may also result in an equitable adjustment in the contract schedule for performance for both the Extra Work and any other Work affected by the Extra Work.

B. The Project Manager shall initiate the Extra Work procedure by a notice to Contractor outlining the proposed Extra Work.  Upon receipt of the notice to proceed with the Extra Work, the Contractor is required to immediately start the Extra Work. The Contractor is required to obtain permission for an extension to start the Extra Work if it is beyond the Contractor's ability to start within the allotted timeframe.

C. The Contractor is required to provide the Project Manager or designee with a detailed Change Order Proposal, which shall include requested revisions to the Contract, including but not limited to adjustments in the Contract price and schedules for performance for the applicable Contract.  The Contractor is required to provide sufficient data in support of the cost proposal demonstrating its reasonableness.  In furtherance of this obligation, the County may require that the Contractor submit any or all of the following: a cost breakdown of material costs, labor costs, labor rates by trade, and Work classification and overhead rates in support of Contractor's Change Order Proposal.  The Contractor's Change Order Proposal must include any schedule revisions and an explanation of the cost and schedule impact of the extra Work on the project.  If the Contractor fails to notify the Project Manager of the schedule changes associated with a Notice of Proposed Change Order by submitting a revised schedule document, it will be deemed to be an acknowledgment by Contractor that the proposed Extra Work will not have any scheduling consequences.  The Contractor agrees the Change Order Proposal will in no event include a combined profit and home office overhead rate in excess of fifteen (15%) percent of the direct labor and material costs, unless the Project Manager determines that the complexity and risk of the Extra Work is such that an additional factor is appropriate.  The Change Order Proposal may be accepted or modified by negotiations between the Contractor and the County.  If an agreement on the Extra Work is reached, both parties shall execute the Extra Work order in writing.  The execution by the Contractor of the Extra Work order shall serve as a release of the County from all claims and liability to the Contractor relating to, or in connection with, the Extra Work, including any impact, and any prior acts, neglect or default of the County relating to the Extra Work.

## 78. INSPECTION

A. At all times during the Contract, the Project Manager shall have the right to undertake a thorough inspection of the Work, including materials and their manufacture or preparation, and to draw the attention of the Contractor to any and all defects in workmanship, materials or other errors or variations from the Contract requirements.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 43 of 50
Prepared by CAS/DCSD
Revised 10/1/11

B. The right of inspection herein provided is intended solely for the benefit of the County. Neither the right of inspection nor any failure to draw attention to or point out such defects, errors or variations shall give the Contractor any right or claim against the County or shall in any way relieve the Contractor from its obligations under the term of the Contract.

C. If the Project or any part thereof shall be found defective, the Contractor shall without cost to the County, forthwith remedy such defect in a manner necessary to comply with the Contract.

D. The Contractor shall at all times provide the Project Manager and his or her designated representatives all facilities necessary, convenient or desirable for inspecting the Project. The Project Manager and any designated representative shall be admitted at any time, without delay, to any part of the Work Site and shall be permitted to inspect materials at any place or stage of their manufacture, preparation, shipment or delivery.

E. Any inspection hereunder shall not reasonably disrupt the Contractor's performance of the Project.

## 79. UNCOVERING FINISHED WORK

The Project Manager's right to make inspections shall include the right to order the Contractor to uncover or take down portions of finished Work. The Project Manager or Owner's Representative shall notify the Contractor in writing concerning all uncovered finished Work. Should the Work prove to be in accordance with the Contract, the uncovering or taking down and the replacing and the restoration of the parts removed will be treated as Extra Work for the purpose of computing additional compensation and an extension of time. Should the Work examined prove unsatisfactory, such uncovering, taking down, replacing and restoration shall be at the expense of the Contractor. Such expenses shall also include repayment to the County for any and all expenses or costs incurred by it, including employee salaries or related cost, in connection with such uncovering, taking down, replacing and restoration at the Work Site.

## 80. CORRECTION OF WORK

A. The Contractor shall promptly correct all Work rejected by the Project Manager as defective or as failing to conform to the Contract, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed. The Contractor shall bear all cost of correcting such rejected Work, including the cost of the County's additional services thereby made necessary.

B. The Contractor further agrees that after being notified in writing by the Owner of any Work not in accordance with the requirements of the Contract or any defects in the Work, the Contractor will commence and prosecute with due diligence all Work necessary to fulfill the terms of the Contract and to complete the Work within a reasonable period of time, as determined by the Project Manager, and in the event of failure to so comply, the Contractor does hereby authorize the County to proceed to have such Work done at the Contractor's expense and that the Contractor will pay the cost thereof upon demand. The County shall be entitled to all costs, including reasonable attorneys' fees, necessarily incurred upon the Contractor's refusal to pay the above costs. Notwithstanding the foregoing paragraph, in the event of an emergency constituting an immediate hazard to the health or safety of personnel, property, or licensees, the County may undertake, at the Contractor's expense, without prior notice, all Work necessary to correct such hazardous condition when it was caused by Work of the Contractor not being in accordance with the requirements of the Contract.

C. If, within five (5) years after the date of final completion of the Project or within such longer period of time as may be prescribed by law, by the Contract, or by the terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 44 of 50
Prepared by CAS/DCSD
Revised 10/1/11

defective or not in accordance with the Contract, the Contractor shall correct it promptly after receipt of a written notice from the County to do so.  The County shall give such notice promptly after discovery of the condition.

D. All such defective or non-conforming Work shall be removed from the site if necessary and the Work shall be corrected to comply with the Contract without cost to the County.

## 81.   ACCEPTANCE OF DEFECTIVE OR NON-CONFORMING WORK

The County, in its sole discretion may elect to accept in writing defective or non-conforming work instead of requiring its removal and correction.  In such instances, a Change Order will be issued to reflect an appropriate reduction in the Contract, or, if the amount is determined after final payment, any difference in the amount shall be paid to the County by the Contractor.

## 82.   TESTS

All tests required to be performed by the Contractor, shall be made at the expense of the Contractor.

## 83.   CHOICE OF LAW, VENUE

The Contract shall be governed by and construed in accordance with the laws of the State of Florida.  The parties agree that the venue for any and all claims arising from the Contract shall be exclusively in the U.S. District Court for the Southern District of Florida or in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

## 84.   SEVERABILITY

If the Contract contains any provision found to be unlawful, the same shall be deemed to be of no effect and shall be considered stricken from the Contract without affecting the binding force of the Contract as it shall remain after omitting such provision.

## 85.   CONTRACT CONTAINS ALL TERMS

The Contract and all documents incorporated herein by reference contain all the terms and conditions agreed upon by the parties hereto, and no other agreement, oral or otherwise, regarding the subject matter of the Contract shall be deemed to exist or to bind any of the parties hereto, or to vary any of the terms contained herein.

## 86.   SURVIVAL

The parties acknowledge that any of the obligations in the Contract will survive the term, termination and cancellation hereof.  Accordingly, the respective obligations of the Contractor and the County under the Contract, which by nature would continue beyond the termination, cancellation or expiration thereof, shall survive termination, cancellation or expiration thereof.

## 87.   CONTRACTOR'S SUPERVISION

A. Prosecution of Work:  The Contractor shall give the Work the attention and supervision necessary to ensure its progress according to the approved schedule in conformance with all codes and requirements and to a level satisfactory to the Project Manager/Owner's Representative and with other contractor's at the Work Site.

B. Contractor's Superintendent:  The Contractor shall, maintain a Superintendent who is competent in the type of Work being performed at the Work Site at all times while Work is in progress to act as the Contractor's agent.  The Contractor's Superintendent shall have full authority to receive instructions from the Project Manager and to execute the orders or

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 45 of 50
Prepared by CAS/DCSD
Revised 10/1/11

**95.   MANUFACTURER'S INSTRUCTIONS**

A.  The Contractor shall:

1.  Comply with the manufacturer's applicable instructions and recommendations for the performance of the Work, to the extent that these instructions and recommendations are more explicit or more stringent than requirements indicated in the Contract.

2.  Inspect each item of materials or equipment immediately prior to installation and reject damaged and defective items.

3.  Provide attachment and connection devices and methods for securing the Project; secure Work true to line plumb and level, and within recognized industry standards; allow for expansion and building movement; provide uniform joint width in exposed project; arrange joints in exposed project to obtain the best visual effect and refer questionable visual effect choices to the Project Manager for final decision when applicable to the job.

4.  Re-check measurements and dimensions of the Project, as an integral step in starting each portion of the Project.

5.  Install each unit or Section of Work during favorable weather conditions, which shall ensure the best possible results in coordination with the entire Project and isolate each unit of Work from incompatible Work as necessary to prevent potential interference among each Section and/or deterioration of equipment.

6.  Coordinate enclosure of the Work, which requires inspections and tests so as to minimize the necessity of uncovering Work for that purpose.

**96.   REVIEW OF RECORDS**

A.  The Contractor shall, during the term of the Contract and for a period of five (5) years after expiration date of the Contract, allow the County or the County's duly authorized representatives to inspect all payroll records, invoices for materials, books of accounts and other relevant records pertaining to the Contract.  Such records shall conform to Generally Accepted Accounting Principles requirements (GAAP), and shall only address those transactions related to the Contract.

B.  The Contractor agrees to maintain an accounting system that provides for accounting records that are supported with adequate documentation and adequate procedures for determining allowable costs.

C.  The Contractor shall develop the proper forms and reports acceptable to the County for the administration and management of the Contract and all Work.

**97.   WARRANTY**

A.  Unless otherwise stated, the warranty shall be for a period of one (1) year commencing with the execution of the Certificate of Final Acceptance, as required by the County.  The County reserves the right to all warranties offered during the normal trade of business and, at the direction of the project A/E, the Contractor shall execute an assignment of warranty document on all such commercial warranties allowing the County to submit and enforce such warranty after the expiration of the general warranty.  This assignment shall be duly executed by both the Contractor and the manufacturer transferring all rights of enforcement to the County at no additional cost to the County.

B.  For certain products such as mechanical equipment, roofing systems, coating systems, etc., the warranty period shall be as stipulated within specifications and the warranty period shall commence from the date the individual equipment or product is put into full productive

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 49 of 50
Prepared by CAS/DCSD
Revised 10/1/11

service. The warranty period, however, shall not commence until the proper warranty document(s) have been transferred and accepted by the County.

C. The Special Conditions of the Bid Solicitation may supersede the manufacturer's standard warranty. MANUFACTURER'S WARRANTIES WILL BECOME EFFECTIVE UPON FINAL COMPLETION OF THE PROJECT.

## 98. CONTRACTOR'S EVALUATION(S)

A. ISD shall have the responsibility to evaluate the efforts by the Contractor for each Contract utilizing a standard evaluation instrument created for this purpose. Depending on the size, term and complexity of each Contract, the ISD's construction manager most familiar with the on-going work in the field shall evaluate the Contractor's performance at least once; for longer term or more complex Contracts, the construction manager may create interim evaluations. If only one evaluation is done, it shall be completed just prior to the Contract completion however subsequent to the completion of the majority of punch list items.

B. Should the Contractors' performance require significant performance improvements, the ISD's construction manager shall create an interim evaluation as soon as poor performance is identified, in order to provide to the Contractor an evaluation exhibiting the failures and providing the Contractor the opportunity to make the necessary improvements.

**END OF SECTION 00110**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 50 of 50
Prepared by CAS/DCSD
Revised 10/1/11

# CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS ISD CONTRACT NO. Z000107

## DIVISION 0 – GENERAL DOCUMENTS
## SECTION 00120 - SUPPLEMENTAL GENERAL COVENANTS AND CONDITIONS

Article and Title                                                                                                                    Page

1.    GENERAL CONDITIONS ...................................................................................    2

2.    INSURANCE TO BE CARRIED BY CONTRACTOR ....................................    2

3.    PERFORMANCE AND PAYMENT BOND ......................................................    3

4.    DOCUMENTS FURNISHED BY THE COUNTY .............................................    5

5.    NOT APPLICABLE .........................................................................................    5

6.    COMMENCEMENT, PROSECUTION AND COMPLETION OF WORK ............    5

7.    LIQUIDATED DAMAGES ................................................................................    5

8.    ALLOWANCE ACCOUNTS .............................................................................    6

9.    SITE INVESTIGATION ....................................................................................    7

10.   PERMITS     ...................................................................................................    7

11.   NOT APPLICABLE .........................................................................................    7

12.   ACCESS TO SITE, STORAGE AND DUMP AREAS ......................................    7

13.   MEETINGS     .................................................................................................    8

14.   COORDINATION AND COOPERATION ........................................................    8

15.   SUBCONTRACTOR'S CERTIFICATE OF COMPETENCY .............................    8

16.   NOT APPLICABLE .........................................................................................    8

17.   RESTRICTIONS ON CONTRACTOR ACTIVITIES .......................................    8

18.   MAINTENANCE OF EXISTING FACILITIES ..................................................    8

19.   RIGHT OF TERMINATION .............................................................................    8

20.   CLAIMS, DISPUTES OR REQUESTS FOR EQUITABLE ADJUSTMENT............    8

21.   SUBMITTAL OF CLAIMS ................................................................................    10

22.   PRODUCT CONTROL APPROVAL ................................................................    12

Construction of Affordable Housing and                    00120 Supplemental General Covenants and Conditions - Page 1 of 14
Home Ownership in District 11 - Gran Via Apartments                                                Prepared by CAS/DCSD
ISD Contract No. Z000107                                                                              Revised 10/1/11

# SECTION 07510 (07 51 13)

# BUILT-UP ASPHALT ROOFING SYSTEM

## PART 1 - GENERAL

### 1.01   SUMMARY

A.   This Section includes labor, materials, and equipment to install the following roof system including, but not limited to:

1.   Preparation of existing concrete deck to receive new roofing.
   a.   Roofing contractor shall be responsible for the inspection and acceptability of the deck service to receive new roofing prior to commencing the work.
   b.   Deck must be properly cured prior to application of the roofing system.
   c.   Curing agents must be checked for compatibility with roofing materials. Prior to the installation of the roof assembly.
   d.   Deck shall be evaluated for surface moisture in accordance with ASTM D-4263 or hot bitumen test.
   e.   Deck shall be primed with ASTM D 41 primer at a minimum rate of 1gal/100 sq. ft. And allowed to dry prior to the application of the roofing system.
   f.   Fill all deck depressions with masonry grout and treat all cracks greater than 1/8" (3 mm) width.

2.   Insulation system (minimum R-30 average)
   a.   Minimum two layers of polyisocyanurate, in hot asphalt or as required to obtain a minimum R-30 average insulation value. Provide tapered insulation where required to achieve positive slope to storm drainage points, minimum 1/4"/ft. slope.
   b.   Top layer of high density perlite coverboard, or equivalent, if required by FBC.

3.   Roofing Membrane
   a.   Five-ply, built-up roof system
      1.   Base Sheet: One or more plies Stratavent® Perforated base sheet ASTM D 4897 Type II
      2.   Interplies: Three or more plies GAFGLAS Ply4, ASTM D2178, Type IV.
      3.   Capsheet:  One or more plies of GAF Energy Cap SBS 30 FR  ASTM D6163 Type I with a reflective surfaced achieving minimum **solar reflectance of .76 (initial).**

4.   Membrane flashings:  Finish membrane flashings shall be of same as capsheet.

5.   All parapet walls shall be fully wrapped with flashing membrane

6.   Measurement and calculation of all amounts of work and materials.

7.   Removal and proper disposal of all work related debris.

8.   Contractor shall verify that emergency roof drainage complies with Section 1617 of the Florida Building Code and Section 1107 of the Florida Plumbing Code:

9.   All work on overflow scuppers shall be in accordance with NRCA and SMACNA recommendations for metal lined scuppers through parapet walls and sections 1617 of the Florida Building Code and 1107 of the Florida Plumbing Code.
   a.   Minimum dimension of all trough wall scupper drains shall be 18 inches horizontal and 8 inches vertical.

10.   Walkway Pads and/or Protection pads shall be installed around all roof mounted equipment, and roof access.

11.   All Metal Profiles shall be minimum 24 ga. stainless steel.

12.   All expansion joints shall be factory fabricated assemblies and shall be pre-approved by the County Project Manager prior to their installation

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 1 of 12

13. Install new Roof Edging System – Drip Flashing 24 ga. stainless steel with a minimum 4 inch face and required wood blocking on all roof edge/eaves.
14. Bid price is also to include all related permit fees and permitting expenses. All work to be done in accordance with the Florida Building Code, HVHZ and the construction documents.

## 1.02   REFERENCE STANDARDS

A. References and industry standards listed in this Section are applicable to the Work. Unless more restrictive criteria or differing requirements are explicitly stated in the Specifications, or mandated governing codes or regulations, the recommendations, suggestions, and requirements described in the referenced standards are deemed mandatory and applicable to the Work.
   1. The Florida Building Code (FBC) Current Edition.
   2. Factory Mutual (FM Global) –Property Loss Prevention Data Sheets
   3. Underwriters Laboratories (UL) – Roofing Systems and Materials Guide
   4. American Society for Testing and Materials (ASTM) – Annual Book of ASTM Standards
   5. Sheet Metal and Air Conditioning Contractors National Association, Inc. (SMACNA) – Architectural Sheet Metal Manual
   6. National Roofing Contractors Association (NRCA)
   7. National Fire Prevention Association (NFPA)
   8. Underwriter Laboratory (UL)
   9. OSHA - Occupational Safety and Health Administration Washington, DC.
   10. Cool Roof Rating Council: CRRC-1-2005-Product Rating Program.

## 1.03   DEFINITIONS

A. The Florida Building Code (FBC) current edition.
B. Roofing Terminology:  Refer to ASTMD-1079 "Terminology Relating to Roofing and Waterproofing"; glossary of NRCA's "The NRCA Roofing and Waterproofing Manual"; and the Roof Consultants Institute Glossary of Roofing Terms for definition of terms related to roofing work in this Section.
C. National roofing Contractors Association.
D. Sheet Metal Terminology and Techniques:  SMACNA Architectural Sheet Metal Manual.

## 1.04   PERFORMANCE REQUIREMENTS

A. General:  Provide and install new roofing and waterproofing system that does not permit the passage/infiltration of water and remain watertight. The roof and waterproofing systems and all their components shall be designed and installed to withstand the design wind loads and uplift forces in accordance with the current FBC, HVZ and comply with FM Global requirements. This building is an essential government building and the calculated wind loads shall be performed as such. In case of a conflict with the referenced standard, the most stringent shall prevail.
B. Material Compatibility:  Provide roofing materials that are compatible with one another under conditions of service and application required, as demonstrated by roofing membrane manufacturer based on testing and field experience.
C. Jobsite Safety: Execute all operations and provide a safe work environment in accordance to OSHA standards and regulations. This requirement applies to all contractor personnel, associated subcontractors, workers in other trades, and jobsite visitors.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 2 of 12

      1.      Follow all industry fire prevention guidelines for storage of materials, staging areas, roof access, and application means and methods.

      2.      Any applicable local fire codes supersede industry guidelines.

D.  Provide system in compliance with products and installation of NOA:  NOA 08-1028.02 as applicable for concrete deck or approved equivalent.

E.  UL Listing:   Provide membrane roofing materials with the fire-test-response characteristics indicated as determined by testing identical products per test methods mandated by UL.  Identify materials with appropriate markings of applicable testing and inspecting agency.

## 1.05   SUBMITTALS

A.  Submittals Package – General

      1.      Submit the Shop Drawings, Product Data, Samples, and Quality Control Submittals specified below at the same time as a package.

      2.      All submittal packages must be submitted prior to the Pre-Installation conference.

B.  Product Data: Provide current standard printed product literature indicating characteristics of membrane materials, flashing materials, components, accessories, product specifications and installation instructions.

C.  Shop Drawings:  Submit plans of roof showing pitches and locations of details.  Submit custom details for every condition, including drain sumps, overflows and scuppers, all flashings and counter flashings, equipment base flashings, also showing attachment of extensions and flashings for pipes and vent stacks.

D.  Manufacturer's Certification, Bulk Bitumen: Submit manufacturer's certification indicating that bulk bituminous materials delivered to project comply with required standards. Include quantity, statistical and descriptive data for each product.  Submit certificate with each load before it is used.

E.  Application Manual:   Submit manufacturer's application manual, which describes completely the preparation of surfaces and application of specified materials, including details to suit all conditions.

F.  Applicator's Status:  Submit manufacturer's written proof of approved applicators status, submitted by the Manufacturer's Corporate Office.

G.  Material List:  Submit a descriptive list of all component parts of the roofing systems that will be covered under warranty. The warranty shall be in accordance with requirements herein.

H.  Base Sheet Fastening Patterns:  Provide drawings of fastener patterns as required to resist specified negative wind pressures in accordance with the Florida Building Code.

I.  Roofing Manuals: Submit, in a three-ring binder, all roofing data, including manufacturer's catalogs/manuals of materials and accessories used in the Project, including manufacturer's recommendations.

J.  Sample Warranty:  Submit a specimen copy of the specified warranty, with a list of all components to be guaranteed.

K.  Complete current Florida Building Code (FBC) High Velocity Hazard Zone (HVHZ) Protocols and required product Notice of Acceptance (NOA).

L.  Contractor shall be responsible for all permitting documentations.

## 1.06   QUALITY ASSURANCE

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 3 of 12

A.  Manufacturer's Qualifications: Product Manufactures shall be ISO 9000 certified. All products must be Miami-Dade County Product Control Approved.

B.  Installer's Qualifications: A single installer shall perform the work of this Section; and shall be a firm with not less than 3 years of successful experience in the installation of built-up roofing systems similar to those required for this project and which is acceptable to or licensed by the manufacturer of the primary roofing materials.

1.  Installer Certification:  Provide the County with written certification from the manufacturer of the roofing and waterproofing system certifying that the installer is approved by the manufacturer for installation of the specified roofing and/or waterproofing system.  Provide a copy of the certification to the County prior to award of the contract.

2.  Installer shall be experienced with the manufactures' published installation instructions, FBC, RAS117 & RAS 111.

C.  Source Limitations:  All components listed in this section shall be provided by a single manufacturer or approved by the primary roofing and/or waterproofing manufacturers respectively.

D.  Pre-Construction / Pre-Installation Meeting

1.  Shall not occur without approved Shop Drawings by the Contractor and Architect/Engineer of Record.  Shall convene a minimum of two weeks before starting work of this section.

2.  Required Attendees:

a.  Contractor.

b.  Roofing subcontractor.

c.  Roof System Manufacturer.

d.  Installers of deck or substrate construction to receive roofing work.

e.  County's Project Manager.

f.  County's Maintenance Representative.

3.  The County Project Manager shall make arrangements for the meeting and notify the parties required to attend.

4.  Agenda shall include:

Review preparation and installation procedures and coordinating and scheduling required with related work.

a.  Review roof system requirements (drawings, specifications, and other contract documents).

b.  Review Shop Drawings and associated submittals.

c.  Review manufacturer's technical materials.

d.  Review and finalize construction schedule related to roofing work and verify availability of materials, personnel, equipment and facilities needed to make progress and avoid delays.

e.  Review required inspection, testing, certifying and material usage accounting procedures.

f.  Review weather and weather forecast conditions, and procedures for coping with unfavorable conditions, including temporary roofing.

g.  Tour representative areas of roofing substrates (decks), inspect and discuss condition of the substrate, roof drains, curbs, penetrations and other preparatory work performed by other trades.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 4 of 12

**1.07   DELIVERY, STORAGE, HANDLING & DISPOSAL**

A.   Delivery:
1.   Deliver roofing materials to the site in the manufacturer's unbroken containers bearing the manufacturer's printed labels.
2.   All bitumen delivered with labels in accordance with D-312.
3.   For all bitumen delivered in tanker trucks, provide same manufacturer's certifications listed above.

B.   Storage and Handling
1.   The Contractor shall be solely responsible for the storage of his materials and equipment. On site storage of materials shall not be guaranteed. The County shall not be responsible for any stolen or damaged equipment and materials. Storage areas shall be approved and authorized by the County Project Manager and facility contact person. Deliver roofing materials to the site in the manufacturer's unbroken containers bearing the manufacturer's printed labels.
2.   Rooftop storage will be permitted only with the authorization of an engineer
  a.   Do not point load roof.
  b.   Move only a day's supply of material to roof at one time.
  c.   Do not store any flammables on roof.
3.   Store materials a minimum of 6" off the ground, in a dry, well ventilated place protected from the weather.
  a.   Enclosed trailers are recommended.
  b.   Temperature conditioned storage is required for temperature sensitive items.
4.   Mark for clear and evident identification all material that has been subject to moisture.
  a.   Remove such materials from the site.
5.   Handle roll goods with care.
  a.   Do not use roll goods which have been damaged.
  b.   Leave materials in their packaging until ready for use.
6.   Allow no unlabeled materials on site.
7.   In event of damage, immediately make all repairs and replacements required by Owner's Representative.

C.   Disposal
1.   All removed materials become the property of the contractor.
2.   Inspect ground areas surrounding roof on a daily basis for loose debris.
3.   Immediately move all debris off roof and into approved dumpster.
4.   Dumpster staging areas must be kept neat and tidy.
  a.   Do not allow to overflow.
5.   All debris must be transported to a legal dumpsite or recycling facility and documentation of each load must be maintained by the Contractor.


**1.08   PROJECT CONDITIONS**

A.   Weather Limitations: Proceed with installation only when existing and forecasted weather conditions permit roofing system to be installed according to Manufacturer's written instructions and guarantee requirements.
1.   Do not start roofing if rain is imminent, or ambient temperature is below 45°F.
2.   If rain occurs during roof membrane application, cease operations and protect deck, insulation, penetrations and membrane from water damage and intrusion.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 5 of 12

      3.     All roofing operations shall be carried out and scheduled so as to prevent any water damage or intrusion into the building, including during inclement weather. All costs of repairs for failure on the part of the contractor to take necessary precautions to avoid such water damage and intrusion shall be borne by the contractor.

B.  Flame-heated Equipment:

    1.     Locate and use flame-heated equipment so as not to endanger the structure or other materials on the site or adjacent property.

    2.     Do not place flame heating equipment on roof.

    3.     Provide and maintain fire extinguisher.

C.  Comply with all fire regulations. Ensure properly rated, charged, and inspected fire extinguishers are on the roof and staging area.

## 1.09   SUBSTITUTIONS

A.  When a particular make or trade name is specified, it is indicative the standard required. The basis of this specification is roofing system model number **I-4-1-MGFR** as manufactured by GAF Materials Corporation.

## 1.10   WARRANTY

A.  Manufacturer's Guarantee:   Single source NDL (No Dollar Limit), without monetary limitation, includes materials and workmanship to maintain roof in a watertight condition. Single-Source special warranty includes roofing membrane, base flashings, liquid applied flashing, roofing membrane accessories, fasteners, base-sheet, parapet copings, parapet membrane flashing, walkway products, manufacturer's expansion joints, manufacturer's edge metal products, and other single-source components of roofing system marketed by the manufacturer.

    1.     Additional Riders: Provide manufacturer's wind rider covering storm events up to 146 miles per hour (3 second gust).

B.  Warranty Period:  20 years from date of Completion.

    1.     Contractor shall be a manufacturer's certified applicator and shall include the copy of the Manufacturer's certification letter as part of the bid documents. Guarantee to run from date of substantial completion.  Manufacturer shall have a minimum AAA credit rating.

        a.    In addition to the required Manufacturer's twenty (20) year "No Dollar Limit" warranty for roofing systems, the contractor shall provide a 5-year warranty, in which contractor agrees to repair or replace components of roofing system that fail in materials or workmanship with the specified warranty period.  Failure includes roof leaks.  The warranty shall be a term type, with no conditions, exclusions, exclusions of remedies by the County, deductibles or limitations on coverage amount.  Any conditions, exclusions, or limits proposed by the installer must be approved by the County in writing.   Each Installer shall list which roof system component(s) are covered by them.

# PART 2 - PRODUCTS

## 2.01   MANUFACTURERS

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 6 of 12

A. In other Part 2 articles where titles below introduce lists, the following requirements apply for product selection:

1. Products:  Subject to compliance with requirements, provide one of the products specified

2. Manufacturers:  Subject to compliance with requirements, provide products by the manufacturers specified.

## 2.02   MATERIALS

A. Wood Nailers and Blocking: Structural grade lumber any commercial softwood species, kiln dried and preservative treated in accordance with the FBC.

B. Fasteners: In accordance with requirements of Florida Building Code and Miami-Dade Notice of Acceptance for roof system specified.

C. Concrete Deck surface patching (if needed): Use Siplast Zono-Patch or approved equivalent    (800-922-8800).

D. Water: Clean and potable, free of organic matter.

F. Thermal Layer

1. General: Provide preformed roof insulation boards that comply with requirements and referenced standards, selected from manufacturer's standard sizes and of thicknesses indicated that will achieve a minimum average insulation R-30 value throughout the roof. Slope insulation so that there will be zero ponding on any part of the roof.

2. Polyisocyanurate.

   a. A rigid roof insulation board composed of a closed cell polyisocyanurate foam core bonded in the manufacturing process to universal fiber glass reinforced facers. Provide product that utilizes an environmentally compliant blowing agent containing pentane hydrocarbon to enhance the thermal performance of the foam insulation. This hydrocarbon has zero ozone depletion potential and conforms to the Montreal Protocol established in 1987.

   b. Reference Standards
      1. ASTM C 1289-02 Type II, Class I, Grade 2.
      2. CAN/ULC S 704.

   c. Product
      1. ENRGY 3 or approved equivalent

   d. Typical Physical Properties.
      1. Nominal Thickness: 2 layers of 2" thickness minimum

3. Tapered Polyisocyanurate System

   a. Tapered Pre-Cut polyisocyanurate crickets consist of sloped insulation panels that are professionally designed, factory cut and composed of a foam core bonded in the foaming process to universal fiber glass reinforced facers on both sides.

   b. Reference Standards
      1. ASTM C 1289
      2. Federal Specification HH-I-1972/Gen and HH-I-1972/2
      3. CAN/ULC-S704-01, Type 3, Class 2 (See CCMC Evaluation Report 13058-L).

   c. Product
      1. Tapered ENRGY 3 Pre-Cut Crickets or approved equivalent

4. Thermal Layer Securement

   a. Adhered. Use manufacturer's approved asphalt.

G. Base Sheet

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 7 of 12

1. Base Sheet
   a. One or more plies Stratavent® Perforated base sheet ASTM D 4897 Type II.
   b. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance.
2. Interplies.
   a. Three or more plies GAFGLAS Ply4, ASTM D2178, Type IV.
   b. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance.
3. Capsheet
   a. One or more plies of GAF Energy Cap SBS 30 FR  ASTM D6163 Type I.
   b. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance.
H. Base Flashings
   1. Membrane flashings:  Finish membrane flashings shall be of same as capsheet.
   2. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance
I. Parapet Walls
   1. All parapet walls shall be fully wrapped with flashing membrane.
J. Walk Pads
   1. Minimum one or more layers of Capsheet or approved equivalent, installed around all roof mounted equipment, and roof access.
K. Metal Profiles
   1. Minimum pre-manufactured 24 ga., stainless steel.
   2. Downspout, scuppers, and spillouts, shall be pre-manufactured with mitered and soldered joints installed in accordance with the FBC.
   3. Drip Flashing 24 ga. stainless steel with a minimum 4 inch face and required wood blocking on all roof edge/eaves.
L. Pipe Penetrations: Use M-Curb system, a structural urethane other shell, bonded to the roof surface, filled with rubber sealant, or approved equivalent.
M. Asphalt shall be low odor low fume and comply with roofing manufacture's recommendation and the FBC.
N. Cants and Edge Strips
   1. Provide strip manufactured from a high density, laminated board made of high strength fibers and expanded perlite.
   2. Reference Standard:      ASTM C 728.
O. Roof Edging System – Drip Flashing/Gravel Stop
   1. Decorative metal drip flashing/gravel stop with continuous extruded aluminum bar to terminate roofing at perimeter. Provide watertight system with no exposed fasteners and butt type joints with concealed splice plates, 26 ga., RAS 111.
   2. Accessories
      a.    Provide miters, downspout scuppers, spillout scuppers fabricated by manufacturer.
      b.    Employ welded base assembly to maintain watertight integrity.
      c.    Provide matching brick wall cap, downspout, extenders, or other.
      d.    Surface Mounted Reglet: At parapet walls use surface type SM reglet as manufactured by FryReglet or approved equivalent. Install in accordance with RAS 111. Seal top with polyurethane sealant or approved equivalent.
P. Plumbing Vents:  Lead (RAS 111) or pre-manufactured pre-flashed with modified bitumen membrane.  Vent type to be approved by the A/E.
Q. Pipe Supports: New UV resistant polycarbonate condensate pipe supports as manufactured by Miro Industries Salt Lake City UT, Tel (801) 975-9993 Model No. M8UFS or approved equivalent.
R. Pipe penetrations: use M-Curb system, a structural urethane outer shell, bonded to the roof surface, filled with rubber sealant, or approved equivalent.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 8 of 12

## PART 3 - EXECUTION

### 3.01   PREPARATION

A. Surface Preparation
1. Inspect concrete deck closely for smoothness, cracks over 1/8 inch, spalling, rust staining, excessive deflection, moisture. Perform manufacturer's dryness test to ensure that deck is ready to receive waterproofing system and that application medium bonds well to surface.
2. Prepare and prime substrate surfaces per manufacturer's recommendations and Miami Dade County NOA, and FBC.
3. Unacceptable areas should be brought to the attention of the County Project Owner's Representative and must be corrected prior to installation of roofing system.
4. Repair of incidental surface damages, unintended low areas, rough cold joints and fastener holes in existing lightweight insulating concrete substrates. Use Zono-patch concrete repair mortar as recommended by manufacturer and trowel finish to a smooth surface.
5. Ensure that wood blocking has been installed as detailed in the plans and specifications.
6. Ensure that all counter-flashing receivers, curbs, etc., are constructed in such a manner as to provide a minimum 8" base flashing height measured from the finished roof's surface to the top of the base flashing membrane.

### 3.02   HEATING BITUMEN

A. Preparation
1. Use separate kettles or tankers for heating different types of asphalt.
2. Strictly regulate the heating process by means of an automatic thermostatic control of an approved type for positive temperature control.
3. Provide kettles or tankers with the following features:
   a. 100% safety shutoff.
4. Location heating kettles on the ground, with the asphalt pumped to the roof and in accordance with NFPA 16.7.
   a. Kettles shall not be placed on the roof.
   b. Gas Cylinders (comply with NFPA requirements):
   c. Provide fire extinguishers on the roof and in the vicinity of the kettles as required to ensure the safety of the roof.

B. Heating Asphalt Bitumen
1. Heat the bitumen in accordance with the Equiviscous Temperature information furnished by the bitumen manufacturer for that specific run of bitumen.
   a. Maintain the temperature of the bitumen at the point of application within the Equiviscous Temperature Range.
      1. Use insulated pipes, buckets, luggers, and other insulated roofer's equipment as required by the field conditions.
      2. Contractor must have at least one hand held thermometer for each crew installing hot asphalt in order to ensure compliance with EVT.
2. The accepted application temperature range for asphalt is the equiviscous temperature (EVT), ±25°F.  All felt installation must occur in this range to be acceptable.

### 3.03   INSTALLING THERMAL LAYERS

A. Initial Layer
1. Starting at the low edge of the roof, adhere thermal layer board in hot asphalt.
   a. Install boards with long joints continuous.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 9 of 12

       b.      Stagger short joints.
       c.      Butt joints tightly.
       d.      Embed each ply in a solid mopping of specified asphalt applied below the EVT.

2.     Keep insulation absolutely dry at all times. Discard insulation that contains moisture.
       a.      Install only as much insulation as can be covered with roofing membrane the same day.

## 3.04   INSTALLING ROOFING MEMBRANE

A.  Membrane
    1.     End laps shall be a minimum of 6 inch staggered at a minimum of 3 feet, with 4 inch minimum side laps.
    2.     Membrane installation shall be in accordance with Mia I Dade County NOA and FBC.

## 3.05   INSTALLING FLASHINGS, ACCESSORIES

A.  Temporary Flashings:
    1.     Provide a temporary waterproof seal at all membrane edges, penetrations, drains, etc. Unless complete flashings are installed immediately (same working day) following the membrane application.

B.  Preparation:
    1.     Inspect walls, curb heights, counterflashings, etc., and check for conformance with minimum base flashing height of eight (8").
    2.     Bring non-conforming areas to the attention of the Owner's Representative for correction.

C.  Primer:
    1.     Prepare and prime substrate surfaces per manufacturer's instructions.
       a.      Abrade and grind surfaces and clean metal surfaces to bare metal when recommended by the manufacturer.
       b.      Follow manufacturer's recommendations for required temperature of substrate and materials, and for filling of voids.
    2.     Prime all masonry, metal, or concrete surfaces from the top of the roof membrane to the termination of the flashing level with asphalt primer at the rate of one (1) gallon per 100 square feet or as recommended by the manufacturer.
    3.     Allow the primer to dry thoroughly.
    4.     Ensure that bonding surfaces to which the seal or flashing are to be placed are clean and free of moisture, dirt, grease, oil, loose material, foreign material, and debris.

D.  Installing Flashings:
    1.     Flashings are critical to the success of the roofing system and flashing conditions vary wildly.  In addition to guidelines below, consult manufacturer for general flashing guidelines and project specific flashing design.
    2.     Provide seals or flashing at penetrations of the roof membrane as required for a watertight roof system, and as indicated on the Drawings, and as approved by the roof system manufacturer for inclusion in the roofing warranty.
    3.     Install two ply base flashing system using specified modified bitumen base sheet and built-up cap sheet at all intersections formed by changes of plane, and wherever curbed roof openings, wall, parapets, or other structure joint penetrates the roof.
       a.      Install flashing system in manufacturer's approved hot, steep asphalt at EVT.

E.  Fluid-Applied Flashing System
    1.     Based on PermaFlash System.  Follow manufacturer's instructions.

        a.      Lay out reinforcement fabric around penetration and cut to fit.  Wrap fabric around penetration and bridge all vertical to horizontal transitions.

        b.      Apply fluid-applied flashing directly to prepared substrate.  Adhere fabric by pressing into the fluid-applied flashing while still wet.

        c.      Completely cover fabric with at least 60 mil coat wet film thickness of fluid-applied flashing, and as required by the manufacturer.

        d.      Extend top coat of fluid-applied flashing system 2 inches beyond edges of reinforcement fabric.

F.   Installing Walkway Pads/Splash Block/Protection Pad:

    1.     Set the pads in a solid bed of plastic cement compatible with the cap sheet material.

    2.     Leave adequate space between pads so that positive drainage is not affected from installation.

## 3.06   INSTALLING ROOF EDGING SYSTEM

A.   Inspection:

    1.     Verify that the roof edging installation will not disrupt other trades.

    2.     Verify that the substrate is dry, clean and free of foreign matter.

    3.     Report and correct defects prior to any installation.

B.   Installation of Roof Edging System:

    1.     Submit product design drawings for review and approval to Owner's Representative or Specifier before fabrication.

        a.      Check as-built conditions and verify the manufacturer's roof edge details for accuracy to fit the wall assembly prior to fabrication.

    2.     Comply with the roof edging manufacturer's installation guide when setting edging.

    3.     Use provided fasteners consistent with manufacturer's instructions, suitable for the substrate to which it is being installed and in accordance with RAS 111.

## 3.07   FIELD QUALITY CONTROL

A.   Field Samples

    1.     Draw a quart sample from each load of bitumen arriving at the job site in the presence of the Owner's Representative, who will take it for laboratory analysis.

B.   Test Strip (if requested by the Owner):

    1.     When and where directed by the Owner's Representative, and before surfacing is applied to the completed membrane:

        a.      Cut a strip 3" wide by 40" long thru all plies of the roofing system. Number of such test strips may be as required by the Representative.

        b.      After removal of the strip, immediately repair the area by applying the same number of plies of the same kind of felt and bitumen over the filled strip with the first ply.

    2.     Lap each edge 12" and each succeeding ply lapping the preceding ply by at least 3" on all edges.

        a.      Approximate quantities of components within roofing membrane will be determined according to ASTM D 3617.

    3.     Turn the test strips over to the Authority's Representative for examination.

        a.      If the test strips indicate the roofing system complies with the Specifications, the Authority will bear the cost of the test strip Work.

        b.      If the strips indicate the roofing system does not comply with the Specifications, the Contractor will bear the cost of the test strip Work, and will repair or replace all roofing Work as required to comply with the Specifications, at the Contractor's expense.

C.   Non-Compliance:

    1.     Failure of the bitumen samples or the test strip samples to meet the Specification requirements will be cause for rejection of the Work.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 11 of 12

**3.08   INSPECTION**

   A.  After all roofing system Work is completed, provide an inspection by the roofing system manufacturer's representative. Representative must be employed expressly as a technical employee and not concurrently function in a sales role.  Provide, via the representative, documentation verifying that roofing system has been installed according to the Specifications.

**3.09   CLEANING**

   A.  Keep newly installed roofing membrane clean and new in appearance under the assumption that all areas of roofing are aesthetically essential.  Contractor may be directed to remedy – and if no remedy available – replace, newly roofed areas that are not maintained as such during the balance of installation.

   B.  Restore all other building surfaces and areas affected by roofing application to same condition of aforementioned on day of job start.

   C.  Remove all debris from roof and staging areas.

**END OF SECTION**

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 12 of 12

# EXHIBIT B

## Nielson, Hoover & Associates
### Bond Department

Public Works Bond
In compliance with Florida Statutes 255.05(1)(a)

| | |
|---|---|
| **Bond No.** | 21BCSFZ7956 |

| | |
|---|---|
| **Contractor** | **Siltek Group, Inc.** |
| **Address** | 1232 North University Drive, Suite 101 Plantation, FL 33322 |
| **Phone No.** | (954) 370-1368 |
| **Surety Company** | **Hartford Casualty Insurance Company** |
| **Address** | One Hartford Plaza Hartford Connecticut 06155 |
| **Phone No.** | (860) 547-5000 |
| **Owner Name** | **Miami-Dade County** |
| **Address** | 111 N.W. 1st Street Miami, FL 33128 |
| **Phone Number** | (305) 375-5071 |
| **Contract/Project No.** | Z000107 |
| **Project Name** | *Construction of Affordable Housing and Home Ownership in District 11 – Gran Via Apartments* |
| **Project Location** | Miami, FL |
| **Legal Description and/or Street Address** | SW 127th Avenue and SW 8th Street, Miami, FL 33184 |
| **Description of Work** | Construction |

Front Page
All other bond page(s) are deemed subsequent to this page regardless
of any page number(s) that may be preprinted thereon.

RECEIVED

JUN 14 2012

RISK MANAGEMENT
DIVISION

Bond No. 21BCSFZ7956

# CONSTRUCTION OF AFFORDABLE HOUSING AND
# HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS
# ISD CONTRACT NO. Z000107

## SECTION 00615 - SURETY PERFORMANCE AND PAYMENT BOND

By this Bond, We ___SILTEK GROUP, INC.___ as Principal, whose principal business address is ___1232 North University Drive, Suite 101, Plantation, FL 33322___ as Contractor under the contract dated _____ , 20___, between Principal and Miami-Dade County for the construction of Affordable Housing and Hole Ownership in District 11 - Gran Via Apartments, ISD Project No. Z000107 (herein after referred to as "Contract"), the terms of which Contract are incorporated by reference in its entirety into this Bond, and ___Hartford Casualty Insurance Company___, a corporation, whose principal business address is ___One Hartford Plaza, Hartford, CT  06183___ as Surety, are bound to Miami-Dade County (hereinafter referred to as "County") in the sum of ___Nine Million Seven Hundred Twenty Thousand Twenty Nine Hundred Fifty___ U.S. dollars ($ 9,720,950.00 ), for payment of which we bind ourselves, our heirs, personal representatives, successors, and assigns, jointly and severally.

THE CONDITION OF THIS BOND is that if Principal:

1. Performs all the work under the Contract, including but not limited to guarantees, warranties and the curing of latent defects, said Contract being made a part of this bond by reference, and in the times and in the manner prescribed in the Contract, including any and all damages for delay; and

2. Promptly makes payments to all claimants, as defined in Section 255.05(1), Florida Statutes, supplying Principal with labor, materials, or supplies, used directly or indirectly by Principal in the prosecution of the work provided for in the contract; and

3. Pays County all losses, damages, including damages for delay, expenses, costs and attorney's fees, including appellate proceedings, that County sustains because of a default by Principal under the Contract, including but not limited to a failure to honor all guarantees and warranties or to cure latent defects in its work or materials within five (5) years after completion of the work under the Contract; and

4. Performs the guarantee of all work and materials furnished under the contract for the time specified in the Contract, including all warranties and curing all latent defects within five (5) years after completion of the work under the Contract;

Then this bond is void; otherwise it remains in full force.

If no specific periods of warranty are stated in the Contract for any particular item or work, material or equipment, the warranty shall be deemed to be a period of one (1) year from the date of final acceptance by the County. This Bond does not limit the County's ability to pursue suits directly with the Principal seeking damages for latent defects in materials or workmanship, such actions being subject to the limitations found in Section 95.11(3)(c), Florida Statutes.

Any changes in or under the Contract Documents and compliance or noncompliance with any formalities connected with the Contract or the changes does not affect Surety's obligation under this Bond.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 1 of 2
Prepared by CAS/DCSD
Revised 10/1/11

**This bond is given to comply with section 255.05** Florida Statutes, and any action instituted by a claimant under this bond for payment must be in accordance with the notice and time limitation provisions in Section 255.05(2), Florida Statutes.

**IN WITNESS WHEREOF**, the above bounden parties have caused this Bond to be executed by their appropriate officials as of the _____ day of _____, 20___.

ATTEST:
Contractor:

Siltek Group, Inc.
_____
Contractor's Full Name

By: _____~RENEA SIERRA~_____
VPresident, Managing Partner or
Joint Venturer

Siltek Group, Inc.
_____
Legal Name of Contractor

_____
Signature

_____
Corporate Seal

COUNTERSIGNED BY RESIDENT FLORIDA
AGENT OF SURETY:

*Charles D. Nielson*

(Copy of Agent's current Identification Card as
issued by the State of Florida Insurance
Commissioner must be attached)

SURETY:

Hartford Casualty Insurance Company
_____

By: *Charles D. Nielson*
_____
Attorney-In-Fact  Charles D. Nielson

BOND APPROVED AS TO
INSURANCE REQUIREMENTS
~Rose Yowie~
RISK MANAGEMENTS DIVISON
DATE: 07/06/12

_____
Corporate Seal (Power of Attorney
must be attached)

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 2 of 2
Prepared by CAS/DCSD
Revised 10/1/11

EXHIBIT C





**20 YEAR NDL**
**LIMITED WARRANTY**

Date Issued: **6/24/2014**  Warranty No.: **W3001817**  20 Years From: **04/08/2014**  Spec #: **FRP-N-B3**
WHEREAS, CertainTeed, 750 E. Swedesford Rd., Valley Forge, PA (hereinafter referred to as 'CT'), has sold its products which have been used in applying a roof membrane on the building described as follows:
Owner: **MIAMI DADE COUNTY , 111 NW 1 AVE , MIAMI, FL, 33125, 954-370-1368**
Building: **GRAN VIA , 12700 SW 8 ST , MIAMI , FL, 33184, N/A**
CT Specification: **FRP-N-B3**  Roofing Areas: **350 squares**
Applied By: **Aleluya Roofing, 7351 NW 7th Street, Bay H, Miami, FL, 33126, 305-261-8814**

**Coverage**
CertainTeed Corporation (CT) hereby warrants the roof system installed at the above address, subject to the following terms, conditions, limitations and exclusions, for a period of **20** years from the date of completion of the roof system installation. If, during the duration of this Limited Warranty, a deficiency in the workmanship of the roof system installation or a manufacturing defect in the roof system causes a leak, CT or its designated roofing contractor will, at CT's expense, repair the roof system as necessary to restore it to a watertight condition. Only deficiencies in the roof system that cause leaks are covered by this Limited Warranty. In no event will CT be responsible for any costs related to the removal or abatement of any asbestos present in any existing roof system to which the CT roof system is applied. Roof system, as used herein, shall include the following components: FlintBoard™ Insulation, FlintFast™ Fasteners, FlintPrime™ Primers, FlintCoat™ Coatings, FlintBond™ Adhesives, applicable base sheet(s), interplies and cap sheet(s) (with appropriate roof coating of surfaces) required by the CT Product Specification, and asphalt material between layers when required, if applied per CT's Commercial Roof Systems Manual specification. Roof components which are not part of the roof system and hence not covered by this Limited Warranty include the following: underlying roof deck, insulation (non CT brand), vapor retarders, fasteners (non CT brand), metal work (non CT brand), drains, pitch pans, expansion joints, skylights, vents, plastic accessories, decorative or reflective coating (non CT brand), surfacing and/or any aggregates.

**Exclusions from Coverage**
This Limited Warranty does not cover leaks, damages or injuries of any type, including, but not limited to, damage to roof insulation, roof decks or other bases over which the CT products are applied, attributable directly or indirectly to any of the following:
1. Natural disasters, including, but not limited to, cyclones, tornadoes, hurricanes or other winds exceeding Force 9 on the Beaufort scale, lightning, earthquakes, flood, hail or fire.
2. Falling objects, civil insurrection, war, riot or vandalism.
3. Settlement, deflection, movement, moisture content, inadequate attachment or other deficiencies of the roof deck, pre-existing roof system, walls, foundations or any other part of the building structure, insulation or other materials underlying the roof system.
4. Failure of the roof system caused or contributed by:
   a. Maintenance, repair or work on the roof unrelated to the roof system, such as mechanical, electrical or plumbing;
   b. Infiltration or condensation of moisture in, through or around the walls, copings and metal components, pitch pans, building structure or underlying or surrounding materials;
   c. Traffic of any nature or use of the roof surface as a storage area, walking or recreational surface or for any other similar purpose;
   d. Movement or deterioration of metal work used in conjunction with the roof system;
   e. Deposits of solids or liquids which may cause deterioration of the roof system;
   f. Building design or construction;
   g. Lack of positive drainage, to completely remove water from the roof system per NRCA guidelines; or
   h. Installation over a wet surface or substrate.
5. Failure to adhere to CT's roof maintenance program (see CT's Roof Maintenance Form).
6. Unauthorized application on excluded buildings or structures (see CT's General Recommendations).
7. Any change in the building's basic usage unless approved in advance in writing by CT.
8. Any use of roofing material of any kind or nature not approved in CT's Commercial Roof Systems Manual.
9. Placement of any additional structures on the roof system (such as, but not limited to, equipment or framework used in connection with air conditioning units, transmission and/or reception devices, signs and/or water towers).
10. Failure to maintain the watertight integrity of the roof system. Owner must make repairs within 30 days of notification by CT to non-warranted items that affect the watertight integrity of the roof system.
In addition, CT will not be responsible for, or have any liability for, changes to the appearance of the roof system that do not result in roof leaks. This includes, but is not limited to, the loss of granules from the cap sheet and/or surface cracking due to weathering or normal wear and tear from the elements.

**Non-Warranted Repairs**
Repairs must be made by a CT Gold or Silver Star roofing contractor or roofing contractor approved in advance by CT. Should a non-warranted repair be made by any roofing contractor, payment must be remitted to the roofing contractor within 30 days from completion of the work or the Limited Warranty will be void. Should non-warranted repairs not be made within 30 days of notification by CT, the Limited Warranty will be void.

**Two-Year Inspection**
A mandatory inspection will be made of the roofing membrane within 2 years from the date of application. If for any reason CT or its authorized representative is not granted access to perform the inspection this Limited Warranty shall be void.

**Unapproved Repairs, Alterations, Deletions or Additions**
All repairs, alterations, deletions or additions to any aspect of the roof, or any material contiguous thereto, must have prior written approval of CT's Commercial Warranty Department (CertainTeed Roofing Products Group, Commercial Warranty Department, 1400 Union Meeting Road, PO Box 1100, Blue Bell, PA 19422, (800) 396-8134). If Owner, without prior written consent of CT, makes or permits any repairs, alterations, deletions or additions to the roof, all of CT's obligations, duties and coverage under this Limited Warranty will terminate.

**Notice of Claims**
Any claim or request for CT to perform under this Limited Warranty must be made by Owner to CT in writing within thirty (30) days of discovery of the defect (notification to the contractor is not considered notice to CT) or CT will have no responsibility for the repairs. This notice of claim must include a general description of the alleged defect and a copy of the roof maintenance records. Owner shall grant access to the entire roof system as necessary for CT to investigate a claim. If access is not granted, CT shall have the right to determine, at its sole discretion, that this Limited Warranty is void as to that portion of the roof system to which access is denied. Should the investigation of the leak be determined not to be covered under this Limited Warranty, any costs associated with the leak investigation shall be the Owner's sole responsibility.
**NOTE: In the event an emergency condition exists which requires immediate repair to avoid damage to the building or its contents, Owner may make essential temporary repair (s) performed by a qualified roofer. CT will only reimburse Owner for essential temporary repair expenses that would have been covered under this Limited Warranty.**

**Modifications**
Only CT's Commercial Warranty Department is authorized to modify coverage provided by this Limited Warranty. Issuance of this Limited Warranty or review or inspection of plans, the building or product application by a CT representative does not waive any exclusions or conditions of this Limited Warranty. Application of a roof system that deviates from CT's Commercial Roof Systems Manual specifications voids coverage, unless prior written approval is provided by CT's Commercial Warranty Department.

**Transferability of Warranty**
This Limited Warranty may be transferred to a subsequent owner only if CT's Commercial Warranty Department is notified at the above listed Blue Bell address within thirty (30) days of real estate title transfer and upon payment of the applicable transfer fee to CT. Failure to transfer this Limited Warranty pursuant to these stated conditions terminates CT's warranty obligations. If it is determined at CT's sole discretion that the roof is in a state of poor maintenance or in disrepair, CT reserves the right to reject the transfer and void this Limited Warranty. All transfer fees will be refunded minus the cost of any applicable inspection and administrative fees.

**Conditions Pertaining to Warranty Issuance**
This warranty shall become effective only upon the occurrence of all the following events: (1) Receipt of roofing contractor's notice of completion; (2) CT final inspection and completion of all punchlist items; (3) Payment of CT's warranty fee; and (4) Owner's payment to roofing contractor for installation and supplies.

**Disclaimer of Warranties and Limitations of Remedies**
THIS DOCUMENT CONSTITUTES THE EXCLUSIVE WARRANTIES AND REMEDIES PROVIDED BY CERTAINTEED. THE WARRANTIES AND REMEDIES CONTAINED IN THIS DOCUMENT ARE EXPRESSLY IN LIEU OF ANY AND ALL OTHER OBLIGATIONS, GUARANTEES AND WARRANTIES, WHETHER WRITTEN, ORAL OR IMPLIED BY STATUTE OR AT LAW. STATE LAW WILL DETERMINE THE PERIOD OF TIME FOLLOWING THE SALE THAT A PROPERTY OWNER MAY SEEK A REMEDY UNDER THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CERTAINTEED'S OBLIGATIONS, RESPONSIBILITIES AND LIABILITY SHALL BE LIMITED TO REPAIRING, REPLACING OR REFUNDING THE DEFECTIVE PRODUCT AS SET FORTH IN THIS LIMITED WARRANTY. IN NO EVENT SHALL CERTAINTEED BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING ANY DAMAGE TO THE PROPERTY, THE BUILDING OR ITS CONTENTS, OR FOR INJURY TO ANY PERSONS, THAT MAY OCCUR AS A RESULT OF THE USE OF CERTAINTEED'S PRODUCTS OR AS A RESULT OF THE BREACH OF THIS WARRANTY. IF YOUR STATE DOES NOT ALLOW EXCLUSIONS OR LIMITATIONS OF SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.

**Agreement to Binding Arbitration**
Any and all claims, disputes and other matters in question that may occur between Owner, the contractor, and/or CT, arising out of, in connection with, or relating to this Limited Warranty or breach thereof, **shall be submitted to BINDING ARBITRATION** for resolution. The arbitration shall be conducted by the American Arbitration Association under its Construction Industry Arbitration Rules then in effect, unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the Federal Arbitration Act, 9 U.S.C. § 2 or the applicable state arbitration laws. The award rendered by the arbitrator shall be final, and judgment may be entered upon such award in accordance with applicable law in any court having jurisdiction thereof.

**Examination or Inspection**
CT does not practice engineering or architecture. Issuance of this Limited Warranty or roof inspections made by CT or an authorized agent of CT do not constitute an approval of the roof, roof design plans or specifications, or construction or installation of the roof. Roof designs, construction plans or installation of the roof system should be approved by Owner or Owner's professional.

Note: All referenced documents/forms available at **www.certainteed.com**.
CertainTeed Corporation, 750 E. Swedesford Road, P.O. Box 860, Valley Forge, PA 19482  Rev 1/2014 ©2008 CertainTeed Corporation, COMM-056

# CertainTeed

# ROOF MAINTENANCE PROGRAM

Warranty # W3001817                                                                                                              Page 1 of 2

The following information is designed to assist owners in establishing a regular and beneficial roof inspection and maintenance program. This important area of responsibility for the building owner can provide many long-term benefits, including extended life expectancy of the roofing system, reduced average in-place cost, prevention of major deterioration resulting from minor problems and eventually, reduced roof system replacement cost.

## Roof Maintenance Guidelines

All roofs require regular inspections and periodic maintenance to achieve their expected life. Roofs should be inspected at least twice yearly, in the spring and fall. Additionally, all roofs should be inspected after any severe weather or storms. The roofing contractor who installed the roof membrane, in conjunction with the building owner's maintenance personnel, should perform these inspections. Leaks occur most often at flashings, pitch pans, gravelstops, and other penetrations. Pay special attention to these areas. Included among the roof components that are not part of the roof membrane and hence not covered by the applicable CertainTeed limited warranty are the following: underlying roof deck, insulation, vapor retarders, fasteners, metal work, drains, pitch pans, expansion joints, skylights, vents, plastic accessories, decorative or reflective coating, surfacing and/or any ballast, rock, or gravel. Roof components are the owner's responsibility to maintain.

**General** – One of the keys to avoiding roof damage is limiting access to the roof. Allow only authorized personnel on the roof who understand good roof access procedures and precautions. Bag and remove all debris from the roof. Keep grease and oil off of the roof. Clean and remove any liquid deposits immediately. Do not allow foot traffic on the roof in very hot or very cold weather. Do not allow the installation of television or radio antennas, satellite dishes or other mechanical equipment without notifying CertainTeed for approval and for consultation about the methods and details for these installations.

**Roof Drains** – CertainTeed requires positive drainage. Owners must keep roof drains and the surrounding areas free of debris to allow for proper drainage. Maintain proper attachment of drain clamping rings.

**Metal Flashing** – Start with a visual examination looking for areas of damage or rust. Ensure that the flashing has remained properly attached and sealed. Repair or replace areas with damage, poor caulking, and all loose areas including counterflashing, coping, seams and/or joints.

**Pitch Pans** – Keep pitch pans full at all times. Examine and repair the metal pan assembly when necessary.

**Rooftop Equipment** – Qualified roofing personnel should accompany the equipment installation and/or service employees. If this is not practical, have qualified roofing personnel inspect the area after the equipment installation and/or service employees have completed their work. Regularly check and maintain the condition of all rooftop equipment. Ensure that no substances from the equipment are being deposited on the roof, and if deposits are present – clean immediately. Check equipment flashing for proper condition.

**Roof Coating** – Visually inspect for signs of deterioration. Maintenance or replacement completed by a roofing professional is essential. Coating life is affected by a variety of factors including climate and environment.

**Other** – The above list reflects only the most common components found on roof systems; it is not all-inclusive. Contact CertainTeed for additional information.

## Owner Inspection and General Recommendations

A. Utilize roofing professionals or thoroughly trained maintenance personnel for roof-related issues.
B. Owners should file all job records, drawings, and specifications for future reference. Contract with a roofing contractor authorized by CertainTeed to set up a regular inspection and roof maintenance schedule. Record maintenance procedures as they occur. Log all roof access times and other trades working on the roof, in case damage should occur. Report damage as soon as it occurs, so repairs may be scheduled and executed as soon as possible.
C. Make more frequent inspections (six times per year) on buildings that house manufacturing facilities that evacuate or exhaust debris onto the roof.
D. Inspect the exterior of the building for settlement or movement. Structural movement may result in splits in the roof membrane.
E. Repairs should be performed as soon as needed – owners should not allow a nuisance leak to develop into a major problem, degrading insulation and destroying a large portion of the roof assembly. While a roofing contractor authorized by CertainTeed should perform repairs and maintenance work, the owner can help maintain the roof by ensuring that minor clean-up and maintenance procedures are performed (e.g., regular checking and cleaning of debris from roof and around drains.)
F. Notify CertainTeed immediately after a roof leak occurs. If possible, note conditions resulting in leakage. Heavy or light rain, wind direction, temperature, and the time of year that the leak occurs are all important clues to tracing roof leaks. Note whether the leak stops shortly after each rain or continues to drip until the roof is dry. If the owner is prepared with the facts, the diagnosis and repair of roof problems can proceed more rapidly.
G. In some emergency situations, owner-applied temporary patches may be made to stop leaks to minimize property loss. Except for certain emergency situations, owners should not attempt roof repairs. The puncturing of a blister or the spreading of a liquid-applied coating or bituminous cement may only cover up evidence needed to ascertain the real problem.

**For your convenience, we have provided a basic inspection form on the reverse side of this page that addresses several critical areas of the roofing system.**

CertainTeed Roofing Products Group – 1400 Union Meeting Road, PO Box 1100, Blue Bell, PA 19422
Attn: Commercial Warranty Department – Phone: 800-396-8134 – Fax: 610-254-5458
Email: rpg.comm.services@saint-gobain.com • Website: www.ctndl.com
Rev 1/2014

# CertainTeed ⬛

## ROOF MAINTENANCE PROGRAM
### INSPECTION REPORT

warranty # W3001817                                                                                          Page 2 of 2

Date: _____     Inspected By: _____

**ROOF PLAN LEGEND**

| | |
|---|---|
| Roof Drain | ● |
| Scupper | ⊐ |
| Firewall | FW |
| Chimney | D |
| Skylight | ⊠ |
| Scuttle or hatch | ▽ |
| Penthouse | PH |
| Ventilator/Fan | ⊗ |
| Vent Pipe | ∨ |
| Air Conditioner | AC |
| Cooler | C |
| Pitch Pocket | □ |
| Saddle | ◁S▷ |
| Hip | H |
| Ridge | R |
| Valley | V |
| Pipe or Conduit | +–+–+ |
| Screen Support/Fence | XXX |
| Expansion Joint | E |
| Metal Edging – Single line perimeter | —— |
| Parapet Wall – Double line perimeter | ▭▭ |
| Other _____ | |

### Owner Based Maintenance Requirements

| | No Problems | Maintenance Required | Not Applicable |
|---|---|---|---|
| 1.Edge Metal | ☐ | ☐ | ☐ |
| 2.Counter Flashing | ☐ | ☐ | ☐ |
| 3.Expansion Joints | ☐ | ☐ | ☐ |
| 4.Pitchpans | ☐ | ☐ | ☐ |
| 5.Drains | ☐ | ☐ | ☐ |
| 6.Scuppers | ☐ | ☐ | ☐ |
| 7.Skylights | ☐ | ☐ | ☐ |
| 8.Coping Covers | ☐ | ☐ | ☐ |
| 9.Vents | ☐ | ☐ | ☐ |
| 10.Flues | ☐ | ☐ | ☐ |
| 11.Antennae | ☐ | ☐ | ☐ |
| 12.HVAC Equipment | ☐ | ☐ | ☐ |
| 13.Sign Supports | ☐ | ☐ | ☐ |
| 14.Coatings/Toppings | ☐ | ☐ | ☐ |
| 15.Debris | ☐ | ☐ | ☐ |
| 16.Other | ☐ | ☐ | ☐ |

Comments:

### Condition of Roof Membrane
**Surface Condition**

| | Yes | No |
|---|---|---|
| Any blisters, splits, buckles, or punctures? | ☐ | ☐ |
| Any bare spots, displaced gravel, thin coating or severe granule loss? | ☐ | ☐ |
| Reflective coating in good condition? | ☐ | ☐ |
| Any evidence of ponding? | ☐ | ☐ |
| Any evidence of residue deposits or foreign contamination? | ☐ | ☐ |
| Are A/C condensation lines on extending into drains? | ☐ | ☐ |
| Any evidence of traffic or physical damage? | ☐ | ☐ |
| Any evidence of wet insulation? | ☐ | ☐ |

Comments

### General Conditions

| | Yes | No |
|---|---|---|
| Any building or structural movement? | ☐ | ☐ |
| Any deflection or sagging of deck? | ☐ | ☐ |
| Any alterations, additions or new penetrations? | ☐ | ☐ |
| Any change in building usage? | ☐ | ☐ |

Comments

Copies should be made of this form and used in your semi-annual roof inspections

CertainTeed Roofing Products Group – 1400 Union Meeting Road, PO Box 1100, Blue Bell, PA 19422
Attn: Commercial Warranty Department – Phone: 800-396-8134 – Fax: 610-254-5458
Email: rpg.comm.services@saint-gobain.com • Website: www.ctndl.com
Rev 1/2014

# EXHIBIT D

**MIAMI-DADE COUNTY, FLORIDA**



February 12, 2016

Siltek Group, Inc.
1232 North University Drive, Suite 101
Plantation, Florida   33322
Attn: Ms. Ana Sierra, President

**INTERNAL SERVICES DEPARTMENT**
**DESIGN AND CONSTRUCTION**
**SERVICES DIVISION**
111 N.W. 1 st St.  Suite 2420
MIAMI, FLORIDA  33128

Certified Mail
7015 0640 0000 9826 9832

Re: **Notice of Latent Defect discovered at the Gran Via Apartments**
      **located at 12700 SW 8th Street,  Miami, Florida (Contract No.: Z000107 Gran Via**
      **Apartment – New Construction).**

TO WHOM IT MAY CONCERN:

Per ISD's meeting held with PHCD and the Building Manager's Office at Gran Via on January
29th, 2016, ISD was informed of the following items of concern.

During the time elapsed from when the Substantial Completion was issued to the present, the
following has been detected:

- Additional cracks have surfaced/re-surfaced, inclusive of those repaired at the time when
  they were brought up to Siltek's attention;
  The Cracks that have developed are visible at the walls, ceilings, balconies and other
  areas.
- Water ponding has developed on the roof.

As the Contractor responsible for the construction of the Gran Via Apartments, this notice is
being sent to provide you with an opportunity to inspect the building for the items in question
and for you to consider making an offer to remedy these items.

Siltek is being requested to contact this office to meet at the location and provide formal writing
solution to discuss/resolve the above mentioned within a time period of 15 days.

Please contact Ms. Ana Navarro, CM2 at 305-375-4941 for further information and to schedule
an inspection.

Thanking you in advance,

*Ana C. Navarro, Construction Manager 2*
**Miami-Dade County, Internal Services Department**
Design & Construction Services Division
e-mail: ana1@miamidade.gov
Office: (305) 375-4941
Fax: (305) 375-1125
*"Delivering Excellence Every Day"*

cc: Asael "Ace" Marrero, ISD Division Director
    Humberto Contreras, ISD Section Manager
    Jesus Farinas, ISD Project Manager
    Jorge Orol, ISD Construction Manager 2

# EXHIBIT E



**Internal Services Department**
**Design & Construction Services Division**
**111 N.W. 1ˢᵗ St. Suite 2420**
**Miami, Florida  33128**
Phone: (305) 375-4941
Fax: 305-375-1125

# Fax

| | | | |
|---|---|---|---|
| **To:** | Hartford Casualty Insurance Company | **From:** | Ana C. Navarro, CM2 |
| **Fax:** | (860) 757-5835 | **Date:** | 10/17/2016 |
| **Phone:** | (888) 266-3488 | **Pages:** | 9 to include this cover sheet |
| **Re:** | <u>Claim to Bond</u> | **CC:** | Asael Marrero, Humberto Contreras, Patrick Brown, Maria Rodriguez-Porto, Clarence Brown, Ana Silveira-Sierra |

☐ **Urgent**     ☐ **For Review**     ☐ **Please Comment**     ☐ **Please Reply**     ☒ **Please Recycle**

•**COMMENTS:**

**Attachments are inclusive of: Latent Defect sent to SILTEK and SILTEK reply have been attached to include the Substantial Completion and Insurance Bond.**



**MIAMI-DADE COUNTY**

miamidade.gov

**Internal Services**
Design & Construction Services Division
111 NW 1st. Street • Suite 2420
Miami, Florida 33128-1909

October 17, 2016

| | Certified Mail |
|---|---|
| Hartford Casualty Insurance Company | 7015 0640 0000 9826 9887 |
| One Hartford Plaza | Fax: (860) 757-5835 |
| Hartford, Connecticut  06155 | e-mail: bond.claim@thehartford.com |

Re: Notice of Latent Defect: **Bond No. 21BCSFZ7956**
    **(Contract No.: Z000107 Gran Via Apartment – New Construction**
    **Located at 12700 SW 8th Street, Miami, Florida)**

Bonding Agent,

A notice of Latent Defect was forwarded to SILTEK Group, Inc. (SILTEK) on February 12, 2016, providing the General contractor with specific items for correction in an effort to allow them to inspect the building to remedy the issues listed below.

Substantial Completion was achieved on August 28, 2014, during the time elapsed the following was detected:

- **Expansion cracks have occurred in locations where expansion joints should have been constructed.**

- **Roofing has failed and has resulted in water ponding on the roof which is deteriorating the roofing material.**

- **A faulty sewer main installation (under the ground floor concrete parking slab on the east side of the building) has now resulted in a failure of the system. NOTE: ISD was informed by the Department of Public Housing and Community Development, of a significant failure of that portion of the system on September 14, 2106, resulting in sewage back-up and contamination at the site within the retail space.**

SILTEK has failed to respond or address the items identified as latent defect and to date has taken no action to inspect or address the correction of the latent defects. Per the terms of the Surety Performance and Payment Bond ("the bond"), the Bond remains in full force and effect until SILTEK performs all work under the Contract including "the curing of latent defects".

Accordingly, the County is hereby providing notice to Harford Casualty Insurance Company as the Surety, our claim to cure the latent defects described herein. Your office is required to contact Miami-Dade County within ten (10) days of the date of this notice with a Plan of Action to address the items listed above.

Hartford Casualty Insurance Company
Notice of Latent Defect: Bond No. 21BCSFZ7956
(Contract No.: Z000107 Gran Via Apartment – New Construction
Located at 12700 SW 8th Street, Miami, Florida)
Page 2


Attached for your records are copies of our notification of Latent Defect forwarded to SILTEK Group, and the response from Contractor acknowledging receipt of the notice dated February 18, 2016.

**From that listed above, the item of greatest concern has now become the apparent sewer drainage line alignment failure which is resulting in a public health nuisance being caused by back-up of raw sewage.**

Please contact me at 305-375-4941 for further information and to schedule an inspection.

Sincerely,

Ana C. Navarro
Construction Manager 2

Attachments

c:  Asael "Ace" Marrero, Division Director, ISD/DCS
    Humberto Contreras, ISD Projects Manager
    Patrick Brown, Construction Manager 3, ISD/DCS
    Maria Rodriguez-Porto, Engineer 3, PHCD
    Clarence Brown, Division Director, PHCD
    Ana Silveira-Sierra, President Siltek Group Inc.

**MIAMI-DADE COUNTY, FLORIDA**



February 12, 2016

Siltek Group, Inc.
1232 North University Drive, Suite 101
Plantation, Florida   33322
Attn: Ms. Ana Sierra, President

**INTERNAL SERVICES DEPARTMENT**
**DESIGN AND CONSTRUCTION**
**SERVICES DIVISION**
111 N.W. 1st St. Suite 2420
MIAMI, FLORIDA  33128

Certified Mail
7015 0640 0000 9826 9832

Re: **Notice of Latent Defect discovered at the Gran Via Apartments**
      **located at 12700 SW 8th Street,  Miami, Florida (Contract No.: Z000107 Gran Via**
      **Apartment – New Construction).**

TO WHOM IT MAY CONCERN:

Per ISD's meeting held with PHCD and the Building Manager's Office at Gran Via on January
29th, 2016, ISD was informed of the following items of concern.

During the time elapsed from when the Substantial Completion was issued to the present, the
following has been detected:
- Additional cracks have surfaced/re-surfaced, inclusive of those repaired at the time when
  they were brought up to Siltek's attention;
  The Cracks that have developed are visible at the walls, ceilings, balconies and other
  areas.
- Water ponding has developed on the roof.

As the Contractor responsible for the construction of the Gran Via Apartments, this notice is
being sent to provide you with an opportunity to inspect the building for the items in question
and for you to consider making an offer to remedy these items.

Siltek is being requested to contact this office to meet at the location and provide formal writing
solution to discuss/resolve the above mentioned within a time period of 15 days.

Please contact Ms. Ana Navarro, CM2 at 305-375-4941 for further information and to schedule
an inspection.

Thanking you in advance,

*Ana C. Navarro, Construction Manager 2*
**Miami-Dade County, Internal Services Department**
Design & Construction Services Division
e-mail: ana1@miamidade.gov
Office: (305) 375-4941
Fax: (305) 375-1125
*"Delivering Excellence Every Day"*

cc: Asael "Ace" Marrero, ISD Division Director
    Humberto Contreras, ISD Section Manager
    Jesus Farinas, ISD Project Manager
    Jorge Orol, ISD Construction Manager 2



O: 954 370-1368
F: 954 370-1390
1232 N. University Drive
Plantation, FL 33322

February 18, 2016

Ana Navarro
Construction Manager 2
Miami-Dade County Internal Services Department
111 NW 1st Street
Miami, Florida 33128
Ph (305) 375-4941
Fax (305) 375-1125

Project:     Gran Via Apartments
Re:          Notice of Latent Defect dated 2/12/16

Ms. Navarro,

We are in receipt of your letter and we are unable to formulate an answer to your alleged issues without walking the building and having the opportunity to visually review and examine the issues.

As per our conversation, Siltek needs to include the insurance representative in this observation visit and they are unable to attend the next Tuesday date, 2/23/16, as you suggested.

We are requesting that the meeting on site take place the first week of March 2016.

Please let me know the date as soon as possible.

Cordially,

Rene Sierra

Cc: Ana Silveira-Sierra, President Siltek Group Inc.
Asael Marrero, ISD Division Director
Humberto Contreras, ISD Section Manager
Jesus Farinas, ISD Project Manager
Jorge Orol, ISD Construction Manager 2
Oscar Soto, Esq.

**GRAN VIA – Elderly Affordable Housing**
**DOCUMENT 01770e – ARCHITECT/ENGINEER'S LETTER ESTABLISHING**
**SUBSTANTIAL COMPLETION DATE**
**PROJECT NO. Z000107**

Instructions for Architect/Engineer's Use: Provide this completed letter to establish the Date of Substantial Completion of the Work or a designated portion thereof.

| To:<br>(County's<br>Representative) | Mr. Lester Sola<br>Director/ISD<br>111 NW 1st ST, Ste. 2130<br>Miami, FL 33128 | Contractor's<br>Request No.: _____ Date: |
|---|---|---|
| Project No:<br>Project Title:<br>Facility Name:<br>Contractor: | Z000107<br>**Gran Via Elderly Housing**<br><br>Siltek Group, Inc. | ☒ Full Project<br>☐ Designated Portion (Attach Description) |

On _____ **August 28th , 2014** _____ the Substantial Completion Inspection was completed for the project, or designated portion thereof, listed above.

This shall certify that the Contractor achieved Substantial Completion and the Work, or designated portion thereof, was ready for beneficial occupancy on the following date:

**August 29th , 2014 and upon Issuance of Certificate of Occupancy.**

The date of Substantial Completion is the last date of Substantial Completion for this Work, or designated portion thereof, originally requested by the Contractor. Evidence is provided by our signatures below that the Architect/Engineer of Record and Contractor agree that this project was ready for Beneficial Occupancy by the County for its intended purpose on the date of Substantial Completion listed above. The County is advised to submit Standard Form 770 to advise Risk Management and Safety of the required change of insurance for this completed portion of the Work.

By: _____
(Architect/Engineer of Record)

Firm Name    Frank Suarez/ Sr. Registered
                      Architect
                      Miami-Dade County/ISD
                      Design & Construction Services

By: _____
(Contractor)

Firm Name _____
                      Siltek Group, Inc.

_____

Distribution:
Director, Design & Construction Services Division
Manager, A/E Section
Manager, Construction Contracts
Project Manager
Inspections and Code Compliance

| For Design & Construction Services Division Use |
|---|
| ☐ Date is acceptable; letter is hereby placed in General File. |
| <br>_____<br>County's Representative |

*Nielson, Hoover & Associates*
Bond Department

Public Works Bond
In compliance with Florida Statutes 255.05(1)(a)

| | |
|---|---|
| **Bond No.** | 21BCSFZ7956 |

| | |
|---|---|
| **Contractor** | **Siltek Group, Inc.** |
| **Address** | 1232 North University Drive, Suite 101<br>Plantation, FL 33322 |
| **Phone No.** | (954) 370-1368 |
| **Surety Company** | **Hartford Casualty Insurance Company** |
| **Address** | One Hartford Plaza<br>Hartford Connecticut 06155 |
| **Phone No.** | (860) 547-5000 |
| **Owner Name** | **Miami-Dade County** |
| **Address** | 111 N.W. 1st Street<br>Miami, FL 33128 |
| **Phone Number** | (305) 375-5071 |
| **Contract/Project No.** | Z000107 |
| **Project Name** | *Construction of Affordable Housing and Home Ownership in District 11 – Gran Via Apartments* |
| **Project Location** | Miami, FL |
| **Legal Description and/or Street Address** | SW 127th Avenue and SW 8th Street, Miami, FL 33184 |
| **Description of Work** | Construction |

Front Page
All other bond page(s) are deemed subsequent to this page regardless
of any page number(s) that may be preprinted thereon.

RECEIVED

JUN 14 2012

RISK MANAGEMENT
DIVISION

Bond No. 21BCSFZ7956

# CONSTRUCTION OF AFFORDABLE HOUSING AND
# HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS
# ISD CONTRACT NO. Z000107

## SECTION 00615 - SURETY PERFORMANCE AND PAYMENT BOND

By this Bond, We ___SILTEK GROUP, INC.___ as Principal, whose principal business address is _1232 North University Drive, Suite 101, Plantation, FL 33322_ as Contractor under the contract dated _____ , 20___, between Principal and Miami-Dade County for the construction of Affordable Housing and Hole Ownership in District 11 - Gran Via Apartments, ISD Project No. Z000107 (herein after referred to as "Contract"), the terms of which Contract are incorporated by reference in its entirety into this Bond, and _Hartford Casualty Insurance Company_ , a corporation, whose principal business address is _One Hartford Plaza, Hartford, CT 06183_ as Surety, are bound to Miami-Dade County (hereinafter referred to as "County") in the sum of _Nine Million Seven Hundred Twenty Thousand Nine Hundred Fifty_ U.S. dollars ($_9,720,950.00_ ), for payment of which we bind ourselves, our heirs, personal representatives, successors, and assigns, jointly and severally.

THE CONDITION OF THIS BOND is that if Principal:

1. Performs all the work under the Contract, including but not limited to guarantees, warranties and the curing of latent defects, said Contract being made a part of this bond by reference, and in the times and in the manner prescribed in the Contract, including any and all damages for delay; and

2. Promptly makes payments to all claimants, as defined in Section 255.05(1), Florida Statutes, supplying Principal with labor, materials, or supplies, used directly or indirectly by Principal in the prosecution of the work provided for in the contract; and

3. Pays County all losses, damages, including damages for delay, expenses, costs and attorney's fees, including appellate proceedings, that County sustains because of a default by Principal under the Contract, including but not limited to a failure to honor all guarantees and warranties or to cure latent defects in its work or materials within five (5) years after completion of the work under the Contract; and

4. Performs the guarantee of all work and materials furnished under the contract for the time specified in the Contract, including all warranties and curing all latent defects within five (5) years after completion of the work under the Contract;

Then this bond is void; otherwise it remains in full force.

If no specific periods of warranty are stated in the Contract for any particular item or work, material or equipment, the warranty shall be deemed to be a period of one (1) year from the date of final acceptance by the County. This Bond does not limit the County's ability to pursue suits directly with the Principal seeking damages for latent defects in materials or workmanship, such actions being subject to the limitations found in Section 95.11(3)(c), Florida Statutes.

Any changes in or under the Contract Documents and compliance or noncompliance with any formalities connected with the Contract or the changes does not affect Surety's obligation under this Bond.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 1 of 2
Prepared by CAS/DCSD
Revised 10/1/11

**This bond is given to comply with section 255.05 Florida Statutes, and any action instituted by a claimant under this bond for payment must be in accordance with the notice and time limitation provisions in Section 255.05(2), Florida Statutes**

**IN WITNESS WHEREOF**, the above bounden parties have caused this Bond to be executed by their appropriate officials as of the ____ day of _____, 20___.

ATTEST:
Contractor:

Siltek Group, Inc.
_____
Contractor's Full Name

By: _____
~~RENEA SIERRA~~
VPresident, Managing Partner or
Joint Venturer

Siltek Group, Inc.
_____
Legal Name of Contractor

_____
Signature

_____
Corporate Seal

COUNTERSIGNED BY RESIDENT FLORIDA
AGENT OF SURETY:

Charles D. Nielson

(Copy of Agent's current Identification Card as
issued by the State of Florida Insurance
Commissioner must be attached)

SURETY:

Hartford Casualty Insurance Company
_____

By: _____
Charles D. Nielson
Attorney-In-Fact  Charles D. Nielson

BOND APPROVED AS TO
INSURANCE REQUIREMENTS
~~Rose Yowie~~
RISK MANAGEMENTS DIVISON
DATE: 07/06/12

_____
Corporate Seal (Power of Attorney
must be attached)

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 2 of 2
Prepared by CAS/DCSD
Revised 10/1/11

AMERICAN ARBITRATION ASSOCIATION

**CONSTRUCTION ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

## AMENDED TO ADD ADDITIONAL PARTIES

| |
|---|
| **Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐. There is no additional administrative fee for this service. |

| |
|---|
| Name of Respondent:  CertainTeed Corporation |

| | | |
|---|---|---|
| Address:  20 Moores Road | | |
| City:  Malvern | State:  Pennsylvania | Zip Code:  19355 |
| Phone No.: | Fax No.: | |

| |
|---|
| Email Address: |

| |
|---|
| Name of Representative (if known):   Ken Richie, Esq. |

| |
|---|
| Name of Firm (if applicable):  Holland & Knight LLP |

| | | |
|---|---|---|
| Representative's Address:   701 Brickell Ave., Suite 3300 | | |
| City:  Miami | State:  Florida | Zip Code:  33131 |
| Phone No.: | Fax No.: | |

| |
|---|
| Email Address:  ken.richie@hklaw.com |

| |
|---|
| The named claimant, a party to an arbitration agreement dated   April 8, 2014                              ,  which provides for arbitration under the Construction Industry Rules of the American Arbitration Association, hereby demands arbitration. |

| |
|---|
| **Arbitration Clause:** Please indicate whether the contract containing the dispute resolution clause governing this dispute is a standard industry form contract (such as AIA, ConsensusDOCS or AGC) or a customized contract for the specific project. |
| Contract Form:  Customized Contract - 20 Year NDL Limited Warranty (the "Warranty') |

| |
|---|
| The Nature of the Dispute: |
| This case centers around the construction of Gran Via Apartments (the "Project" or the "Apartments"), an elderly affordable housing community in Miami-Dade County owned by the Claimant.  Respondent Siltek Group, Inc. ("Siltek") was the general contractor on the Project.  Siltek and the Claimant's relationship is governed by ISD Contract No. Z000107 (the "Contract").  The Contract provides, among other things, that "[i]f within five (5) years after the date of final completion of the Project or within such longer period of time as may be prescribed by law, by the ⊞ |

| |
|---|
| Dollar Amount of Claim: $  between approximately $500,000 to $1,000,000 |

| |
|---|
| Other Relief Sought: ☐ Attorneys Fees  ☑ Interest  ☑ Arbitration Costs  ☐ Punitive/Exemplary ☐ Other: |

| |
|---|
| Amount Enclosed: $  between approximately $500,000 to $1,000,000 |
| In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☐ Standard Fee Schedule |

| |
|---|
| Please describe appropriate qualifications for arbitrator(s) to be appointed to hear this dispute: |
| Experience with latent defect claims, warranty claims, and surety disputes is preferable. |

| |
|---|
| Hearing Locale Requested:  Miami-Dade County, Florida |

| |
|---|
| Project Site:  Miami-Dade County, Florida |

**COMP. EXHIBIT "C"**

**AMERICAN ARBITRATION ASSOCIATION**

**CONSTRUCTION ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| | |
|---|---|
| Estimated Time Needed for Hearings Overall: | hours or **4**   days |

Specify Type of Business:

Claimant: **Government**      Respondent: **Manufacturer**

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative): | Date: |
|---|---|
| s/Angela Benjamin | 08/01/2019 |

Name of Claimant:  **Miami-Dade County**

Address (to be used in connection with this case):  **111 NW First Street,**

| City:  **Miami** | State:  **Florida** | Zip Code:  **33128** |
|---|---|---|

| Phone No.: | Fax No.: |
|---|---|

Email Address:

Name of Representative:  **Eduardo Gonzalez and Angela Benjamin**

Name of Firm (if applicable):  **Miami-Dade County Attorney's Office**

Representative's Address:  **111 NW First Street, Suite 2810**

| City:  **Miami** | State:  **Florida** | Zip Code:  **33128** |
|---|---|---|

| Phone No.:  **305-375-1057 and 305-375-1381** | Fax No.:  **305-375-5611** |
|---|---|

Email Address:  **eduardocao.gonzalez@miamidade.gov, angela.benjamin@miamidade.gov**

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

SEE ATTACHED LIST WITH ADDITIONAL PARTIES

## LIST OF PARTIES
## ATTACHMENT TO AMENDED DEMAND FOR ARBITRATION


### *Respondent No. 1 (ALREADY A PARTY, FYI ONLY)*


Respondent:

CertainTeed Corporation
20 Moores Road
Malvern, Pennsylvania  19355

Attorney representing Respondent CertainTeed:

Ken Richie, Esq.
Holland & Knight LLP
701 Brickell Ave., Suite 3300 | Miami, FL 33131
Phone 305.789.7406 | Fax 305.789.7799
Mobile Phone 954.999.3280
ken.richie@hklaw.com


### *Respondent No. 2*

Respondent:

Siltek Group, Inc.
5800 SW 178th Avenue
Southwest Ranches, Florida

Attorney Representing Respondent Siltek Group, Inc.

Oscar E. Soto, Esq.
The Soto Law Group
Coastal Tower Building
2400 E. Commercial Blvd. Suite 400
Fort Lauderdale Florida 33308
Telephone: (954) 567-1776
Facsimile: (954) 567-1778
Email: oscar@sotolawgroup.com

CONTINUED ON PAGE 2

1

***Respondent No. 3***

<u>Respondent:</u>

Hartford Casualty Insurance Company
One Hartford Plaza
Hartford, Connecticut

<u>Attorney Representing Respondent Hartford Casualty Insurance Company</u>

Timothy S. Taylor, Esq.
Board Certified in Construction Law
Taylor Espino Vega & Touron, PLLC
201 Alhambra Circle, Suite 801
Coral Gables, FL 33134
Telephone: (305) 443-2043
Facsimile:  (305) 443-2048
E-mail: [ttaylor@tevtlaw.com](mailto:ttaylor@tevtlaw.com)

EXHIBIT "A"

# MIAMI-DADE COUNTY
# INTERNAL SERVICES DEPARTMENT
## DESIGN AND CONSTRUCTION SERVICES DIVISION

# CONSTRUCTION OF AFFORDABLE HOUSING AND
# HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS
## ISD Contract No. Z000107

**CSBE GOAL:** 24.00%          **BID DUE DATE:** December 16, 2011
**CWP GOAL:** N/A

## Project Manual
## Volume 1 of 3
## General Documents - Division 0
## General Requirements - Division 1

### BOARD OF COUNTY COMMISSIONERS
JOE A. MARTINEZ, CHAIRMAN
AUDREY M. EDMONSON, VICE-CHAIRWOMAN

### INTERNAL SERVICES DEPARTMENT
LESTER SOLA, DIRECTOR

### DESIGN AND CONSTRUCTION SERVICES DIVISION
JOSE R. PEREZ, AIA, LEED®AP, DIRECTOR

### ARCHITECT OF RECORD
### ARCHITECTURE AND ENGINEERING SECTION
FRANCISCO SUAREZ, R.A., LEED®AP

### CONTRACTING AGENT
### CONTRACTS ADMINISTRATION SECTION
FERNANDO V. PONASSI, MA ARCH., LEED®AP, MANAGER

SET NO. _____

# CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS ISD Contract No. Z000107



**Carlos A. Gimenez**
**Mayor**

**Board of County Commissioners**
Joe A. Martinez, Chairman
Audrey M. Edmonson, Vice-Chairwoman

| | |
|---|---|
| Barbara J. Jordan | Lynda Bell |
| District 1 | District 8 |
| Jean Monestime | Dennis C. Moss |
| District 2 | District 9 |
| Audrey M. Edmonson | Senator Javier D. Souto |
| District 3 | District 10 |
| Sally A. Heyman | Joe A. Martinez |
| District 4 | District 11 |
| Bruno A. Barreiro | Jose "Pepe" Diaz |
| District 5 | District 12 |
| Rebeca Sosa | Esteban Bovo, Jr. |
| District 6 | District 13 |
| Xavier L. Suarez | |
| District 7 | |

Alina T. Hudak, Deputy Mayor/County Manager

R. A. Cuevas, Jr., County Attorney

**Miami-Dade County Internal Services Department**
Lester Sola, Director

**Design and Construction Services Division**
Jose Perez, AIA, LEED®AP, Director

ARCHITECT OF RECORD
**Architecture and Engineering Section**
Francisco Suarez, R.A., LEED®AP, Senior Architect

CONTRACTING AGENT
**Contracts Administration Section**
Fernando V. Ponassi, MA Arch., LEED®AP, Manager
111 N.W. 1st Street, Suite 2420
Miami, Florida, 33128
Tel (305) 375-3965/Fax (305) 375-1125

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00002 Project Directory - Page 1 of 2
Prepared by CAS/DCSD
Revised 10/1/11

**THIS PAGE INTENTIONALLY LEFT BLANK**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00002 Project Directory - Page 2 of 2
Prepared by CAS/DCSD
Revised 10/1/11

**TABLE OF CONTENTS**

**VOLUME 1   GENERAL DOCUMENTS**
**DIVISION 0   BIDDING REQUIREMENTS, CONTRACT FORMS AND CONDITIONS OF THE CONTRACT**

| SECTION | TITLE | PAGES |
|---|---|---|
| 00002 | PROJECT DIRECTORY | 2 |
| 00003 | TABLE OF CONTENTS | 8 |
| 00004 | LIST OF DRAWINGS | 6 |
| 00020 | ADVERTISEMENT | 4 |
| 00100 | INSTRUCTIONS TO PROSPECTIVE CONTRACTOR | 12 |
| 00110 | GENERAL COVENANTS AND CONDITIONS | 50 |
| 00120 | SUPPLEMENTAL GENERAL COVENANTS AND CONDITIONS | 14 |
| 00130 | SPECIAL PROVISIONS | 10 |
| 00140 | CODE AND ORDINANCE REQUIREMENTS | 8 |
| 00150 | BID PROTEST PROCEDURES | 2 |
| 00300 | PROPOSAL FORM | 8 |
| 00410 | BID BOND FORM | 6 |
| 00466 | LISTING OF SUBCONTRACTORS AND SUPPLIERS | 2 |
| 00480 | VENDOR AFFIRMATION AFFIDAVIT | 2 |
| 00481 | COLLUSION AFFIDAVIT | 2 |
| 00482 | EMPLOYMENT AND PROCUREMENT PRACTICES | 2 |
| 00500 | CONSTRUCTION CONTRACT | 6 |
| 00615 | SURETY PERFORMANCE BOND | 2 |

**PROVISIONS AND FORMS RELATED TO THE CONTRACT**

RESPONSIBLE WAGES AND BENEFITS – BUILDING CATEGORY, 2011
http://www.miamidade.gov/sba/library/WR-2011_Building.pdf

SBD COMMUNITY SMALL BUSINESS ENTERPRISE (CSBE) PARTICIPATION PROVISIONS
http://www.miamidade.gov/sba/library/CSBE_Participation_Provisions.pdf

SBD FORM 300 – CSBE MONTHLY UTILIZATION REPORT
http://www.miamidade.gov/sba/library/CSBE_Mur.pdf

SBD FORM 303 – UNAVAILABILITY CERTIFICATE
http://www.miamidade.gov/sba/library/CSBE_Unavailability_Certificate.pdf

SBD FORM 305A – UNAVAILABILITY OF A CSBE DUE TO COMPETITIVENESS
http://www.miamidade.gov/sba/library/CSBE_Competitiveness_Unavailability.pdf

SBD FORM 305B – AVAILABILITY OF NON-CSBEs
http://www.miamidade.gov/sba/library/Intent_schedule_4_non_CSBEs_305b.pdf

SBD FORM 400 – CSBE SCHEDULE OF INTENT
http://www.miamidade.gov/sba/library/CSBE_SOI.pdf

SBD CSBE CERTIFIED FIRMS LIST
http://www.miamidade.gov/sba/library/certify_CSBE_by_firms.pdf

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 1 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**DIVISION 1   GENERAL REQUIREMENTS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| **01000** | **SUMMARY** | |
| 01010 | Summary of Work | 4 |
| 01225 | Measurement and Payments | 8 |
| 01030 | Bid Alternates | 4 |
| 01040 | Coordination | 4 |
| 01042 | Art in Public Places Coordination | 4 |
| 01045 | Cutting and Patching | 4 |
| 01050 | Field Engineering | 4 |
| 01060 | Information Available to Bidders | 2 |
| | | |
| **01200** | **PRICE AND PAYMENT PROCEDURES** | |
| 01250a | Proposal Request | 2 |
| 01250b | Change to RPQ - DRAFT | 4 |
| 01250f | Architect/Engineer of Record's Supplemental Instructions | 2 |
| 01290 | Payment Procedures | 4 |
| | | |
| **01300** | **ADMINISTRATIVE REQUIREMENTS** | |
| 01310 | Project Management and Coordination | 10 |
| 01320 | Construction Progress Documentation | 14 |
| 01320a | Weekly Progress Report | 2 |
| 01330 | Submittal Procedures | 10 |
| 01340 | Shop Drawings, Product Data, and Samples | 4 |
| 01350 | Special Procedures | 4 |
| 01352 | LEED Requirements | 8 |
| 01352a | LEED NC 3.0 Project Checklist | 2 |
| 01354 | Construction Indoor Air Quality Management… | 8 |
| | | |
| **01400** | **QUALITY REQUIREMENTS** | |
| 01410 | Regulatory Requirements | 4 |
| 01420 | References | 4 |
| 01430 | Quality Assurance | 6 |
| 01450 | Quality Control | 6 |
| | | |
| **01500** | **TEMPORARY FACILITIES & CONTROLS** | |
| 01510 | Temporary Utilities | 8 |
| 01520 | Construction Facilities | 6 |
| 01524 | Construction Waste Management | 6 |
| 01524a | Construction Waste Management Template | 2 |
| 01560 | Temporary Barriers and Enclosures | 10 |
| 01570 | Temporary Controls | 2 |
| | | |
| **01600** | **PRODUCT REQUIREMENTS** | |
| 01610 | Basic Product Requirements | 4 |
| 01620 | Product Options | 4 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 2 of 8
Prepared by CAS/DCSD
Revised 10/1/11

01630          Product Substitution Procedures .................................................................. 4
01630a         Contractor's Substitution Request .............................................................. 2
01663          Product Delivery, Storage, and Handling Requirements ............................... 2

**01700         EXECUTION REQUIREMENTS**
01700          Contract Closeout ...................................................................................... 4
01710          Examination ................................................................................................ 4
01720          Preparation ................................................................................................ 6
01730          Execution ................................................................................................... 8
01735          Operation and Maintenance Data ............................................................... 2
01740          Cleaning ..................................................................................................... 4
01745          Warranties................................................................................................... 2
01750          Starting and Adjusting ................................................................................ 2
01760          Protection of Installed Construction ........................................................... 2
01770          Closeout Procedures .................................................................................. 8
01770a         Contractor's Request for Substantial Completion Inspection ..................... 2
01770b         Architect/Engineer's Notification of Readiness for Substantial
               Completion Inspection ................................................................................ 2
01770c         Substantial Completion Inspection ............................................................. 2
01770d         Substantial Completion Inspection Additional ............................................ 2
01770e         A/E's Letter to Establish Substantial Completion Date............................... 2
01770f         Contractor's Request for Final Completion Inspection ................................ 2
01770g         A/E's Notification of Readiness for Final Completion Inspection................. 2
01770h         A/E's Letter of Establishing Final Completion Date .................................... 2
01780          Closeout Submittals .................................................................................. 16

**01800         FACILITY OPERATIONS**
01810          Fundamental Commissioning Requirements.............................................. 20
01820          Demonstration and Training ........................................................................ 2

Construction of Affordable Housing and                          00003 Table of Contents - Page 3 of 8
Home Ownership in District 11 - Gran Via Apartments                         Prepared by CAS/DCSD
ISD Contract No. Z000107                                                           Revised 10/1/11

**VOLUME 2   TECHNICAL SPECIFICATIONS**
**DIVISION 2   SITE WORK**

| SECTION | TITLE | PAGES |
|---|---|---|
| 02110 (31 10 00) | Site Clearing | 6 |
| 02200 (31 00 00) | Earthwork | 8 |
| 02220 (31 23 10) | Excavation and Fill for Utility Systems | 8 |
| 02280 (31 31 00) | Soil Treatment | 4 |
| 02500 (00 00 00) | Concrete Unit Pavers | 6 |
| 02510 (32 12 17) | Asphaltic Concrete Paving for Parking and Drives | 6 |
| 02529 (00 00 00) | Concrete Sidewalks, Straight Curbs, Curbs, Gutters & Traffic Sep | 2 |
| 02551 (34 41 05) | Maintenance of Traffic | 2 |
| 02580 (32 17 23) | Pavement Marking & Raised Retro-Reflective Pavement Markers | 4 |
| 02586 (33 71 49.23) | Exterior Electrical Work Underground | 4 |
| 02605 (33 05 13) | Precast Manholes | 4 |
| 02660 (33 10 00) | Water Distribution | 8 |
| 02720 (33 40 00) | Storm Drainage | 8 |
| 02730 (33 30 00) | Sanitary Sewer Distribution System | 8 |
| 02810 (00 00 00) | Irrigation System | 22 |
| 02826 (32 31 16) | Welded Wire Fences | 4 |
| 02830 (32 31 13) | Chain Link Fences | 6 |
| 02848 (32 17 13) | Wheel Stop | 2 |
| 02870 (00 00 00) | Site Furnishings | 4 |
| 02890 (34 41 14) | Traffic Signs | 2 |
| 02931 (32 92 23) | Sodding | 12 |
| 02950 (00 00 00) | Landscape | 22 |
| 02951 (32 01 17.63) | Asphaltic Concrete Patching | 4 |
| 02952 (32 01 17.64) | Asphaltic Concrete Repair and Sealing | 6 |

**DIVISION 3   CONCRETE**

| SECTION | TITLE | PAGES |
|---|---|---|
| 03100 (03 10 00) | Concrete Formwork | 8 |
| 03200 (03 20 00) | Concrete Reinforcement | 6 |
| 03300 (03 30 00) | Cast-In-Place Concrete | 32 |
| 03700 (03 01 00) | Concrete Repair | 6 |

**DIVISION 4   MASONRY**

| SECTION | TITLE | PAGES |
|---|---|---|
| 04200 (04 20 00) | Unit Masonry | 14 |
| 04230 (04 20 20) | Reinforced Unit Masonry | 6 |
| 04530 (04 29 00) | Masonry Patchwork | 2 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 4 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**DIVISION 5    METALS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 05120 (05 12 00) | Structural Steel | 8 |
| 05400 (05 44 00) | Cold Formed Metal Framing | 4 |
| 05500 (05 50 00) | Metal Fabrications | 8 |
| 05511 (05 51 00) | Metal Stairs | 14 |
| 05520 (05 52 00) | Metal Handrails and Railings | 4 |

**DIVISION 6    WOOD AND PLASTICS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 06100 (06 10 00) | Carpentry | 6 |
| 06300 (06 05 73) | Wood Treatment | 2 |
| 06400 (06 40 00) | Architectural Woodwork | 6 |

**DIVISION 7    THERMAL AND MOISTURE PROTECTION**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 07084 (07 08 40) | Green Wall | 4 |
| 07121 (07 14 16) | Cold Fluid - Applied Waterproofing | 6 |
| 07190 (07 26 00) | Vapor Barrier | 2 |
| 07210 (07 21 00) | Building Insulation | 4 |
| 07270 (07 84 00) | Fire stopping and Smoke Barrier Caulking | 8 |
| 07510 (07 51 13) | Built-Up Asphalt Roofing System | 12 |
| 07920 (07 92 00) | Joint Sealants | 6 |

**DIVISION 8    DOORS AND WINDOWS**

| SECTION | TITLE | PAGES |
|---------|-------|-------|
| 08110 (08 11 13) | Steel Doors and Frames | 8 |
| 08210 (08 14 16) | Flush Wood Doors | 6 |
| 08305 (08 31 00) | Access Doors and Panels | 4 |
| 08333 (08 33 23) | Overhead Coiling Doors | 4 |
| 08400 (08 41 00) | Entrances & Storefronts | 6 |
| 08520 (08 51 13) | Aluminum Windows | 8 |
| 08710 (08 71 00) | Door Hardware | 10 |
| 08730 (08 71 00) | Automatic Door Operators | 4 |
| 08800 (08 80 00) | Glass and Glazing | 10 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 5 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**VOLUME 3   TECHNICAL SPECIFICATIONS**
**DIVISION 9   FINISHES**

| SECTION | TITLE | PAGES |
|---|---|---|
| 09220 (09 24 00) | Portland Cement Plaster (Stucco) | 12 |
| 09250 (09 29 00) | Gypsum Board | 12 |
| 09315 (00 00 00) | Porcelain Tile | 12 |
| 09510 (09 51 00) | Acoustical Ceilings | 8 |
| 09900 (09 91 00) | Painting | 16 |

**DIVISION 10  SPECIALTIES**

| SECTION | TITLE | PAGES |
|---|---|---|
| 10200 (08 91 00) | Louvers & Vents | 6 |
| 10520 (10 44 00) | Fire Protection Specialties | 4 |
| 10550 (10 55 13) | Mailboxes | 4 |
| 10810 (10 28 13) | Toilet Accessories | 4 |
| 10987 (10 57 87) | Wire Metal Shelving | 2 |

**DIVISION 11  EQUIPMENT**

| SECTION | TITLE | PAGES |
|---|---|---|
| 11172 (11 82 00) | Compactor | 2 |
| 11175 (14 91 00) | Trash Chute | 6 |
| 11450 (11 31 00) | Residential & Commercial Appliances | 4 |

**DIVISION 12  FURNISHINGS**

| SECTION | TITLE | PAGES |
|---|---|---|
| 12482 (12 48 20) | Entrance Floor Grids and Frames | 4 |
| 12490 (12 21 13) | Window Treatments | 6 |

**DIVISION 13  SPECIAL CONSTRUCTION**

| SECTION | TITLE | PAGES |
|---|---|---|
| 13100 (26 41 00) | Lightning Protection | 4 |
| 13825 (00 00 00) | Intrusion Detection System | 6 |
| 13827 (00 00 00) | CCTV Surveillance System | 4 |
| 13845 (28 31 00) | Fire Alarm Detection System | 18 |

**DIVISION 14  CONVEYING SYSTEMS**

| SECTION | TITLE | PAGES |
|---|---|---|
| 14212 (14 21 23) | Electric Traction Elevators | 16 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 6 of 8
Prepared by CAS/DCSD
Revised 10/1/11

**DIVISION 15  MECHANICAL**

| SECTION | TITLE | PAGES |
|---|---|---|

| SECTION | TITLE | PAGES |
|---|---|---|
| 15050 (22 05 00) | Basic Materials and Methods | 6 |
| 15052 (26 29 23) | Variable Frequency Drives | 6 |
| 15055 (26 29 24) | Motors | 4 |
| 15060 (21 05 29) | Hangers and Supports | 6 |
| 15070 (21 05 49) | Mechanical Sound and Vibration Control | 6 |
| 15075 (21 05 53) | Mechanical Identification | 2 |
| 15078 (21 05 56) | Field Painting of Mechanical Systems | 4 |
| 15083 (21 07 13) | Duct Insulation | 6 |
| 15089 (22 07 19) | Piping Insulation | 6 |
| 15100 (22 05 26) | Valves | 6 |
| 15105 (22 10 10) | Plumbing Piping | 8 |
| 15170 (22 14 29) | Sump Pumps | 4 |
| 15182 (23 21 23) | HVAC Pumps | 2 |
| 15183 (23 21 13) | Hydronic Piping | 4 |
| 15184 (23 2310) | Refrigerant (DX) Piping and Specialties | 6 |
| 15300 (21 10 00) | Fire Sprinkler System | 10 |
| 15320 (21 30 10) | Fire Pump and Controls | 6 |
| 15410 (22 40 00) | Plumbing Fixtures | 12 |
| 15430 (22 48 00) | Plumbing Specialties | 6 |
| 15440 (21 11 23) | Domestic Water Pumps | 8 |
| 15480 (22 36 00) | Domestic Water Heaters | 2 |
| 15484 (00 00 00) | Fuel Oil Systems | 8 |
| 15724 (23 77 01) | Commercial DX Air Conditioning System | 6 |
| 15736 (23 81 03) | Ductless Air Conditioner | 2 |
| 15810 (23 31 13) | Metal Ducts & Accessories | 12 |
| 15816 (23 31 16) | Non Metal Ducts | 8 |
| 15830 (23 24 00) | Fans | 14 |
| 15850 (23 37 00) | Air Outlets and Inlets | 10 |
| 15860 (23 40 00) | Air Cleaning Devices | 4 |
| 15900 (23 09 00) | HVAC Instrumentation and Controls | 6 |
| 15940 (23 09 93) | Sequence of Operation | 2 |
| 15995 (23 05 93) | Startup & Certification of Air, Water & Control Systems | 6 |
| 15996 (00 00 00) | LEED HVAC Systems Commissioning | 4 |
| 15997 (00 00 00) | LEED Plumbing Systems Commissioning | 2 |

**DIVISION 16  ELECTRICAL**

| SECTION | TITLE | PAGES |
|---|---|---|

| SECTION | TITLE | PAGES |
|---|---|---|
| 16010 (26 02 00) | General Provisions | 6 |
| 16020 (26 03 00) | Completion of Work | 2 |
| 16023 (00 00 00) | Codes and Standards | 2 |
| 16050 (26 05 00) | Basic Materials and Methods | 4 |
| 16053 (26 05 10) | Provisions for Interior Finishing | 2 |
| 16060 (26 05 26) | Grounding | 6 |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 7 of 8
Prepared by CAS/DCSD
Revised 10/1/11

| | | |
|---|---|---|
| 16070 (26 05 30) | Equipment Bases, Mats and Supports | 2 |
| 16072 (26 05 29) | Electrical Supporting Devices | 2 |
| 16080 (26 08 10) | Electrical Inspection and Testing | 2 |
| 16085 (26 08 20) | Cables, Splices and Terminations Testing | 6 |
| 16088 (26 08 30) | Acceptance Tests and Performance Verification | 8 |
| 16110 (00 00 00) | Underground Services | 2 |
| 16111 (00 00 00) | Raceways, Conduits, Fittings and Supports | 8 |
| 16120 (26 05 20) | Wire and Cables | 6 |
| 16129 (26 05 34) | Terminal Lugs | 2 |
| 16137 (26 05 32) | Pull and Junction Boxes | 4 |
| 16138 (26 05 37) | Outlet Boxes | 4 |
| 16140 (00 00 00) | Wiring Devices | 4 |
| 16160 (00 00 00) | Terminal Cabinets | 2 |
| 16220 (26 29 10) | Motor Starters | 4 |
| 16225 (26 24 20) | Motors and Motor Controls | 4 |
| 16250 (00 00 00) | Automatic Transfer Switch | 8 |
| 16400 (26 10 10) | Service and Distribution | 2 |
| 16410 (26 28 16) | Circuit Breakers | 4 |
| 16413 (00 00 00) | Safety Switches | 2 |
| 16415 (26 43 13) | Transient Voltage Surge Suppressors | 6 |
| 16425 (00 00 00) | Switchboard | 6 |
| 16440 (26 24 16) | Panel Boards and Load Centers | 4 |
| 16450 (26 25 00) | Low Voltage Plug-In Busway | 6 |
| 16460 (26 22 13) | Energy Efficient Dry Type Transformers | 4 |
| 16475 (00 00 00) | Overcurrent Protective Devices | 4 |
| 16490 (26 28 13) | Fuses | 2 |
| 16500 (00 00 00) | Lighting Standards | 2 |
| 16510 (26 51 00) | Interior Luminaries | 12 |
| 16511 (00 00 00) | Lighting Fixtures and Lamps | 6 |
| 16520 (26 56 00) | Exterior Luminaries | 10 |
| 16530 (00 00 00) | Exterior Lighting | 4 |
| 16572 (26 09 23) | Lighting Controls | 6 |
| 16622 (00 00 00) | Generator | 18 |
| 16910 (26 09 00) | Electric Systems Controls | 2 |
| 16912 (26 09 10) | Mechanical Systems Controls | 2 |
| 16995 (00 00 00) | LEED Electrical Systems Commissioning | 2 |

**END OF SECTION 00003**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00003 Table of Contents - Page 8 of 8
Prepared by CAS/DCSD
Revised 10/1/11

## SECTION 00004 – BID SET - LIST OF DRAWINGS

<u>General</u>

| | | |
|---|---|---|
| 1. | G0.1.001 | COVER SHEET |
| 2. | G0.2.001 | EXTERIOR BUILDING RENDERING |
| 3. | G0.3.001 | INDEX OF DRAWINGS |
| 4. | G0.3.002 | INDEX OF DRAWINGS |
| 5. | G0.4.001 | PROJECT INFORMATION, LEGEND AND SYMBOLS |
| 6. | G0.5.001 | SITE DATA |
| 7. | G0.6.001 | FLORIDA ACCESSIBILITY REQUIREMENTS – SHEET 1 |
| 8. | G0.6.002 | FLORIDA ACCESSIBILITY REQUIREMENTS – SHEET 2 |

<u>Survey</u>

| | | |
|---|---|---|
| 9. | 1 of 1 | BOUNDARY SURVEY DATED JUNE 1, 2010, PREPARED BY ROBAYNA AND ASSOCIATES INC., AND LAST REVISED ON APRIL 21, 2011. |
| 10. | 1 of 1 | SPECIFIC PURPOSE SURVEY DATED MAY 5, 2011, PREPARED BY ROBAYNA AND ASSOCIATES INC. |

<u>Civil</u>

| | | |
|---|---|---|
| 11. | C0.01 | GENERAL NOTES |
| 12. | C0.02 | WATER AND SEWER GENERAL NOTES |
| 13. | C1.01 | SITE PLAN |
| 14. | C1.02 | SITE PLAN |
| 15. | C2.01 | PAVING, GRADING, AND DRAINAGE PLAN |
| 16. | C2.02 | PAVING, GRADING, AND DRAINAGE PLAN |
| 17. | C2.03 | PAVING, GRADING, AND DRAINAGE PLAN |
| 18. | C2.04 | ROADWAY CROSS-SECTIONS PLAN |
| 19. | C2.05 | POLLUTION PREVENTION PLAN |
| 20. | C2.06 | POLLUTION PREVENTION PLAN |
| 21. | C2.07 | POLLUTION PREVENTION DETAILS |
| 22. | C5.01 | SIGN AND PAVEMENT MARKING PLAN |
| 23. | C5.02 | SIGN AND PAVEMENT MARKING PLAN |
| 24. | C5.03 | SIGN AND PAVEMENT MARKING PLAN |
| 25. | C6.01 | WATER & SEWER PLAN |
| 26. | C6.02 | WATER & SEWER PLAN |
| 27. | C6.03 | WATER & SEWER PLAN |
| 28. | C6.04 | WATER MAIN PROFILE PLAN |
| 29. | C6.05 | SEWER MAIN PROFILE PLAN |
| 30. | C7.01 | PAVING, GRADING, DRAINAGE DETAILS |
| 31. | C7.02 | SIGN AND PAVEMENT MARKING DETAILS |

<u>Landscape</u>

| | | |
|---|---|---|
| 32. | L1.01 | TREE REMOVAL PLAN - WEST |
| 33. | L1.02 | TREE REMOVAL PLAN - EAST |
| 34. | L2.01 | PARTIAL LANDSCAPE PLAN - WEST |
| 35. | L2.02 | PARTIAL LANDSCAPE PLAN - EAST |
| 36. | L2.03 | PLANTING DETAILS |
| 37. | L3.01 | PARTAIL IRRIGATION PLAN - WEST |
| 38. | L3.02 | PARTIAL IRRIGATION PLAN - EAST |
| 39. | L3.03 | IRRIGATION DETAILS AND NOTES |
| 40. | L4.01 | LANDSCAPE SITE MATERIAL PLAN - WEST |
| 41. | L4.02 | LANDSCAPE SITE MATERIAL PLAN - EAST |
| 42. | L4.03 | LANDSCAPE SITE DETAILS AND NOTES |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 1 of 6
Prepared by CAS/DCSD
Revised 10/1/11

Life Safety

| 43. | LS1.1.100 | LIFE SAFETY SITE PLAN |
| 44. | LS1.1.200 | LIFE SAFETY FLOOR PLAN |

Architecture

| 45. | A1.1.101 | SITE PLAN |
| 46. | A1.1.102 | GEOMETRY PLAN |
| 47. | A1.1.103 | ENLARGED SITE PLAN 1 |
| 48. | A1.1.104 | ENLARGED SITE PLAN 2 |
| 49. | A1.1.105 | ENLARGED SITE PLAN 3 |
| 50. | A1.1.106 | ENLARGED SITE PLAN 4 |
| 51. | A1.2.101 | SITE GENERAL DETAILS |
| 52. | A1.2.102 | SITE GENERAL DETAILS |
| 53. | A1.2.103 | MONUMENTAL AND WALL SIGNS |
| 54. | A1.2.104 | GREEN WALL SECTIONS |
| 55. | A2.1.101 | FIRST FLOOR PLAN |
| 56. | A2.1.201 | SECOND FLOOR PLAN |
| 57. | A2.1.301 | THIRD FLOOR PLAN |
| 58. | A2.1.401 | FOURTH FLOOR PLAN |
| 59. | A2.1.501 | FIFTH FLOOR PLAN |
| 60. | A2.1.601 | ROOF PLAN |
| 61. | A2.2.101 | FIRST FLOOR REFLECTED CEILING PLAN |
| 62. | A2.2.201 | TYP. FLOOR REFLECTED CEILING PLAN 2ND, 3RD, 4TH AND 5TH |
| 63. | A2.3.101 | FIRST FLOOR COMMUNITY ROOM |
| 64. | A2.3.102 | FIRST FLOOR OFFICE SPACE A |
| 65. | A2.3.103 | FIRST FLOOR OFFICE SPACE B |
| 66. | A2.3.104 | FIRST FLOOR SERVICE AREAS |
| 67. | A2.4.201 | 2ND FLOOR PLAN NW UNITS A-B |
| 68. | A2.4.202 | 2nd FLOOR PLAN NE UNITS A-B-C |
| 69. | A2.4.203 | 2ND FLOOR PLAN SE UNITS A-B |
| 70. | A2.4.204 | 2nd FLOOR PLAN S UNIT C AND SERVICE AREA |
| 71. | A2.4.205 | 2nd FLOOR PLAN SW UNITS C-D |
| 72. | A2.5.301 | 3rd, 4th AND 5th FLOOR PLAN NW UNITS A-B |
| 73. | A2.5.302 | 3rd, 4th AND 5th FLOOR PLAN NE UNITS A-B-C |
| 74. | A2.5.303 | 3rd, 4th AND 5th FLOOR PLAN SE UNITS A-B |
| 75. | A2.5.304 | 3rd, 4th AND 5th FLOOR PLAN S UNIT C AND SERVICE AREA |
| 76. | A2.5.305 | 3rd, 4th AND 5th FLOOR PLAN SW UNITS C-D |
| 77. | A2.6.101 | FIRST FLOOR RCP COMMUNITY ROOM |
| 78. | A2.6.102 | FIRST FLOOR RCP OFFICE SPACE A |
| 79. | A2.6.103 | FIRST FLOOR RCP OFFICE SPACE B |
| 80. | A2.6.104 | FIRST FLOOR RCP SERVICE AREAS |
| 81. | A2.7.201 | 2nd, 3rd, 4th AND 5th RCP NW UNITS A-B |
| 82. | A2.7.202 | 2nd, 3rd, 4th AND 5th RCP NE UNITS A-B-C |
| 83. | A2.7.203 | 2nd, 3rd, 4th AND 5th RCP SE UNITS A-B |
| 84. | A2.7.204 | 2nd, 3rd, 4th AND 5th RCP S UNITS C AND SERVICE AREA |
| 85. | A2.7.205 | 2nd, 3rd, 4th AND 5th RCP SW UNITS C-D |
| 86. | A3.1.101 | ELEVATIONS |
| 87. | A4.1.101 | BUILDING SECTIONS |
| 88. | A4.1.102 | BUILDING SECTIONS |
| 89. | A5.1.101 | WALL SECTIONS |
| 90. | A5.1.102 | WALL SECTIONS |
| 91. | A5.1.103 | WALL SECTIONS |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 2 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 92. | A5.1.104 | WALL SECTIONS |
| 93. | A5.1.105 | WALL SECTIONS |
| 94. | A5.1.106 | WALL SECTIONS |
| 95. | A6.1.101 | STAIR # 1 PLAN & SECTION |
| 96. | A6.1.102 | STAIR # 2 PLAN & SECTION |
| 97. | A6.1.103 | STAIR # 3 PLAN & SECTION |
| 98. | A6.1.104 | STAIR DETAILS |
| 99. | A6.2.101 | ELEVATOR # 1 PLAN & SECTION |
| 100. | A6.2.102 | ELEVATOR # 2 PLAN & SECTION |
| 101. | A6.2.103 | ELEVATOR # 3 PLAN & SECTION |
| 102. | A6.3.101 | TRASH CHUTE PLAN & SECTION |
| 103. | A7.1.101 | OFFICE SPACE 'A' ENLARGED RESTROOMS |
| 104. | A7.1.102 | OFFICE SPACE 'B' AND COMMUNITY ROOM ENLARGED RESTROOMS |
| 105. | A7.1.103 | COMMUNITY ROOM ENLARGED KITCHENETTE, MAILBOXES PLAN & SECTION |
| 106. | A7.1.201 | ENLARGED BATHROOMS UNITS A-B |
| 107. | A7.1.202 | ENLARGED BATHROOMS UNITS C-D |
| 108. | A7.1.203 | 3RD, 4TH & 5TH TYPICAL KITCHEN UNITS A-B-C-D |
| 109. | A8.1.101 | ROOF DETAILS |
| 110. | A8.1.102 | DETAILS |
| 111. | A8.1.103 | DETAILS |
| 112. | A8.2.101 | DOOR DETAILS |
| 113. | A8.3.101 | PARTITION AND WALL DETAILS |
| 114. | A8.3.102 | PARTITION AND WALL DETAILS |
| 115. | A8.3.103 | MISC. DETAILS |
| 116. | A9.1.101 | DOOR SCHEDULE TYPES & NOTES |
| 117. | A9.2.101 | STOREFRONT, WINDOWS & LOUVERS TYPE ELEVATIONS |

Interior Design

| 118. | ID2.01 | FINISH PLAN 1st FLOOR |
| 119. | ID2.02 | FINISH PLAN 2nd FLOOR |
| 120. | ID2.03 | FINISH PLAN APARTMENT UNITS 2 A-B-C |
| 121. | ID3.01 | FURNITURE PLAN 1ST FLOOR |

Structural

| 122. | S0.0.001 | GENERAL NOTES |
| 123. | S0.0.002 | GENERAL NOTES |
| 124. | S0.0.003 | GENERAL NOTES |
| 125. | S0.0.004 | GENERAL NOTES |
| 126. | S1.0.000 | OVERALL FOUNDATION PLAN |
| 127. | S1.0.001 | PARTIAL FOUNDATION PLAN A |
| 128. | S1.0.002 | PARTIAL FOUNDATION PLAN B |
| 129. | S1.0.003 | PARTIAL FOUNDATION PLAN C |
| 130. | S1.0.010 | TYPICAL DETAILS |
| 131. | S1.0.011 | SCHEDULES AND DETAILS |
| 132. | S1.0.012 | SCHEDULES AND DETAILS |
| 133. | S1.0.020 | PARTIAL FOUNDATION PLANS |
| 134. | S1.0.021 | PARTIAL FOUNDATION PLANS |
| 135. | S1.0.022 | PARTIAL FOUNDATION PLANS |
| 136. | S1.0.023 | PARTIAL FOUNDATION PLANS |
| 137. | S2.0.001 | COLUMN SCHEDULES AND DETAILS |
| 138. | S2.0.002 | SECTIONS AND TYPICAL DETAILS |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 3 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 139. | S2.2.021 | SHEARWALL PARTIAL PLAN VIEWS |
| 140. | S2.2.022 | SHEARWALL PARTIAL PLAN VIEWS |
| 141. | S2.2.023 | SHEARWALL PARTIAL PLAN VIEWS |
| 142. | S2.2.024 | SHEARWALL PARTIAL PLAN VIEWS |
| 143. | S2.2.025 | SHEARWALL PARTIAL PLAN VIEWS |
| 144. | S2.2.026 | SHEARWALL PARTIAL PLAN VIEWS |
| 145. | S2.2.027 | ELEVATIONS |
| 146. | S3.1.100 | OVERALL FIRST FLOOR PLAN |
| 147. | S3.1.101 | PARTIAL FIRST FLOOR PLAN A |
| 148. | S3.1.102 | PARTIAL FIRST FLOOR PLAN B |
| 149. | S3.1.103 | PARTIAL FIRST FLOOR PLAN C |
| 150. | S3.2.200 | OVERALL SECOND FLOOR PLAN |
| 151. | S3.2.201 | PARTIAL SECOND FLOOR PLAN A |
| 152. | S3.2.202 | PARTIAL SECOND FLOOR PLAN B |
| 153. | S3.2.203 | PARTIAL SECOND FLOOR PLAN C |
| 154. | S3.3.300 | OVERALL THIRD FLOOR PLAN |
| 155. | S3.3.301 | PARTIAL THIRD FLOOR PLAN A |
| 156. | S3.3.302 | PARTIAL THIRD FLOOR PLAN B |
| 157. | S3.3.303 | PARTIAL THIRD FLOOR PLAN C |
| 158. | S3.4.400 | OVERALL FOURTH FLOOR PLAN |
| 159. | S3.4.401 | PARTIAL FOURTH FLOOR PLAN A |
| 160. | S3.4.402 | PARTIAL FOURTH FLOOR PLAN B |
| 161. | S3.4.403 | PARTIAL FOURTH FLOOR PLAN C |
| 162. | S3.5.500 | OVERALL FIFTH FLOOR PLAN |
| 163. | S3.5.501 | PARTIAL FIFTH FLOOR PLAN A |
| 164. | S3.5.502 | PARTIAL FIFTH FLOOR PLAN B |
| 165. | S3.5.503 | PARTIAL FIFTH FLOOR PLAN C |
| 166. | S3.6.600 | OVERALL ROOF PLAN |
| 167. | S3.6.601 | PARTIAL ROOF PLAN A |
| 168. | S3.6.602 | PARTIAL ROOF PLAN B |
| 169. | S3.6.603 | PARTIAL ROOF PLAN C |
| 170. | S3.7.001 | HIGH ROOF PLAN |
| 171. | S4.0.001 | SCHEDULES AND DETAILS |
| 172. | S4.0.002 | STRUCTURAL DETAILS |
| 173. | S4.0.003 | TYPICAL DETAILS |
| 174. | S4.0.004 | SCHEDULES AND DETAILS |
| 175. | S4.0.005 | TYPICAL DETAILS |
| 176. | S4.0.006 | TYPICAL DETAILS |
| 177. | S4.0.007 | TYPICAL DETAILS |
| 178. | S5.0.001 | TYPICAL MASONRY DETAILS |

Mechanical

| 179. | M0.01 | HVAC NOTES |
| 180. | M0.02 | HVAC SCHEDULES |
| 181. | M0.03 | HVAC SCHEDULES |
| 182. | M2.01 | PARTIAL FIRST FLOOR HVAC PLAN A |
| 183. | M2.02 | PARTIAL FIRST FLOOR HVAC PLAN B |
| 184. | M2.03 | PARTIAL SECOND FLOOR HVAC PLAN A |
| 185. | M2.04 | PARTIAL SECOND FLOOR HVAC PLAN B |
| 186. | M2.05 | PARTIAL TYPICAL (3rd THRU 5th ) FLOOR HVAC PLAN A |
| 187. | M2.06 | PARTIAL TYPICAL (3rd THRU 5th ) FLOOR HVAC PLAN B |
| 188. | M2.07 | PARTIAL ROOF HVAC PLAN A |
| 189. | M2.08 | PARTIAL ROOF HVAC PLAN B |
| 190. | M2.09 | PARTIAL FIRST FLOOR HVAC PLAN |

Construction of Affordable Housing and                                          00004 List of Drawings - Page 4 of 6
Home Ownership in District 11 - Gran Via Apartments                              Prepared by CAS/DCSD
ISD Contract No. Z000107                                                         Revised 10/1/11

| 191. | M2.10 | PARTIAL FIRST FLOOR HVAC PLAN |
|---|---|---|
| 192. | M2.11 | ELECTRICAL ROOM, JANITOR ROOM, LAUNDRY ROOM HVAC PLAN |
| 193. | M2.12 | APARTMENTS HVAC FLOOR PLAN |
| 194. | M2.13 | GENERATOR ROOM HVAC AND HVAC RISERS |
| 195. | M5.01 | HVAC CONTROL |
| 196. | M6.01 | HVAC DETAILS |
| 197. | M6.02 | HVAC DETAILS |
| 198. | M6.03 | HVAC DETAILS |
| 199. | M6.04 | HVAC DETAILS |

Plumbing

| 200. | P0.01 | PLUMBING FIXTURES, SCHEDULES AND NOTES |
|---|---|---|
| 201. | P0.02 | PLUMBING FIXTURES, SCHEDULES AND LEGEND |
| 202. | P1.01 | SITE PLUMBING PLAN |
| 203. | P2.01 | PARTIAL FIRST FLOOR PLUMBING PLAN A (SANITARY & WATER ONLY) |
| 204. | P2.02 | PARTIAL FIRST FLOOR PLUMBING PLAN B (SANITARY & WATER ONLY) |
| 205. | P2.03 | PARTIAL 1ST FLR. PLUMB. PLAN A (STORM & CONDENSATE DRAIN ONLY) |
| 206. | P2.04 | PARTIAL 1ST FLR. PLUMB. PLAN B (STORM & CONDENSATE DRAIN ONLY) |
| 207. | P2.05 | PARTIAL SECOND FLOOR PLUMBING A |
| 208. | P2.06 | PARTIAL SECOND FLOOR PLUMBING B |
| 209. | P2.07 | PARTIAL TYPICAL (3rd THRU 5th) FLOOR PLAN A |
| 210. | P2.08 | PARTIAL TYPICAL (3rd THRU 5th) FLOOR PLAN B |
| 211. | P2.09 | PARTIAL ROOF PLUMBING PLAN A |
| 212. | P2.10 | PARTIAL ROOF PLUMBING PLAN B |
| 213. | P2.11 | APARTMENTS PLUMBING FLOOR PLAN |
| 214. | P2.12 | APARTMENTS PLUMBING FLOOR PLAN |
| 215. | P2.13 | PARTIAL FIRST FLOOR SANITARY PLAN |
| 216. | P2.14 | PARTIAL FIRST FLOOR WATER SUPPLY PLAN |
| 217. | P2.15 | PARTIAL FIRST FLOOR SANITARY PLAN |
| 218. | P2.16 | PARTIAL FIRST FLOOR WATER SUPPLY PLAN |
| 219. | P2.17 | TYPICAL FLOOR LAUNDRY AREA PLUMBING PLAN |
| 220. | P3.01 | VERTICAL SANITARY RISERS |
| 221. | P3.02 | VERTICAL WATER SUPPLY RISERS |
| 222. | P3.03 | PARTIAL HORIZONTAL SANITARY RISER |
| 223. | P3.04 | PARTIAL HORIZONTAL SANITARY RISER |
| 224. | P3.05 | PARTIAL HORIZONTAL WATER SUPPLY RISER |
| 225. | P3.06 | PARTIAL HORIZONTAL WATER SUPPLY RISER |
| 226. | P3.07 | PARTIAL STORM RISER |
| 227. | P3.08 | PARTIAL STORM RISER |
| 228. | P3.09 | PARTIAL STORM RISER |
| 229. | P5.01 | PLUMBING DETAILS |
| 230. | P5.02 | PLUMBING DETAILS |
| 231. | P5.03 | GENRATOR FUEL PUMP FUELING SYSTEM DETAIL |

Electrical

| 232. | E0.01 | ELECTRICAL NOTES, LEGEND AND ABBREVIATIONS |
|---|---|---|
| 233. | E1.01 | ELECTRICAL SITE PLAN |
| 234. | E1.02 | PHOTOMETRIC SITE PLAN |
| 235. | E2.01 | PARTIAL ELECTRICAL FIRST FLOOR PLAN A |

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 5 of 6
Prepared by CAS/DCSD
Revised 10/1/11

| 236. | E2.02 | PARTIAL ELECTRICAL FIRST FLOOR PLAN B |
| 237. | E2.03 | PARTIAL ELECTRICAL TYPICAL FLOOR PLAN A |
| 238. | E2.03A | PARTIAL ELECTRICAL CONDUIT PLAN A |
| 239. | E2.03B | PARTIAL TELE. & DATA CONDUIT PLAN A |
| 240. | E2.04 | PARTIAL ELECTRICAL TYPICAL FLOOR PLAN B |
| 241. | E2.04A | PARTIAL ELECTRICAL CONDUIT PLAN B |
| 242. | E2.04B | PARTIAL TELE. & DATA CONDUIT PLAN B |
| 243. | E2.05 | PARTIAL ELECTRICAL ROOF PLAN A |
| 244. | E2.06 | PARTIAL ELECTRICAL ROOF PLAN B |
| 245. | E3.01 | APARTMENT UNIT ELECTRICAL PLAN |
| 246. | E4.01 | MAIN ELECTRICAL AND GENERATOR ROOM LAYOUT |
| 247. | E4.02 | TYPICAL METER ROOM AND PUMP ROOM LAYOUT |
| 248. | E4.03 | TYPICAL LAUNDRY AND UTILITY ROOM ELECTRICAL LAYOUT |
| 249. | E5.01 | ELETRICAL RISER DIAGRAM |
| 250. | E5.02 | DWELLING UNIT RISER DIAGRAM |
| 251. | E5.03 | TELEPHONE/DATA RISER DIAGRAM |
| 252. | E5.04 | CATV RISER DIAGRAM |
| 253. | E6.01 | DWELLING UNIT PANEL SCHEDULE |
| 254. | E6.02 | PANEL SCHEDULES |
| 255. | E6.03 | PANEL SCHEDULES |
| 256. | E6.04 | LIGHTING FIXTURE SCHEDULE |
| 257. | E7.01 | FIRE ALARM GENERAL NOTES |
| 258. | E7.02 | FIRE ALARM LEGEND AND ABBREVIATIONS |
| 259. | E7.03 | PARTIAL FIRE ALARM FIRST FLOOR PLAN A |
| 260. | E7.04 | PARTIAL FIRE ALARM FIRST FLOOR PLAN B |
| 261. | E7.05 | PARTIAL TYPICAL FIRE ALARM FLOOR PLAN A |
| 262. | E7.06 | PARTIAL TYPICAL FIRE ALARM FLOOR PLAN B |
| 263. | E7.07 | PARTIAL FIRE ALARM ROOF PLAN A |
| 264. | E7.08 | PARTIAL FIRE ALARM ROOF PLAN B |
| 265. | E7.09 | FIRE ALARM RISER |
| 266. | E7.10 | FIRE ALARM RISER |
| 267. | E7.11 | FIRE ALARM RISER |
| 268. | E7.12 | FIRE ALARM RISER |
| 269. | E7.13 | FIRE ALARM RISER |
| 270. | E8.01 | LIGHTNING PROTECTION DETAILS AND NOTES |
| 271. | E8.02 | LIGHTNING PROTECTION PLAN |
| 272. | E9.01 | SECURITY NOTES AND LEGEND |
| 273. | E9.02 | SECURITY PLAN |

Fire Protection

| 274. | FP1.1 | PARTIAL FIRST FLOOR FIRE PROTECTION PLAN A |
| 275. | FP1.2 | PARTIAL FIRST FLOOR FIRE PROTECTION PLAN B |
| 276. | FP2.1 | PARTIAL SECOND FLOOR FIRE PROTECTION PLAN A |
| 277. | FP2.2 | PARTIAL SECOND FLOOR FIRE PROTECTION PLAN B |
| 278. | FP3.1 | PARTIAL TYPICAL FLOOR FIRE PROTECTION PLAN A |
| 279. | FP3.2 | PARTIAL TYPICAL FLOOR FIRE PROTECTION PLAN B |
| 280. | FP4.0 | APTS. FIRE PROTECTION PLAN, SCHEDULES, NOTES & DETAILS |

**END OF SECTION 00004**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00004 List of Drawings - Page 6 of 6
Prepared by CAS/DCSD
Revised 10/1/11

# ADVERTISEMENT FOR BIDS
# MIAMI-DADE COUNTY, FLORIDA
# INTERNAL SERVICES DEPARTMENT (ISD)

Sealed bids for furnishing all labor, materials and equipment for the following project will be received in the Office of the Clerk of the Board of County Commissioners, Stephen P. Clark Center, 111 N.W. 1st Street, 17th Floor, Suite 17-202, Miami, FL **until 2:00 PM, local time, on Friday, December 16, 2011.**  All bids received prior to the stipulated time will then be transferred to the 18th Floor, where envelopes will be publicly opened and prices will be read aloud on the above bid due date, shortly after 2:00 PM, local time, at the Stephen P. Clark Center, 111 N.W. 1st Street, 18th Floor, Conference Room 18-3, Miami, FL.

| | |
|---|---|
| PROJECT NAME: | **CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS** |
| PROJECT NUMBER: | ISD No. Z000107 GOB ESP |
| CONTRACT NUMBER: | ISD No. Z000107 |
| LOCATION: | SW 127th Avenue and SW 8th Street, Miami, FL 33184 |

DESCRIPTION:   This new project consists of a multi-story affordable residential and retail building designed by ISD staff.  The residential component consists of 104 units, comprised of 12 one-bedroom units of 717 sq. ft., 12 studio units of 395 sq. ft., and 80 one-bedroom units of 650 sq. ft.  The common areas of the building will include a community room with kitchenette and ADA compliant restrooms of approximately 1,467 sq. ft., a building manager's office, a bicycle storage room, various waiting/pick-up areas, and covered parking for all residents with controlled gate access; all floors are equipped with laundry rooms and storage areas.  Utility areas include a generator room, fire pump room, telecommunications room, and trash and recycling room, as well as a chute system. The building is equipped with two (2) passenger elevators and one (1) service elevator; in addition, the building will include approximately 3,400 sq. ft. of retail/office space, an outdoor landscaped plaza, and park and ride component.  Gran Via Apartments is an affordable housing project which is designed to achieve a minimum of "Silver" rating under the Leadership in Energy and Environmental Design (LEED) certification.  Management and operation of the facility will be contracted out as the project nears completion.

BASE ESTIMATE:      **$7,748,918.00***

(*) This Base Estimate includes 0.25% to account for fees related to the Office of the Inspector General, pursuant to Section 2-1076 of the Code of Miami-Dade County.

RESPONSIBILITY REQUIREMENTS: ISD requires that the selected General Contractor must 1) demonstrate having built one (1) affordable housing facility of similar size and complexity within the past ten (10) years; and 2) must be a LEED®AP or have a LEED®AP Consultant on staff during the entire construction phase, who can demonstrate having participated in the construction of at least one (1) completed, Silver LEED-certified facility, or one (1) facility under construction, which is registered with the United States Green Building Council (USGBC) to pursue Silver LEED Certification.  In addition, bidders are encouraged to include in their bid submissions general information regarding their companies' management and operations, financial resources, bonding capacity, payment of subcontractors, and a history of commenced and completed projects in order to support said requirements. Any and all documentation submitted to support these requirements will be subject to verification by County staff.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 1 of 4
Prepared by CAS/DCSD
Revised 10/1/11

BID DOCUMENTS AVAILABILITY: Commencing on Wednesday 16, 2011 at 9:00 AM, digital copies of the bid documents will be available for purchase at the ISD Trade Shops, 3501 NW 46th Street, Miami, FL 33142, upon payment of a non-refundable fee of Fifty Dollars ($50.00) for the first copy and Twenty-Five Dollars ($25.00) for each copy thereafter.  Upon request, hard-copy sets of these documents will be available at a non-refundable fee of One-Hundred and Fifty Dollars ($150.00) per set of documents. Bidders are advised that only bids from contractors who have purchased the bid documents through GSA will be considered.  Please contact Ms. Lillian D. Garcia, Capital Projects Coordinator, ISD, via e-mail at garciad@miamidade.gov for more details.

PRE-BID CONFERENCE:  A Pre-Bid Conference to allow prospective contractors to avail themselves of the particulars of this contract will be held at the Stephen P. Clark Center, 111 N.W. 1st Street, Miami, FL 33128, 18th Floor, **Conference Room 18-3, commencing at 10:00 AM on Tuesday, November 22, 2011;** a site visit may be scheduled upon request.  While attendance is not mandatory, bidders are encouraged to attend both the pre-bid meeting and site visit.

REQUESTS FOR INFORMATION (RFI): The Contractor may submit a Request for Information (RFI) where the Contractor believes that the specifications or drawings are unclear or present a conflict.  All requests must be submitted in writing to Ms. Lillian D. Garcia, Capital Projects Coordinator, ISD, via e-mail at garciad@miamidade.gov, in a manner that clearly identifies the drawing and/or specification Section where clarification or interpretation is being requested; the County may respond in writing.

CONTRACTORS' CERTIFICATION: Prospective Contractors are required to be certified by Miami-Dade County in ONE of the following categories: General Building, General Engineering, or other certified categories as applicable to Chapter 10 of the Code of Miami-Dade County, and/or State of Florida General Contractor's License.

CONTRACT MEASURES: In accordance with County Ordinance Nos. 97-52, 97-158, and 03-1, and Administrative Order Nos. 3-22 and 3-37, a Community Small Business Enterprise (CSBE) subcontractor goal of 24.00% has been established; Community Workforce Program (CWP) measures are not applicable. Compliance with these Ordinances and Administrative Orders is required for all contractors submitting a bid for this project; see "Participation Provisions" which are bound herein, and are made part of the Specifications and Contract Documents.

BIDS SUBMITTAL: Prospective Contractors will submit two (2) sealed envelopes.  Envelope No. 1 will contain the complete bid package including pricing, and will be opened and prices read aloud shortly after the reception of bids is closed. Envelope No. 2 will contain the Schedule of Intent Affidavit (SOIA) and the Vendor Affirmation Affidavit (in case the latter has never been submitted to the County).  Each sealed envelope or container shall bear on the outside the envelope number (1 and 2), the Bidder's name, his/her address, the title and number of the project for which the bid is submitted, and the date of bid opening.  Both envelopes are due at the time and date of bid submission as stated in the advertisement.  Bids will not be opened or considered if received after the first bid envelope or container has been opened.  At the very minimum, Envelope No. 2 containing the SOIA submitted by the three (3) lowest bidders will be sent to the Division of Small Business Development (SBD) shortly after prices are read.  Should any of the SOIA be defective (see included Participation Provisions), prospective Contractors may be given forty-eight (48) hours to rectify any correctable errors.

BID BOND/PAYMENT AND PERFORMANCE BOND:  Bids must also be accompanied by a certified check or acceptable bid bond in an amount not less than five percent (5%) of the Base Bid.  The Bid Bond will guarantee that the Bidder, if awarded the contract, will enter into a written contract with the Board of County Commissioners of Miami-Dade County, Florida within ten (10) business days after receiving a formal Notice of Recommendation for Award.  In addition, the successful Bidder shall give a payment and performance bond satisfactory to the County, and as provided in the terms and conditions of the Contract Documents.

WITHDRAWAL OF BIDS: Bidders may not withdraw their bids for a period of up to one hundred eighty (180) calendar days after the bid opening.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 2 of 4
Prepared by CAS/DCSD
Revised 10/1/11

CONE OF SILENCE: Pursuant to Section 2-11.1(t) of the Miami-Dade County Code, as amended, and County Administrative Order 3-27, a "cone of silence" is imposed upon each RFP, RFQ or Bid after its advertisement and terminates at the time the County Manager issues a written recommendation to the Board on County Commissioners.  The Cone of Silence <u>prohibits any communication</u> regarding RFPs, RFQs or bids between, among others:

a.   Potential vendors, service providers, lobbyists or consultants and the County's professional staff including, but not limited to, the County Manager and the County Manager's staff, the Mayor, County Commissioners or their respective staffs;
b.   The Mayor, County Commissioners or their respective staffs and the County's professional staff including, but not limited to, the County Manager the County Manager's staff;
c.   Potential vendors, service providers, bidders, lobbyists or consultants, any member of the County's professional staff, the Mayor, County Commissioners or their respective staffs and any member of the respective Selection Committee.

The provisions do not apply to, among other communications:

a.   Oral communications with the staff of the Vendor Information Center, the responsible Procurement Agent or Contracting Officer, provided the communication is limited strictly to matters or process or procedure already contained in the solicitation document;
b.   Oral communications at the proposal or pre-bid conferences, oral presentations before selection committees, contract negotiation during any duly noticed public meeting, public presentations made to the Board of County Commissioners during any duly noticed public meeting or Board of County Commissioners unless specifically prohibited by the applicable RFP, RFQ or bid documents.

Prospective Contractors must file a copy of any written communications with the Clerk of the Board, which shall be made available to any person upon request.  The County shall respond in writing and file a copy with the Clerk of the Board, which shall be made available to any person upon request.  Written communications may be in the form of e-mail, with a copy to the Clerk of the Board at CLERKBCC@miamidade.gov.

In addition to any penalties provided by law, a violation of the Cone of Silence by any proposer or bidder shall render any RFP award, RFQ award or bid award voidable.  Any person having personal knowledge of the violation of these provisions shall report such violation to the State Attorney's Office and/or may file a complaint with the Commission on Ethics.  Proposers or Bidders should refer to Section 2-11.1(t) of the Miami-Dade County Code for further clarification.  This language is only a summary of the key provisions of the Cone of Silence.  Please review Miami-Dade County Administrative Order 3-27 for a complete and thorough description of the Cone of Silence.

OTHER APPLICABLE LEGISLATION: Legislation applicable to this Contract includes but is not limited to Ordinance No. 91-142, Family Leave Ordinance; Ordinance No. 92-15, Drug-Free Workplace; Ordinance No. 93-129, Contractor Debarment Ordinance; Ordinances Nos. 94-166 and 96-26 on Local Preference applicability; Ordinance Nos. 97-35 and 97-104 Fair Subcontracting Practices; Resolution No. R-702-98 (repeals and supersedes Resolution Nos. R-1206-97 and R-366-97) Welfare to Work Initiative; and Ordinance No. 98-30, County Contractors Employment and Procurement Practices, as referenced for these Contract Documents.  It is the responsibility of the Bidders to inform themselves as to any and all legislation applicable to this Contract.  In order to request a copy of any ordinance, resolution and/or administrative order cited in this Bid Solicitation, the Bidder must contact the Clerk of the Board at (305) 375-5126.

The County reserves the right to waive any informality in, or to reject any or all bids.  Bids from any person, firm or corporation in default upon any agreement with the County will be rejected.

**ALINA T. HUDAK, DEPUTY MAYOR/COUNTY MANAGER**
**MIAMI-DADE COUNTY**

**HARVEY RUVIN, CLERK**
**BOARD OF COUNTY COMMISSIONERS**

Construction of Affordable Housing and                                                00020 Advertisement - Page 3 of 4
Home Ownership in District 11 - Gran Via Apartments                               Prepared by CAS/DCSD
ISD Contract No. Z000107                                                                            Revised 10/1/11

**THIS PAGE INTENTIONALLY LEFT BLANK**

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00020 Advertisement - Page 4 of 4
Prepared by CAS/DCSD
Revised 10/1/11

## CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS ISD CONTRACT NO. Z000107

## DIVISION 0 – GENERAL DOCUMENTS
## SECTION 00100 – INSTRUCTIONS TO PROSPECTIVE CONTRACTOR

Article and Title                                                                                           Page

1.   DEFINITIONS ................................................................................................   2

2.   SCOPE OF THE PROJECT ...........................................................................   5

3.   INTERPRETATION OF CONTRACT DOCUMENTS ........................................   5

4.   RESPONSIBILITY OF PROSPECTIVE CONTRACTORS REGARDING
     CONDITIONS OF THE PROJECT ..................................................................   6

5.   PRE-BID CONFERENCE ...............................................................................   6

6.   SIGNATURE OF CONTRACTOR.....................................................................   6

7.   UTILITY CONNECTION FEES NOT INCLUDED (SECTION 10-36 OF THE
     CODE OF MIAMI-DADE COUNTY)..................................................................   7

8.   QUANTITIES IN PROPOSAL APPROXIMATE ONLY ........................................   8

9.   FLORIDA STATE SALES TAX .......................................................................   8

10.  DISQUALIFICATION OF CONTRACTORS.......................................................   8

11.  BID BOND     ...............................................................................................   8

12.  WITHDRAWAL OF SUBMITTAL PACKAGE  ....................................................   9

13.  COUNTY RIGHT TO ACCEPT, REJECT, AND CANCEL BIDS ..........................   9

14.  AWARD OF CONTRACT .................................................................................   10

15.  EXECUTION OF CONTRACT .........................................................................   10

16.  REQUIRED CONTRACTORS' CERTIFICATION ...............................................   10

17.  SECURITY: PLANS / CONSTRUCTION DOCUMENTS .....................................   11

18.  AUDIT RIGHTS BY AUDIT AND MANAGEMENT SERVICES & BCC AUDITOR.................   11

Construction of Affordable Housing and                      00100 Instructions to Prospective Contractor - Page 1 of 12
Home Ownership in District 11 - Gran Via Apartments                              Prepared by CAS/DCSD
ISD Contract No. Z000107                                                                          Revised 10/1/11

1. **DEFINITIONS**

   A. When used in the Contract Documents (hereinafter defined):

   1. The masculine pronoun shall include the feminine and neutral, and the singular shall include the plural;

   2. "and" shall also mean "or" and "or" shall also mean "and", wherever the context or purpose so requires;

   3. "Architect/Engineer of Record", "A/E", and/or "Architect/Engineer" shall mean the representative associated with the design that will make determinations regarding request for information, shop drawing review, interpretation of documents, value engineering, value analysis, change order request, pre-inspection review, final acceptance of components, substantial completion and overall completion.

   4. "Base Bid", "Base Proposal Items" shall mean the total of all proposal items for which the respondent has submitted pricing and is not inclusive of the Contingency Allowance(s) or the Dedicated Allowance(s), if any.

   5. "Bidder" means "Respondent".

   6. "Bid Package" means "Contract Offering"

   7. "Board of County Commissioners", "Chairman, Board of County Commissioners": whenever these words or other similar statements appear in these contract documents in reference to the execution of any documents as part of this Contract, it shall mean "The County Mayor, or the County Mayor's designee, shall execute all documents related to this Contract on behalf of the Miami-Dade County Board of County Commissioners." As an exception to the above, Performance and Payment Bonds shall still be written in the name of Miami-Dade County, Florida, acting by and through the Miami-Dade County Board of County Commissioners.

   8. "Change Order" shall mean an amendment to the Contract Documents which requires the signature of the Contractor and approval of the Board of County Commissioners

   9. "Code" means "Miami-Dade County Code of Ordinances"

   10. "Commission" or "County Commissioners" shall mean the Board of County Commissioners of Miami-Dade County, Florida, and their successors in office.

   11. "Construction Manager" shall mean the authorized representative of the Owner who shall make determinations regarding conflict or claim. The Construction Manager may assign a designee as his representative.

   12. "Contingency Allowance" shall mean an account that establishes a specific amount of time and/or money to be used to perform unknown or unanticipated work, as directed by the A/E, which is necessary to satisfactorily complete the project to its full capacity, functional ability, and compliance with all safety and health requirements. Any time or money within the Contingency Allowance account not directly authorized for use by the A/E remains with the County.

   13. "Contract Coordinator" shall mean the staff of the Internal Services Department's Contracts Administration Section in charge of monitoring the bidding and award process until the Contractor is selected and a Notice to Proceed, issued.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 2 of 12
Prepared by CAS/DCSD
Revised 10/1/11

14. "Contract Documents" shall mean and include the documents listed in this definition: The order of priority/precedence is as identified to the left of the following check boxes. Should there be a conflict in the terms as written between two of the components of the Contract, the component with the lowest number shall take precedence.

| | | |
|---|---|---|
| _ | ☐ | Index of Contract Documents |
| 3 | ☒ | Advertisement for Bids |
| 1 | ☒ | Instructions to Prospective Contractors |
| 1 | ☒ | Code and Ordinance Requirements |
| 1 | ☒ | Protest Information |
| 1 | ☒ | Vendor Affirmation Affidavit |
| 1 | ☒ | Specific Code / Affidavits Applications (Checklist) |
| 2 | ☒ | Community Workforce Program; Job Order Request Form |
| 1 | ☒ | Contract |
| 1 | ☒ | Bid Bond |
| 1 | ☒ | Performance and Payment Bond (if required, Bid Bond is required) |
| 1 | ☒ | Proposal |
| 2 | ☒ | Financial Statement |
| 1 | ☒ | General Covenants and Conditions |
| 1 | ☒ | Supplemental General Covenants and Conditions |
| 1 | ☒ | Special Provisions |
| _ | ☐ | Applicable Federal Requirements |
| 1 | ☒ | Department of Small Business Development's Participation Provisions |
| 2 | ☒ | Wages and Benefits Provisions |
| 1 | ☒ | Specifications |
| 2 | ☒ | Standards |
| 1 | ☒ | Plans / Sketches |
| 1 | ☒ | All Addenda Issued |
| _ | ☐ | Other |

15. "Contract Offering", "Solicitation", "Bid Package" shall mean the total documents offered by the County which establishes the process and procedure for a prospective Contractor to interpret the requirements of the County, for a specific project, and to provide a proper submittal package to the County for consideration in awarding a Contract.

16. "Contractor" shall mean the party to the Contract.  The person, firm, or corporation, holders of a current Certificate of Competency applicable to the type of work to be performed, with whom a contract has been made directly or through accredited representatives, that has entered into a contract with Miami-Dade County, Florida and who is primarily liable for the acceptable performance of the work for which he has contracted and also for the payment of all legal debts pertaining to the work.

17. "County", "Dade County", "Miami-Dade County" or "Metropolitan Dade County (MDC)" shall mean Miami-Dade County, Florida, a political subdivision of the State of Florida, acting by and through the Board of County Commissioners, which is a party hereto and for which this Contract is to be performed.

18. "Dedicated Allowance" shall mean an account that establishes funding for an anticipated specified purpose, such as reimbursement for permits or traffic control police.  Any money not directed to be used by the Contractor and specifically approved to be used in accordance with the originally written item within a Dedicated Allowance account, remains with the County.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 3 of 12
Prepared by CAS/DCSD
Revised 10/1/11

19. "Department" shall mean the Miami-Dade County department issuing the Contract as established on the cover page. For the purposes of this Contract, "Department" shall mean the Internal Services Department (ISD).

20. "Deputy Mayor" or "County Manager", shall mean the Mayor's designee and most senior staff executive who reports directly to the Mayor, and is co-responsible for the overall day to day operation of Miami-Dade County.

21. "Director" shall mean the Director of the Contracting Department or the Director's designee.

22. "Domestic" when applied to materials, shall mean materials or products produced within the United States of America.

23. "Extra Work" shall mean and include all work and materials which are not described within the Contract Documents and covered by a price stated in the Proposal, but which are found by the Construction Manager to be desirable or necessary to complete the Project satisfactorily and consistent with the general intention of the Contract Documents.

24. "Inspector" shall mean any person designated by the A/E or the Owner's Representative to examine and inspect equipment, materials and work for the purpose of ensuring compliance by the Contractor with all requirements of the Contract Documents.

25. "ISD" shall mean Internal Services Department, a department of the County formerly known as General Services Administration (GSA).  Any reference to either one of these entities shall be considered one and the same for the purposes of this solicitation.

26. "Mayor", shall mean the administrative agent who is responsible for the management of all administrative departments of the County government and for carrying out policies adopted by the Commission. The Mayor, or such other persons who may be designated by the Mayor, shall execute all contracts and other instruments of the capital improvements process.

27. "Miami-Dade County Code of Ordinances" or "Code of Miami-Dade County", or "Code of Metropolitan-Dade County" or "MDC Code" shall refer to the Code of Miami-Dade County, Florida, as modified by ordinances approved by the Board on a continuing basis and reflects the codification of all County ordinances and resolutions having the effect of law and the provision of suitable penalties for the violation thereof.

28. "Or equal" or "or approved equal" shall mean only a material or product which is specifically approved by the A/E as being an acceptable substitute for a material or product designated in the Specifications or on the Plans by a trade name or the name of the manufacturer.

29. "Owner's Representative" shall mean a designated employee of the Department or a firm contracted by Miami-Dade County to perform the administrative duties of coordination of all documents between the Contractor and the A/E, and who will be responsible to the A/E for the management of the Contract and maintenance of the budgeted funding and duration of the Contract.

30. "Person" shall mean and include any individual, combination of individuals, partnership, society, association, joint stock company, corporation, estate, receiver, trustee, assignee, referee or any other person acting in a fiduciary or representative capacity, whether appointed by a court or otherwise.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 4 of 12
Prepared by CAS/DCSD
Revised 10/1/11

31. "Principal" shall mean the Contractor.

32. "Project" shall mean and include all design and construction work necessary to fulfill the specific goals of the County and is inclusive of this Contract.

33. "Respondent", "Bidder", "Prospective Contractor", shall mean any person responding to this Contract offering and providing a price quotation to perform the work in accordance with these Contract Documents for construction of the proposed Project.

34. "Solicitation" means "Contract Offering"

35. "Subcontractor" shall mean any business entity engaged by the Contractor to supply labor, materials or equipment for use in the fulfillment of the Project.

36. "Substantial Completion" of the work, or designated portion thereof, is the date certified by the A/E and approved by Miami-Dade County (if different from the A/E) when construction is sufficiently complete, in accordance with the Contract Documents.  Substantial completion means that the percentage of completion of the construction contract is such that the Owner may occupy the project or designated portion thereof or place it into full productive and continued service, for the use which it was intended, including ingress and egress, and all supportive appurtenances for the use of the project.

37. "Surety" shall mean the corporate bond company or individual which is bound by Performance and Payment Bonds with and for the Contractor, who is primarily liable, and which by virtue of the bond, is jointly responsible for the Contractor's acceptable performance of the work of which this contract has been made and for his payment of all debts pertaining thereto;

38. "Working Days", as used in the Instructions to Prospective Contractor, shall mean weekdays Monday through Friday with the exception of County holidays.  The definition of Working Days as related to contract performance may differ from this definition.

## 2.   SCOPE OF THE PROJECT

The scope of each division of the Contract is stated in the Technical Specifications and exhibited within the Plans/Sketches and/or Miami-Dade County Standards.

## 3.   INTERPRETATION OF CONTRACT DOCUMENTS

A. Each Prospective Contractor must thoroughly examine all Contract Documents and judge for himself/herself all matters relating to the character of the proposed Contract.  If the Prospective Contractor should be in doubt as to the meaning of any of the Contract Documents, or is of the opinion that the Plans and Specifications contain errors or contradictions, or reflect omissions, he/she shall submit a written request to the Contract Coordinator for interpretation or clarification.  No interpretation of the meaning of the Plans, Specifications, or other Contract Documents will be made to any Prospective Contractor orally.  Each such request must be in the hands of the Contract Coordinator at least fourteen (14) calendar days before the submittal date, or within the deadline established in the Contract advertisement or as formally amended.  The Contract Coordinator may provide that interpretation or clarification in the form of written addenda, which shall be mailed, delivered, or otherwise communicated, to all Prospective Contractors.  The issuance of a written addendum shall be the only official method whereby such an interpretation or clarification will be made.  Failure of any Prospective Contractor to receive any such addendum or interpretation shall not relieve any Prospective Contractor from any obligation under the terms

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 5 of 12
Prepared by CAS/DCSD
Revised 10/1/11

of the Contract, including all addenda properly issued.  Each Prospective Contractor should verify the number of addenda issued prior to execution of the Contract.

B. Items shown on the Plans but not noted in the Specifications, and items noted in the Specifications but not shown on the Plans, are to be considered as both shown on the Plans and noted in the Specifications.  Any errors and/or omissions in the Specifications or on the Plans, as to the standard of the work, shall not relieve the Contractor of the obligation to furnish a satisfactory first class job in strict conformity with the best practice found in work of a similar type.  The failure of the Prospective Contractor to direct the attention of the Contract Coordinator to errors or discrepancies will not relieve the Prospective Contractor of the responsibility of performing the work to the satisfaction of the County, should he/she be awarded the Contract.

## 4.   RESPONSIBILITY OF PROSPECTIVE CONTRACTORS REGARDING CONDITIONS OF THE PROJECT

A. The Contractor shall familiarize himself with all current codes, regulations and standards applicable to the specific work involved in the Contract.  He shall fully comply with all requirements of applicable codes, regulations and standards whether indicated in the Contract Documents or not, including any modifications made by the authorities having jurisdiction over the contract work during the lifetime of the Contract.  Appendix A is bound to these Instructions for the Contractor to review as an outline of these requirements. It should be noted that in accordance with Appendix A, that the provisions in this Appendix shall apply to the Contractor, its officers, agents and employees. The Contractor shall incorporate the provisions in this Appendix A in all applicable subcontracts and other agreements executed by the Contractor in connection with the performance of the Contract.  Section 18 of Appendix A, "CODE AND ORDINANCE REQUIREMENTS" provides information regarding the use of the County's Clearinghouse including Contracts funded in part or in whole by the General Obligation Bond's funded program.

B. All information given on the Plans or in the Contract Documents relating to geotechnical information should not be considered by the Contractor to conclude that the subsurface conditions will be consistent between test information locations.  All such information was prepared for the information of the Department's Engineers only, and permission to examine the same is extended to prospective Contractors for their convenience.  In no event is such information, including any shown on the Contract Plans, to be considered a part of this Contract.

C. The Contractor shall consider all costs and expenses associated with the submittals, including re-submittals (if any), including shop drawings, as being included within the prices contained in the Proposal. The cost of any fees such as the direct cost of required permits shall be paid by the Department, if specifically provided for in a dedicated allowance, unless otherwise stated.

## 5.   PRE-BID CONFERENCE

A Pre-bid Conference will be held at 10:00 AM on Tuesday, November 22, 2010, at the Stephen P. Clark Center, 111 NW 1st Street, 18th Floor, Conference Room 18-3, in order to discuss this solicitation.  Since space is limited, it is recommended that one representative of each firm attend in order to become familiar with the Solicitation and conditions of usage.  Attendees are encouraged to bring this Solicitation Package to the conference, since copies will not be available for distribution at the meeting.  While attendance is not mandatory, Prospective Contractors are encouraged to attend, in order to become familiar with the requirements for this project.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00100 Instructions to Prospective Contractor - Page 6 of 12
Prepared by CAS/DCSD
Revised 10/1/11

F. In case the Contractor is ordered to perform Work under this paragraph, which in the reasonable determination of the Project Manager, is impracticable to have performed by the Contractor's own employees, the Contractor will, subject to the approval of the Project Manager, be paid the actual cost to Contractor of such Work, and in addition thereto five (5%) percent to cover the Contractor's superintendence, administration and other overhead expenses.

G. Payment of any amount under this paragraph shall be subject to subsequent audit and approval, disapproval, modification or revision by representatives of the County.

## 77.   CHANGE ORDER PROCEDURES AND BASIS FOR PAYMENT

A. Extra Work shall result in an equitable adjustment (increase or decrease) to the applicable Contract representing the reasonable cost or the reasonable financial savings related to the change in Work.   Extra Work may also result in an equitable adjustment in the contract schedule for performance for both the Extra Work and any other Work affected by the Extra Work.

B. The Project Manager shall initiate the Extra Work procedure by a notice to Contractor outlining the proposed Extra Work.  Upon receipt of the notice to proceed with the Extra Work, the Contractor is required to immediately start the Extra Work. The Contractor is required to obtain permission for an extension to start the Extra Work if it is beyond the Contractor's ability to start within the allotted timeframe.

C. The Contractor is required to provide the Project Manager or designee with a detailed Change Order Proposal, which shall include requested revisions to the Contract, including but not limited to adjustments in the Contract price and schedules for performance for the applicable Contract.  The Contractor is required to provide sufficient data in support of the cost proposal demonstrating its reasonableness.  In furtherance of this obligation, the County may require that the Contractor submit any or all of the following: a cost breakdown of material costs, labor costs, labor rates by trade, and Work classification and overhead rates in support of Contractor's Change Order Proposal.  The Contractor's Change Order Proposal must include any schedule revisions and an explanation of the cost and schedule impact of the extra Work on the project.  If the Contractor fails to notify the Project Manager of the schedule changes associated with a Notice of Proposed Change Order by submitting a revised schedule document, it will be deemed to be an acknowledgment by Contractor that the proposed Extra Work will not have any scheduling consequences.  The Contractor agrees the Change Order Proposal will in no event include a combined profit and home office overhead rate in excess of fifteen (15%) percent of the direct labor and material costs, unless the Project Manager determines that the complexity and risk of the Extra Work is such that an additional factor is appropriate.  The Change Order Proposal may be accepted or modified by negotiations between the Contractor and the County.  If an agreement on the Extra Work is reached, both parties shall execute the Extra Work order in writing.  The execution by the Contractor of the Extra Work order shall serve as a release of the County from all claims and liability to the Contractor relating to, or in connection with, the Extra Work, including any impact, and any prior acts, neglect or default of the County relating to the Extra Work.

## 78.   INSPECTION

A. At all times during the Contract, the Project Manager shall have the right to undertake a thorough inspection of the Work, including materials and their manufacture or preparation, and to draw the attention of the Contractor to any and all defects in workmanship, materials or other errors or variations from the Contract requirements.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 43 of 50
Prepared by CAS/DCSD
Revised 10/1/11

B. The right of inspection herein provided is intended solely for the benefit of the County. Neither the right of inspection nor any failure to draw attention to or point out such defects, errors or variations shall give the Contractor any right or claim against the County or shall in any way relieve the Contractor from its obligations under the term of the Contract.

C. If the Project or any part thereof shall be found defective, the Contractor shall without cost to the County, forthwith remedy such defect in a manner necessary to comply with the Contract.

D. The Contractor shall at all times provide the Project Manager and his or her designated representatives all facilities necessary, convenient or desirable for inspecting the Project. The Project Manager and any designated representative shall be admitted at any time, without delay, to any part of the Work Site and shall be permitted to inspect materials at any place or stage of their manufacture, preparation, shipment or delivery.

E. Any inspection hereunder shall not reasonably disrupt the Contractor's performance of the Project.

## 79.   UNCOVERING FINISHED WORK

The Project Manager's right to make inspections shall include the right to order the Contractor to uncover or take down portions of finished Work. The Project Manager or Owner's Representative shall notify the Contractor in writing concerning all uncovered finished Work. Should the Work prove to be in accordance with the Contract, the uncovering or taking down and the replacing and the restoration of the parts removed will be treated as Extra Work for the purpose of computing additional compensation and an extension of time. Should the Work examined prove unsatisfactory, such uncovering, taking down, replacing and restoration shall be at the expense of the Contractor. Such expenses shall also include repayment to the County for any and all expenses or costs incurred by it, including employee salaries or related cost, in connection with such uncovering, taking down, replacing and restoration at the Work Site.

## 80.   CORRECTION OF WORK

A. The Contractor shall promptly correct all Work rejected by the Project Manager as defective or as failing to conform to the Contract, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed. The Contractor shall bear all cost of correcting such rejected Work, including the cost of the County's additional services thereby made necessary.

B. The Contractor further agrees that after being notified in writing by the Owner of any Work not in accordance with the requirements of the Contract or any defects in the Work, the Contractor will commence and prosecute with due diligence all Work necessary to fulfill the terms of the Contract and to complete the Work within a reasonable period of time, as determined by the Project Manager, and in the event of failure to so comply, the Contractor does hereby authorize the County to proceed to have such Work done at the Contractor's expense and that the Contractor will pay the cost thereof upon demand. The County shall be entitled to all costs, including reasonable attorneys' fees, necessarily incurred upon the Contractor's refusal to pay the above costs. Notwithstanding the foregoing paragraph, in the event of an emergency constituting an immediate hazard to the health or safety of personnel, property, or licensees, the County may undertake, at the Contractor's expense, without prior notice, all Work necessary to correct such hazardous condition when it was caused by Work of the Contractor not being in accordance with the requirements of the Contract.

C. If, within five (5) years after the date of final completion of the Project or within such longer period of time as may be prescribed by law, by the Contract, or by the terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be

Construction of Affordable Housing and                                    00110 General Covenants and Conditions - Page 44 of 50
Home Ownership in District 11 - Gran Via Apartments                        Prepared by CAS/DCSD
ISD Contract No. Z000107                                                   Revised 10/1/11

defective or not in accordance with the Contract, the Contractor shall correct it promptly after receipt of a written notice from the County to do so.  The County shall give such notice promptly after discovery of the condition.

D.  All such defective or non-conforming Work shall be removed from the site if necessary and the Work shall be corrected to comply with the Contract without cost to the County.

## 81. ACCEPTANCE OF DEFECTIVE OR NON-CONFORMING WORK

The County, in its sole discretion may elect to accept in writing defective or non-conforming work instead of requiring its removal and correction.  In such instances, a Change Order will be issued to reflect an appropriate reduction in the Contract, or, if the amount is determined after final payment, any difference in the amount shall be paid to the County by the Contractor.

## 82. TESTS

All tests required to be performed by the Contractor, shall be made at the expense of the Contractor.

## 83. CHOICE OF LAW, VENUE

The Contract shall be governed by and construed in accordance with the laws of the State of Florida.  The parties agree that the venue for any and all claims arising from the Contract shall be exclusively in the U.S. District Court for the Southern District of Florida or in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

## 84. SEVERABILITY

If the Contract contains any provision found to be unlawful, the same shall be deemed to be of no effect and shall be considered stricken from the Contract without affecting the binding force of the Contract as it shall remain after omitting such provision.

## 85. CONTRACT CONTAINS ALL TERMS

The Contract and all documents incorporated herein by reference contain all the terms and conditions agreed upon by the parties hereto, and no other agreement, oral or otherwise, regarding the subject matter of the Contract shall be deemed to exist or to bind any of the parties hereto, or to vary any of the terms contained herein.

## 86. SURVIVAL

The parties acknowledge that any of the obligations in the Contract will survive the term, termination and cancellation hereof.  Accordingly, the respective obligations of the Contractor and the County under the Contract, which by nature would continue beyond the termination, cancellation or expiration thereof, shall survive termination, cancellation or expiration thereof.

## 87. CONTRACTOR'S SUPERVISION

A.  Prosecution of Work:  The Contractor shall give the Work the attention and supervision necessary to ensure its progress according to the approved schedule in conformance with all codes and requirements and to a level satisfactory to the Project Manager/Owner's Representative and with other contractor's at the Work Site.

B.  Contractor's Superintendent:  The Contractor shall, maintain a Superintendent who is competent in the type of Work being performed at the Work Site at all times while Work is in progress to act as the Contractor's agent.  The Contractor's Superintendent shall have full authority to receive instructions from the Project Manager and to execute the orders or

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 45 of 50
Prepared by CAS/DCSD
Revised 10/1/11

**95.   MANUFACTURER'S INSTRUCTIONS**

A.  The Contractor shall:

1.  Comply with the manufacturer's applicable instructions and recommendations for the performance of the Work, to the extent that these instructions and recommendations are more explicit or more stringent than requirements indicated in the Contract.

2.  Inspect each item of materials or equipment immediately prior to installation and reject damaged and defective items.

3.  Provide attachment and connection devices and methods for securing the Project; secure Work true to line plumb and level, and within recognized industry standards; allow for expansion and building movement; provide uniform joint width in exposed project; arrange joints in exposed project to obtain the best visual effect and refer questionable visual effect choices to the Project Manager for final decision when applicable to the job.

4.  Re-check measurements and dimensions of the Project, as an integral step in starting each portion of the Project.

5.  Install each unit or Section of Work during favorable weather conditions, which shall ensure the best possible results in coordination with the entire Project and isolate each unit of Work from incompatible Work as necessary to prevent potential interference among each Section and/or deterioration of equipment.

6.  Coordinate enclosure of the Work, which requires inspections and tests so as to minimize the necessity of uncovering Work for that purpose.

**96.   REVIEW OF RECORDS**

A.  The Contractor shall, during the term of the Contract and for a period of five (5) years after expiration date of the Contract, allow the County or the County's duly authorized representatives to inspect all payroll records, invoices for materials, books of accounts and other relevant records pertaining to the Contract.  Such records shall conform to Generally Accepted Accounting Principles requirements (GAAP), and shall only address those transactions related to the Contract.

B.  The Contractor agrees to maintain an accounting system that provides for accounting records that are supported with adequate documentation and adequate procedures for determining allowable costs.

C.  The Contractor shall develop the proper forms and reports acceptable to the County for the administration and management of the Contract and all Work.

**97.   WARRANTY**

A.  Unless otherwise stated, the warranty shall be for a period of one (1) year commencing with the execution of the Certificate of Final Acceptance, as required by the County.  The County reserves the right to all warranties offered during the normal trade of business and, at the direction of the project A/E, the Contractor shall execute an assignment of warranty document on all such commercial warranties allowing the County to submit and enforce such warranty after the expiration of the general warranty.  This assignment shall be duly executed by both the Contractor and the manufacturer transferring all rights of enforcement to the County at no additional cost to the County.

B.  For certain products such as mechanical equipment, roofing systems, coating systems, etc., the warranty period shall be as stipulated within specifications and the warranty period shall commence from the date the individual equipment or product is put into full productive

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 49 of 50
Prepared by CAS/DCSD
Revised 10/1/11

service. The warranty period, however, shall not commence until the proper warranty document(s) have been transferred and accepted by the County.

C. The Special Conditions of the Bid Solicitation may supersede the manufacturer's standard warranty. MANUFACTURER'S WARRANTIES WILL BECOME EFFECTIVE UPON FINAL COMPLETION OF THE PROJECT.

## 98. CONTRACTOR'S EVALUATION(S)

A. ISD shall have the responsibility to evaluate the efforts by the Contractor for each Contract utilizing a standard evaluation instrument created for this purpose. Depending on the size, term and complexity of each Contract, the ISD's construction manager most familiar with the on-going work in the field shall evaluate the Contractor's performance at least once; for longer term or more complex Contracts, the construction manager may create interim evaluations. If only one evaluation is done, it shall be completed just prior to the Contract completion however subsequent to the completion of the majority of punch list items.

B. Should the Contractors' performance require significant performance improvements, the ISD's construction manager shall create an interim evaluation as soon as poor performance is identified, in order to provide to the Contractor an evaluation exhibiting the failures and providing the Contractor the opportunity to make the necessary improvements.

## END OF SECTION 00110

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00110 General Covenants and Conditions - Page 50 of 50
Prepared by CAS/DCSD
Revised 10/1/11

## CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS ISD CONTRACT NO. Z000107

## DIVISION 0 – GENERAL DOCUMENTS
## SECTION 00120 - SUPPLEMENTAL GENERAL COVENANTS AND CONDITIONS

Article and Title                                                                                          Page

1.   GENERAL CONDITIONS ..................................................... 2
2.   INSURANCE TO BE CARRIED BY CONTRACTOR ....................... 2
3.   PERFORMANCE AND PAYMENT BOND ................................... 3
4.   DOCUMENTS FURNISHED BY THE COUNTY ............................ 5
5.   NOT APPLICABLE ........................................................... 5
6.   COMMENCEMENT, PROSECUTION AND COMPLETION OF WORK ..... 5
7.   LIQUIDATED DAMAGES .................................................... 5
8.   ALLOWANCE ACCOUNTS ................................................... 6
9.   SITE INVESTIGATION ...................................................... 7
10.  PERMITS ...................................................................... 7
11.  NOT APPLICABLE ........................................................... 7
12.  ACCESS TO SITE, STORAGE AND DUMP AREAS ....................... 7
13.  MEETINGS .................................................................... 8
14.  COORDINATION AND COOPERATION ................................... 8
15.  SUBCONTRACTOR'S CERTIFICATE OF COMPETENCY ................. 8
16.  NOT APPLICABLE ........................................................... 8
17.  RESTRICTIONS ON CONTRACTOR ACTIVITIES ........................ 8
18.  MAINTENANCE OF EXISTING FACILITIES .............................. 8
19.  RIGHT OF TERMINATION ................................................. 8
20.  CLAIMS, DISPUTES OR REQUESTS FOR EQUITABLE ADJUSTMENT ... 8
21.  SUBMITTAL OF CLAIMS .................................................... 10
22.  PRODUCT CONTROL APPROVAL .......................................... 12

Construction of Affordable Housing and                00120 Supplemental General Covenants and Conditions - Page 1 of 14
Home Ownership in District 11 - Gran Via Apartments                                              Prepared by CAS/DCSD
ISD Contract No. Z000107                                                                              Revised 10/1/11

# SECTION 07510 (07 51 13)

# BUILT-UP ASPHALT ROOFING SYSTEM

## PART 1 - GENERAL

### 1.01   SUMMARY

A.   This Section includes labor, materials, and equipment to install the following roof system including, but not limited to:

1.   Preparation of existing concrete deck to receive new roofing.
   a.   Roofing contractor shall be responsible for the inspection and acceptability of the deck service to receive new roofing prior to commencing the work.
   b.   Deck must be properly cured prior to application of the roofing system.
   c.   Curing agents must be checked for compatibility with roofing materials. Prior to the installation of the roof assembly.
   d.   Deck shall be evaluated for surface moisture in accordance with ASTM D-4263 or hot bitumen test.
   e.   Deck shall be primed with ASTM D 41 primer at a minimum rate of 1gal/100 sq. ft. And allowed to dry prior to the application of the roofing system.
   f.   Fill all deck depressions with masonry grout and treat all cracks greater than 1/8" (3 mm) width.

2.   Insulation system (minimum R-30 average)
   a.   Minimum two layers of polyisocyanurate, in hot asphalt or as required to obtain a minimum R-30 average insulation value. Provide tapered insulation where required to achieve positive slope to storm drainage points, minimum 1/4"/ft. slope.
   b.   Top layer of high density perlite coverboard, or equivalent, if required by FBC.

3.   Roofing Membrane
   a.   Five-ply, built-up roof system
      1.   Base Sheet: One or more plies Stratavent® Perforated base sheet ASTM D 4897 Type II
      2.   Interplies: Three or more plies GAFGLAS Ply4, ASTM D2178, Type IV.
      3.   Capsheet:  One or more plies of GAF Energy Cap SBS 30 FR  ASTM D6163 Type I with a reflective surfaced achieving minimum **solar reflectance of .76 (initial).**

4.   Membrane flashings:  Finish membrane flashings shall be of same as capsheet.

5.   All parapet walls shall be fully wrapped with flashing membrane

6.   Measurement and calculation of all amounts of work and materials.

7.   Removal and proper disposal of all work related debris.

8.   Contractor shall verify that emergency roof drainage complies with Section 1617 of the Florida Building Code and Section 1107 of the Florida Plumbing Code:

9.   All work on overflow scuppers shall be in accordance with NRCA and SMACNA recommendations for metal lined scuppers through parapet walls and sections 1617 of the Florida Building Code and 1107 of the Florida Plumbing Code.
   a.   Minimum dimension of all trough wall scupper drains shall be 18 inches horizontal and 8 inches vertical.

10.   Walkway Pads and/or Protection pads shall be installed around all roof mounted equipment, and roof access.

11.   All Metal Profiles shall be minimum 24 ga. stainless steel.

12.   All expansion joints shall be factory fabricated assemblies and shall be pre-approved by the County Project Manager prior to their installation

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 1 of 12

13. Install new Roof Edging System – Drip Flashing 24 ga. stainless steel with a minimum 4 inch face and required wood blocking on all roof edge/eaves.
14. Bid price is also to include all related permit fees and permitting expenses. All work to be done in accordance with the Florida Building Code, HVHZ and the construction documents.

## 1.02   REFERENCE STANDARDS

A. References and industry standards listed in this Section are applicable to the Work. Unless more restrictive criteria or differing requirements are explicitly stated in the Specifications, or mandated governing codes or regulations, the recommendations, suggestions, and requirements described in the referenced standards are deemed mandatory and applicable to the Work.

1. The Florida Building Code (FBC) Current Edition.
2. Factory Mutual (FM Global) –Property Loss Prevention Data Sheets
3. Underwriters Laboratories (UL) – Roofing Systems and Materials Guide
4. American Society for Testing and Materials (ASTM) – Annual Book of ASTM Standards
5. Sheet Metal and Air Conditioning Contractors National Association, Inc. (SMACNA) – Architectural Sheet Metal Manual
6. National Roofing Contractors Association (NRCA)
7. National Fire Prevention Association (NFPA)
8. Underwriter Laboratory (UL)
9. OSHA - Occupational Safety and Health Administration Washington, DC.
10. Cool Roof Rating Council: CRRC-1-2005-Product Rating Program.

## 1.03   DEFINITIONS

A. The Florida Building Code (FBC) current edition.
B. Roofing Terminology:  Refer to ASTMD-1079 "Terminology Relating to Roofing and Waterproofing"; glossary of NRCA's "The NRCA Roofing and Waterproofing Manual"; and the Roof Consultants Institute Glossary of Roofing Terms for definition of terms related to roofing work in this Section.
C. National roofing Contractors Association.
D. Sheet Metal Terminology and Techniques:  SMACNA Architectural Sheet Metal Manual.

## 1.04   PERFORMANCE REQUIREMENTS

A. General:  Provide and install new roofing and waterproofing system that does not permit the passage/infiltration of water and remain watertight. The roof and waterproofing systems and all their components shall be designed and installed to withstand the design wind loads and uplift forces in accordance with the current FBC, HVZ and comply with FM Global requirements. This building is an essential government building and the calculated wind loads shall be performed as such. In case of a conflict with the referenced standard, the most stringent shall prevail.
B. Material Compatibility:  Provide roofing materials that are compatible with one another under conditions of service and application required, as demonstrated by roofing membrane manufacturer based on testing and field experience.
C. Jobsite Safety: Execute all operations and provide a safe work environment in accordance to OSHA standards and regulations. This requirement applies to all contractor personnel, associated subcontractors, workers in other trades, and jobsite visitors.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 2 of 12

      1.      Follow all industry fire prevention guidelines for storage of materials, staging areas, roof access, and application means and methods.

      2.      Any applicable local fire codes supersede industry guidelines.

D.   Provide system in compliance with products and installation of NOA: NOA 08-1028.02 as applicable for concrete deck or approved equivalent.

E.   UL Listing:   Provide membrane roofing materials with the fire-test-response characteristics indicated as determined by testing identical products per test methods mandated by UL.  Identify materials with appropriate markings of applicable testing and inspecting agency.

## 1.05   SUBMITTALS

A.   Submittals Package – General

      1.      Submit the Shop Drawings, Product Data, Samples, and Quality Control Submittals specified below at the same time as a package.

      2.      All submittal packages must be submitted prior to the Pre-Installation conference.

B.   Product Data: Provide current standard printed product literature indicating characteristics of membrane materials, flashing materials, components, accessories, product specifications and installation instructions.

C.   Shop Drawings:  Submit plans of roof showing pitches and locations of details.  Submit custom details for every condition, including drain sumps, overflows and scuppers, all flashings and counter flashings, equipment base flashings, also showing attachment of extensions and flashings for pipes and vent stacks.

D.   Manufacturer's Certification, Bulk Bitumen:  Submit manufacturer's certification indicating that bulk bituminous materials delivered to project comply with required standards.  Include quantity, statistical and descriptive data for each product.  Submit certificate with each load before it is used.

E.   Application Manual:  Submit manufacturer's application manual, which describes completely the preparation of surfaces and application of specified materials, including details to suit all conditions.

F.   Applicator's Status:  Submit manufacturer's written proof of approved applicators status, submitted by the Manufacturer's Corporate Office.

G.   Material List:  Submit a descriptive list of all component parts of the roofing systems that will be covered under warranty. The warranty shall be in accordance with requirements herein.

H.   Base Sheet Fastening Patterns:  Provide drawings of fastener patterns as required to resist specified negative wind pressures in accordance with the Florida Building Code.

I.   Roofing Manuals: Submit, in a three-ring binder, all roofing data, including manufacturer's catalogs/manuals of materials and accessories used in the Project, including manufacturer's recommendations.

J.   Sample Warranty:  Submit a specimen copy of the specified warranty, with a list of all components to be guaranteed.

K.   Complete current Florida Building Code (FBC) High Velocity Hazard Zone (HVHZ) Protocols and required product Notice of Acceptance (NOA).

L.   Contractor shall be responsible for all permitting documentations.

## 1.06   QUALITY ASSURANCE

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 3 of 12

A. Manufacturer's Qualifications: Product Manufactures shall be ISO 9000 certified. All products must be Miami-Dade County Product Control Approved.

B. Installer's Qualifications: A single installer shall perform the work of this Section; and shall be a firm with not less than 3 years of successful experience in the installation of built-up roofing systems similar to those required for this project and which is acceptable to or licensed by the manufacturer of the primary roofing materials.

    1.    Installer Certification:  Provide the County with written certification from the manufacturer of the roofing and waterproofing system certifying that the installer is approved by the manufacturer for installation of the specified roofing and/or waterproofing system.  Provide a copy of the certification to the County prior to award of the contract.

    2.    Installer shall be experienced with the manufactures' published installation instructions, FBC, RAS117 & RAS 111.

C. Source Limitations:  All components listed in this section shall be provided by a single manufacturer or approved by the primary roofing and/or waterproofing manufacturers respectively.

D. Pre-Construction / Pre-Installation Meeting

    1.    Shall not occur without approved Shop Drawings by the Contractor and Architect/Engineer of Record.  Shall convene a minimum of two weeks before starting work of this section.

    2.    Required Attendees:

        a.    Contractor.

        b.    Roofing subcontractor.

        c.    Roof System Manufacturer.

        d.    Installers of deck or substrate construction to receive roofing work.

        e.    County's Project Manager.

        f.    County's Maintenance Representative.

    3.    The County Project Manager shall make arrangements for the meeting and notify the parties required to attend.

    4.    Agenda shall include:

        Review preparation and installation procedures and coordinating and scheduling required with related work.

        a.    Review roof system requirements (drawings, specifications, and other contract documents).

        b.    Review Shop Drawings and associated submittals.

        c.    Review manufacturer's technical materials.

        d.    Review and finalize construction schedule related to roofing work and verify availability of materials, personnel, equipment and facilities needed to make progress and avoid delays.

        e.    Review required inspection, testing, certifying and material usage accounting procedures.

        f.    Review weather and weather forecast conditions, and procedures for coping with unfavorable conditions, including temporary roofing.

        g.    Tour representative areas of roofing substrates (decks), inspect and discuss condition of the substrate, roof drains, curbs, penetrations and other preparatory work performed by other trades.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 4 of 12

## 1.07   DELIVERY, STORAGE, HANDLING & DISPOSAL

A. Delivery:
1. Deliver roofing materials to the site in the manufacturer's unbroken containers bearing the manufacturer's printed labels.
2. All bitumen delivered with labels in accordance with D-312.
3. For all bitumen delivered in tanker trucks, provide same manufacturer's certifications listed above.

B. Storage and Handling
1. The Contractor shall be solely responsible for the storage of his materials and equipment. On site storage of materials shall not be guaranteed. The County shall not be responsible for any stolen or damaged equipment and materials. Storage areas shall be approved and authorized by the County Project Manager and facility contact person. Deliver roofing materials to the site in the manufacturer's unbroken containers bearing the manufacturer's printed labels.
2. Rooftop storage will be permitted only with the authorization of an engineer
   a. Do not point load roof.
   b. Move only a day's supply of material to roof at one time.
   c. Do not store any flammables on roof.
3. Store materials a minimum of 6" off the ground, in a dry, well ventilated place protected from the weather.
   a. Enclosed trailers are recommended.
   b. Temperature conditioned storage is required for temperature sensitive items.
4. Mark for clear and evident identification all material that has been subject to moisture.
   a. Remove such materials from the site.
5. Handle roll goods with care.
   a. Do not use roll goods which have been damaged.
   b. Leave materials in their packaging until ready for use.
6. Allow no unlabeled materials on site.
7. In event of damage, immediately make all repairs and replacements required by Owner's Representative.

C. Disposal
1. All removed materials become the property of the contractor.
2. Inspect ground areas surrounding roof on a daily basis for loose debris.
3. Immediately move all debris off roof and into approved dumpster.
4. Dumpster staging areas must be kept neat and tidy.
   a. Do not allow to overflow.
5. All debris must be transported to a legal dumpsite or recycling facility and documentation of each load must be maintained by the Contractor.

## 1.08   PROJECT CONDITIONS

A. Weather Limitations: Proceed with installation only when existing and forecasted weather conditions permit roofing system to be installed according to Manufacturer's written instructions and guarantee requirements.
1. Do not start roofing if rain is imminent, or ambient temperature is below 45°F.
2. If rain occurs during roof membrane application, cease operations and protect deck, insulation, penetrations and membrane from water damage and intrusion.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 5 of 12

3.   All roofing operations shall be carried out and scheduled so as to prevent any water damage or intrusion into the building, including during inclement weather. All costs of repairs for failure on the part of the contractor to take necessary precautions to avoid such water damage and intrusion shall be borne by the contractor.

B.   Flame-heated Equipment:

1.   Locate and use flame-heated equipment so as not to endanger the structure or other materials on the site or adjacent property.

2.   Do not place flame heating equipment on roof.

3.   Provide and maintain fire extinguisher.

C.   Comply with all fire regulations. Ensure properly rated, charged, and inspected fire extinguishers are on the roof and staging area.

## 1.09   SUBSTITUTIONS

A.   When a particular make or trade name is specified, it is indicative the standard required. The basis of this specification is roofing system model number **I-4-1-MGFR** as manufactured by GAF Materials Corporation.

## 1.10   WARRANTY

A.   Manufacturer's Guarantee:   Single source NDL (No Dollar Limit), without monetary limitation, includes materials and workmanship to maintain roof in a watertight condition. Single-Source special warranty includes roofing membrane, base flashings, liquid applied flashing, roofing membrane accessories, fasteners, base-sheet, parapet copings, parapet membrane flashing, walkway products, manufacturer's expansion joints, manufacturer's edge metal products, and other single-source components of roofing system marketed by the manufacturer.

1.   Additional Riders: Provide manufacturer's wind rider covering storm events up to 146 miles per hour (3 second gust).

B.   Warranty Period:  20 years from date of Completion.

1.   Contractor shall be a manufacturer's certified applicator and shall include the copy of the Manufacturer's certification letter as part of the bid documents. Guarantee to run from date of substantial completion.  Manufacturer shall have a minimum AAA credit rating.

a.   In addition to the required Manufacturer's twenty (20) year "No Dollar Limit" warranty for roofing systems, the contractor shall provide a 5-year warranty, in which contractor agrees to repair or replace components of roofing system that fail in materials or workmanship with the specified warranty period.  Failure includes roof leaks.  The warranty shall be a term type, with no  conditions,  exclusions,  exclusions  of  remedies  by  the  County, deductibles or limitations on coverage amount.  Any conditions, exclusions, or limits proposed by the installer must be approved by the County in writing.   Each Installer shall list which roof system component(s) are covered by them.

## PART 2 - PRODUCTS

## 2.01   MANUFACTURERS

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 6 of 12

A. In other Part 2 articles where titles below introduce lists, the following requirements apply for product selection:

1. Products: Subject to compliance with requirements, provide one of the products specified

2. Manufacturers: Subject to compliance with requirements, provide products by the manufacturers specified.

## 2.02   MATERIALS

A. Wood Nailers and Blocking: Structural grade lumber any commercial softwood species, kiln dried and preservative treated in accordance with the FBC.

B. Fasteners: In accordance with requirements of Florida Building Code and Miami-Dade Notice of Acceptance for roof system specified.

C. Concrete Deck surface patching (if needed): Use Siplast Zono-Patch or approved equivalent    (800-922-8800).

D. Water: Clean and potable, free of organic matter.

F. Thermal Layer

1. General: Provide preformed roof insulation boards that comply with requirements and referenced standards, selected from manufacturer's standard sizes and of thicknesses indicated that will achieve a minimum average insulation R-30 value throughout the roof. Slope insulation so that there will be zero ponding on any part of the roof.

2. Polyisocyanurate.

a. A rigid roof insulation board composed of a closed cell polyisocyanurate foam core bonded in the manufacturing process to universal fiber glass reinforced facers. Provide product that utilizes an environmentally compliant blowing agent containing pentane hydrocarbon to enhance the thermal performance of the foam insulation. This hydrocarbon has zero ozone depletion potential and conforms to the Montreal Protocol established in 1987.

b. Reference Standards

1. ASTM C 1289-02 Type II, Class I, Grade 2.

2. CAN/ULC S 704.

c. Product

1. ENRGY 3 or approved equivalent

d. Typical Physical Properties.

1. Nominal Thickness: 2 layers of 2" thickness minimum

3. Tapered Polyisocyanurate System

a. Tapered Pre-Cut polyisocyanurate crickets consist of sloped insulation panels that are professionally designed, factory cut and composed of a foam core bonded in the foaming process to universal fiber glass reinforced facers on both sides.

b. Reference Standards

1. ASTM C 1289

2. Federal Specification HH-I-1972/Gen and HH-I-1972/2

3. CAN/ULC-S704-01, Type 3, Class 2 (See CCMC Evaluation Report 13058-L).

c. Product

1. Tapered ENRGY 3 Pre-Cut Crickets or approved equivalent

4. Thermal Layer Securement

a. Adhered. Use manufacturer's approved asphalt.

G. Base Sheet

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 7 of 12

    1. Base Sheet
        a. One or more plies Stratavent® Perforated base sheet ASTM D 4897 Type II.
        b. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance.
    2. Interplies.
        a. Three or more plies GAFGLAS Ply4, ASTM D2178, Type IV.
        b. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance.
    3. Capsheet
        a. One or more plies of GAF Energy Cap SBS 30 FR  ASTM D6163 Type I.
        b. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance.

H. Base Flashings
    1. Membrane flashings:  Finish membrane flashings shall be of same as capsheet.
    2. Securement in accordance with manufacturer's Miami-Dade Notice of Acceptance

I. Parapet Walls
    1. All parapet walls shall be fully wrapped with flashing membrane.

J. Walk Pads
    1. Minimum one or more layers of Capsheet or approved equivalent, installed around all roof mounted equipment, and roof access.

K. Metal Profiles
    1. Minimum pre-manufactured 24 ga., stainless steel.
    2. Downspout, scuppers, and spillouts, shall be pre-manufactured with mitered and soldered joints installed in accordance with the FBC.
    3. Drip Flashing 24 ga. stainless steel with a minimum 4 inch face and required wood blocking on all roof edge/eaves.

L. Pipe Penetrations: Use M-Curb system, a structural urethane other shell, bonded to the roof surface, filled with rubber sealant, or approved equivalent.

M. Asphalt shall be low odor low fume and comply with roofing manufacture's recommendation and the FBC.

N. Cants and Edge Strips
    1. Provide strip manufactured from a high density, laminated board made of high strength fibers and expanded perlite.
    2. Reference Standard:     ASTM C 728.

O. Roof Edging System – Drip Flashing/Gravel Stop
    1. Decorative metal drip flashing/gravel stop with continuous extruded aluminum bar to terminate roofing at perimeter. Provide watertight system with no exposed fasteners and butt type joints with concealed splice plates, 26 ga., RAS 111.
    2. Accessories
        a.    Provide miters, downspout scuppers, spillout scuppers fabricated by manufacturer.
        b.    Employ welded base assembly to maintain watertight integrity.
        c.    Provide matching brick wall cap, downspout, extenders, or other.
        d.    Surface Mounted Reglet: At parapet walls use surface type SM reglet as manufactured by FryReglet or approved equivalent. Install in accordance with RAS 111. Seal top with polyurethane sealant or approved equivalent.

P. Plumbing Vents:  Lead (RAS 111) or pre-manufactured pre-flashed with modified bitumen membrane.  Vent type to be approved by the A/E.

Q. Pipe Supports: New UV resistant polycarbonate condensate pipe supports as manufactured by Miro Industries Salt Lake City UT, Tel (801) 975-9993 Model No. M8UFS or approved equivalent.

R. Pipe penetrations: use M-Curb system, a structural urethane outer shell, bonded to the roof surface, filled with rubber sealant, or approved equivalent.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 8 of 12

## PART 3 - EXECUTION

### 3.01   PREPARATION

A. Surface Preparation

1. Inspect concrete deck closely for smoothness, cracks over 1/8 inch, spalling, rust staining, excessive deflection, moisture. Perform manufacturer's dryness test to ensure that deck is ready to receive waterproofing system and that application medium bonds well to surface.

2. Prepare and prime substrate surfaces per manufacturer's recommendations and Miami Dade County NOA, and FBC.

3. Unacceptable areas should be brought to the attention of the County Project Owner's Representative and must be corrected prior to installation of roofing system.

4. Repair of incidental surface damages, unintended low areas, rough cold joints and fastener holes in existing lightweight insulating concrete substrates. Use Zono-patch concrete repair mortar as recommended by manufacturer and trowel finish to a smooth surface.

5. Ensure that wood blocking has been installed as detailed in the plans and specifications.

6. Ensure that all counter-flashing receivers, curbs, etc., are constructed in such a manner as to provide a minimum 8" base flashing height measured from the finished roof's surface to the top of the base flashing membrane.

### 3.02   HEATING BITUMEN

A. Preparation

1. Use separate kettles or tankers for heating different types of asphalt.

2. Strictly regulate the heating process by means of an automatic thermostatic control of an approved type for positive temperature control.

3. Provide kettles or tankers with the following features:
   a. 100% safety shutoff.

4. Location heating kettles on the ground, with the asphalt pumped to the roof and in accordance with NFPA 16.7.
   a. Kettles shall not be placed on the roof.
   b. Gas Cylinders (comply with NFPA requirements):
   c. Provide fire extinguishers on the roof and in the vicinity of the kettles as required to ensure the safety of the roof.

B. Heating Asphalt Bitumen

1. Heat the bitumen in accordance with the Equiviscous Temperature information furnished by the bitumen manufacturer for that specific run of bitumen.
   a. Maintain the temperature of the bitumen at the point of application within the Equiviscous Temperature Range.
      1. Use insulated pipes, buckets, luggers, and other insulated roofer's equipment as required by the field conditions.
      2. Contractor must have at least one hand held thermometer for each crew installing hot asphalt in order to ensure compliance with EVT.

2. The accepted application temperature range for asphalt is the equiviscous temperature (EVT), ±25°F.  All felt installation must occur in this range to be acceptable.

### 3.03   INSTALLING THERMAL LAYERS

A. Initial Layer

1. Starting at the low edge of the roof, adhere thermal layer board in hot asphalt.
   a. Install boards with long joints continuous.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 9 of 12

        b.      Stagger short joints.

        c.      Butt joints tightly.

        d.      Embed each ply in a solid mopping of specified asphalt applied below the EVT.

2. Keep insulation absolutely dry at all times. Discard insulation that contains moisture.

        a.      Install only as much insulation as can be covered with roofing membrane the same day.

## 3.04   INSTALLING ROOFING MEMBRANE

A. Membrane

1. End laps shall be a minimum of 6 inch staggered at a minimum of 3 feet, with 4 inch minimum side laps.

2. Membrane installation shall be in accordance with Mia I Dade County NOA and FBC.

## 3.05   INSTALLING FLASHINGS, ACCESSORIES

A. Temporary Flashings:

1. Provide a temporary waterproof seal at all membrane edges, penetrations, drains, etc. Unless complete flashings are installed immediately (same working day) following the membrane application.

B. Preparation:

1. Inspect walls, curb heights, counterflashings, etc., and check for conformance with minimum base flashing height of eight (8").

2. Bring non-conforming areas to the attention of the Owner's Representative for correction.

C. Primer:

1. Prepare and prime substrate surfaces per manufacturer's instructions.

        a.      Abrade and grind surfaces and clean metal surfaces to bare metal when recommended by the manufacturer.

        b.      Follow manufacturer's recommendations for required temperature of substrate and materials, and for filling of voids.

2. Prime all masonry, metal, or concrete surfaces from the top of the roof membrane to the termination of the flashing level with asphalt primer at the rate of one (1) gallon per 100 square feet or as recommended by the manufacturer.

3. Allow the primer to dry thoroughly.

4. Ensure that bonding surfaces to which the seal or flashing are to be placed are clean and free of moisture, dirt, grease, oil, loose material, foreign material, and debris.

D. Installing Flashings:

1. Flashings are critical to the success of the roofing system and flashing conditions vary wildly.  In addition to guidelines below, consult manufacturer for general flashing guidelines and project specific flashing design.

2. Provide seals or flashing at penetrations of the roof membrane as required for a watertight roof system, and as indicated on the Drawings, and as approved by the roof system manufacturer for inclusion in the roofing warranty.

3. Install two ply base flashing system using specified modified bitumen base sheet and built-up cap sheet at all intersections formed by changes of plane, and wherever curbed roof openings, wall, parapets, or other structure joint penetrates the roof.

        a.      Install flashing system in manufacturer's approved hot, steep asphalt at EVT.

E. Fluid-Applied Flashing System

1. Based on PermaFlash System.  Follow manufacturer's instructions.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 10 of 12

      a.      Lay out reinforcement fabric around penetration and cut to fit. Wrap fabric around penetration and bridge all vertical to horizontal transitions.

      b.      Apply fluid-applied flashing directly to prepared substrate. Adhere fabric by pressing into the fluid-applied flashing while still wet.

      c.      Completely cover fabric with at least 60 mil coat wet film thickness of fluid-applied flashing, and as required by the manufacturer.

      d.      Extend top coat of fluid-applied flashing system 2 inches beyond edges of reinforcement fabric.

F. Installing Walkway Pads/Splash Block/Protection Pad:

    1.    Set the pads in a solid bed of plastic cement compatible with the cap sheet material.

    2.    Leave adequate space between pads so that positive drainage is not affected from installation.

## 3.06   INSTALLING ROOF EDGING SYSTEM

A. Inspection:

    1.    Verify that the roof edging installation will not disrupt other trades.

    2.    Verify that the substrate is dry, clean and free of foreign matter.

    3.    Report and correct defects prior to any installation.

B. Installation of Roof Edging System:

    1.    Submit product design drawings for review and approval to Owner's Representative or Specifier before fabrication.

      a.      Check as-built conditions and verify the manufacturer's roof edge details for accuracy to fit the wall assembly prior to fabrication.

    2.    Comply with the roof edging manufacturer's installation guide when setting edging.

    3.    Use provided fasteners consistent with manufacturer's instructions, suitable for the substrate to which it is being installed and in accordance with RAS 111.

## 3.07   FIELD QUALITY CONTROL

A. Field Samples

    1.    Draw a quart sample from each load of bitumen arriving at the job site in the presence of the Owner's Representative, who will take it for laboratory analysis.

B. Test Strip (if requested by the Owner):

    1.    When and where directed by the Owner's Representative, and before surfacing is applied to the completed membrane:

      a.      Cut a strip 3" wide by 40" long thru all plies of the roofing system. Number of such test strips may be as required by the Representative.

      b.      After removal of the strip, immediately repair the area by applying the same number of plies of the same kind of felt and bitumen over the filled strip with the first ply.

    2.    Lap each edge 12" and each succeeding ply lapping the preceding ply by at least 3" on all edges.

      a.      Approximate quantities of components within roofing membrane will be determined according to ASTM D 3617.

    3.    Turn the test strips over to the Authority's Representative for examination.

      a.      If the test strips indicate the roofing system complies with the Specifications, the Authority will bear the cost of the test strip Work.

      b.      If the strips indicate the roofing system does not comply with the Specifications, the Contractor will bear the cost of the test strip Work, and will repair or replace all roofing Work as required to comply with the Specifications, at the Contractor's expense.

C. Non-Compliance:

    1.    Failure of the bitumen samples or the test strip samples to meet the Specification requirements will be cause for rejection of the Work.

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 11 of 12

**3.08   INSPECTION**

    A.   After all roofing system Work is completed, provide an inspection by the roofing system manufacturer's representative. Representative must be employed expressly as a technical employee and not concurrently function in a sales role.  Provide, via the representative, documentation verifying that roofing system has been installed according to the Specifications.

**3.09   CLEANING**

    A.   Keep newly installed roofing membrane clean and new in appearance under the assumption that all areas of roofing are aesthetically essential.  Contractor may be directed to remedy – and if no remedy available – replace, newly roofed areas that are not maintained as such during the balance of installation.

    B.   Restore all other building surfaces and areas affected by roofing application to same condition of aforementioned on day of job start.

    C.   Remove all debris from roof and staging areas.

**END OF SECTION**

ISD Project Manual
GRAN VIA – Elderly Affordable Housing
ISD Contract No. Z000107

Section 07510 (07 51 13)
Built-Up Asphalt Roofing System
October 2011
Page 12 of 12

EXHIBIT "B"

## Nielson, Hoover & Associates
### Bond Department

Public Works Bond
In compliance with Florida Statutes 255.05(1)(a)

| | |
|---|---|
| **Bond No.** | 21BCSFZ7956 |

---

| | |
|---|---|
| **Contractor** | **Siltek Group, Inc.** |
| **Address** | 1232 North University Drive, Suite 101<br>Plantation, FL 33322 |
| **Phone No.** | (954) 370-1368 |
| **Surety Company** | **Hartford Casualty Insurance Company** |
| **Address** | One Hartford Plaza<br>Hartford Connecticut 06155 |
| **Phone No.** | (860) 547-5000 |
| **Owner Name** | **Miami-Dade County** |
| **Address** | 111 N.W. 1st Street<br>Miami, FL 33128 |
| **Phone Number** | **(305) 375-5071** |
| **Contract/Project No.** | Z000107 |
| **Project Name** | *Construction of Affordable Housing and Home Ownership in District 11 – Gran Via Apartments* |
| **Project Location** | Miami, FL |
| **Legal Description and/or Street Address** | SW 127th Avenue and SW 8th Street, Miami, FL 33184 |
| **Description of Work** | Construction |

Front Page
All other bond page(s) are deemed subsequent to this page regardless
of any page number(s) that may be preprinted thereon.

RECEIVED

JUN 14 2012

RISK MANAGEMENT
DIVISION

Bond No. 21BCSFZ7956

# CONSTRUCTION OF AFFORDABLE HOUSING AND HOME OWNERSHIP IN DISTRICT 11 - GRAN VIA APARTMENTS ISD CONTRACT NO. Z000107

## SECTION 00615 - SURETY PERFORMANCE AND PAYMENT BOND

By this Bond, We __SILTEK GROUP, INC.__ as Principal, whose principal business address is __1232 North University Drive, Suite 101, Plantation, FL 33322__ as Contractor under the contract dated _____ , 20___, between Principal and Miami-Dade County for the construction of Affordable Housing and Hole Ownership in District 11 - Gran Via Apartments, ISD Project No. Z000107 (herein after referred to as "Contract"), the terms of which Contract are incorporated by reference in its entirety into this Bond, and __Hartford Casualty Insurance Company__, a corporation, whose principal business address is __One Hartford Plaza, Hartford, CT  06183__ as Surety, are bound to Miami-Dade County (hereinafter referred to as "County") in the sum of __Nine Million Seven Hundred Twenty Thousand Nine Hundred Fifty__ U.S. dollars ($ 9,720,950.00 ), for payment of which we bind ourselves, our heirs, personal representatives, successors, and assigns, jointly and severally.

THE CONDITION OF THIS BOND is that if Principal:

1. Performs all the work under the Contract, including but not limited to guarantees, warranties and the curing of latent defects, said Contract being made a part of this bond by reference, and in the times and in the manner prescribed in the Contract, including any and all damages for delay; and

2. Promptly makes payments to all claimants, as defined in Section 255.05(1), Florida Statutes, supplying Principal with labor, materials, or supplies, used directly or indirectly by Principal in the prosecution of the work provided for in the contract; and

3. Pays County all losses, damages, including damages for delay, expenses, costs and attorney's fees, including appellate proceedings, that County sustains because of a default by Principal under the Contract, including but not limited to a failure to honor all guarantees and warranties or to cure latent defects in its work or materials within five (5) years after completion of the work under the Contract; and

4. Performs the guarantee of all work and materials furnished under the contract for the time specified in the Contract, including all warranties and curing all latent defects within five (5) years after completion of the work under the Contract;

Then this bond is void; otherwise it remains in full force.

If no specific periods of warranty are stated in the Contract for any particular item or work, material or equipment, the warranty shall be deemed to be a period of one (1) year from the date of final acceptance by the County. This Bond does not limit the County's ability to pursue suits directly with the Principal seeking damages for latent defects in materials or workmanship, such actions being subject to the limitations found in Section 95.11(3)(c), Florida Statutes.

Any changes in or under the Contract Documents and compliance or noncompliance with any formalities connected with the Contract or the changes does not affect Surety's obligation under this Bond.

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 1 of 2
Prepared by CAS/DCSD
Revised 10/1/11

This bond is given to comply with section 255.05 Florida Statutes, and any action instituted by a claimant under this bond for payment must be in accordance with the notice and time limitation provisions in Section 255.05(2), Florida Statutes.

**IN WITNESS WHEREOF,** the above bounden parties have caused this Bond to be executed by their appropriate officials as of the ____ day of _____, 20___.

ATTEST:
Contractor:

Siltek Group, Inc.
_____
Contractor's Full Name

Siltek Group, Inc.
_____
Legal Name of Contractor

By: _____RENEA SIERRA_____
V President, Managing Partner or
Joint Venturer

_____
Signature

_____
Corporate Seal

COUNTERSIGNED BY RESIDENT FLORIDA
AGENT OF SURETY:

*Charles D. Nielson*

(Copy of Agent's current Identification Card as
issued by the State of Florida Insurance
Commissioner must be attached)

SURETY:

Hartford Casualty Insurance Company
_____

By: *Charles D. Nielson*
_____
Attorney-In-Fact  Charles D. Nielson

_____
Corporate Seal (Power of Attorney
must be attached)

BOND APPROVED AS TO
INSURANCE REQUIREMENTS
*Rose Yowie*
RISK MANAGEMENTS DIVISON
DATE: 07/06/12

Construction of Affordable Housing and
Home Ownership in District 11 - Gran Via Apartments
ISD Contract No. Z000107

00615 Surety Performance and Payment Bond - Page 2 of 2
Prepared by CAS/DCSD
Revised 10/1/11





**20 YEAR NDL**
LIMITED WARRANTY

Date Issued: **6/24/2014**     Warranty No.: **W3001817**     20 Years From: **04/08/2014**     Spec #: **FRP-N-B3**
WHEREAS, CertainTeed, 750 E. Swedesford Rd., Valley Forge, PA (hereinafter referred to as 'CT'), has sold its products which have been used in applying a roof membrane on the building described as follows:
Owner: **MIAMI DADE COUNTY , 111 NW 1 AVE , MIAMI, FL, 33125, 954-370-1368**
Building: **GRAN VIA , 12700 SW 8 ST , MIAMI , FL, 33184, N/A**
CT Specification: **FRP-N-B3**     Roofing Areas: **350 squares**
Applied By: **Aleluya Roofing, 7351 NW 7th Street, Bay H, Miami, FL, 33126, 305-261-8814**

**Coverage**
CertainTeed Corporation (CT) hereby warrants the roof system installed at the above address, subject to the following terms, conditions, limitations and exclusions, for a period of **20** years from the date of completion of the roof system installation. If, during the duration of this Limited Warranty, a deficiency in the workmanship of the roof system installation or a manufacturing defect in the roof system causes a leak, CT or its designated roofing contractor will, at CT's expense, repair the roof system as necessary to restore it to a watertight condition. Only deficiencies in the roof system that cause leaks are covered by this Limited Warranty. In no event will CT be responsible for any costs related to the removal or abatement of any asbestos present in any existing roof system to which the CT roof system is applied. Roof system, as used herein, shall include the following components: FlintBoard™ Insulation, FlintFast™ Fasteners, FlintPrime™ Primers, FlintCoat™ Coatings, FlintBond™ Adhesives, applicable base sheet(s), interplies and cap sheet(s) (with appropriate roof coating of surfaces) required by the CT Product Specification, and asphalt material between layers when required, if applied per CT's Commercial Roof Systems Manual specification. Roof components which are not part of the roof system and hence not covered by this Limited Warranty include the following: underlying roof deck, insulation (non CT brand), vapor retarders, fasteners (non CT brand), metal work (non CT brand), drains, pitch pans, expansion joints, skylights, vents, plastic accessories, decorative or reflective coating (non CT brand), surfacing and/or any aggregates.

**Exclusions from Coverage**
This Limited Warranty does not cover leaks, damages or injuries of any type, including, but not limited to, damage to roof insulation, roof decks or other bases over which the CT products are applied, attributable directly or indirectly to any of the following:
1. Natural disasters, including, but not limited to, cyclones, tornadoes, hurricanes or other winds exceeding Force 9 on the Beaufort scale, lightning, earthquakes, flood, hail or fire.
2. Falling objects, civil insurrection, war, riot or vandalism.
3. Settlement, deflection, movement, moisture content, inadequate attachment or other deficiencies of the roof deck, pre-existing roof system, walls, foundations or any other part of the building structure, insulation or other materials underlying the roof system.
4. Failure of the roof system caused or contributed by:
   a. Maintenance, repair or work on the roof unrelated to the roof system, such as mechanical, electrical or plumbing;
   b. Infiltration or condensation of moisture in, through or around the walls, copings and metal components, pitch pans, building structure or underlying or surrounding materials;
   c. Traffic of any nature or use of the roof surface as a storage area, walking or recreational surface or for any other similar purpose;
   d. Movement or deterioration of metal work used in conjunction with the roof system;
   e. Deposits of solids or liquids which may cause deterioration of the roof system;
   f. Building design or construction;
   g. Lack of positive drainage, to completely remove water from the roof system per NRCA guidelines; or
   h. Installation over a wet surface or substrate.
5. Failure to adhere to CT's roof maintenance program (see CT's Roof Maintenance form).
6. Unauthorized application on excluded buildings or structures (see CT's General Recommendations).
7. Any change in the building's basic usage unless approved in advance in writing by CT.
8. Any use of roofing material of any kind or nature not approved in CT's Commercial Roof Systems Manual.
9. Placement of any additional structures on the roof system (such as, but not limited to, equipment or framework used in connection with air conditioning units, transmission and/or reception devices, signs and/or water towers).
10. Failure to maintain the watertight integrity of the roof system. Owner must make repairs within 30 days of notification by CT to non-warranted items that affect the watertight integrity of the roof system.
In addition, CT will not be responsible for, or have any liability for, changes to the appearance of the roof system that do not result in roof leaks. This includes, but is not limited to, the loss of granules from the cap sheet and/or surface cracking due to weathering or normal wear and tear from the elements.

**Non-Warranted Repairs**
Repairs must be made by a CT Gold or Silver Star roofing contractor or roofing contractor approved in advance by CT. Should a non-warranted repair be made by any roofing contractor, payment must be remitted to the roofing contractor within 30 days from completion of the work or the Limited Warranty will be void. Should non-warranted repairs not be made within 30 days of notification by CT, the Limited Warranty will be void.

**Two-Year Inspection**
A mandatory inspection will be made of the roofing membrane within 2 years from the date of application. If for any reason CT or its authorized representative is not granted access to perform the inspection this Limited Warranty shall be void.

**Unapproved Repairs, Alterations, Deletions or Additions**
All repairs, alterations, deletions or additions to any aspect of the roof, or any material contiguous thereto, must have prior written approval of CT's Commercial Warranty Department (CertainTeed Roofing Products Group, Commercial Warranty Department, 1400 Union Meeting Road, PO Box 1100, Blue Bell, PA 19422, (800) 396-8134). If Owner, without prior written consent of CT, makes or permits any repairs, alterations, deletions or additions to the roof, all of CT's obligations, duties and coverage under this Limited Warranty will terminate.

**Notice of Claims**
Any claim or request for CT to perform under this Limited Warranty must be made by Owner to CT in writing within thirty (30) days of discovery of the defect (notification to the contractor is not considered notice to CT) or CT will have no responsibility for the repairs. This notice of claim must include a general description of the alleged defect and a copy of the roof maintenance records. Owner shall grant access to the entire roof system as necessary for CT to investigate a claim. If access is not granted, CT shall have the right to determine, at its sole discretion, that this Limited Warranty is void as to that portion of the roof system to which access is denied. Should the investigation of the leak be determined not to be covered under this Limited Warranty, any costs associated with the leak investigation shall be the Owner's sole responsibility.
**NOTE: In the event an emergency condition exists which requires immediate repair to avoid damage to the building or its contents, Owner may make essential temporary repair (s) performed by a qualified roofer. CT will only reimburse Owner for essential temporary repair expenses that would have been covered under this Limited Warranty.**

**Modifications**
Only CT's Commercial Warranty Department is authorized to modify coverage provided by this Limited Warranty. Issuance of this Limited Warranty or review or inspection of plans, the building or product application by a CT representative does not waive any exclusions or conditions of this Limited Warranty. Application of a roof system that deviates from CT's Commercial Roof Systems Manual specifications voids coverage, unless prior written approval is provided by CT's Commercial Warranty Department.

**Transferability of Warranty**
This Limited Warranty may be transferred to a subsequent owner only if CT's Commercial Warranty Department is notified at the above listed Blue Bell address within thirty (30) days of real estate title transfer and upon payment of the applicable transfer fee to CT. Failure to transfer this Limited Warranty pursuant to these stated conditions terminates CT's warranty obligations. If it is determined at CT's sole discretion that the roof is in a state of poor maintenance or in disrepair, CT reserves the right to reject the transfer and void this Limited Warranty. All transfer fees will be refunded minus the cost of any applicable inspection and administrative fees.

**Conditions Pertaining to Warranty Issuance**
This warranty shall become effective only upon the occurrence of all the following events: (1) Receipt of roofing contractor's notice of completion; (2) CT final inspection and completion of all punchlist items; (3) Payment of CT's warranty fee; and (4) Owner's payment to roofing contractor for installation and supplies.

**Disclaimer of Warranties and Limitations of Remedies**
THIS DOCUMENT CONSTITUTES THE EXCLUSIVE WARRANTIES AND REMEDIES PROVIDED BY CERTAINTEED. THE WARRANTIES AND REMEDIES CONTAINED IN THIS DOCUMENT ARE EXPRESSLY IN LIEU OF ANY AND ALL OTHER OBLIGATIONS, GUARANTEES AND WARRANTIES, WHETHER WRITTEN, ORAL OR IMPLIED BY STATUTE OR AT LAW. STATE LAW WILL DETERMINE THE PERIOD OF TIME FOLLOWING THE SALE THAT A PROPERTY OWNER MAY SEEK A REMEDY UNDER THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CERTAINTEED'S OBLIGATIONS, RESPONSIBILITIES AND LIABILITY SHALL BE LIMITED TO REPAIRING, REPLACING OR REFUNDING THE DEFECTIVE PRODUCT AS SET FORTH IN THIS LIMITED WARRANTY. IN NO EVENT SHALL CERTAINTEED BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING ANY DAMAGE TO THE PROPERTY, THE BUILDING OR ITS CONTENTS, OR FOR INJURY TO ANY PERSONS, THAT MAY OCCUR AS A RESULT OF THE USE OF CERTAINTEED'S PRODUCTS OR AS A RESULT OF THE BREACH OF THIS WARRANTY. IF YOUR STATE DOES NOT ALLOW EXCLUSIONS OR LIMITATIONS OF SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.

**Agreement to Binding Arbitration**
Any and all claims, disputes and other matters in question that may occur between Owner, the contractor, and/or CT, arising out of, in connection with, or relating to this Limited Warranty or breach thereof, **shall be submitted to BINDING ARBITRATION** for resolution. The arbitration shall be conducted by the American Arbitration Association under its Construction Industry Arbitration Rules then in effect, unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the Federal Arbitration Act, 9 U.S.C. § 2 or the applicable state arbitration laws. The award rendered by the arbitrator shall be final, and judgment may be entered upon such award in accordance with applicable law in any court having jurisdiction thereof.

**Examination or Inspection**
CT does not practice engineering or architecture. Issuance of this Limited Warranty or roof inspections made by CT or an authorized agent of CT do not constitute an approval of the roof, roof design plans or specifications, or construction or installation of the roof. Roof designs, construction plans or installation of the roof system should be approved by Owner or Owner's professional.

Note: All referenced documents/forms available at **www.certainteed.com**.
CertainTeed Corporation, 750 E. Swedesford Road, P.O. Box 860, Valley Forge, PA 19482     Rev 1/2014 ©2008 CertainTeed Corporation, COMM-056

**CertainTeed**                                          **ROOF MAINTENANCE PROGRAM**

The following information is designed to assist owners in establishing a regular and beneficial roof inspection and maintenance program. This important area of responsibility for the building owner can provide many long-term benefits, including extended life expectancy of the roofing system, reduced average in-place cost, prevention of major deterioration resulting from minor problems and eventually, reduced roof system replacement cost.

**Roof Maintenance Guidelines**

All roofs require regular inspections and periodic maintenance to achieve their expected life. Roofs should be inspected at least twice yearly, in the spring and fall. Additionally, all roofs should be inspected after any severe weather or storms. The roofing contractor who installed the roof membrane, in conjunction with the building owner's maintenance personnel, should perform these inspections. Leaks occur most often at flashings, pitch pans, gravelstops, and other penetrations. Pay special attention to these areas. Included among the roof components that are not part of the roof membrane and hence not covered by the applicable CertainTeed limited warranty are the following: underlying roof deck, insulation, vapor retarders, fasteners, metal work, drains, pitch pans, expansion joints, skylights, vents, plastic accessories, decorative or reflective coating, surfacing and/or any ballast, rock, or gravel. Roof components are the owner's responsibility to maintain.

**General** – One of the keys to avoiding roof damage is limiting access to the roof. Allow only authorized personnel on the roof who understand good roof access procedures and precautions. Bag and remove all debris from the roof. Keep grease and oil off of the roof. Clean and remove any liquid deposits immediately. Do not allow foot traffic on the roof in very hot or very cold weather. Do not allow the installation of television or radio antennas, satellite dishes or other mechanical equipment without notifying CertainTeed for approval and for consultation about the methods and details for these installations.

**Roof Drains** – CertainTeed requires positive drainage. Owners must keep roof drains and the surrounding areas free of debris to allow for proper drainage. Maintain proper attachment of drain clamping rings.

**Metal Flashing** – Start with a visual examination looking for areas of damage or rust. Ensure that the flashing has remained properly attached and sealed. Repair or replace areas with damage, poor caulking, and all loose areas including counterflashing, coping, seams and/or joints.

**Pitch Pans** – Keep pitch pans full at all times. Examine and repair the metal pan assembly when necessary.

**Rooftop Equipment** – Qualified roofing personnel should accompany the equipment installation and/or service employees. If this is not practical, have qualified roofing personnel inspect the area after the equipment installation and/or service employees have completed their work. Regularly check and maintain the condition of all rooftop equipment. Ensure that no substances from the equipment are being deposited on the roof, and if deposits are present – clean immediately. Check equipment flashing for proper condition.

**Roof Coating** – Visually inspect for signs of deterioration. Maintenance or replacement completed by a roofing professional is essential. Coating life is affected by a variety of factors including climate and environment.

**Other** - The above list reflects only the most common components found on roof systems; it is not all-inclusive. Contact CertainTeed for additional information.

**Owner Inspection and General Recommendations**
A. Utilize roofing professionals or thoroughly trained maintenance personnel for roof-related issues.
B. Owners should file all job records, drawings, and specifications for future reference. Contract with a roofing contractor authorized by CertainTeed to set up a regular inspection and roof maintenance schedule. Record maintenance procedures as they occur. Log all roof access times and other trades working on the roof, in case damage should occur. Report damage as soon as it occurs, so repairs may be scheduled and executed as soon as possible.
C. Make more frequent inspections (six times per year) on buildings that house manufacturing facilities that evacuate or exhaust debris onto the roof.
D. Inspect the exterior of the building for settlement or movement. Structural movement may result in splits in the roof membrane.
E. Repairs should be performed as soon as needed – owners should not allow a nuisance leak to develop into a major problem, degrading insulation and destroying a large portion of the roof assembly. While a roofing contractor authorized by CertainTeed should perform repairs and maintenance work, the owner can help maintain the roof by ensuring that minor clean-up and maintenance procedures are performed (e.g., regular checking and cleaning of debris from roof and around drains.)
F. Notify CertainTeed immediately after a roof leak occurs. If possible, note conditions resulting in leakage. Heavy or light rain, wind direction, temperature, and the time of year that the leak occurs are all important clues to tracing roof leaks. Note whether the leak stops shortly after each rain or continues to drip until the roof is dry. If the owner is prepared with the facts, the diagnosis and repair of roof problems can proceed more rapidly.
G. In some emergency situations, owner-applied temporary patches may be made to stop leaks to minimize property loss. Except for certain emergency situations, owners should not attempt roof repairs. The puncturing of a blister or the spreading of a liquid-applied coating or bituminous cement may only cover up evidence needed to ascertain the real problem.

For your convenience, we have provided a basic inspection form on the reverse side of this page that addresses several critical areas of the roofing system.

CertainTeed Roofing Products Group – 1400 Union Meeting Road, PO Box 1100, Blue Bell, PA 19422
Attn: Commercial Warranty Department – Phone: 800-396-8134 – Fax: 610-254-5458
Email: rpg.comm.services@saint-gobain.com • Website: www.ctndl.com
Rev 1/2014

**CertainTeed** ▣

**ROOF MAINTENANCE PROGRAM**
INSPECTION REPORT

warranty # W3001817

Page 2 of 2

Date: _____   Inspected By: _____



**ROOF PLAN LEGEND**

| | |
|---|---|
| Roof Drain | ● |
| Scupper | ⊃ |
| Firewall | FWA |
| Chimney | □ |
| Skylight | ⊠ |
| Scuttle or hatch | ▽ |
| Penthouse | PH |
| Ventilator/Fan | ⊗ |
| Vent Pipe | ⋁ |
| Air Conditioner | AC |
| Cooler | C |
| Pitch Pocket | □ |
| Saddle | △S◁ ◁S▷ |
| Hip | HA |
| Ridge | RA |
| Valley | VA |
| Pipe or Conduit | +—+—+ |
| Screen Support/Fence | X X X |
| Expansion Joint | E.△A. |
| Metal Edging – Single line perimeter | — |
| Parapet Wall – Double line perimeter | — |
| Other | |

**Owner Based Maintenance Requirements**

| | No Problems | Maintenance Required | Not Applicable |
|---|---|---|---|
| 1. Edge Metal | ☐ | ☐ | ☐ |
| 2. Counter Flashing | ☐ | ☐ | ☐ |
| 3. Expansion Joints | ☐ | ☐ | ☐ |
| 4. Pitchpans | ☐ | ☐ | ☐ |
| 5. Drains | ☐ | ☐ | ☐ |
| 6. Scuppers | ☐ | ☐ | ☐ |
| 7. Skylights | ☐ | ☐ | ☐ |
| 8. Coping Covers | ☐ | ☐ | ☐ |
| 9. Vents | ☐ | ☐ | ☐ |
| 10. Flues | ☐ | ☐ | ☐ |
| 11. Antennae | ☐ | ☐ | ☐ |
| 12. HVAC Equipment | ☐ | ☐ | ☐ |
| 13. Sign Supports | ☐ | ☐ | ☐ |
| 14. Coatings/Toppings | ☐ | ☐ | ☐ |
| 15. Debris | ☐ | ☐ | ☐ |
| 16. Other | ☐ | ☐ | ☐ |

Comments:

**Condition of Roof Membrane**
**Surface Condition**

| | Yes | No |
|---|---|---|
| Any blisters, splits, buckles, or punctures? | ☐ | ☐ |
| Any bare spots, displaced gravel, thin coating or severe granule loss? | ☐ | ☐ |
| Reflective coating in good condition? | ☐ | ☐ |
| Any evidence of ponding? | ☐ | ☐ |
| Any evidence of residue deposits or foreign contamination? | ☐ | ☐ |
| Are A/C condensation lines on extending into drains? | ☐ | ☐ |
| Any evidence of traffic or physical damage? | ☐ | ☐ |
| Any evidence of wet insulation? | ☐ | ☐ |

Comments

**General Conditions**

| | Yes | No |
|---|---|---|
| Any building or structural movement? | ☐ | ☐ |
| Any deflection or sagging of deck? | ☐ | ☐ |
| Any alterations, additions or new penetrations? | ☐ | ☐ |
| Any change in building usage? | ☐ | ☐ |

Comments

Copies should be made of this form and used in your semi-annual roof inspections

CertainTeed Roofing Products Group – 1400 Union Meeting Road, PO Box 1100, Blue Bell, PA 19422
Attn: Commercial Warranty Department – Phone: 800-396-8134 – Fax: 610-254-5458
Email: rpg.comm.services@saint-gobain.com ● Website: www.ctndi.com
Rev 1/2014



**TAYLOR ESPINO VEGA & TOURON**

201 ALHAMBRA CIRCLE, SUITE 801
CORAL GABLES, FLORIDA 33134
TEL.305.443.2043

TIMOTHY S. TAYLOR
BOARD CERTIFIED IN CONSTRUCTION LAW
E-MAIL ADDRESS: TTAYLOR@TEVTLAW.COM

November 5, 2020

| Via Certified Mail/Return Receipt Requested<br>7018 2290 001 3138 8315<br>Siltek Affordable Housing, LLC<br>1232 North University Drive<br>Suite 101<br>Plantation, FL 33322 | Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8308<br>Siltek Group, Inc.<br>1232 North University Drive<br>Suite 101<br>Plantation, FL 33322 |
|---|---|
| Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8292<br>Rene A. Sierra<br>4403 Dogwood Circle<br>Weston, FL 33331 | Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8285<br>Ana Silveira-Sierra<br>4403 Dogwood Circle<br>Weston, FL 33331 |
| Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8278<br>Gonzalo DeRamon<br>1040 NW North River Drive<br>Miami, FL 33136 | Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8230<br>Mayte DeRamon<br>1040 NW North River Drive<br>Miami, FL 33136 |
| Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8261<br>Michael C. Cox<br>828 NW 9th Avenue<br>Miami, FL 33136 | Via Certified Mail/Return Receipt Requested<br>7018 2290 0001 3138 8261<br>Shana Kristie Cox<br>828 NW 9th Avenue<br>Miami, FL 33136 |

    **Re:**   **Hartford Casualty Insurance Company's Demand for Collateral Security**
          **Surety:**     **Hartford Casualty Insurance Company ("Hartford")**
          **Principal:**   **Siltek Group, Inc. ("Siltek")**
          **Project:**     **Gran Via Apartments**

Dear Indemnitors:

    As you know, the law firm of Taylor Espino Vega & Touron, PLLC represents Hartford Casualty Insurance Company ("Hartford") in connection with the General Indemnity Agreement ("GIA") dated December 10, 2009 which each of you executed as an Indemnitor. This follows Hartford's June 21, 2017 demand for collateral security, which has been unmet, as well as subsequent correspondence between the undersigned and counsel for Siltek, regarding Siltek's failed efforts to protect Hartford's interests.

    As you are aware, Hartford and Siltek are named defendants/respondents in an arbitration action initiated by Miami-Dade County ("County") regarding the Gran Via Apartments Project ("Project"). The County has asserted damages in the amount of $618,558.00 against Hartford and Siltek. Despite repeated requests to counsel for Siltek to procure insurance coverage for this claim from Siltek's general commercial liability insurance carriers, Siltek has failed to do so.

**EXHIBIT "D"**

Indemnitors of Siltek Group, Inc.
November 5, 2020
Page **2** of **3**

In fact, the undersigned was forced to make demand upon Siltek's insurance carriers in order to place them on notice of the claim. After these insurance carriers were placed on notice, both Liberty Surplus Insurance Corporation ("Liberty") and Gemini Insurance Company ("Gemini") responded directly to Siltek regarding this claim. Based upon correspondence from Liberty, Liberty was willing to accept the tender of the claim and provide a defense and indemnification once Siltek paid the $10,000 policy deductible. Despite repeated inquiries by the undersigned, counsel for Siltek has failed to confirm the payment of the insurance deductible and the reasonable inference is that Siltek has apparently failed to acquire insurance coverage for this claim. Furthermore, inquiries about the coverage position of Gemini have also gone unanswered.

In light of the foregoing, Hartford's concern over Siltek's continued failure to take the necessary and appropriate steps required to resolve the Claim has grown considerably since Hartford first demanded collateral security on June 21, 2017. As a result of Siltek's dilatoriness, Hartford has been forced to incur significant attorneys' fees and litigation expenses to defend itself against the County's claim and continues to remain exposed to significant liability and attorneys' fees should the County be awarded any recovery against Hartford. Moreover, Siltek's failure to procure insurance coverage for this claim is shocking and has considerably increased the financial risk to Hartford.

As indemnitors under the GIA with Hartford, you all have a duty indemnify, exonerate and hold Hartford harmless from the claims assert by the County on this Project. Enclosed herein is a copy of the GIA for your reference. Specifically, Paragraph 5 of the GIA expressly states:

**Indemnity and Exoneration**: The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an indemnitor to discharge any obligations under this Agreement, (3) in enforcing the provisions of this Agreement…

Moreover, pursuant to the GIA, you all are required to deposit collateral with Hartford upon demand in an amount reasonable to protect Hartford from all losses and expenses. Specifically, Paragraph 6 of the GIA expressly states:

**Collateral Security**: On Hartford's demand, the Indemnitors shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not Hartford has made any payment or created any reserve. … Hartford may use these sums, or any part thereof, to pay such claim or to hold as collateral security against any loss, claim, liability or unpaid premium on any Bond for which Indemnitors may be obligated to indemnify Hartford under the terms of this Agreement.

Indemnitors of Siltek Group, Inc.
November 5, 2020
Page **3** of **3**

Accordingly, based upon the current exposure Hartford faces in damages, attorneys' fees, and expenses as a result of the claims as set forth in the County's enclosed damages summary, Harford hereby demands collateral security in the total amount of $850,000.00. Please also note that Hartford reserves the right to increase this demand for collateral security if it determines that its exposure may be greater than $850,000.00.

Should you fail to deposit with Hartford $850,000.00 in collateral security within seven (7) days of the date herein, or on or before November 11, 2020, then Hartford may take whatever steps it deems necessary to enforce its rights under the GIA, including filing a lawsuit naming each of you as a Defendant based upon your joint and several obligations under the GIA. Hartford looks forward to your full cooperation and compliance.

This correspondence and all prior or subsequent correspondence and/or investigative efforts are made with express reservation of rights and defenses that Hartford has or may have under the terms of its performance bonds, applicable contract documents, the GIA, and applicable law.

Should like to discuss this matter further, please feel free to contact me.

Very truly yours,

Timothy S. Taylor
TAYLOR ESPINO VEGA & TOURON, P.A

cc:     Maribel Luzunaris
        Oscar Soto

# General Indemnity Agreement

THE
HARTFORD

The Indemnitors have requested or may request Hartford to furnish, procure, assume or continue Bonds on behalf of any one or more of the Indemnitors. The Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration for the furnishing, procuring, assuming or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following:

1. **Definitions**. For purposes of this Agreement, the terms below shall be defined as follows:

    (a) "Agreement" shall mean this General Indemnity Agreement.

    (b) "Bonds" shall be any and all contracts of suretyship, guarantees, obligations and undertakings issued in accordance with this Agreement.

    (c) "Indemnitors" include the following persons or entities, and their respective successors, assigns, co-venturers, parents, affiliates, divisions and subsidiaries, whether now existing or hereafter acquired or created.

| Indemnitor's Name | Address | Tax ID / Social Security Number |
|---|---|---|
| Siltek Affordable Housing, LLC | 1232 North University Drive, Suite 101, Plantation, FL 33322 | 4278 |
| Siltek Group, Inc. | 1232 North University Drive, Suite 101, Plantation, FL 33322 | 9833 |
| Rene A. Sierra | 4403 Dogwood Circle, Weston, FL 33331 | -1659 |
| Ana Silveira-Sierra | 4403 Dogwood Circle, Weston, FL 33331 | -3277 |
| Gonzalo DeRamon | 1040 NW North River Dr., Miami, FL 33136 | -6529 |
| Mayte DeRamon | 1040 NW North River Dr., Miami, FL 33136 | -8171 |
| Michael C. Cox | 828 NW 9th Avenue, Miami, FL 33136 | -4956 |
| Shana Kristie Cox | 828 NW 9th Avenue, Miami, FL 33136 | -5079 |

    (d) "Event of Default" shall include (i) an Indemnitor's abandonment, forfeiture or breach of, or failure, refusal or inability to perform, a contract guaranteed by any Bond; (ii) an Indemnitor's failure, refusal or inability to pay any bill or satisfy any debt incurred in connection with the performance of any obligation guaranteed by any Bond; (iii) an Indemnitor's failure, refusal or inability to satisfy any condition of any Bond or to comply with any term or provision of this Agreement; (iv) any assignment by the Principal for the benefit of creditors, or the appointment, or an application by the Principal for the appointment of, a receiver or trustee for the Principal or its property, whether insolvent, or not, or an application by the Principal for reorganization or arrangement under the terms of the United States Bankruptcy Code or any similar laws of any state, possession or territory of the United States, or if proceedings for the appointment of a receiver or trustee for liquidation or for the reorganization or

arrangement of the Principal shall be initiated by other persons, the continuance of those proceedings for a period of thirty days; (v) the commencement or continuation of any proceeding which deprives the Principal of, or interferes with, his use of any of the supplies, tools, plant, machinery, equipment or materials in, on or around the site of, or the work under the contract covered by any Bond; and/or (vi) if the Principal is an individual, the Principal's death, abscondment, disappearance, incompetence, conviction of a felony or imprisonment, and if the Principal is any other entity, any change or threat of change in the character, identity, control, management, beneficial ownership or existence of the Principal.

(e)  "Principal" shall mean a person or entity in whose name a Bond is issued pursuant to the terms of this Agreement.

(f)  "UCC" shall mean the Uniform Commercial Code in the form in which it has been adopted in the relevant state.

(g)  "Hartford" shall be, individually or collectively, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of their insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-sureties or reinsurers.

2.  **Application of Agreement.**  This Agreement applies to all Bonds executed by Hartford, whether prior to, simultaneous with, or subsequent to the date of execution of this Agreement; (1) on behalf of any Indemnitor solely or as a member of a partnership, joint venture, or any other business entity or common enterprise, and/or; (2) in connection with contracts for which any Indemnitor acts as a silent participant, and/or; (3) at the request or on behalf of any of the Indemnitors, and/or; (4) for or at the request of any present or future parent, affiliate or subsidiary of such Indemnitor or Indemnitors, and/or; (5) for any third party at the request of Indemnitors and/or their parents, subsidiaries and affiliates. If Hartford procures the execution of Bonds by other sureties, executes Bonds with co-sureties, or procures reinsurance, the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

3.  **Premium.**  Indemnitors hereby agree to pay all premiums, when due, for each Bond issued hereunder, so long as any liability of Hartford shall continue under such Bonds, and until Hartford is furnished with evidence satisfactory to Hartford, in its sole discretion, that it has been discharged or released from all such liability.

4.  **Declination of Bonds.**  Hartford has the right to decline to execute any Bond, including a bid bond, without incurring any liability to any Indemnitor for any reason whatsoever and without affecting the Indemnitors' obligations to Hartford. Hartford's right to decline Bonds includes final Bonds following a contract award for which Hartford executed a bid or proposal bond, a bid letter, a consent of surety, or an agreement of surety. Such declination shall not affect, diminish, or alter the liability of the Indemnitors with respect to said bid or proposal bond.

5.  **Indemnity and Exoneration.**  The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, (3) in enforcing any of the provisions of this Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond. Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of actions.

6.  **Collateral Security.**  On Hartford's demand, the Indemnitors shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not Hartford has made any payment or created any reserve. Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or Bonded contract funds which Indemnitors diverted in violation of Paragraph 11 of this Agreement and/or to establish a trust account in accordance with Paragraph 11. Hartford may use these sums, or any part thereof, to pay such claim or to hold as collateral security against any loss, claim, liability or unpaid premium on any Bond for which the Indemnitors may be obligated to indemnify Hartford under the terms of this Agreement. Hartford shall have no duty to invest, or to provide interest on, any such deposit. Hartford may sell property assigned to or deposited with it without incurring any liability. The sale may be public or private and with or without notice of the time or place thereof. The Indemnitors shall be entitled to the refund of any unused portion of the collateral security upon termination of Hartford's liability on all Bonds and the

GIAPERF_APP4684_LONG_090105 R1

Page 2 of 9

performance by the Indemnitors of all their obligations to Hartford hereunder. The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law. Therefore, the Indemnitors agree that Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

7. **Claim Settlement.** Hartford has the right to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement. The Indemnitors shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) they were necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability. Copies of checks or other evidence of such payments, including records of any nature maintained by Hartford in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford. Furthermore, any Indemnitor shall immediately notify Hartford in writing of any demand, notice, suit, action or proceeding relating to any Bond. Furthermore, Hartford is hereby authorized and empowered to advance money or to guarantee loans to the Principal that Hartford may deem prudent to advance to said Principal for the purpose of any bonded contract; and all such loaned or advanced monies, together with all costs, attorneys' fees and expenses incurred by Hartford in relation thereto, unless repaid when due, shall be conclusively presumed to be a Loss hereunder for which each of the Indemnitors shall be responsible. The Indemnitors hereby expressly waive notice of any such advance or loan, or of any default or any other act giving rise to any claim under any Bond, and waive notice of any and all liability of Hartford under any such Bond or any and all liability on the part of the Indemnitors, such that each Indemnitor shall be and continue to be liable to Hartford hereunder notwithstanding any notice to which the Indemnitors might be or might have been entitled and notwithstanding any defenses which the Indemnitors might have been or might be entitled to make.

8. **Books and Records.** Hartford or its designee shall have access to and the right to make copies of any and all books, records and other documents or information of the Indemnitors during regular business hours or at any other reasonable time until Hartford's liability under all Bonds are terminated. Indemnitors agree to fully cooperate and assist with any such investigation or review of its books and records. Financial institutions, materialmen, suppliers, bond obligees and all other persons and organizations, including suppliers of legal and accounting services, are authorized to furnish Hartford any information requested, including the status and condition of work under any contracts being performed by any Indemnitor and the financial status of such contracts.

9. **Assignment.** All Indemnitors assign, transfer and convey the following to Hartford, effective on the date of issuance of each Bond, or effective on the date of execution of any unbonded contracts, or effective on the date of this Agreement for Bonds or unbonded contracts executed prior to the date hereof, and nothing herein shall limit Hartford's right to claim under any prior assignment:

   (a) All rights of the Indemnitors in, arising from, or related to Bonds or any bonded or unbonded contracts and any extensions, modifications, alterations or additions thereto, including but not limited to any and all sums due or which may become due under any contract including but not limited to progress payments, retainage, retainage accounts, compensation for extra work, deferred payments, refunds, premiums and any and all commercial tort claims; and

   (b) All right, title and interest of the Indemnitors in and to, (1) the work performed; (2) all supplies, tools, plant, machinery, equipment and materials on or near work sites or elsewhere; (3) all materials purchased for or chargeable to the contract which may be in the process of manufacture, construction or transportation, or in storage anywhere; (4) subcontracts, purchase orders, patent rights, copyrights, trademarks, and any and all bond claims; (5) materials, supplies and inventory; (6) design documents, records, drawings, licenses, plans; and

   (c) All rights arising out of insurance policies; and

   (d) Any and all accounts receivable, chattel paper, documents of title, intangibles, choses in action, and bills of lading held by the Indemnitors or in which the Indemnitors have an interest.

GIAPERF_APP4684_LONG_090105 R1

10. **Default**. Upon the occurrence of an "Event of Default", indemnitors authorize and agree that Hartford may in its sole discretion and to the extent it deems appropriate, but is not obligated to take any or all of the following actions:

(a) Assert, perfect, use and pursue all the assigned, transferred or conveyed rights, actions, causes of action, contracts, subcontracts, purchase orders, patent rights, copy rights and trademarks, plans, drawings, specifications and contract documents, claims and/or demands;

(b) Take possession of all or any part of the work under any or all contracts to which any Bond applies;

(c) Take possession of all tools, plant, machinery, equipment, office equipment, books, records, hardware, software, materials, supplies, inventory, design documents, records, drawings, plans, work in process, completed assemblies and use, consume, or apply to the performance of any contract or defense of any claim to which any Bond applies;

(d) Execute any document in the name of the Principal necessary to effectuate the purposes and terms of this Agreement or enforce any common law right;

(e) Take such other action and enforce such other rights whether granted in this Agreement, or by common law.

11. **Trust Fund**. If a Bond is executed in connection with the performance of any contract, the entire contract price shall be dedicated to the satisfaction of the conditions of that bonded contract. All money paid, or any securities, warrants, checks or evidences of debt, plus any proceeds thereof, given under that bonded contract shall be impressed with a trust in the hands of the Indemnitors in favor of Hartford for the purpose of satisfying the conditions of that bonded contract and shall be used for no other purpose until such conditions have been fully satisfied. On demand, Indemnitors shall establish a trust account with a bank, acceptable to Hartford, and shall thereafter deposit all monies from said bonded contracts into said trust account. The trust account shall be a restricted account requiring the signature of an authorized representative of Hartford on all checks drawn against said account. Such trust shall not terminate until the Indemnitors' obligations under all Bonds issued hereunder and under this Agreement have been fully discharged to Hartford's satisfaction.

12. **Attorney-In-Fact**. The Indemnitors irrevocably constitute, appoint and designate Hartford as their attorney-in-fact with the right, but not the obligation, to exercise all rights of the Indemnitors assigned to Hartford, and, in the name of the Indemnitors, to execute and deliver any other assignments or documents deemed necessary by Hartford to effectuate and exercise the rights given it under this Agreement including, but not limited to, the right to endorse the name of any Indemnitor upon any securities, checks, drafts or evidences of debt. The Indemnitors hereby ratify and confirm all acts and actions taken by Hartford as such attorney-in-fact.

13. **Termination**. This is a continuous Agreement which remains in full force and effect as to every Bond issued hereunder. However, participation in this Agreement by any Indemnitor may be terminated as to future Bonds only by written notice to the Hartford, effective on the date of written acceptance thereof by Hartford. Such termination shall not relieve any Indemnitor from liability assumed prior to such termination, nor shall it affect the liability of any other Indemnitor. Said termination notice shall be sent by certified or registered mail to: Bond Department, The Hartford, Hartford Plaza T-4, Hartford, Connecticut 06115, such notice shall only be effective upon written acceptance by an authorized employee of Hartford.

14. **Cumulative, Joint and Several Obligations**. Hartford's rights under this Agreement are cumulative with, and in addition to all other rights of Hartford, however derived. Therefore, this Agreement is in addition to and not in lieu of any other agreements entered into between the parties hereto, unless expressly agreed to otherwise in a written agreement executed by Hartford. The execution of subsequent agreements does not supersede this Agreement, unless expressly stated otherwise in writing executed by Hartford. Because the Indemnitors are jointly and severally liable, Hartford is not required to enforce or exhaust its rights or remedies against any one Indemnitor before asserting its rights against any other Indemnitor, or to assert claims against the Indemnitors equally.

15. **Representations**. The Indemnitors have a substantial, material and beneficial interest (a) in each of the other Indemnitors obtaining Bonds hereunder; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement. The Indemnitors have the full power and authority to execute,

GIAPERF_APP4684_LONG_090105 R1

deliver and perform this Agreement and to carry out the obligations stated herein. The Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default hereunder.

16. **Security Interest**.  This Agreement constitutes a Security Agreement to or with Hartford and also a Financing Statement enforceable in accordance with the provisions of the UCC now or hereafter in force in any jurisdiction. The Indemnitors hereby consent to Hartford perfecting its rights hereunder as it deems necessary or prudent without providing Indemnitors with any further notice and without seeking any additional consent from the Indemnitors. Hartford may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the UCC, and the Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties and other places as Hartford shall deem necessary or prudent.

17. **Notice**.  Hartford, without notice to the Indemnitors and despite any increase in their liability, may agree to either (a) changes in Bonds or bonded contracts or the plans or specifications relating to them, or (b) the addition of Indemnitors to this Agreement. Furthermore, Indemnitors expressly waive notice of the following notwithstanding any defenses they otherwise may have been able to assert: (a) The execution of any Bonds or the refusal to execute any Bonds; (b) Defaults under contracts or any acts which might result either in claims or in liabilities of Hartford under any Bonds; and (c) Any act, fact, or information concerning or affecting the rights or liabilities of Hartford or any Indemnitor.

18. **Miscellaneous**.  If for any reason this Agreement is invalid as to any Indemnitor, or if any Indemnitor's liability under this Agreement is terminated, with or without notice, the remaining Indemnitors shall nevertheless be liable for the full amount of liability, losses and expenses that Hartford may sustain or incur. For the purpose of enforcing or recording this Agreement, an authenticated true photocopy or facsimile copy hereof shall be regarded as an original. The terms and conditions of this Agreement can only be modified by a written addendum to this Agreement executed by an authorized employee of Hartford. Furthermore, Indemnitors waive any and all notice in connection with the execution of any and all addenda hereto, including but not limited to the addition of new indemnitors, a conditional waiver of indemnity from specified Indemnitors and an agreement to exclude certain assets from an indemnitor's liability hereunder.  This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto. The Indemnitors each hereby waive trial by jury in any action or proceeding to which any or all of the indemnitors may be a party arising out of or relating in any way to this agreement. If any provision or provisions of this agreement are invalid, all other provisions of the agreement shall be construed and enforced with the same effect as if the invalid provision was omitted.

19. **Credit Reports**.  Indemnitors hereby expressly authorize Hartford to access their credit reports and to make such pertinent inquiries as may be necessary from third party sources for the following purposes: (a) To verify information supplied to Hartford; (b) for underwriting purposes; and (c) upon receipt of a notice of claim or potential claim under any Bond, for debt collection.

20. **Special Provisions**.  **Not Applicable**.

The Indemnitors have read and understand this Agreement. Indemnitors acknowledge that including signature pages but not including acknowledgment pages this is a 9 page document containing 20 numbered paragraphs. No separate agreements or understandings, except other indemnity agreements, change the terms of this Agreement except those specifically executed by an authorized employee of Hartford in writing, and no terms may be waived or changed without the express written approval of an authorized employee of Hartford.

Dated and effective this _____10_____ day of _____DECEMBER_____, 20_09_

   NOTE:  Corporate indemnity signatures must be by corporate officers empowered to sign.
   Witness signatures must be by persons not a party to, or a relative of a party to, this Agreement.

WITNESSES

Witness: _____
{signatory name}

Witness: _____
{signatory name}

Witness: _____

Witness: _____

Witness: _____

Witness: _____

INDEMNITORS

Siltek Affordable Housing, LLC
By: _____ (Seal)
Rene A. Sierra, Manager

Siltek Group, Inc.
By: _____ (Seal)
Ana Silveira-Sierra, President

Rene A. Sierra
By: _____ (Seal)
Rene A. Sierra, Individual

Ana Silveira-Sierra
By: _____ (Seal)
Ana Silveira-Sierra, Individual

Gonzalo DeRamon
By: _____ (Seal)
Gonzalo DeRamon, Individual

Mayte DeRamon
By: _____ (Seal)
Mayte DeRamon, Individual

GIAPERF_APP468J_LONG_090105 R1

Page 6 of 9

Witness: _____

Michael C. Cox

By: _____ (Seal)

Michael C. Cox, Individual

Witness: _____

Shana Kristie Cox

By: _____ (Seal)

Shana Kristie Cox, Individual

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

Witness: _____

By: _____ (Seal)

GIAPERF_APP4684_LONG_090105 R1

|  |  |
|---|---|
| **Witness:** _____ | *By:* _____ **(Seal)** |
| **Witness:** _____ | *By:* _____ **(Seal)** |
| **Witness:** _____ | *By:* _____ **(Seal)** |
| **Witness:** _____ | *By:* _____ **(Seal)** |
| **Witness:** _____ | *By:* _____ **(Seal)** |
| **Witness:** _____ | *By:* _____ **(Seal)** |
| **Witness:** _____ | *By:* _____ **(Seal)** |

GIAPERF_APP4684_LONG_090105 R1

Witness: _____     *By:* _____     **(Seal)**


Witness: _____     *By:* _____     **(Seal)**


Witness: _____     *By:* _____     **(Seal)**


Witness: _____     *By:* _____     **(Seal)**

# ACKNOWLEDGMENT

**NOTE:** Persons signing in more than one capacity (i.e. president and as individual) must be acknowledged for each capacity.

---

State of **Florida**

County of **Broward** } SS

On the **10** day of **Dec** 20 **09** Before me, _Sylvia D. Romans_ , personally appeared
_(name of notary public)_

**Rene A. Sierra, Manager of Siltek Affordable Housing, LLC** ☒ Personally known to me –OR- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public _(signature)_

3/25/2011

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
_(Commission Expiration Date and Seal/Stamp)_

------------------------------------------------ **OPTIONAL** ------------------------------------------------
☐ Individual   ☐ Corporate Officer   ☐ Attorney-in-Fact   ☐ Partner – Limited   ☐ Partner – General
   ☐ Trustee   ☐ Guardian or Conservator   ☐ Titles(s): _____   ☐ Other: _____

---

State of **Florida**

County of **Broward** } SS

On the **10** day of **Dec** 20 **09** Before me, _Sylvia D. Romans_ , personally appeared
_(name of notary public)_

**Ana Silveira-Sierra, President of Siltek Group, Inc.** ☒ Personally known to me –OR- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public _(signature)_

3/25/2011

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
_(Commission Expiration Date and Seal/Stamp)_

------------------------------------------------ **OPTIONAL** ------------------------------------------------
☐ Individual   ☐ Corporate Officer   ☐ Attorney-in-Fact   ☐ Partner – Limited   ☐ Partner – General
   ☐ Trustee   ☐ Guardian or Conservator   ☐ Titles(s): _____   ☐ Other: _____

---

State of **Florida**

County of **Broward** } SS

On the **10** day of **Dec** 20 **09** Before me, _Sylvia D. Romans_ , personally appeared
_(name of notary public)_

**Rene A. Sierra, Individual** ☒ Personally known to me –OR- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public _(signature)_

3/25/2011

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
_(Commission Expiration Date and Seal/Stamp)_

------------------------------------------------ **OPTIONAL** ------------------------------------------------
☐ Individual   ☐ Corporate Officer   ☐ Attorney-in-Fact   ☐ Partner – Limited   ☐ Partner – General
   ☐ Trustee   ☐ Guardian or Conservator   ☐ Titles(s): _____   ☐ Other: _____

CONACK_052507 R1

# ACKNOWLEDGMENT

**NOTE:** Persons signing in more than one capacity (i.e. president and as individual) must be acknowledged for each capacity.

*State of* **Florida**
*County of* **Broward** } SS

On the  10  day of  DEC  20 09  Before me, _____ personally appeared
(name of notary public)

**Ana Silveira-Sierra, Individual** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public (signature)

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961

3/25/2011

(Commission Expiration Date and Seal/Stamp)

-------------------- OPTIONAL --------------------
☐ Individual      ☐ Corporate Officer      ☐ Attorney-in-Fact      ☐ Partner – Limited      ☐ Partner – General
☐ Trustee      ☐ Guardian or Conservator      ☐ Titles(s): _____      ☐ Other: _____

*State of* **Florida**
*County of* **Miami Dade** } SS

On the  10  day of  DEC  20 09  Before me, _____, personally appeared
(name of notary public)

**Gonzalo DeRamon, Individual** ☒ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public (signature)

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961

3/25/2011

(Commission Expiration Date and Seal/Stamp)

-------------------- OPTIONAL --------------------
☐ Individual      ☐ Corporate Officer      ☐ Attorney-in-Fact      ☐ Partner – Limited      ☐ Partner – General
☐ Trustee      ☐ Guardian or Conservator      ☐ Titles(s): _____      ☐ Other: _____

*State of* **Florida**
*County of* **Miami Dade** } SS

On the  10  day of  DEC  20 09  Before me, _____, personally appeared
(name of notary public)

**Mayte DeRamon, Individual** ☐ Personally known to me –OR– ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public (signature)

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961

3/25/2011

(Commission Expiration Date and Seal/Stamp)

-------------------- OPTIONAL --------------------
☐ Individual      ☐ Corporate Officer      ☐ Attorney-in-Fact      ☐ Partner – Limited      ☐ Partner – General
☐ Trustee      ☐ Guardian or Conservator      ☐ Titles(s): _____      ☐ Other: _____

## ACKNOWLEDGMENT

NOTE: Persons signing in more than one capacity (i.e. president and as individual) must be acknowledged for each capacity.

---

*State of* **Florida**
*County of* **Miami Dade** } SS

On the **10** day of **Dec** 20 **09** Before me. **SYLVIA D. ROMANS**, personally appeared
<span style="font-size:small">(name of notary public)</span>

**Michael C. Cox, Individual** ☑ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
*Notary Public (signature)*

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

3/25/2011
*(Commission Expiration Date and Seal/Stamp)*

---OPTIONAL---

☐ Individual  ☐ Corporate Officer  ☐ Attorney-in-Fact  ☐ Partner – Limited  ☐ Partner – General
☐ Trustee  ☐ Guardian or Conservator  ☐ Titles(s): ___  ☐ Other: ___

---

*State of* **Florida**
*County of* **Miami Dade** } SS

On the **10** day of **Dec** 20 **09** Before me. **SYLVIA D. ROMANS** personally appeared
<span style="font-size:small">(name of notary public)</span>

**Shana Kristie Cox, Individual** ☐ Personally known to me –OR– ☒ proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

*Sylvia D Romans*
*Notary Public (signature)*

Notary Public State of Florida
Sylvia D Romans
My Commission DD654961
Expires 03/25/2011

3/25/2011
*(Commission Expiration Date and Seal/Stamp)*

---OPTIONAL---

☐ Individual  ☐ Corporate Officer  ☐ Attorney-in-Fact  ☐ Partner – Limited  ☐ Partner – General
☐ Trustee  ☐ Guardian or Conservator  ☐ Titles(s): ___  ☐ Other: ___

---

*State of* ___
*County of* ___ } SS

On the ___ day of ___ 20___ Before me. ___, personally appeared
<span style="font-size:small">(name of notary public)</span>

☐ Personally known to me –OR– ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

*Notary Public (signature)*

*(Commission Expiration Date and Seal/Stamp)*

---OPTIONAL---

☐ Individual  ☐ Corporate Officer  ☐ Attorney-in-Fact  ☐ Partner – Limited  ☐ Partner – General
☐ Trustee  ☐ Guardian or Conservator  ☐ Titles(s): ___  ☐ Other: ___

---

CONACK_052507 R1

### CERTIFIED COPY OF RESOLUTION
### For Transmittal to
### HARTFORD FIRE INSURANCE COMPANY



At a regular/special meeting of the Board of Directors or Members of Limited Liability Company of **Siltek Group, Inc.** hereinafter "Company") duly called and held on the __10__ day of __December__, **2009**, a quorum being present, the following Resolution was adopted:

WHEREAS, this company is materially interested in the transaction(s) in which **Siltek Affordable Housing, LLC** has applied or will apply to HARTFORD FIRE INSURANCE COMPANY, Hartford Plaza, Hartford, Connecticut 06115 or its affiliates, individually and collectively called "HARTFORD", for bond(s) or undertaking(s), guarantees, or other instruments of suretyship, hereinafter referred to as "Bonds"; and

WHEREAS, HARTFORD has executed or is willing to consider the execution of such Bond(s) or undertaking(s), as surety upon being furnished with the written indemnity of this Company;

THEREFORE BE IT RESOLVED, THAT **Ana Silveira-Sierra, President (Siltek Group, Inc.)** of this Company be and hereby is (are) authorized to execute on behalf of this Company, any agreement or agreements of indemnity required by HARTFORD as consideration for the execution by it of Bonds for **Siltek Affordable Housing, LLC** or any joint venture or common enterprise in which it is a member or any present or future affiliate or subsidiary of **Siltek Affordable Housing, LLC** in connection with the matter(s) and transaction(s) described in the agreement of indemnity required by HARTFORD, and the proper attesting officer of this Company be and hereby is authorized to affix the corporate seal to such agreements or agreements of indemnity and subscribe his/her name thereto, attesting the same.

FURTHER, if any agreement or agreements of indemnity as described herein have been executed by **Ana Silveira-Sierra, President (Siltek Group, Inc.)**, or any individuals on behalf of this Company, then previous execution of said agreement or agreements of indemnity on behalf of this Company in connection with said Bonds is hereby ratified and approved.

I, __ANA SILVEIRA-SIERRA__ Secretary or Member of **Siltek Group, Inc.**, having compared the foregoing Resolution with the original thereof, as recorded in the Minute Book of said Company, do certify that the same is a correct and true transcript therefrom and of the whole of said original Resolution.

Given under my hand and seal of the Company in the City of __Plantation__ State of __FLORIDA__ this __10__ day of __December__, 2009.

_____
Secretary or Member

_____
Secretary or Member

_____
Secretary or Member

_____
Secretary or Member

_____
Secretary or Member

_____
Secretary or Member

_____
Secretary or Member

_____
Secretary or Member

RECEIVED
AUG 2 4 2010
BUC

CERTRES_092806

 **NIELSON, ALTER & ASSOCIATES**

December 21, 2009

Mrs. Dana Suggs
The Hartford
400 International Parkway, #425
Heathrow, Florida 32746

RE:   Siltek Affordable Housing, LLC
        General Indemnity Agreement

Dear Dana:

Enclosed please find the properly executed General Indemnity Agreement for
Siltek Affordable Housing, LLC for your files.

Thanks for all your help.

Best regards,

Gloria L. McClure, CCSR
Account Executive

/glm

Enclosure

8000 Governors Square Boulevard
Suite 101
Miami Lakes, FL 33016
P: 305.722.2663
F: 305.558.9650
www.nielsonbonds.com

**Vivian Perez**

| | |
|---|---|
| **From:** | Gonzalez, Eduardo (CAO) <EduardoCAO.Gonzalez@miamidade.gov> |
| **Sent:** | Tuesday, July 7, 2020 5:29 PM |
| **To:** | allysonconnor@adr.org; Tim Taylor; Paul Washington; Oscar Soto; ken.richie@hklaw.com |
| **Cc:** | Benjamin, Angela (CAO); Neal, Jeane (CAO); Vivian Perez; Harpaul-Yapp, Karla (CAO); Rebecca DeLisle |
| **Subject:** | Miami Dade County, Florida v. CertainTeed Corporation - Case 01-19-0002-3987 - Miami-Dade County's Damages Summary |

**Miami-Dade County's Estimated Damages Summary:**

Miami-Dade County (the "County") sets forth its estimated damages to the best of its ability based on the current information it possesses. This estimate is provided in the earliest stages of discovery before any of the parties have exchanged documents, deposed witnesses or exchanged expert reports. Accordingly, the County reserves all of its rights to modify and supplement its damages claim as specifically permitted in the Report of Preliminary Hearing and Scheduling Order which provides that "[a]ny modifications [to the damages summary] will be addressed at a Status Conference set for **October 5, 2020 at 2:00 p.m.** "

The County's Total Estimated Damages: **$618,558.00.**

This estimate is broken down as follows: (1) $614,900.00 consisting of $559,000.00 bid to replace the roof plus a 10% estimated contingency for change order work; and (2) $3,658.00 consisting of out-of-pocket mitigation work, including work in units, caused by roof leaks.

Respectfully submitted,

Eduardo W. Gonzalez
Angela Benjamin
Assistant County Attorneys
Miami-Dade County Attorney's Office
111 NW First Street
Suite 2810
Miami, Florida 33128
email: ewg@miamidade.gov

tel:    305-375-1057
cell:   305-989-7992

Due to the unprecedented and changing situation involving COVID-19, the County Attorney's Office is currently working remotely. We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in-office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to this e-mail address. We also will have limited access to certain physical and other records in response to discovery, public records requests, and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or information online and readily accessible, we will continue to provide it in a timely manner. Please also note that our fax machine has been disconnected and is no longer

being used for incoming correspondence at this time. We appreciate your cooperation at this difficult time. Thank you.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Rene A. Sierra
4403 Dogwood Circle
Weston, FL 33331

9590 9402 4396 8248 1393 77

2. Article Number *(Transfer from service label)*
7018 2290 0001 3138 8292

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X C/P See 311

☑ Agent
☐ Addressee

B. Received by *(Printed Name)*
C. Date of Delivery
11/9/2

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Insured Mail
Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Siltek Group, Inc.
1232 North University Drive
Suite 101
Plantation, FL 33322

9590 9402 4396 8248 1395 44

2. Article Number *(Transfer from service label)*
7018 2290 0001 3138 8308

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

☐ Agent
☐ Addressee

B. Received by *(Print*

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Insured Mail
Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Gonzalo DeRamon
1040 NW North River Drive
Miami, FL 33136

9590 9402 4396 8248 1394 07

2. Article Number *(Transfer from service label)*
7018 2290 0001 3138 8278

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Insured Mail
Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



USPS TRACKING #

9590 9402 4396 8248 1393 77

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Timothy S. Taylor
Taylor Espino Vega & Touron, PLLC
201 Alhambra Circle, Suite 801
Coral Gables, FL 33134**

34-510801

865-33

---

USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 4396 8248 1395 44

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Timothy S. Taylor
Taylor Espino Vega & Touron, PLLC
201 Alhambra Circle, Suite 801
Coral Gables, FL 33134**

865-33

---

USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 4396 8248 1394 07

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Timothy S. Taylor
Taylor Espino Vega & Touron, PLLC
201 Alhambra Circle, Suite 801
Coral Gables, FL 33134**

865-33

USPS TRACKING #

9590 9402 4396 8248 1394 14

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Timothy S. Taylor**
**Taylor Espino Vega & Touron, PLLC**
**201 Alhambra Circle, Suite 801**
**Coral Gables, FL 33134**

865-33

USPS TRACKING #

9590 9402 4396 8248 1394 21

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**Timothy S. Taylor**
**Taylor Espino Vega & Touron, PLLC**
**201 Alhambra Circle, Suite 801**
**Coral Gables, FL 33134**

865-33

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Michael C. Cox
828 NW 9th Avenue
Miami, FL 33136

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

9590 9402 4396 8248 1394 14

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7018 2290 0001 3138 8223

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Shana Kristie Cox
828 NW 9th Avenue
Miami, FL 33136

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

9590 9402 4396 8248 1394 21

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☑ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7018 2290 0001 3138 8261

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt